Nos. 23-4020, 23-4021, 23-4022, 43-4026, & 23-4027

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT COURT

---

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC, | **APPELLANTS' BRIEF APPENDIX OF RECORD** (Federal Rule Of Appellate Procedure 30) |
| *Appellants/Petitioners,* | |
| *v.* | Court of Appeals Case Nos. 23-4020, 23-4021, 23-4022, 43-4026, & 23-4027 |
| UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), | District Court Nos. 2:22-cv-00340, 2:22-cv-00344, 2:22-cv-00345, 2:22-cv-00351, 2:22-cv-00352 |
| *Appellants/Respondents.* | **Oral Argument Requested** |

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
Hon. David B. Barlow

---

Daniel E. Witte, Esq.
Pearson Butler, LLC
1802 W. South Jordan Parkway, Suite 200
South Jordan, UT 84095
Telephone (801) 495-4104
Facsimile (801) 254-9427
dan@pearsonbutler.com
*Attorney for All Appellants*

# Appendix Of Record -- Index Of Contents

Pacer Docket Entries For Cases On Appeal--2:22-cv-00340, 2:22-cv-00341, 2:22-cv-00344, 2:22-cv-00345, 2:22-cv-00347, 2:22-cv-00340, 2:22-cv-00351, 2:22-cv-00352

Petition to Quash Summons
    (2:22-cv-00340, DN 2) ............................................................R000001

Declaration of David Michael Bishop
    (2:22-cv-00340, DN 2-3) ......................................................R000018

IRS Summons (Example Of 8 Identical Summonses With Only The
    Petitioner & Target Varied (This One To Zions Bancorporation NA
    (Zions Bank), With Summons Production Description At R000043)
    (2:22-cv-00340, DN 2-6)......................................................... R000037

Proposed Order to Quash Summons
    (2:22-cv-00340, DN 2-7)........................................................ R000044

IRS Motion to (1) Consolidate and Summarily Deny Petitions to
    Quash IRS Summonses and (2) Enforce the Summonses
    (2:22-cv-00340, DN 13) ........................................................R000045

Declaration of Revenue Agent Tim Bauer (The So-Called "Affidavit")
    (2:22-cv-00340, DN 13-1) ......................................................R000064

Bauer Affidavit Exhibit 1 Executive Summary – Monetized Installment
    Sale Transactions (The Accused Internet Communications Of
    Petitioners)
    (2:22-cv-00340, DN 13-1)....................................................... R000069

Petitioners' Response to IRS Motion to (1) Consolidate and Summarily
Deny Petitions to Quash IRS Summons and (2) Enforce the Summons
    (2:22-cv-00340, DN 16) ........................................................R000076

Notice of Petitioners Joint Response to IRS Motion to (1) Consolidate
  and Summarily Deny Petitions to Quash IRS Summons and
  (2) Enforce the Summons
    (2:22-cv-00340, DN 16-1) .......................................................................R000098

Court-Filed Letter from Summit Crest Financial, LLC to IRS,
  Sep. 26, 2022, Indicating No Responsive Documents To Summons
    (2:22-cv-00340, DN 16-2)........................................................................ R000101

IRS Letter and Summons to Summit Crest Financial, LLC
  (With Summons Production Description At R000105)
    (2:22-cv-00340, DN 16-2).......................................................................R000102

Chief Counsel Internal Revenue Service Memorandum No. 20123401F
  (Aug. 24, 2012)
    (2:22-cv-00340, DN 16-3).......................................................................R000111

26 U.S.C. § 453 – Installment Method
    (2:22-cv-00340, DN 16-4)........................................................................ R000122

In re Linda J Martin, Case No. 8-13-bk13134 (CDCal Bk 2014)
  (Order ¶2, Authorizing MIS Transaction Through S. Crow
  Collateral Corporation)
    (2:22-cv-00340, DN 16-5)........................................................................R000130

Robert S. Bernstein, Monetizing Installment Sale Transactions,
  J. OF CORPORATE TAXATION (Nov/Dec 2004)
    (2:22-cv-00340, DN 16-6)........................................................................R000135

Michael Packman, Utilizing Installment Sales Instead Of 1031, NYREJ
  (Nov 17, 2020) (2:22-cv-00340, DN 16-7)................................................R000144

Office Depo/Office Max -- Timberland Installment Transaction Notes
  FAQs
    (2:22-cv-00340, DN 16-8)........................................................................R000152

IRS Reply to Opposition
    (2:22-cv-00340, DN 19) ..........................................................................R000158

Notice of Additional Cases in Support of Petitioners' Joint Response to
   IRS Motion to (1) Consolidate and Summarily Deny Petitions to Quash
   IRS Summons and (2) Enforce the Summons and in Rebuttal to IRS
   Reply
   (2:22-cv-00340, DN 24) ........................................................................R000175

Opposition to Motion to Strike Additional Cases in Support of
   Petitioners' Joint Opposition
   (2:22-cv-00340, DN 26) ........................................................................R000178

***Order Transferring Cases Sua Sponte to District Judge David Barlow***
   (2:22-cv-00340, DN 27) ........................................................................***R000190***

***Order Referring Case To Chief Magistrate Judge Dustin B. Pead***
   (2:22-cv-00340, DN 29) ........................................................................***R000193***

***Memorandum Decision and Order Granting Respondents' Motion to***
   ***(1) Summarily Deny Petitions to Quash IRS Summonses and***
   ***(2) Enforce the Summonses and Denying Petitioners' Motions to***
   ***Quash***
   (2:22-cv-00340, DN 30) ........................................................................***R000194***

***Judgment In A Civil Case*** (January 9, 2023)(For All Eight Petitions)
   (2:22-cv-00340, DN 31) ........................................................................***R000213***
   (2:22-cv-00341, DN 22) ........................................................................***R000214***
   (2:22-cv-00344, DN 25) ........................................................................***R000215***
   (2:22-cv-00345, DN 25) ........................................................................***R000216***
   (2:22-cv-00347, DN 27) ........................................................................***R000217***
   (2:22-cv-00340, DN 24) ........................................................................***R000218***
   (2:22-cv-00351, DN 23) ........................................................................***R000219***
   (2:22-cv-00352, DN 27) ........................................................................***R000220***

Motion For Relief From Order And Judgment, And/Or To Stay
   Execution On Judgment Pending Appeal
   (2:22-cv-00340, DN 32) ........................................................................R000221

Proposed Order To Vacate Order And Judgment, And Temporarily
   Stay Execution On Judgment Pending Appeal
   (2:22-cv-00340, DN 32-1) ........................................................................R000232

Reply To Government's Opposition To Motion For Relief From Order
  And Judgment, And/Or To Stay Execution On Judgment Pending
  Appeal
  (2:22-cv-00340, DN 36) ..............................................................R000235


**_Memorandum Decision and Order Denying Motion for Relief from
  Order and Judgment, And/Or to Stay Execution on Judgment
  Pending Appeal_**
  (2:22-cv-00340, DN 37) ........................................................**_R000245_**

Notice of Appeal and Notice of Pending Appellate Motion to Stay
  Execution on District Court Judgment Pending Appellate Decision by
  the United States Tenth Circuit Court of Appeals
  (2:22-cv-00340, DN 38) ........................................................R000254

**_Order & Letter – United States Court of Appeals for the Tenth Circuit_**
  (23-4023, Doc 010110826621, & 2:22-cv-00340, DN 44) .....................**_R000289_**

# Pacer Docket Entries

APPEAL,CLOSED,OPEN_MJ

# US District Court Electronic Case Filing System
## District of Utah (Central)
## CIVIL DOCKET FOR CASE #: 2:22-cv-00340-DBB

Bishop v. USA et al
Assigned to: Judge David Barlow
Case in other court: Tenth Circuit, 23-04020
Cause: 26:7609 IRS: Petition to Quash IRS Summons

Date Filed: 05/20/2022
Date Terminated: 01/09/2023
Jury Demand: None
Nature of Suit: 871 Tax Suits: IRS-Third Party
Jurisdiction: U.S. Government Defendant

**Petitioner**

**David Michael Bishop**                      represented by    **Daniel E. Witte**
                                                                PEARSON BUTLER & CARSON PLLC
                                                                1802 W SOUTH JORDAN PKWY STE 200
                                                                SOUTH JORDAN, UT 84095
                                                                (801)495-4104
                                                                Email: juq22@yahoo.com
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**USA**                                       represented by    **Matthew Uhalde**
                                                                US DEPARTMENT OF JUSTICE (555)
                                                                555 4TH STREET NW
                                                                WASHINGTON, DC 20001
                                                                202-353-0013
                                                                Email: matthew.p.uhalde@usdoj.gov
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Respondent**

**Internal Revenue Service**                  represented by    **Matthew Uhalde**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Respondent**

**Timothy Bauer**                             represented by    **Matthew Uhalde**
*Internal Revenue Agent (ID #0324589), in*                      (See above for address)
*his Official Capacity*                                         *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|

Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 8

| 05/20/2022 | 1 | Case has been indexed and assigned to Magistrate Judge Dustin B. Pead. Petitioner David Michael Bishop is directed to E-File the Civil Case Filing Fee (found under Other Documents) and pay the filing fee of $ 402.00 by the end of the business day. Once the filing fee event is completed the initiating document (Motion to Quash IRS Summons and cover sheet ) may be E-filed. <br> NOTE: The court will not have jurisdiction until the opening document is electronically filed and the filing fee paid in the CM/ECF system. <br> Civil Summons may be issued electronically. Prepare the summons using the courts PDF version and email it to utdecf_clerk@utd.uscourts.gov for issuance. (mh) (Entered: 05/20/2022) |
| 05/20/2022 | 2 | MOTION to Quash IRS Third Party Summons On Zions Bank and Memorandum in Support *(Petition To Quash)* filed by Petitioner David Michael Bishop. (Attachments: # 1 Civil Cover Sheet, # 2 Supplement Petition Verification Signature, # 3 Affidavit -- Bishop Declaration, # 4 Affidavit -- Bishop Declaration Signature, # 5 Exhibit -- Regarding Presence Of Third Parties In Utah, # 6 Exhibit -- Copy Of IRS Summons Requested To Be Quashed, # 7 Text of Proposed Order -- To Quash)(Witte, Daniel) (Entered: 05/20/2022) |
| 05/20/2022 | | Civil Case Filing Fee for Petition to Quash received from Petitioner David Michael Bishop. (Filing fee $ 402, receipt number AUTDC-4338780). (Witte, Daniel) (Entered: 05/20/2022) |
| 05/24/2022 | 3 | NOTICE of Summons-r:\intake\MH 222cv340 Summons to US Attorney Office, District Utah by David Michael Bishop. Summons issued per counsel's request. (mh) (Entered: 05/24/2022) |
| 05/24/2022 | 4 | NOTICE of Summons-Assistant Attorney General for Administration by David Michael Bishop. Summons issued per counsel's request. (mh) (Entered: 05/24/2022) |
| 05/24/2022 | 5 | NOTICE of Summons- Timothy Bauer by David Michael Bishop. Summons issued per counsel's request. (mh) (Entered: 05/24/2022) |
| 05/31/2022 | 6 | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by David Michael Bishop. (Witte, Daniel) . (Entered: 05/31/2022) |
| 07/22/2022 | 7 | NOTICE of Appearance by Matthew Uhalde on behalf of USA (Uhalde, Matthew) (Entered: 07/22/2022) |
| 07/22/2022 | 8 | MOTION for Extension of Time ~~to Respond~~ to file Response/Reply to Petition 2 filed by Respondent USA. (Uhalde, Matthew) Modified on 7/26/2022 to correct event type and link to proper document. (alf) (Entered: 07/22/2022) |
| 07/26/2022 | 9 | Modification of Docket re 8 MOTION for Extension of Time: Error: The document should have been filed using the event "Motion for Extension of Time to file Response/Reply" and linked to the appropriate document. Correction: Event type corrected, docket text modified to correct filing and linked to proper document. No further action is needed. (alf) (Entered: 07/26/2022) |
| 07/26/2022 | 10 | ORDER granting 8 Motion for Extension of Time to File Response/Reply re 2 MOTION to Quash IRS Third Party Summons On Zions Bank and Memorandum in Support *(Petition To Quash)* Defendant's Response due by 8/5/2022. Signed by Magistrate Judge Dustin B. Pead on 7/26/22. (alf) (Entered: 07/26/2022) |
| 08/05/2022 | 11 | Second MOTION for Extension of Time to File Response/Reply as to 2 MOTION to Quash IRS Third Party Summons On Zions Bank and Memorandum in Support *(Petition To Quash)* filed by Respondent USA. (Uhalde, Matthew) (Entered: 08/05/2022) |

| | | |
|---|---|---|
| 08/15/2022 | 12 | ORDER granting 11 Motion for Extension of Time to File Response/Reply re 2 MOTION to Quash IRS Third Party Summons On Zions Bank and Memorandum in Support *(Petition To Quash)* Response due by 8/26/2022. Signed by Magistrate Judge Dustin B. Pead on 8/15/22. (alf) (Entered: 08/15/2022) |
| 08/26/2022 | 13 | MOTION to Consolidate Cases , MOTION to Enforce IRS Summons filed by Respondent USA. (Attachments: # 1 Declaration of Tim Bauer)(Uhalde, Matthew) (Entered: 08/26/2022) |
| 09/07/2022 | 14 | MOTION for Extension of Time to File Response/Reply as to 13 MOTION to Consolidate Cases MOTION to Enforce IRS Summons and Memorandum in Support -- *Unopposed Motion For Extension Of Time* filed by Petitioner David Michael Bishop. (Attachments: # 1 Text of Proposed Order -- Unopposed Motion For Extension Of Time)(Witte, Daniel) (Entered: 09/07/2022) |
| 09/08/2022 | 15 | ORDER granting 14 Motion for Extension of Time to File Response/Reply re 2 MOTION to Quash IRS Third Party Summons On Zions Bank. The Petitioner shall file response to the Governments Response to Petition by Friday, September 30, 2022. Signed by Magistrate Judge Dustin B. Pead on 09/08/2022. (mh) (Entered: 09/08/2022) |
| 09/28/2022 | 16 | MEMORANDUM in Opposition re 13 MOTION to Consolidate Cases MOTION to Enforce IRS Summons -- *Petitioners (Bishop & Slim Ventures) Joint Response To IRS Motion To (1) Consolidate And Summarily Deny Petitions To Quash IRS Summons And (2) Enforce The Summons* -- filed by Petitioner David Michael Bishop. (Attachments: # 1 Exhibit -- 1 Notices Filed In All Eight Cases, # 2 Exhibit -- 2 Summit Crest Response To IRS Subpoena Indicating No Responsive Documents, # 3 Exhibit -- 3 IRS Memorandum 20123401F (8/24/2012) -- Application Of Judicial Doctrines To Monetized Transactions (Allowing MIS), # 4 Exhibit -- 4 Installment Method 26 U.S.C. 453, # 5 Exhibit -- 5 In re Linda J Martin, Case No 8-13-bk13134 (CDCal Bk 2014) (Approving and Ordering MIS), # 6 Exhibit -- 6 Robert Bernstein, Monetizing Installment Sales Transactions, J. of Corporate Taxation (Nov-Dec 2004) (Advocating MIS), # 7 Exhibit -- 7 Michael Packman, Utilizing Installment Sales Instead Of 1031, NYREJ (Nov 17, 2020) (Advocating MIS), # 8 Exhibit -- 8 Office Depo/Office Max -- Timberland Installment Transaction Notes FAQ (MIS Transaction))(Witte, Daniel) (Entered: 09/28/2022) |
| 10/07/2022 | 17 | MOTION for Extension of Time to File Response/Reply as to 13 MOTION to Consolidate Cases MOTION to Enforce IRS Summons , MOTION for Leave to File Excess Pages filed by Respondent USA. (Attachments: # 1 Proposed Order)(Uhalde, Matthew) (Entered: 10/07/2022) |
| 10/11/2022 | 18 | ORDER granting 17 Motion for Extension of Time to File Response/Reply re 13 MOTION to Consolidate Cases MOTION to Enforce IRS Summons . Response due by 10/24/2022; granting 17 Motion for Leave to File Excess Pages - US may file a response up to 15 pages long. Signed by Magistrate Judge Dustin B. Pead on 10/11/2022. (alf) (Entered: 10/11/2022) |
| 10/24/2022 | 19 | REPLY to Response to Motion re 13 MOTION to Consolidate Cases MOTION to Enforce IRS Summons filed by Respondent USA. (Uhalde, Matthew) (Entered: 10/24/2022) |
| 10/24/2022 | 20 | NOTICE - This case is assigned to a magistrate judge. Under 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, you are hereby notified that a magistrate judge for the District of Utah may conduct any or all proceedings in this case, including a jury or bench trial and entry of a final judgment. Exercise of this jurisdiction by the magistrate judge is permitted only if all parties voluntarily sign and return the form on this link To consent, return the Consent Form to the clerk's office within 21 days via email at consents@utd.uscourts.gov or mail at the address on the form and place Attention: Consent Clerk on the envelope. **Please do not file the Consent Form in the case.**Notice e-mailed or mailed to Respondents Timothy |

| | | |
|---|---|---|
| | | Bauer, Internal Revenue Service, USA, Petitioner David Michael Bishop. Form due by 11/14/2022. (mh) (Entered: 10/24/2022) |
| 10/24/2022 | 21 | RECEIVED Consent/Reassignment Form from Respondents Timothy Bauer, Internal Revenue Service, USA. (mh) (Entered: 10/24/2022) |
| 11/15/2022 | 22 | The deadline for submission of Consent/Reassignment forms has now passed. One or more of the parties did not file, therefore the case is ineligible for magistrate assignment. Case randomly assigned to Judge David Barlow. Magistrate Judge Dustin B. Pead no longer assigned to the case. (alf) (Entered: 11/15/2022) |
| 12/13/2022 | 23 | NOTICE FROM THE COURT. On August 26, 2022, Respondents filed their 13 Motion to (1) Consolidate and Summarily Deny Petitions to Quash IRS Summonses and (2) Enforce the Summonses. On September 28, 2022, Petitioners filed their 16 Response to *IRS Motion to (1) Consolidate and Summarily Deny Petitions to Quash IRS Summonses and (2) Enforce the Summonses*. On October 24, 2022, Respondents filed their 19 Reply to Opposition. Respondents ask the court to consolidate the eight petitions under the instant case pursuant to Federal Rule of Civil Procedure 42(a) and District of Utah Local Civil Rule of Practice 42-1.<br><br>NOTICE is given to the parties that the court intends to transfer sua sponte under District of Utah Local Civil Rule of Practice 83-2 in lieu of consolidation. Upon its order, the court would transfer **2:22-cv-00341-DAK-DBP; 2:22-cv-00344-TS-DBP; 2:22-cv-00348-RJS-JCB;** and **2:22-cv-00352-JNP-DAO** to District Judge David Barlow, the district court judge assigned to the lowest numbered case. *See* DUCivR 83-2(g). If any party has good cause, it may file (in this action) any objection to such transfers within 7 days. (cfm) (Entered: 12/13/2022) |
| 12/14/2022 | 24 | ADDENDUM filed by Petitioner David Michael Bishop --*Notice Of Additional Cases And Objection In Support Of Petitioners' Joint Response To IRS Motion To (1) Consolidate And Summarily Deny Petitions To Quash IRS Summons And 2) Enforce The Summons And In Rebuttal To IRS Reply*. (Witte, Daniel) (Entered: 12/14/2022) |
| 12/16/2022 | 25 | MOTION to Strike 24 Addendum, filed by Respondent USA. (Uhalde, Matthew) (Entered: 12/16/2022) |
| 12/21/2022 | 26 | MEMORANDUM in Opposition re 25 MOTION to Strike 24 Addendum, -- *Joint Opposition Of Bishop & Slim Ventures LLC* -- filed by Petitioner David Michael Bishop. (Witte, Daniel) (Entered: 12/21/2022) |
| 12/22/2022 | 27 | ORDER: cases 2:22cv00341, 2:22cv00344, 2:22cv00348, and 2:22cv00352 are reassigned and transferred to District Judge David Barlow with Magistrate Judge Dustin B. Pead referred under 28:636(b)(1)(A) on all cases. Signed by Judge David Barlow on 12/22/22 (alt) (Entered: 12/22/2022) |
| 12/27/2022 | 28 | REPLY to Response to Motion re 25 MOTION to Strike 24 Addendum, filed by Respondent USA. (Uhalde, Matthew) (Entered: 12/27/2022) |
| 01/03/2023 | 29 | ORDER REFERRING CASE to Chief Magistrate Judge Dustin B. Pead under 28:636 (b)(1)(A). Magistrate Judge to hear and determine all non-dispositive pretrial matters. Signed by Judge David Barlow on 1/3/2023. (cfm) (Entered: 01/03/2023) |
| 01/09/2023 | 30 | MEMORANDUM DECISION AND ORDER denying 2 Motion to Quash; granting 13 Motion to Enforce IRS Summons; granting 25 Motion to Strike. Refer to the attached order for details. ~~The two financial institutions are ORDERED to respond to the summons within 30 days of this Memorandum Decision and Order.~~ Signed by Judge David Barlow on 1/9/2023. (mh) Modified by striking and updating text on 1/9/2023 (mh). (Entered: 01/09/2023) |

| 01/09/2023 | 31 | JUDGMENT is entered in favor of Defendants and against Plaintiff. Case Closed. Magistrate Judge Dustin B. Pead no longer assigned to case. Signed by Judge David Barlow on 1/9/2023. (mh) (Entered: 01/09/2023) |
|---|---|---|
| 01/16/2023 | 32 | MOTION to Stay re 31 Judgment, 30 Order on Motion to Quash,, Order on Motion to Enforce IRS Summons,, Order on Motion to Strike,, Memorandum Decision, and Memorandum in Support *Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 60(b)(1), 60(b)(6), 62(a), DUCivR 7-1(g))* filed by Petitioner David Michael Bishop. (Attachments: # 1 Text of Proposed Order To Vacate Order And Judgment, And Temporarily Stay Execution On Judgment Pending Appeal)(Witte, Daniel) (Entered: 01/16/2023) |
| 01/19/2023 | 33 | DOCKET TEXT ORDER. On January 9, 2023, the court entered judgment in favor of Respondents and ordered Summit Crest and Zions Bank to respond to the IRS Summonses within 30 days. ECF No. 31. On January 16, 2023, Petitioners filed their 32 Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal. The court ORDERS Respondents to submit a response no later than **February 2, 2023**. The court hereby STAYS judgment and enforcement of the summonses until the court decides the instant motion. Signed by Judge David Barlow on 1/19/2023. (cfm) (Entered: 01/19/2023) |
| 01/23/2023 | 34 | NOTICE FROM THE COURT. In its January 19, 2023 order, ECF No. 33, the court ordered Respondents to file a response brief no later than February 2, 2023. The court hereby notifies Petitioners that they may file a reply within **7 days** of the response brief if so desired. (cfm) (Entered: 01/23/2023) |
| 02/02/2023 | 35 | MEMORANDUM in Opposition re 32 MOTION to Stay re 31 Judgment, 30 Order on Motion to Quash,, Order on Motion to Enforce IRS Summons,, Order on Motion to Strike,, Memorandum Decision, and Memorandum in Support *Motion For Relief From Order And Judgment, And/Or To Stay Exe* filed by Respondent USA. (Uhalde, Matthew) (Entered: 02/02/2023) |
| 02/08/2023 | 36 | REPLY to Response to Motion re 32 MOTION to Stay re 31 Judgment, 30 Order on Motion to Quash,, Order on Motion to Enforce IRS Summons,, Order on Motion to Strike,, Memorandum Decision, and Memorandum in Support *Motion For Relief From Order And Judgment, And/Or To Stay Exe -- Petitioners' Joint Reply To Government's Opposition (2:22-cv-00340, Dk. 35) To Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal--* filed by Petitioner David Michael Bishop. (Witte, Daniel) (Entered: 02/08/2023) |
| 02/22/2023 | 37 | MEMORANDUM DECISION AND ORDER denying 32 Motion to Stay. The court DENIES Petitioners' Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal. Signed by Judge David Barlow on 2/22/2023. (mh) (Entered: 02/22/2023) |
| 02/22/2023 | 38 | NOTICE OF APPEAL as to 27 Order,, Terminate Motions, 30 Order on Motion to Quash,, Order on Motion to Enforce IRS Summons,, Order on Motion to Strike,, Memorandum Decision, 33 Order,, 37 Order on Motion to Stay,, Memorandum Decision, 29 Order Referring Case to Magistrate Judge, 31 Judgment filed by David Michael Bishop. Appeals to the USCA for the 10th Circuit. Filing fee $ 505, receipt number AUTDC-4597712. (Witte, Daniel) (Entered: 02/22/2023) |
| 02/22/2023 | 39 | Transmission of Preliminary Record to USCA re 38 Notice of Appeal, as to Tenth Circuit. (Attachments: # 1 Appendix)(mh) (Entered: 02/22/2023) |
| 02/24/2023 | 40 | USCA Case Number Case Appealed to Tenth Circuit Case Number 23-4020 for 38 Notice of Appeal, filed by David Michael Bishop. A transcript order form or notice that no |

Appellate Case: 23-4021     Document: 010110851879     Date Filed: 04/28/2023     Page: 12

| | | |
|---|---|---|
| | | transcript is necessary per 10th Cir. R. 10.2. This form must be filed in both the district court and this court. See letter for additional information. (jrj) (Entered: 02/24/2023) |
| 02/26/2023 | 41 | TRANSCRIPT REQUEST FORM filed by David Michael Bishop re 38 Notice of Appeal, (Witte, Daniel) (Entered: 02/26/2023) |
| 02/27/2023 | 42 | Please be advised the Record is complete for purposes of appeal for USCA Tenth Circuit case number 23-4020 re 38 Notice of Appeal. (mh) (Entered: 02/27/2023) |
| 02/28/2023 | 43 | ORDER of USCA Tenth Circuit (mh) (Entered: 02/28/2023) |
| 03/15/2023 | 44 | MANDATE of USCA Tenth Circuit as to 38 Notice of Appeal, filed by David Michael Bishop. See order for details. (Attachments: # 1 Mandate Cover Letter)(mh) (Entered: 03/15/2023) |
| 03/29/2023 | 45 | ORDER of USCA Tenth Circuit as to 38 Notice of Appeal, filed by David Michael Bishop (mh) (Entered: 03/29/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/26/2023 15:12:47 | | |
| **PACER Login:** | williamsdr | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-00340-DBB |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

Appellate Case: 23-4021     Document: 010110851879     Date Filed: 04/28/2023     Page: 13

APPEAL,CLOSED

# US District Court Electronic Case Filing System
## District of Utah (Central)
## CIVIL DOCKET FOR CASE #: 2:22-cv-00344-DBB

Bishop v. USA et al
Assigned to: Judge David Barlow
Case in other court: Tenth Circuit, 23-04021
Cause: 26:7609 IRS: Petition to Quash IRS Summons

Date Filed: 05/20/2022
Date Terminated: 01/09/2023
Jury Demand: None
Nature of Suit: 871 Tax Suits: IRS-Third Party
Jurisdiction: U.S. Government Defendant

**Petitioner**

**David Michael Bishop**                    represented by    **Daniel E. Witte**
PEARSON BUTLER & CARSON PLLC
1802 W SOUTH JORDAN PKWY STE 200
SOUTH JORDAN, UT 84095
(801)495-4104
Email: juq22@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**USA**                    represented by    **Matthew Uhalde**
US DEPARTMENT OF JUSTICE (555)
555 4TH STREET NW
WASHINGTON, DC 20001
202-353-0013
Email: matthew.p.uhalde@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**Internal Revenue Service**                    represented by    **Matthew Uhalde**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**Timothy Bauer**
*Internal Revenue Agent (ID #0324589), in his Official Capacity*                    represented by    **Matthew Uhalde**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|

Appellate Case: 23-4021    Document: 010110851879    Date Filed: 04/28/2023    Page: 14

| 05/20/2022 | 1 | Case has been indexed and assigned to Judge Ted Stewart. Petitioner David Michael Bishop is directed to E-File the <u>Civil Case Filing Fee</u> (found under Other Documents) and pay the filing fee of $ 402 by the end of the business day. Once the filing fee event is completed the initiating document (Motion to Quash IRS Summons and cover sheet ) may be E-filed. <br> NOTE: The court will not have jurisdiction until the opening document is electronically filed and the filing fee paid in the CM/ECF system. <br> Civil Summons may be issued electronically. Prepare the summons using the courts <u>PDF version</u> and email it to utdecf_clerk@utd.uscourts.gov for issuance. (mh) (Entered: 05/20/2022) |
|---|---|---|
| 05/20/2022 | 2 | MOTION to Quash IRS Summons On Wells Fargo and Memorandum in Support *(Petition To Quash)* filed by Petitioner David Michael Bishop. (Attachments: # 1 Civil Cover Sheet for Bishop Wells Fargo Summons, # 2 Supplement Petition Verification Signature, # 3 Affidavit -- Bishop Declaration, # 4 Affidavit -- Bishop Declaration Signature Page, # 5 Exhibit -- Regarding Third Party Presence In Utah, # 6 Exhibit -- Copy Of IRS Summons Requested To Be Quashed, # 7 Text of Proposed Order -- To Quash Summons)(Witte, Daniel) (Entered: 05/20/2022) |
| 05/20/2022 | | Civil Case Filing Fee for Petition to Quash IRS Summons received from Petitioner David Michael Bishop. (Filing fee $ 402, receipt number AUTDC-4339101). (Witte, Daniel) (Entered: 05/20/2022) |
| 05/24/2022 | 3 | NOTICE of Summons- Attorney General for Administration by David Michael Bishop. Summons issued per counsel's request. (mh) (Entered: 05/24/2022) |
| 05/24/2022 | 4 | NOTICE of Summons- Timothy Bauer by David Michael Bishop. Summons issued per counsel's request. (mh) (Entered: 05/24/2022) |
| 05/24/2022 | 5 | NOTICE of Summons- US Attorney Office by David Michael Bishop. Summons issued per counsel's request. (mh) (Entered: 05/24/2022) |
| 05/31/2022 | 6 | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by David Michael Bishop. (Witte, Daniel) (Entered: 05/31/2022) |
| 06/02/2022 | 7 | ORDER REFERRING CASE to Magistrate Judge Dustin B. Pead under 28:636 (b)(1)(A), Magistrate to hear and determine all nondispositive pretrial matters. No attached document. Motions referred to Dustin B. Pead. Signed by Judge Ted Stewart on 6/2/2022. (tlc) (Entered: 06/02/2022) |
| 07/22/2022 | 8 | NOTICE of Appearance by Matthew Uhalde on behalf of USA (Uhalde, Matthew) (Entered: 07/22/2022) |
| 07/22/2022 | 9 | MOTION for Extension of Time to ~~Respond~~ file Response/Reply to Petition 2 filed by Respondent USA. Motions referred to Dustin B. Pead.(Uhalde, Matthew) Modified on 7/26/2022 to correct event type, docket text and link to proper document(alf). (Entered: 07/22/2022) |
| 07/26/2022 | 10 | Modification of Docket re 9 MOTION for Extension of Time: Error: The document should have been filed using the event "Motion for Extension of Time to file Response/Reply" and linked to the appropriate document. Correction: Event type corrected, docket text modified and linked to proper document to correct filing. No further action is needed, but please note for future reference. (alf) (Entered: 07/26/2022) |
| 07/26/2022 | 11 | ORDER granting 9 Motion for Extension of Time to File Response/Reply re 2 MOTION to Quash IRS Summons On Wells Fargo and Memorandum in Support *(Petition To Quash)* Defendant's Response due by 8/5/2022. Signed by Magistrate Judge Dustin B. Pead on 7/26/22. (alf) (Entered: 07/26/2022) |

| | | |
|---|---|---|
| 08/05/2022 | 12 | Second MOTION for Extension of Time to File Response/Reply as to 2 MOTION to Quash IRS Summons On Wells Fargo and Memorandum in Support *(Petition To Quash)* filed by Respondent USA. Motions referred to Dustin B. Pead.(Uhalde, Matthew) (Entered: 08/05/2022) |
| 08/15/2022 | 13 | ORDER granting 12 Motion for Extension of Time to File Response/Reply re 2 MOTION to Quash IRS Summons On Wells Fargo and Memorandum in Support *(Petition To Quash)* Response due by 8/26/2022. Signed by Magistrate Judge Dustin B. Pead on 8/15/22. (alf) (Entered: 08/15/2022) |
| 08/26/2022 | 14 | NOTICE OF FILING of Motion to Consolidate filed by Respondent USA. (Uhalde, Matthew) (Entered: 08/26/2022) |
| 09/07/2022 | 15 | MOTION for Extension of Time to File Response/Reply as to ~~14 Notice of Filing and Memorandum in Support -- *Unopposed Motion For Extension Of Time*~~ 2 Motion to Quash IRS Summons filed by Petitioner David Michael Bishop. (Attachments: # 1 Text of Proposed Order -- Unopposed Motion For Extension Of Time) Motions referred to Dustin B. Pead.(Witte, Daniel) Modified on 9/8/2022 - motion linked to wrong document, corrected to set reply deadline (alf). (Entered: 09/07/2022) |
| 09/07/2022 | 16 | Modification of Docket re 15 MOTION for Extension of Time to File Response/Reply : Error: The document is captioned as a motion for an extension of time to file a reply to defendant's response to motion to quash 2 , but was linked to a Notice of Filing re: Consolidation. Correction: Docket entry text corrected and linked to appropriate motion in order to set new deadline if motion is granted. No further action is necessary. (alf) (Entered: 09/08/2022) |
| 09/08/2022 | 17 | ORDER granting 15 Motion for Extension of Time to File Response/Reply re 2 MOTION to Quash IRS Summons On Wells Fargo. The Petitioner shall file response to the Governments Response to Petition by Friday, September 30, 2022. Signed by Magistrate Judge Dustin B. Pead on 09/08/2022. (mh) (Entered: 09/08/2022) |
| 09/28/2022 | 18 | NOTICE of Petitioners (Bishop & Slim Ventures) Joint Response To IRS Motion To (1) Consolidate And Summarily Deny Petitions To Quash IRS Summons And (2) Enforce The Summons -- Filed In 2:22-cv-00340 by David Michael Bishop (Witte, Daniel) (Entered: 09/28/2022) |
| 11/03/2022 | 19 | NOTICE of Appearance by Matthew Uhalde on behalf of Internal Revenue Service (Uhalde, Matthew) (Entered: 11/03/2022) |
| 11/03/2022 | 20 | NOTICE of Appearance by Matthew Uhalde on behalf of Timothy Bauer (Uhalde, Matthew) (Entered: 11/03/2022) |
| 12/14/2022 | 21 | ADDENDUM filed by Petitioner David Michael Bishop --*Notice Of Additional Cases And Objection In Support Of Petitioners' Joint Response To IRS Motion To (1) Consolidate And Summarily Deny Petitions To Quash IRS Summons And 2) Enforce The Summons And In Rebuttal To IRS Reply*. (Witte, Daniel) (Entered: 12/14/2022) |
| 12/21/2022 | 22 | NOTICE of -- Joint Opposition Of Bishop & Slim Ventures LLC -- by David Michael Bishop re 21 Addendum, -- *Joint Opposition Of Bishop & Slim Ventures LLC As To Motion To Strike*-- (Witte, Daniel) (Entered: 12/21/2022) |
| 12/22/2022 | 23 | ORDER TRANSFERRING/REASSIGNING CASE. Case reassigned to Judge David Barlow for all further proceedings: existing case referral to remain unchanged. Judge Ted Stewart no longer assigned to case. Case number is now 2:22cv00344 DBB-DBP. Signed by Judge David Barlow on 12/22/22 (alt) (Entered: 12/22/2022) |

Appellate Case: 23-4021    Document: 010110851879    Date Filed: 04/28/2023    Page: 16

| 01/09/2023 | 24 | MEMORANDUM DECISION AND ORDER denying 2 Motion to Quash. Refer to the attached order for details. Signed by Judge David Barlow on 1/9/2023. (mh) (Entered: 01/09/2023) |
| 01/09/2023 | 25 | JUDGMENT is entered in favor of Defendants and against Plaintiff. Case Closed. Magistrate Judge Dustin B. Pead no longer assigned to case. Signed by Judge David Barlow on 1/9/2023. (mh) (Entered: 01/09/2023) |
| 01/16/2023 | 26 | MOTION to Stay re 25 Judgment, 24 Order on Motion to Quash, Memorandum Decision and Memorandum in Support --*Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 60(b)(1), 60(b)(6), 62(a), DUCivR 7-1(g))* filed by Petitioner David Michael Bishop. (Attachments: # 1 Text of Proposed Order To Vacate Order And Judgment, And Temporarily Stay Execution On Judgment Pending Appeal)(Witte, Daniel) (Entered: 01/16/2023) |
| 01/19/2023 | 27 | DOCKET TEXT ORDER. On January 9, 2023, the court entered judgment in favor of Respondents and ordered Summit Crest and Zions Bank to respond to the IRS Summonses within 30 days. ECF No. 25. On January 16, 2023, Petitioners filed their 26 Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal. The court ORDERS Respondents to submit a response no later than **February 2, 2023**. The court hereby STAYS judgment and enforcement of the summonses until the court decides the instant motion. Signed by Judge David Barlow on 1/19/2023. (cfm) (Entered: 01/19/2023) |
| 01/23/2023 | 28 | NOTICE FROM THE COURT. In its January 19, 2023 order, ECF No. 27, the court ordered Respondents to file a response brief no later than February 2, 2023. The court hereby notifies Petitioners that they may file a reply brief within **7 days** of the response brief if so desired. (cfm) (Entered: 01/23/2023) |
| 02/02/2023 | 29 | MEMORANDUM in Opposition re 26 MOTION to Stay re 25 Judgment, 24 Order on Motion to Quash, Memorandum Decision and Memorandum in Support --*Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 6* filed by Respondent USA. (Uhalde, Matthew) (Entered: 02/02/2023)* |
| 02/08/2023 | 30 | REPLY to Response to Motion re 26 MOTION to Stay re 25 Judgment, 24 Order on Motion to Quash, Memorandum Decision and Memorandum in Support --*Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 6 -- Petitioners' Joint Reply To Government's Opposition (2:22-cv-00340, Dk. 35) To Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal--* filed by Petitioner David Michael Bishop. (Witte, Daniel) (Entered: 02/08/2023) |
| 02/22/2023 | 31 | MEMORANDUM DECISION AND ORDER denying 26 Motion to Stay. The court DENIES Petitioners' Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal. Signed by Judge David Barlow on 2/22/2023. (mh) (Entered: 02/22/2023) |
| 02/22/2023 | 32 | NOTICE of Notice Of Appeal by David Michael Bishop re 23 Order Reassigning Case, 31 Order on Motion to Stay,, Memorandum Decision, 25 Judgment, 27 Order,, 24 Order on Motion to Quash, Memorandum Decision --*Notice of Appeal and Notice Of Pending Appellate Motion To Stay Execution On District COurt Judgment Pending Appellate Decision By The United States Tenth Circuit Court Of Appeals* (Witte, Daniel) (Entered: 02/22/2023) |
| 02/28/2023 | 33 | ORDER of USCA Tenth Circuit (mh) (Entered: 02/28/2023) |

| 02/28/2023 | 34 | NOTICE OF APPEAL as to 31 Memorandum Decision and Order, 25 Judgment, 24 Memorandum Decision and Order, filed by David Michael Bishop. Appeals to the USCA for the 10th Circuit. Fee Status: Not Paid. Filing fee $ 505, receipt number AUTDC-4597712 paid in related case 2:22-cv-340. Notice of Appeal filed in response to Order of USCA Tenth Circuit (2/28/2023). (mh) (Entered: 02/28/2023) |
| 02/28/2023 | 35 | Transmission of Preliminary Record to USCA re 34 Notice of Appeal, as to Tenth Circuit. Transmission issued in response to Order of USCA Tenth Circuit (2/28/2023). (Attachments: # 1 Appendix)(mh) (Entered: 02/28/2023) |
| 02/28/2023 | 36 | USCA Case Number Case Appealed to Tenth Circuit Case Number 23-4021 for 34 Notice of Appeal, filed by David Michael Bishop. A transcript order form or notice that no transcript is necessary per 10th Cir. R. 10.2. This form must be filed in both the district court and this court. See letter for additional information. (jrj) (Entered: 02/28/2023) |
| 03/02/2023 | 37 | TRANSCRIPT REQUEST FORM filed by David Michael Bishop re 34 Notice of Appeal, (Witte, Daniel) (Entered: 03/02/2023) |
| 03/03/2023 | 38 | Please be advised the Record is complete for purposes of appeal for USCA Tenth Circuit case number 23-4021 re 34 Notice of Appeal. (mh) (Entered: 03/03/2023) |
| 03/15/2023 | 39 | ~~MANDATE of~~ USCA ORDER Tenth Circuit as to 34 Notice of Appeal, filed by David Michael Bishop. See order for details. (Attachments: # 1 Mandate Cover Letter)(mh) Modified by changing event on 3/17/2023 (mh). (Entered: 03/15/2023) |
| 03/16/2023 | 40 | STRICKEN - WRONG EVENT ~~Full Filing fee: $ 505.00 received, receipt number 1606 (haa)~~ Modified on 3/17/2023 (jwt). (Entered: 03/16/2023) |
| 03/16/2023 | 41 | USCA Appeal Fees received $ 505 receipt number 1606 re 34 Notice of Appeal, filed by David Michael Bishop (haa) Modified on 3/17/2023 (haa). (Entered: 03/17/2023) |
| 03/17/2023 | 42 | Modification of Docket 39 USCA Order : Error: Order docketed as a Mandate in this case. Mandate only applied to other cases. Correction: Mandate event changed to USCA Order. (mh) (Entered: 03/17/2023) |
| 03/29/2023 | 43 | ORDER of USCA Tenth Circuit as to 34 Notice of Appeal, filed by David Michael Bishop (mh) (Entered: 03/29/2023) |

| **PACER Service Center** | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 04/26/2023 15:15:33 | | |
| **PACER Login:** | williamsdr | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-00344-DBB |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

APPEAL,CLOSED,OPEN_MJ

# US District Court Electronic Case Filing System
## District of Utah (Central)
## CIVIL DOCKET FOR CASE #: 2:22-cv-00345-DBB

| | |
|---|---|
| Slim Ventures v. USA et al | Date Filed: 05/20/2022 |
| Assigned to: Judge David Barlow | Date Terminated: 01/09/2023 |
| Case in other court:  Tenth Circuit, 23-04026 | Jury Demand: None |
| Cause: 26:7609 IRS: Petition to Quash IRS Summons | Nature of Suit: 871 Tax Suits: IRS-Third Party |
| | Jurisdiction: U.S. Government Defendant |

**Petitioner**

**Slim Ventures**       represented by    **Daniel E. Witte**
PEARSON BUTLER & CARSON PLLC
1802 W SOUTH JORDAN PKWY STE 200
SOUTH JORDAN, UT 84095
(801)495-4104
Email: juq22@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**USA**       represented by    **Matthew Uhalde**
US DEPARTMENT OF JUSTICE (555)
555 4TH STREET NW
WASHINGTON, DC 20001
202-353-0013
Email: matthew.p.uhalde@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**Internal Revenue Service**       represented by    **Matthew Uhalde**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**Timothy Bauer**
*Internal Revenue Agent (ID #0324589), in his Official Capacity*       represented by    **Matthew Uhalde**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

| | | |
|---|---|---|
| 05/20/2022 | 1 | Case has been indexed and assigned to Magistrate Judge Daphne A. Oberg. Petitioner Slim Ventures is directed to E-File the <u>Civil Case Filing Fee</u> (found under Other Documents) and pay the filing fee of $ 402 by the end of the business day. Once the filing fee event is completed the initiating document (Motion to Quash IRS Summons and cover sheet ) may be E-filed.<br>NOTE: The court will not have jurisdiction until the opening document is electronically filed and the filing fee paid in the CM/ECF system.<br>Civil Summons may be issued electronically. Prepare the summons using the courts <u>PDF version</u> and email it to utdecf_clerk@utd.uscourts.gov for issuance. (mh) (Entered: 05/20/2022) |
| 05/20/2022 | 2 | MOTION to Quash IRS Summons and Memorandum in Support *(Petition To Quash)* filed by Petitioner Slim Ventures. (Attachments: # <u>1</u> Civil Cover Sheet Slim & Summit, # <u>2</u> Supplement --Petition Verification Signature, # <u>3</u> Affidavit --Bishop Declaration, # <u>4</u> Affidavit -- Bishop Declaration Signature Page, # <u>5</u> Exhibit --Regarding Presence Of Third Parties In Utah, # <u>6</u> Exhibit -- Copy of IRS Summons To Be Quashed, # <u>7</u> Text of Proposed Order -- To Quash Summons)(Witte, Daniel) (Entered: 05/20/2022) |
| 05/20/2022 | | Civil Case Filing Fee for Petition to Quash IRS Summons received from Petitioner Slim Ventures. (Filing fee $ 402, receipt number AUTDC-4339223). (Witte, Daniel) (Entered: 05/20/2022) |
| 05/23/2022 | 3 | STRICKEN ~~MOTION to Quash IRS Summons On Third Party Zions and Memorandum in Support~~ *(Petition To Quash)* ~~filed by Petitioner Slim Ventures. (Attachments: # <u>1</u> Civil Cover Sheet Slim Quash Zions, # <u>2</u> Supplement Petition Verification Signature, # <u>3</u> Affidavit -- Bishop Declaration, # <u>4</u> Affidavit -- Bishop Declaration Signature Page, # <u>5</u> Exhibit -- Regarding Third Party Presence In Utah, # <u>6</u> Exhibit -- Copy Of IRS Summons To Be Quashed, # <u>7</u> Text of Proposed Order -- To Quash Summons)(Witte, Daniel)~~ Modified on 5/23/2022 Striking motion per telephone conversation had with counsel (mh). (Entered: 05/23/2022) |
| 05/23/2022 | | STRICKEN ~~Civil Case Filing Fee for Motion to Quash IRS Summons received from Petitioner Slim Ventures. (Filing fee $ 402, receipt number AUTDC-4339643). (Witte, Daniel)~~ Modified on 5/23/2022 payment to be applied to case 2:22cv348 (mh). (Entered: 05/23/2022) |
| 05/23/2022 | | Motions terminated: <u>3</u> MOTION to Quash IRS Summons On Third Party Zions and Memorandum in Support *(Petition To Quash)* filed by Slim Ventures per phone conservation with counsel. (mh) (Entered: 05/23/2022) |
| 05/23/2022 | 4 | DOCKET TEXT ORDER FOR CASE TO BE REASSIGNED: Due to the procedural posture of the case, including the filing of a petition to quash a summons with a compliance date of June 6, 2022, the court orders that this case be reassigned to a district judge through random reassignment. No attached document. Signed by Magistrate Judge Daphne A. Oberg on 5/23/2022. (med) (Entered: 05/23/2022) |
| 05/23/2022 | 5 | Case Reassigned to District Judge per Docket Text Order 4 . Case randomly assigned to Judge David Barlow. Magistrate Judge Daphne A. Oberg no longer assigned to the case. (alf) (Entered: 05/24/2022) |
| 05/24/2022 | 6 | NOTICE of Summons- Attorney General for Administration by Slim Ventures. Summons issued per counsel's request. (mh) (Entered: 05/24/2022) |
| 05/24/2022 | 7 | NOTICE of Summons- Timothy Bauer by Slim Ventures. Summons issued per counsel's request. (mh) (Entered: 05/24/2022) |
| 05/24/2022 | 8 | NOTICE of Summons- US Attorney Office by Slim Ventures. Summons issued per |

Appellate Case: 23-4021     Document: 010110851879     Date Filed: 04/28/2023     Page: 20

| | | counsel's request. (mh) (Entered: 05/24/2022) |
|---|---|---|
| 05/31/2022 | 9 | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by Slim Ventures. (Witte, Daniel) (Entered: 05/31/2022) |
| 06/06/2022 | 10 | ORDER REFERRING CASE to Magistrate Judge Dustin B. Pead under 28:636 (b)(1)(A). Magistrate to hear and determine all nondispositive pretrial matters. Signed by Judge David Barlow on 06/06/2022. (dah) (Entered: 06/06/2022) |
| 07/22/2022 | 11 | NOTICE of Appearance by Matthew Uhalde on behalf of USA (Uhalde, Matthew) (Entered: 07/22/2022) |
| 07/22/2022 | 12 | MOTION for Extension of Time to Respond to Petition filed by Respondent USA. Motions referred to Dustin B. Pead.(Uhalde, Matthew) (Entered: 07/22/2022) |
| 07/26/2022 | 13 | ORDER granting 12 Motion for Extension of Time - Government shall respond to the Petition by Friday, August 5, 2022. Signed by Magistrate Judge Dustin B. Pead on 07/22/2022. (jl) (Entered: 07/26/2022) |
| 08/05/2022 | 14 | Second MOTION for Extension of Time to File Response/Reply as to 2 MOTION to Quash IRS Summons and Memorandum in Support *(Petition To Quash)* filed by Respondent USA. Motions referred to Dustin B. Pead.(Uhalde, Matthew) (Entered: 08/05/2022) |
| 08/06/2022 | 15 | DOCKET TEXT ORDER. GRANTING Defendants' Unopposed Motion 14 for Extension of Time to File Response RE: 2 Petition to Quash IRS Summons. The Government shall respond to the Petition no later than August 26, 2022. Signed by Magistrate Judge Dustin B. Pead on 08/06/2022. (Entered: 08/06/2022) |
| 08/26/2022 | 16 | NOTICE OF FILING of Motion to Consolidate filed by Respondent USA. (Uhalde, Matthew) (Entered: 08/26/2022) |
| 09/07/2022 | 17 | MOTION for Extension of Time to File Response/Reply as to 16 Notice of Filing and Memorandum in Support -- *Unopposed Motion For Extension Of Time* filed by Petitioner Slim Ventures. (Attachments: # 1 Text of Proposed Order -- Unopposed Motion For Extension Of Time) Motions referred to Dustin B. Pead.(Witte, Daniel) (Entered: 09/07/2022) |
| 09/08/2022 | 18 | ORDER granting 17 Motion for Extension of Time to File Response/Reply re 2 MOTION to Quash IRS Summons. The Petitioner shall file response to the Governments Response to Petition by Friday, September 30, 2022. Signed by Magistrate Judge Dustin B. Pead on 09/08/2022. (mh) (Entered: 09/08/2022) |
| 09/28/2022 | 19 | NOTICE of Petitioners (Bishop & Slim Ventures) Joint Response To IRS Motion To (1) Consolidate And Summarily Deny Petitions To Quash IRS Summons And (2) Enforce The Summons -- Filed In 2:22-cv-00340 by Slim Ventures (Witte, Daniel) (Entered: 09/28/2022) |
| 11/03/2022 | 20 | NOTICE of Appearance by Matthew Uhalde on behalf of Internal Revenue Service (Uhalde, Matthew) (Entered: 11/03/2022) |
| 11/03/2022 | 21 | NOTICE of Appearance by Matthew Uhalde on behalf of Timothy Bauer (Uhalde, Matthew) (Entered: 11/03/2022) |
| 12/14/2022 | 22 | ADDENDUM filed by Petitioner Slim Ventures --*Notice Of Additional Cases And Objection In Support Of Petitioners' Joint Response To IRS Motion To (1) Consolidate And Summarily Deny Petitions To Quash IRS Summons And 2) Enforce The Summons And In Rebuttal To IRS Reply*. (Witte, Daniel) (Entered: 12/14/2022) |

Appellate Case: 23-4021     Document: 010110851879     Date Filed: 04/28/2023     Page: 21

| | | |
|---|---|---|
| 12/21/2022 | 23 | NOTICE of -- Joint Opposition Of Bishop & Slim Ventures LLC -- by Slim Ventures re 22 Addendum, -- *Joint Opposition Of Bishop & Slim Ventures LLC in Regard To Motion To Strike*-- (Witte, Daniel) (Entered: 12/21/2022) |
| 01/09/2023 | 24 | MEMORANDUM DECISION AND ORDER denying 2 Motion to Quash. Refer to the attached order for details. Signed by Judge David Barlow on 1/9/2023. (mh) (Entered: 01/09/2023) |
| 01/09/2023 | 25 | JUDGMENT is entered in favor of Defendants and against Plaintiff. Case Closed. Magistrate Judge Dustin B. Pead no longer assigned to case. Signed by Judge David Barlow on 1/9/2023. (mh) (Entered: 01/09/2023) |
| 01/16/2023 | 26 | MOTION to Stay re 24 Order on Motion to Quash, Memorandum Decision, 25 Judgment and Memorandum in Support --*Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 60(b)(1), 60(b)(6), 62(a), DUCivR 7-1(g))* filed by Petitioner Slim Ventures. (Attachments: # 1 Text of Proposed Order To Vacate Order And Judgment, And Temporarily Stay Execution On Judgment Pending Appeal)(Witte, Daniel) (Entered: 01/16/2023) |
| 01/19/2023 | 27 | DOCKET TEXT ORDER. On January 9, 2023, the court entered judgment in favor of Respondents and ordered Summit Crest and Zions Bank to respond to the IRS Summonses within 30 days. ECF No. 25. On January 16, 2023, Petitioners filed their 26 Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal. The court ORDERS Respondents to submit a response no later than **February 2, 2023**. The court hereby STAYS judgment and enforcement of the summonses until the court decides the instant motion. Signed by Judge David Barlow on 1/19/2023. (cfm) (Entered: 01/19/2023) |
| 01/23/2023 | 28 | NOTICE FROM THE COURT. In its January 19, 2023 order, ECF No. 27, the court ordered Respondents to file a response brief no later than February 2, 2023. The court hereby notifies Petitioners that they may file a reply brief within **7 days** of the response brief if so desired. (cfm) (Entered: 01/23/2023) |
| 02/02/2023 | 29 | MEMORANDUM in Opposition re 26 MOTION to Stay re 24 Order on Motion to Quash, Memorandum Decision, 25 Judgment and Memorandum in Support --*Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 6* filed by Respondent USA. (Uhalde, Matthew) (Entered: 02/02/2023) |
| 02/08/2023 | 30 | REPLY to Response to Motion re 26 MOTION to Stay re 24 Order on Motion to Quash, Memorandum Decision, 25 Judgment and Memorandum in Support --*Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 6 -- Petitioners' Joint Reply To Government's Opposition (2:22-cv-00340, Dk. 35) To Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal*-- filed by Petitioner Slim Ventures. (Witte, Daniel) (Entered: 02/08/2023) |
| 02/22/2023 | 31 | MEMORANDUM DECISION AND ORDER denying 26 Motion to Stay. The court DENIES Petitioners' Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal. Signed by Judge David Barlow on 2/22/2023. (mh) (Entered: 02/22/2023) |
| 02/22/2023 | 32 | NOTICE of Notice Of Appeal by Slim Ventures re 4 Order, 24 Order on Motion to Quash, Memorandum Decision, 31 Order on Motion to Stay,, Memorandum Decision, 25 Judgment, 27 Order,, *Notice of Appeal and Notice Of Pending Appellate Motion To Stay Execution On District COurt Judgment Pending Appellate Decision By The United States Tenth Circuit Court Of Appeals* (Witte, Daniel) (Entered: 02/22/2023) |

Appellate Case: 23-4021     Document: 010110851879     Date Filed: 04/28/2023     Page: 22

| 02/28/2023 | 33 | ORDER of USCA Tenth Circuit (mh) (Entered: 02/28/2023) |
|---|---|---|
| 02/28/2023 | 34 | NOTICE OF APPEAL as to 24 Memorandum Decision and Order, 25 Judgment, 31 Memorandum Decision and Order, filed by Slim Ventures. Appeals to the USCA for the 10th Circuit. Fee Status: Not Paid. Filing fee $ 505, receipt number AUTDC-4597712 paid in related case 2:22-cv-340. Notice of Appeal filed in response to Order of USCA Tenth Circuit (2/28/2023). (mh) (Entered: 02/28/2023) |
| 02/28/2023 | 35 | Transmission of Preliminary Record to USCA re 34 Notice of Appeal, as to Tenth Circuit. Transmission issued in response to Order of USCA Tenth Circuit (2/28/2023). (Attachments: # 1 Appendix)(mh) (Entered: 02/28/2023) |
| 02/28/2023 | 36 | USCA Case Number Case Appealed to Tenth Circuit Case Number 23-4026 for 34 Notice of Appeal, filed by Slim Ventures. A transcript order form or notice that no transcript is necessary per 10th Cir. R. 10.2. This form must be filed in both the district court and this court. See letter for additional information. (jrj) (Entered: 02/28/2023) |
| 03/02/2023 | 37 | TRANSCRIPT REQUEST FORM filed by Slim Ventures re 34 Notice of Appeal, (Witte, Daniel) (Entered: 03/02/2023) |
| 03/03/2023 | 38 | Please be advised the Record is complete for purposes of appeal for USCA Tenth Circuit case number 23-4026 re 34 Notice of Appeal. (mh) (Entered: 03/03/2023) |
| 03/15/2023 | 39 | ~~MANDATE of~~ USCA ORDER Tenth Circuit as to 34 Notice of Appeal, filed by Slim Ventures. See order for details. (Attachments: # 1 Mandate Cover Letter)(mh) Modified by correcting order event on 3/17/2023 (mh). (Entered: 03/15/2023) |
| 03/16/2023 | 40 | STRICKEN - WRONG EVENT ~~Full Filing fee: $ 505.00 received, receipt number 1608 (haa)~~ Modified on 3/17/2023 (jwt). (Entered: 03/16/2023) |
| 03/16/2023 | 41 | USCA Appeal Fees received $ 505 receipt number 1608 re 34 Notice of Appeal, filed by Slim Ventures (haa) (Entered: 03/17/2023) |
| 03/17/2023 | 42 | Modification of Docket re 39 USCA ORDER: Error: Order docketed as a Mandate in this case. Mandate only applied to other cases. Correction: Mandate event changed to USCA Order. (mh) (Entered: 03/17/2023) |
| 03/29/2023 | 43 | ORDER of USCA Tenth Circuit as to 34 Notice of Appeal, filed by Slim Ventures (mh) (Entered: 03/29/2023) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/26/2023 15:16:55 | | |
| **PACER Login:** | williamsdr | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-00345-DBB |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

APPEAL,CLOSED,OPEN_MJ

# US District Court Electronic Case Filing System
## District of Utah (Central)
## CIVIL DOCKET FOR CASE #: 2:22-cv-00351-DBB

Slim Ventures v. USA et al
Assigned to: Judge David Barlow
Case in other court:  Tenth Circuit, 23-04022
Cause: 26:7609 IRS: Petition to Quash IRS Summons

Date Filed: 05/23/2022
Date Terminated: 01/09/2023
Jury Demand: None
Nature of Suit: 871 Tax Suits: IRS-Third Party
Jurisdiction: U.S. Government Defendant

**Petitioner**

**Slim Ventures**                          represented by   **Daniel E. Witte**
                                                            PEARSON BUTLER & CARSON PLLC
                                                            1802 W SOUTH JORDAN PKWY STE 200
                                                            SOUTH JORDAN, UT 84095
                                                            (801)495-4104
                                                            Email: juq22@yahoo.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**USA**                                    represented by   **Matthew Uhalde**
                                                            US DEPARTMENT OF JUSTICE (555)
                                                            555 4TH STREET NW
                                                            WASHINGTON, DC 20001
                                                            202-353-0013
                                                            Email: matthew.p.uhalde@usdoj.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Respondent**

**Internal Revenue Service**               represented by   **Matthew Uhalde**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Respondent**

**Timothy Bauer**                          represented by   **Matthew Uhalde**
*Internal Revenue Agent (ID #0324589), in*                 (See above for address)
*his Official Capacity*                                     *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |

Appellate Case: 23-4021     Document: 010110851879     Date Filed: 04/28/2023     Page: 24

| 05/23/2022 | 1 | Case has been indexed and assigned to Magistrate Judge Daphne A. Oberg. Petitioner Slim Ventures is directed to E-File the Civil Case Filing Fee (found under Other Documents) and pay the filing fee of $ 402 by the end of the business day. Once the filing fee event is completed the initiating document (Motion to Quash IRS Summons and cover sheet ) may be E-filed. NOTE: The court will not have jurisdiction until the opening document is electronically filed and the filing fee paid in the CM/ECF system. Civil Summons may be issued electronically. Prepare the summons using the courts PDF version and email it to utdecf_clerk@utd.uscourts.gov for issuance. (mh) (Entered: 05/23/2022) |
| --- | --- | --- |
| 05/23/2022 | 2 | MOTION to Quash IRS Summons On Wells Fargo and Memorandum in Support *(Petition To Quash)* filed by Petitioner Slim Ventures. (Attachments: # 1 Civil Cover Sheet -- Slim Ventures & Wells Fargo, # 2 Supplement -- Petition Verification Signature, # 3 Affidavit -- Bishop Declaration, # 4 Affidavit -- Bishop Declaration Signature, # 5 Exhibit -- Regarding Third Party Presence In Utah, # 6 Exhibit -- Copy Of IRS Summons Requested To Be Quashed, # 7 Text of Proposed Order -- To Quash Summons)(Witte, Daniel) (Entered: 05/23/2022) |
| 05/23/2022 | | Civil Case Filing Fee for Quash IRS Summons On Third Party Wells Fargo received from Petitioner Slim Ventures. (Filing fee $ 402, receipt number AUTDC-4339885). (Witte, Daniel) (Entered: 05/23/2022) |
| 05/23/2022 | 3 | DOCKET TEXT ORDER FOR CASE TO BE REASSIGNED: Due to the procedural posture of the case, including the filing of a petition to quash a summons with a compliance date of June 6, 2022, the court orders that this case be reassigned to a district judge through random reassignment. No attached document. Signed by Magistrate Judge Daphne A. Oberg on 5/23/2022. (med) (Entered: 05/23/2022) |
| 05/24/2022 | 4 | Case Reassigned to District Judge per Docket Text Order 3 . Case randomly assigned to Judge David Barlow. Magistrate Judge Daphne A. Oberg no longer assigned to the case. (alf) (Entered: 05/24/2022) |
| 05/25/2022 | 5 | NOTICE of Summons-Assistant Attorney General for Administration by Slim Ventures. Summons issued per counsel's request. (mh) (Entered: 05/25/2022) |
| 05/25/2022 | 6 | NOTICE of Summons- Timothy Bauer by Slim Ventures. Summons issued per counsel's request. (mh) (Entered: 05/25/2022) |
| 05/25/2022 | 7 | NOTICE of Summons- US Attorney Office by Slim Ventures. Summons issued per counsel's request. (mh) (Entered: 05/25/2022) |
| 05/31/2022 | 8 | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by Slim Ventures. (Witte, Daniel) (Entered: 05/31/2022) |
| 06/06/2022 | 9 | ORDER REFERRING CASE to Magistrate Judge Dustin B. Pead under 28:636 (b)(1)(A). Magistrate to hear and determine all nondispositive pretrial matters. No attached document. Signed by Judge David Barlow on 06/06/2022. (dah) (Entered: 06/06/2022) |
| 07/22/2022 | 10 | NOTICE of Appearance by Matthew Uhalde on behalf of USA (Uhalde, Matthew) (Entered: 07/22/2022) |
| 07/22/2022 | 11 | MOTION for Extension of Time to Respond to Petition filed by Respondent USA. Motions referred to Dustin B. Pead.(Uhalde, Matthew) (Entered: 07/22/2022) |
| 07/26/2022 | 12 | ORDER granting 11 Motion for Extension of Time - The Government shall respond to the Petition by Friday, August 5, 2022. Signed by Magistrate Judge Dustin B. Pead on 07/22/2022. (jl) (Entered: 07/26/2022) |

| | | |
|---|---|---|
| 08/05/2022 | 13 | Second MOTION for Extension of Time to File Response/Reply as to 2 MOTION to Quash IRS Summons On Wells Fargo and Memorandum in Support *(Petition To Quash)* filed by Respondent USA. Motions referred to Dustin B. Pead.(Uhalde, Matthew) (Entered: 08/05/2022) |
| 08/06/2022 | 14 | DOCKET TEXT ORDER. DOCKET TEXT ORDER. GRANTING Defendants' Unopposed Motion 13 for Extension of Time to File Response RE: 2 Petition to Quash IRS Summons. The Government shall respond to the Petition no later than August 26, 2022. Signed by Magistrate Judge Dustin B. Pead on 08/06/2022. (Entered: 08/06/2022) |
| 08/26/2022 | 15 | NOTICE OF FILING of Motion to Consolidate filed by Respondent USA. (Uhalde, Matthew) (Entered: 08/26/2022) |
| 09/07/2022 | 16 | MOTION for Extension of Time to File Response/Reply as to 15 Notice of Filing and Memorandum in Support -- *Unopposed Motion For Extension Of Time* filed by Petitioner Slim Ventures. (Attachments: # 1 Text of Proposed Order -- Unopposed Motion For Extension Of Time) Motions referred to Dustin B. Pead.(Witte, Daniel) (Entered: 09/07/2022) |
| 09/08/2022 | 17 | ORDER granting 16 Motion for Extension of Time to File Response/Reply re 2 MOTION to Quash IRS Summons On Wells Fargo. The Petitioner shall file response to the Governments Response to Petition by Friday, September 30, 2022. Signed by Magistrate Judge Dustin B. Pead on 09/08/2022. (mh) (Entered: 09/08/2022) |
| 09/28/2022 | 18 | NOTICE of Petitioners (Bishop & Slim Ventures) Joint Response To IRS Motion To (1) Consolidate And Summarily Deny Petitions To Quash IRS Summons And (2) Enforce The Summons -- Filed In 2:22-cv-00340 by Slim Ventures re 15 Notice of Filing (Witte, Daniel) (Entered: 09/28/2022) |
| 11/03/2022 | 19 | NOTICE of Appearance by Matthew Uhalde on behalf of Timothy Bauer, Internal Revenue Service (Uhalde, Matthew) (Entered: 11/03/2022) |
| 12/14/2022 | 20 | ADDENDUM filed by Petitioner Slim Ventures --*Notice Of Additional Cases And Objection In Support Of Petitioners' Joint Response To IRS Motion To (1) Consolidate And Summarily Deny Petitions To Quash IRS Summons And 2) Enforce The Summons And In Rebuttal To IRS Reply*. (Witte, Daniel) (Entered: 12/14/2022) |
| 12/21/2022 | 21 | NOTICE of -- Joint Opposition Of Bishop & Slim Ventures LLC -- by Slim Ventures re 20 Addendum, -- *Joint Opposition Of Bishop & Slim Ventures LLC As To Motion To Strike* ---- (Witte, Daniel) (Entered: 12/21/2022) |
| 01/09/2023 | 22 | MEMORANDUM DECISION AND ORDER denying 2 Motion to Quash. Refer to the attached order for details. Signed by Judge David Barlow on 1/9/2023. (mh) (Entered: 01/09/2023) |
| 01/09/2023 | 23 | JUDGMENT is entered in favor of Defendants and against Plaintiff. Case Closed. Magistrate Judge Dustin B. Pead no longer assigned to case. Signed by Judge David Barlow on 1/9/2023. (mh) (Entered: 01/09/2023) |
| 01/16/2023 | 24 | MOTION to Stay re 22 Order on Motion to Quash, Memorandum Decision, 23 Judgment and Memorandum in Support --*Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 60(b)(1), 60(b)(6), 62(a), DUCivR 7-1(g))* filed by Petitioner Slim Ventures. (Attachments: # 1 Text of Proposed Order To Vacate Order And Judgment, And Temporarily Stay Execution On Judgment Pending Appeal)(Witte, Daniel) (Entered: 01/16/2023) |
| 01/19/2023 | 25 | DOCKET TEXT ORDER. On January 9, 2023, the court entered judgment in favor of Respondents and ordered Summit Crest and Zions Bank to respond to the IRS Summonses |

| | | |
|---|---|---|
| | | within 30 days. ECF No. 25. On January 16, 2023, Petitioners filed their 24 Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal. The court ORDERS Respondents to submit a response no later than **February 2, 2023**. The court hereby STAYS judgment and enforcement of the summonses until the court decides the instant motion. Signed by Judge David Barlow on 1/19/2023. (cfm) (Entered: 01/19/2023) |
| 01/23/2023 | 26 | NOTICE FROM THE COURT. In its January 19, 2023 order, ECF No. 25, the court ordered Respondents to file a response brief no later than February 2, 2023. The court hereby notifies Petitioners that they may file a reply brief within **7 days** of the response brief if so desired. (cfm) (Entered: 01/23/2023) |
| 02/02/2023 | 27 | MEMORANDUM in Opposition re 24 MOTION to Stay re 22 Order on Motion to Quash, Memorandum Decision, 23 Judgment and Memorandum in Support --*Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 6 filed by Respondent USA. (Uhalde, Matthew) (Entered: 02/02/2023)* |
| 02/08/2023 | 28 | REPLY to Response to Motion re 24 MOTION to Stay re 22 Order on Motion to Quash, Memorandum Decision, 23 Judgment and Memorandum in Support --*Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 6 -- Petitioners' Joint Reply To Government's Opposition (2:22-cv-00340, Dk. 35) To Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal-- filed by Petitioner Slim Ventures. (Witte, Daniel) (Entered: 02/08/2023)* |
| 02/22/2023 | 29 | MEMORANDUM DECISION AND ORDER denying 24 Motion to Stay. The court DENIES Petitioners' Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal. Signed by Judge David Barlow on 2/22/2023. (mh) (Entered: 02/22/2023) |
| 02/22/2023 | 30 | NOTICE of Notice Of Appeal by Slim Ventures re 22 Order on Motion to Quash, Memorandum Decision, 12 Order on Motion for Extension of Time, 9 Order Referring Case to Magistrate Judge, 29 Order on Motion to Stay,, Memorandum Decision, 23 Judgment, 25 Order,, 14 Order on Motion for Extension of Time to File Response/Reply, *Notice of Appeal and Notice Of Pending Appellate Motion To Stay Execution On District COurt Judgment Pending Appellate Decision By The United States Tenth Circuit Court Of Appeals* (Witte, Daniel) (Entered: 02/22/2023) |
| 02/28/2023 | 31 | ORDER of USCA Tenth Circuit (mh) (Entered: 02/28/2023) |
| 02/28/2023 | 32 | NOTICE OF APPEAL as to 22 Memorandum Decision and Order, 23 Judgment, 29 Memorandum Decision and Order, filed by Slim Ventures. Appeals to the USCA for the 10th Circuit. Fee Status: Not Paid. Filing fee $ 505, receipt number AUTDC-4597712 paid in related case 2:22-cv-340. Notice of Appeal filed in response to Order of USCA Tenth Circuit (2/28/2023). (mh) (Entered: 02/28/2023) |
| 02/28/2023 | 33 | Transmission of Preliminary Record to USCA re 32 Notice of Appeal, as to Tenth Circuit. Transmission issued in response to Order of USCA Tenth Circuit (2/28/2023). (Attachments: # 1 Appendix)(mh) (Entered: 02/28/2023) |
| 02/28/2023 | 34 | USCA Case Number Case Appealed to Tenth Circuit Case Number 23-4022 for 32 Notice of Appeal, filed by Slim Ventures. A transcript order form or notice that no transcript is necessary per 10th Cir. R. 10.2. This form must be filed in both the district court and this court. See letter for additional information. (jrj) (Entered: 02/28/2023) |
| 03/02/2023 | 35 | TRANSCRIPT REQUEST FORM filed by Slim Ventures re 32 Notice of Appeal, (Witte, Daniel) (Entered: 03/02/2023) |

Appellate Case: 23-4021    Document: 010110851879    Date Filed: 04/28/2023    Page: 27

| 03/03/2023 | 36 | Please be advised the Record is complete for purposes of appeal for USCA Tenth Circuit case number 23-4022 re 32 Notice of Appeal. (mh) (Entered: 03/03/2023) |
| --- | --- | --- |
| 03/15/2023 | 37 | ~~MANDATE of~~ USCA ORDER Tenth Circuit as to 32 Notice of Appeal, filed by Slim Ventures. See order for details. (Attachments: # 1 Mandate Cover Letter)(mh) Modified by correcting order event on 3/17/2023 (mh). (Entered: 03/15/2023) |
| 03/16/2023 | 38 | STRICKEN - WRONG EVENT ~~Full Filing fee: $ 505.00 received, receipt number 1609~~ ~~(haa)~~ Modified on 3/17/2023 (jwt). (Entered: 03/16/2023) |
| 03/16/2023 | 39 | USCA Appeal Fees received $ 505 receipt number 1609 re 32 Notice of Appeal, filed by Slim Ventures (haa) Modified on 3/17/2023 (haa). (Entered: 03/17/2023) |
| 03/17/2023 | 40 | Modification of Docket re 37 USCA ORDER: Error: Order docketed as a Mandate in this case. Mandate only applied to other cases. Correction: Mandate event changed to USCA Order. (mh) (Entered: 03/17/2023) |
| 03/29/2023 | 41 | ORDER of USCA Tenth Circuit as to 32 Notice of Appeal, filed by Slim Ventures (mh) (Entered: 03/29/2023) |

| PACER Service Center | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 04/26/2023 15:18:01 | | |
| **PACER Login:** | williamsdr | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-00351-DBB |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

Appellate Case: 23-4021     Document: 010110851879     Date Filed: 04/28/2023     Page: 28

APPEAL,CLOSED,OPEN_MJ

# US District Court Electronic Case Filing System
## District of Utah (Central)
## CIVIL DOCKET FOR CASE #: 2:22-cv-00352-DBB

Bishop v. USA et al
Assigned to: Judge David Barlow
Case in other court: Tenth Circuit, 23-04027
Cause: 26:7609 IRS: Petition to Quash IRS Summons

Date Filed: 05/23/2022
Date Terminated: 01/09/2023
Jury Demand: None
Nature of Suit: 871 Tax Suits: IRS-Third Party
Jurisdiction: U.S. Government Defendant

**Petitioner**

**David Michael Bishop**                          represented by   **Daniel E. Witte**
                                                                   PEARSON BUTLER & CARSON PLLC
                                                                   1802 W SOUTH JORDAN PKWY STE 200
                                                                   SOUTH JORDAN, UT 84095
                                                                   (801)495-4104
                                                                   Email: juq22@yahoo.com
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**USA**                                           represented by   **Matthew Uhalde**
                                                                   US DEPARTMENT OF JUSTICE (555)
                                                                   555 4TH STREET NW
                                                                   WASHINGTON, DC 20001
                                                                   202-353-0013
                                                                   Email: matthew.p.uhalde@usdoj.gov
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*

**Respondent**

**Internal Revenue Service**                      represented by   **Matthew Uhalde**
                                                                   (See above for address)
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*

**Respondent**

**Timothy Bauer**                                 represented by   **Matthew Uhalde**
*Internal Revenue Agent (ID #0324589), in*                         (See above for address)
*his Official Capacity*                                            *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
|            |   |             |

| 05/23/2022 | 1 | Case has been indexed and assigned to Magistrate Judge Dustin B. Pead. Petitioner David Michael Bishop is directed to E-File the Civil Case Filing Fee (found under Other Documents) and pay the filing fee of $ 402 by the end of the business day. Once the filing fee event is completed the initiating document (Motion to Quash IRS Summons and cover sheet ) may be E-filed. NOTE: The court will not have jurisdiction until the opening document is electronically filed and the filing fee paid in the CM/ECF system. Civil Summons may be issued electronically. Prepare the summons using the courts PDF version and email it to utdecf_clerk@utd.uscourts.gov for issuance. (mh) (Entered: 05/23/2022) |
| 05/23/2022 | 2 | MOTION to Quash IRS Summons On Summit and Memorandum in Support *(Petition To Quash)* filed by Petitioner David Michael Bishop. (Attachments: # 1 Civil Cover Sheet, # 2 Supplement -- Petition Verification Signature, # 3 Affidavit -- Bishop Declaration, # 4 Affidavit -- Bishop Declaration Signature Page, # 5 Exhibit -- Regarding Third Party Presence In Utah, # 6 Exhibit -- Copy Of IRS Summons Requested To Be Quashed, # 7 Text of Proposed Order -- To Quash Summons)(Witte, Daniel) (Entered: 05/23/2022) |
| 05/23/2022 | | Civil Case Filing Fee for Petition to Quash IRS Summons received from Petitioner David Michael Bishop. (Filing fee $ 402, receipt number AUTDC-4339916). (Witte, Daniel) (Entered: 05/23/2022) |
| 05/24/2022 | 3 | NOTICE of Summons- Timothy Bauer by David Michael Bishop. Summons issued per counsel's request. (mh) (Entered: 05/24/2022) |
| 05/24/2022 | 4 | NOTICE of Summons- US Attorney Office by David Michael Bishop. Summons issued per counsel's request. (mh) (Entered: 05/24/2022) |
| 05/24/2022 | 5 | NOTICE of Summons- Attorney General for Administration by David Michael Bishop. Summons issued per counsel's request. (mh) (Entered: 05/24/2022) |
| 05/31/2022 | 6 | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by David Michael Bishop. (Witte, Daniel) (Entered: 05/31/2022) |
| 07/05/2022 | 7 | DOCKET TEXT ORDER FOR CASE TO BE REASSIGNED. Based upon the procedural posture of this case, the fact that defendants have not yet appeared in this case, the pending motion, and the need to decide the motion in a judicious and timely manner, the undersigned orders that this case be reassigned to a district judge through random reassignment. Signed by Magistrate Judge Dustin B. Pead on 7/5/22. No attached document (mjw) (Entered: 07/05/2022) |
| 07/06/2022 | 8 | Case Reassigned to District Judge per docket text order 7 . Case randomly assigned to Judge Jill N. Parrish. Magistrate Judge Dustin B. Pead no longer assigned to the case. (alf) (Entered: 07/06/2022) |
| 07/08/2022 | 9 | CIVIL STANDING ORDER Signed by Judge Jill N. Parrish on 07/08/2022. (lwh) (Entered: 07/08/2022) |
| 07/08/2022 | 10 | ORDER REFERRING CASE to under 28:636 (b)(1)(A), Magistrate to hear and determine all nondispositive pretrial matters. No attached document. Signed by Judge Jill N. Parrish on 07/08/2022. (lwh) (Entered: 07/08/2022) |
| 07/08/2022 | | Magistrate Judge Daphne A. Oberg added per 10 Order Referring Case. Motions referred to Daphne A. Oberg.(nl) (Entered: 08/03/2022) |
| 07/22/2022 | 11 | NOTICE of Appearance by Matthew Uhalde on behalf of USA (Uhalde, Matthew) (Entered: 07/22/2022) |

Appellate Case: 23-4021     Document: 010110851879     Date Filed: 04/28/2023     Page: 30

| | | |
|---|---|---|
| 07/22/2022 | 12 | MOTION for Extension of Time to Respond to Petition filed by Respondent USA. (Uhalde, Matthew) (Entered: 07/22/2022) |
| 08/04/2022 | 13 | DOCKET TEXT ORDER granting 12 Unopposed Motion to Set Deadline to Respond to the Petition to Quash. The Government's deadline to respond to the Petition is August 5, 2022. Signed by Magistrate Judge Daphne A. Oberg on 8/4/2022. No attached document. (eh) (Entered: 08/04/2022) |
| 08/05/2022 | 14 | Second MOTION for Extension of Time to File Response/Reply as to 2 MOTION to Quash IRS Summons On Summit and Memorandum in Support *(Petition To Quash)* filed by Respondent USA. Motions referred to Daphne A. Oberg.(Uhalde, Matthew) (Entered: 08/05/2022) |
| 08/08/2022 | 15 | DOCKET TEXT ORDER granting 14 Unopposed Motion to Extend Time to Respond to Petition to Quash. The deadline for the United States to respond is extended to August 26, 2022. Signed by Magistrate Judge Daphne A. Oberg on 8/8/2022. No attached document. (eh) (Entered: 08/08/2022) |
| 08/26/2022 | 16 | NOTICE OF FILING of Motion to Consolidate filed by Respondent USA. (Uhalde, Matthew) (Entered: 08/26/2022) |
| 09/07/2022 | 17 | MOTION for Extension of Time to File Response/Reply as to ~~16 Notice of Filing and Memorandum in Support -- Unopposed Motion For Extension Of Time~~ 2 Motion to Quash IRS Summons filed by Petitioner David Michael Bishop. (Attachments: # 1 Text of Proposed Order -- Unopposed Motion For Extension Of Time) Motions referred to Daphne A. Oberg.(Witte, Daniel) Modified on 9/8/2022 motion linked to wrong document, corrected to set reply deadline(alf). (Entered: 09/07/2022) |
| 09/07/2022 | 19 | Modification of Docket re 17 MOTION for Extension of Time to File Response/Reply: Error: The document is captioned as a motion for an extension of time to file a reply to defendant's response to motion to quash 2 , but was linked to a Notice of Filing re: Consolidation. Correction: Docket entry text corrected and linked to appropriate motion in order to set appropriate new deadline. (alf) (Entered: 09/08/2022) |
| 09/08/2022 | 18 | DOCKET TEXT ORDER granting 17 Motion for Extension of Time to File Response/Reply re 2 MOTION to Quash IRS Summons On Summit and Memorandum in Support *(Petition To Quash)* Reply due by 9/30/2022. Signed by Judge Jill N. Parrish on 09/08/2022.(bl) (Entered: 09/08/2022) |
| 09/28/2022 | 20 | NOTICE of Petitioners (Bishop & Slim Ventures) Joint Response To IRS Motion To (1) Consolidate And Summarily Deny Petitions To Quash IRS Summons And (2) Enforce The Summons -- Filed In 2:22-cv-00340 by David Michael Bishop re 16 Notice of Filing (Witte, Daniel) (Entered: 09/28/2022) |
| 11/03/2022 | 21 | NOTICE of Appearance by Matthew Uhalde on behalf of Internal Revenue Service (Uhalde, Matthew) (Entered: 11/03/2022) |
| 11/03/2022 | 22 | NOTICE of Appearance by Matthew Uhalde on behalf of Timothy Bauer (Uhalde, Matthew) (Entered: 11/03/2022) |
| 12/14/2022 | 23 | ADDENDUM filed by Petitioner David Michael Bishop --*Notice Of Additional Cases And Objection In Support Of Petitioners' Joint Response To IRS Motion To (1) Consolidate And Summarily Deny Petitions To Quash IRS Summons And 2) Enforce The Summons And In Rebuttal To IRS Reply*. (Witte, Daniel) (Entered: 12/14/2022) |
| 12/21/2022 | 24 | NOTICE of -- Joint Opposition Of Bishop & Slim Ventures LLC -- by David Michael Bishop re 23 Addendum, -- *Joint Opposition Of Bishop & Slim Ventures LLC As To Motion To Strike*-- (Witte, Daniel) (Entered: 12/21/2022) |

| 12/22/2022 | 25 | ORDER TRANSFERRING/REASSIGNING CASE: Case reassigned to Judge David Barlow for all proceedings and case referral reassigned to Magistrate Judge Dustin B. Pead under 28 USC 636(b)(1)(A). Judge Jill N. Parrish, Magistrate Judge Daphne A. Oberg no longer assigned to case. Case number is now 2:22cv00352 DBB-DBP. Signed by Judge David Barlow on 12/22/22 (alt) (Entered: 12/22/2022) |
| --- | --- | --- |
| 01/09/2023 | 26 | MEMORANDUM DECISION AND ORDER denying 2 Motion to Quash. Refer to the attached order for details. Signed by Judge David Barlow on 1/9/2023. (mh) (Entered: 01/09/2023) |
| 01/09/2023 | 27 | JUDGMENT is entered in favor of Defendants and against Plaintiff. Case Closed. Magistrate Judge Dustin B. Pead no longer assigned to case. Signed by Judge David Barlow on 1/9/2023. (mh) (Entered: 01/09/2023) |
| 01/16/2023 | 28 | MOTION to Stay re 27 Judgment, 26 Order on Motion to Quash, Memorandum Decision and Memorandum in Support --*Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 60(b)(1), 60(b)(6), 62(a), DUCivR 7-1(g))* filed by Petitioner David Michael Bishop. (Attachments: # 1 Text of Proposed Order To Vacate Order And Judgment, And Temporarily Stay Execution On Judgment Pending Appeal)(Witte, Daniel) (Entered: 01/16/2023) |
| 01/19/2023 | 29 | DOCKET TEXT ORDER. On January 9, 2023, the court entered judgment in favor of Respondents and ordered Summit Crest and Zions Bank to respond to the IRS Summonses within 30 days. ECF No. 27. On January 16, 2023, Petitioners filed their 28 Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal. The court ORDERS Respondents to submit a response no later than **February 2, 2023**. The court hereby STAYS judgment and enforcement of the summonses until the court decides the instant motion. Signed by Judge David Barlow on 1/19/2023. (cfm) (Entered: 01/19/2023) |
| 01/23/2023 | 30 | NOTICE FROM THE COURT. In its January 19, 2023 order, ECF No. 29, the court ordered Respondents to file a response brief no later than February 2, 2023. The court hereby notifies Petitioners that they may file a reply brief within **7 days** of the response brief if so desired. (cfm) (Entered: 01/23/2023) |
| 02/02/2023 | 31 | MEMORANDUM in Opposition re 28 MOTION to Stay re 27 Judgment, 26 Order on Motion to Quash, Memorandum Decision and Memorandum in Support --*Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 6* filed by Respondent USA. (Uhalde, Matthew) (Entered: 02/02/2023)* |
| 02/08/2023 | 32 | REPLY to Response to Motion re 28 MOTION to Stay re 27 Judgment, 26 Order on Motion to Quash, Memorandum Decision and Memorandum in Support --*Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal (inter alia FRCP 46, 59(e), 60(a), 6 -- Petitioners' Joint Reply To Government's Opposition (2:22-cv-00340, Dk. 35) To Motion For Relief From Order And Judgment, And/Or To Stay Execution On Judgment Pending Appeal-- filed by Petitioner David Michael Bishop. (Witte, Daniel) (Entered: 02/08/2023)* |
| 02/22/2023 | 33 | MEMORANDUM DECISION AND ORDER denying 28 MOTION to Stay. The court DENIES Petitioners' Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal. Signed by Judge David Barlow on 2/22/2023. (mh) (Entered: 02/22/2023) |
| 02/22/2023 | 34 | NOTICE of Notice Of Appeal by David Michael Bishop re 33 Order on Motion to Stay,, Memorandum Decision, 27 Judgment, 25 Order Reassigning Case, 26 Order on Motion to Quash, Memorandum Decision, 29 Order,, *Notice of Appeal and Notice Of Pending* |

| | | |
|---|---|---|
| | | *Appellate Motion To Stay Execution On District COurt Judgment Pending Appellate Decision By The United States Tenth Circuit Court Of Appeals* (Witte, Daniel) (Entered: 02/22/2023) |
| 02/28/2023 | [35](#) | ORDER of USCA Tenth Circuit (mh) (Entered: 02/28/2023) |
| 02/28/2023 | [36](#) | NOTICE OF APPEAL as to [26](#) Memorandum Decision and Order, [27](#) Judgment, [33](#) Memorandum Decision and Order, filed by David Michael Bishop. Appeals to the USCA for the 10th Circuit. Fee Status: Not Paid. Filing fee $ 505, receipt number AUTDC-4597712 paid in related case 2:22-cv-340. Notice of Appeal filed in response to Order of USCA Tenth Circuit (2/28/2023). (mh) (Entered: 02/28/2023) |
| 02/28/2023 | [37](#) | Transmission of Preliminary Record to USCA re [36](#) Notice of Appeal, as to Tenth Circuit. Transmission issued in response to Order of USCA Tenth Circuit (2/28/2023). (Attachments: # [1](#) Appendix)(mh) (Entered: 02/28/2023) |
| 02/28/2023 | [38](#) | USCA Case Number Case Appealed to Tenth Circuit Case Number 23-4027 for [36](#) Notice of Appeal, filed by David Michael Bishop. A transcript order form or notice that no transcript is necessary per 10th Cir. R. 10.2. This form must be filed in both the district court and this court. See letter for additional information. (jrj) (Entered: 02/28/2023) |
| 03/02/2023 | [39](#) | TRANSCRIPT REQUEST FORM filed by David Michael Bishop re [36](#) Notice of Appeal, (Witte, Daniel) (Entered: 03/02/2023) |
| 03/03/2023 | 40 | Please be advised the Record is complete for purposes of appeal for USCA Tenth Circuit case number 23-4027 re [36](#) Notice of Appeal. (mh) (Entered: 03/03/2023) |
| 03/15/2023 | [41](#) | ~~MANDATE of~~ USCA ORDER Tenth Circuit as to [36](#) Notice of Appeal, filed by David Michael Bishop. See order for details. (Attachments: # [1](#) Mandate Cover Letter)(mh) Modified by correcting order event on 3/17/2023 (mh). (Entered: 03/15/2023) |
| 03/16/2023 | 42 | STRICKEN - WRONG EVENT ~~Full Filing fee: $ 505.00 received, receipt number 1610 (haa)~~ Modified on 3/17/2023 (jwt). (Entered: 03/16/2023) |
| 03/16/2023 | 43 | USCA Appeal Fees received $ 505 receipt number 1610 re [36](#) Notice of Appeal, filed by David Michael Bishop (haa) Modified on 3/17/2023 (haa). (Entered: 03/17/2023) |
| 03/17/2023 | 44 | Modification of Docket re [41](#) USCA ORDER: Error: Order docketed as a Mandate in this case. Mandate only applied to other cases. Correction: Mandate event changed to USCA Order. (mh) (Entered: 03/17/2023) |
| 03/29/2023 | [45](#) | ORDER of USCA Tenth Circuit as to [36](#) Notice of Appeal, filed by David Michael Bishop (mh) (Entered: 03/29/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/26/2023 15:18:59 | | |
| **PACER Login:** | williamsdr | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-00352-DBB |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

Daniel E. Witte (UT 8576)
Pearson Butler & Carson PLLC
1802 W. South Jordan Pkwy, Suite 200
South Jordan, Utah 84095
Telephone: (801) 495-4104
Fax: (801) 254-9427
Email: dan@pearsonbutler.com
*Attorney for Petitioner David Michael Bishop*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DAVID MICHAEL BISHOP, | |
| Petitioner, | **PETITION TO QUASH SUMMONS** |
| v. | Civil No. |
| UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity, | **Hearing Requested** |
| Respondents. | |

Petitioner David Michael Bishop ("Bishop" or "Petitioner"), by and through counsel, hereby brings this petition to quash summons against the Respondents United States, Internal Revenue Service, and Internal Revenue Agent Timothy Bauer (ID # 0324589) (collectively, the "IRS") as follows:

1

R000001

**PARTIES**

1.    Bishop is a United States citizen and taxpayer whose private financial information and records have been made the target of an overreaching IRS Summons (a true and correct copy of which is attached and incorporated as part of this Petition, hereinafter the "Summons") served upon third party Zions Bancorporation NA ("Zions" or "third party").

2.   The Internal Revenue Service is an agency of the United States, as directed by a Commissioner and as issuing the challenged IRS Summons at issue in this Petition through Internal Revenue Agent Timothy Bauer (ID # 0324589).

**JURISDICTION, VENUE, AND STATUTORY AUTHORITY TO QUASH**

3.    Subject matter jurisdiction, other jurisdiction, venue, and basis for the claim seeking to quash is all proper in this Court, pursuant to, inter alia, 26 U.S.C. § 7609 (b)(2)(A) ("In general. Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons. … In any such proceeding, the Secretary may seek to compel compliance with the summons."); 26 U.S.C. § 7609 (d)(2) ("Restriction on examination of records. No examination of any records required to be produced under a summons to which notice is required under subsection (a) may be made — … (2) where a proceeding under subsection (b)(2)(A) was begun within the 20-day period referred to in such subsection and the requirements of subsection (b)(2)(B) have been met, except in accordance with an order of the court having jurisdiction of such proceeding or with the consent

R000002

of the person beginning the proceeding to quash."); 26 U.S.C. § 7609 (h)(1) (emphasis added) ("Jurisdiction. — The United States district court for the district within which the person to be summoned *resides* or is *found* shall have jurisdiction to hear and determine any proceedings brought under subsection (b)(2), (f), or (g). An order denying the petition shall be deemed a final order which may be appealed.").

4.   The third party subjected to the summons now challenged to be quashed by this petitioner has a headquarters and/or a physical office physically located within district of this United States District Court and thus "is found" within said district and is subject to this Court's jurisdiction for resolution. *See, e.g., Cayman Nat. Bank, Ltd. v. United States,* 2007 WL 641176 *3 (M.D. Fla.)("this Court finds persuasive those cases that have addressed the issue and have required the actual physical presence of the summoned party within the district in order for the summoned party to be considered 'found' within the district"); *Williams v. United States,* 2005 WL 3105404 *2 (E.D. Tenn.) ("the statute contemplates subject matter jurisdiction based on something other than residence or use of the word 'found' would be redundant. A branch office indicates a significant presence within the district, and I conclude it is sufficient to support subject matter jurisdiction under 26 U.S.C. § 7609(h)(1)"); *Merritt v. Commissioner of Internal Revenue,* 1999 WL 1285459 * 1 (N.D. Cal.) ("A district court similarly has subject matter jurisdiction of a motion to enforce a summons directed to a third-party record keeper only if the third party 'resides or may be found within' the district. See 26 U.S.C. § 7402(b); 26 U.S.C. § 7604(b). … the Court

3

takes judicial notice of the fact that A.G. Edwards & Sons, Inc. maintains an office in the Northern District of California and therefore 'is found' within this district."); *United States v. Bossett,* 2001 WL 1692532 * 1 (M.D. Fla.) ("Accordingly, the United States District Court for the Middle District of Florida has jurisdiction over Respondent as his business address is [in the District]").

5.   To the extent, if any, that any third party targeted by a Summons sought to be quashed is ascertained not to "reside" or be "found" in the district of this Court, the Court should transfer the petition to another federal district where jurisdiction and venue is found to be proper, pursuant to 28 U.S.C. § 1406 (a) or other appropriate legal authority, and the Petitioner respectfully requests that in event of such finding the Court do so rather than dismiss. *See, e.g. MJW Salomon Juan Marcos Villarreal v. United States,* 2011 WL 4552545 * 1 n.1 (D. Colo.) (transferring rather than dismissing petition to quash due to third party's lack of presence in District of Colorado).

## ALLEGATIONS AND GROUNDS
## FOR REQUESTING THE SUMMONS BE QUASHED

6.   The Summons is challenged pursuant to the criteria set forth in governing statutes and caselaw, including, inter alia, *United States v. Powell,* 379 U.S. 48, 57-58 (1964) (summons must: (1) be issued for a legitimate purpose; (2) seek material relevant to that legitimate purpose; (3) seek material that is not already in the government's possession; and (4) satisfy all administrative steps required by the Code, collectively the four "*Powell* Requirements"), and also 26 U.S.C. § 7605(b) (no taxpayer "shall be subjected to unnecessary examination or investigations. …"), and other additional requirements and legal principles as set forth herein. As

4

explained throughout this filing and in the supporting declaration and exhibits, the challenged Summons fails to satisfy all required legal requirements, and is properly under challenge in this Court, and must therefore be quashed.

### *The Challenged Summons Fails The "Legitimate Purpose" Requirement*

7.    The IRS may not issue a summons "to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting the good faith of the particular investigation." *Powell,* 379 U.S. at 58; *United States v. Clarke,* 573 U.S. 248, 254-55 (2014). However, this principle is violated here, as reflected by considerations, evidence, circumstances, and circumstantial evidence as follows:

A.    The Petitioner either owes nothing, or only an insubstantial balance to the IRS, and the Summons and pattern of summons issued is severely disproportionate in legal burden and burden to business to any amount even asserted, if any, to be actually owed to the IRS, and there is no reasonable indication of such.   *See also* 26 U.S.C. § 7602 (e) ("The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income.").

B.    The Petitioner is unaware of anything he has done, or that any third party may have been alleged to have done in coordination with Petition, which is improper, and the Summons is part of a pattern of summons, which have the effect of impermissibly

frightening and chilling Petitioner's livelihood and network of business partners and customers. These business partners and customers are frightened away by the unjustified cloud created by the IRS and by the expense and hassle of having to comply with onerous Summons activity from the IRS in relation to individuals and entities who have not been accused of doing anything in actual violation of tax law, and Petitioner is not aware that the IRS has actually offered a specific or viable theory of anyone relevant to this petition actually doing anything in actual violation of tax law.

C.  There is overlap between the considerations pertaining to the "Legitimate Purpose" requirement and the "Relevance Requirement, and Petitioner asserts all considerations, facts, facts and evidence pertaining to one requirement in relation to the other as well.

### The Challenged Summons Fails The "Relevance" Requirement

8.      When assessing relevance, "[t]he question […] is whether from what the Government already knows there exists the requisite nexus between the taxpayer and the records of another's affairs to make the investigation reasonable [or] an indication of a realistic expectation rather than an idle hope that something may be discovered." *United States v. Harrington,* 388 F.2d 520, 524 (2nd Cir. 1968); *Venn v. United States,* 400 F.2d 207, 212 (5th Cir. 1968); *Garpeg Ltd. v. United States,* 583 F.Supp. 789, 794 (S.D.N.Y. 1984).  The IRS must make a showing of relevance tying purposes, theories and requested records in a valid, connect-the-dot fashion for the burden to shift to the Petitioner and for a Summons to be valid.  *See United States*

*v. Goldman,* 637 F.2d 664, 667-68 (9th Cir. 1980); *United States v. Monumental Life Ins. Co.,* 440 F.3d 729, 726-37 (6th Cir. 2006) (quash due to failure to substantiate relevance and undue burden of records requested).

9.      Additionally, the IRS is not entitled to "*carte blanche* discovery"; a summons will not be enforced if "overbroad and disproportionate" to the investigation, or a mere "fishing expedition" through a taxpayer's records that "might" uncover something about someone. *United States v. Coopers & Lybrand*, 550 F.2d 615, 617, 619, 621 (10th Cir. 1977). "A summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the end sought. … The Government cannot go on a "fishing expedition" through appellants' records, . . . and where it appears that the purpose of the summons is 'a rambling exploration' of a third party's files, it will not be enforced. … '[t]his judicial protection against the sweeping or irrelevant order is particularly appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party who may have had some dealing with the person under investigation.'" *United States v. Theodore,* 479 F.2d 749, 754 (4th Cir. 1973).

10.      "[T]he government should not, for the mere sake of its convenience, impose unnecessary burdens on a taxpayer in conducting an audit or investigation for tax liability, particularly where, as here, there is no indication of a purpose to escape any tax liability. The term 'relevant' connotes and encompasses more than 'convenience.' Consequently, . . . the government failed to sustain its burden of proof by alleging a general need for a 'road map.' If we were to

R000007

accede to the government's view, it is difficult to imagine corporate materials that might not contribute to a more comprehensive understanding of the workings of the corporation, and thus, according to the government, be deemed relevant to the tax investigation." *United States v. Matras,* 487 F.2d 1271, 1275 (8th 1973).

11.     In this instance, the IRS and the IRS Summons violate all the principles throughout the filing and the legal authorities cited, as reflected by considerations, evidence, circumstances, and circumstantial evidence as follows:

A.  The Petitioner either owes nothing, or at most only an insubstantial balance to the IRS, and the Summons and pattern of summons is severely disproportionate in legal burden and burden to business to any amount even asserted, if any, to be actually owed to the IRS.

B.  The Petitioner has done nothing improper, and to Petitioner's knowledge there is no concrete and specific allegation of wrongdoing regarding anyone else or anything that would be in actual violation of tax law, and the IRS Summons is simply a fishing expedition where the IRS is casting a dragnet to try to search for any hypothetical and unspecified wrong that might turn up regarding Petitioner or third parties who happen to have encountered Petitioner as part of a business network.

C.  The Summons is part of a pattern of Summons which have the burdensome and unfair effect of impermissibly frightening and chilling Petitioner's livelihood and network of

8

business partners and customers with no specified wrongdoing. These business partners

and customers are frightened away by the unjustified cloud created by the IRS and by

the expense and hassle of having to comply with onerous Summons activity from the

IRS in relation to individuals and entities who have not been accused of doing anything

wrong.

D.  The IRS has not made any showing or explanation that they have a legitimate purpose

associated with even evaluating or assessing any alleged act or omission by Petitioner

or any other relevant third party which is even allegedly illegal, in violation of any

provision of the Internal Revenue Code or its literature, unusual in the marketplace,

contrary to common legal opinion, or indicative of culpable mens rea in any way.  Nor

has there been any explanation or showing of any meaningful or legally cognizable

nexus or relevance as between what the IRS is seeking by way of its Summons and

anything it may (legitimately or illegitimately) purport to have a purpose to examine or

demonstrate.

E.  Notwithstanding all this, Petitioner has provided hundreds of pages of documentation

already to the IRS, and the IRS has not made any showing or explanation that it does

not already have the documentation it needs to make a determination or that it cannot

get any documentation it actually wants or needs from directly from Petitioner.

Instead, the IRS is now using a Summons effort to harass third parties by demanding

non-existent documents and demanding documents that have no discernable proper purpose or plausible relevance to anything.  The effect is one of using a meritless Summons campaign to stir up a cloud of fear, imposing needless burdens and costs upon third parties, and trying to harm the business reputation of the Petitioner without a legitimate purpose or need to do so.

**Petitioner Is Entitled To "Proper Administrative Steps"
With Regard To The Summons, Which Were Not Observed**

12. Petitioner is entitled to adequate third-party notice and have sufficient information and opportunity of the Summons, supporting justifications, etc., to properly respond to the Summons in Court, and not just cursory or vague provision of legal authority, *see e.g.* 26 U.S.C. Sec. 7602(c)(1); *Jones vs. Flowers,* 547 U.S. 220, 226 (2006). The notice must be "reasonably calculated, under all relevant circumstances, to apprise [the taxpayer] of the possibility that the IRS may contact third parties[.]" Petitioner must have sufficient information and notice to allow Petitioner "to respond with the relevant information themselves to maintain their privacy and to avoid the potential embarrassment of IRS contact with third parties, such as their employers*."* *J.B. vs. United States,* 916 F.3d 1161, 1172-73 (9th Cir. 2019). Respondent did not comply with these obligations, either in explaining legitimate, adequate, specific justification of purpose and nexus, or in relation to allowing Petitioner an opportunity to provide any legitimately sought information before using a Summons and summons campaign to unjustifiably harass and chill innocent third parties, or various other details.

10

13. Petitioner's understanding is that there is no referral for any criminal investigation, nor any basis for even attempting to seek or obtain any such referral, and that all matters are in in the civil realm and not even remotely close to criminal treatment. If the facts were otherwise, the IRS would of course have a legal and ethical duty to disclose the same to Petitioner and the Court, and also to refrain from any use of civil summons, and the IRS should make such assurance as part of any effort to try to enforce the Summons.

## CLAIM ONE – QUASH SUMMONS
### by Petitioner Against IRS

14. Petitioner incorporates all previous and subsequent paragraphs of this filing herein, as if stated again in full in this Claim One.

15. For the reasons set forth throughout this filing, the challenged Summons should be quashed pursuant to governing statutes and case law, and the facts, circumstances, evidence, and content associated with the challenged Summons.

## PRAYER FOR REMEDIES

Petitioner incorporates all previous paragraphs of this filing herein, as if stated again in full, and requests as follows:

A.      That the challenged Summons be quashed;

B.      That if the challenged Summons cannot be immediately quashed, an evidentiary hearing be granted so that Petitioner can further justify the same;

R000011

C.      To the extent, if any, that any third party targeted by a Summons is sought
to be quashed, the third party be found to reside or be found in the District
of Utah for purposes of this Petition;

D.      In the alternative, that if the third party is ascertained not to "reside" or be
"found" in the district of this Court, the Court should transfer the petition to
another federal district where jurisdiction and venue is found to be proper,
pursuant to 28 U.S.C. § 1406 (a) or other appropriate legal authority, and
that in event of such finding the Court do so rather than dismiss;

E.      In the alternative, to the extent, if any, that any aspect of the Summons be
deemed permissible, that the remained be quashed and enforcement be
limited, and discovery allowed, only to the narrowly tailored extent of what
meets the permissible criteria and does not constitute a "fishing expedition"
or an "unreasonable and disproportionate", unduly "broad" and
burdensome, "vague" and/or intrusive inquiry., and the IRS be disallowed
from exceeding any protective limits on legitimate purpose that the Court
may identify.   *See United States v. Richards,* 479 F. Supp. 828, 832-33
(E.D. Va. 1979); *United States v. Massengale, et al.,* 1980 WL 1519 * 1-3;

F.      That an *in camera* review of the IRS's internal agency file be conducted by
the Court to ensure no improper purpose is associated with the records, such

12

as an attempt to misuse the Summons for criminal investigation purposes or to abuse the Summons for "fishing" purposes, and that any aspects of the Summons permitted are tailored to the scope of legitimate purposes as gauged by the contents of the IRS file *see United States v. Brooks*, 1976 WL 996, at 2-3 (D.S.C.);

G.     In the alternative, to the extent, if any, any records are ordered produced that the Court conduct an *in camera* review of the requested records prior to the IRS receiving them to ensure conformity with the criteria. *See David H. Tedder & Assoc., Inc. v. United States,* 77 F.3d 1166, 1170 (9th Cir. 1996); *Software Capital Holdings, Inc.,* 2008 WL 11470729 *12. (N.D. Ga.).;

H.     An order granting other and further relief as the Court deems appropriate.

DATED THIS 19 day of May, 2022.

/s/ Daniel E. Witte
  Daniel E. Witte
  *Attorney for Petitioner*

13

**VERIFICATION**

I, David Michael Bishop, do hereby declare, state, and verify under penalty of perjury that I am over eighteen years of age; that I have personal knowledge of the facts of this pleading; that I have carefully read this verified complaint; and that the facts contained therein are verified and declared true and correct to the best of my knowledge.

Dated this 19 day of May, 2022.

*/s/ David Michael Bishop*
*(Electronically Signed By Permission)*
David Michael Bishop

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Court, and copies of the Petition and Summons delivered or sent to, inter alia, the following, pursuant to, inter alia, F.R.C.P. 4(i) (1)(A-C), 31 C.F.R. § 10.63 (c), and 28 C.F.R. § 0.77(j):

Delivered by process server a copy of the summons and petition to the United States attorney for the federal district (District of Utah) where the action is brought:

Valerie Maxwell
U.S. Attorneys Office for the District of Utah
111 S. Main, Ste 1800
Salt Lake City, Utah
84111
(801) 524-5682

Sent a copy of the summons and petition by certified mail to:

Attorney General of the United States at Washington, D.C.:

Lee J. Lofthus
Assistant Attorney General for Administration
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
(202) 514-3101

and

Sent a copy of the summons and petition by certified mail to:

Internal Revenue Agent Timothy Bauer (ID # 0324589)
Internal Revenue Service
110 North City Parkway
Las Vegas, Nevada
89106
(702) 868-5312

         */s/ Emily Nackos*
         Emily Nackos

R000015

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

David Bishop

**DEFENDANTS**

United States

**(b)** County of Residence of First Listed Plaintiff    Salt Lake
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Washington, D.C.
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Daniel Witte, Pearson Butler, 1802 W. South Jordan Pkwy, Ste 200, South Jordan, UT 84095 8014954104

Attorneys *(If Known)*

Valerie Maxwell, US Attorney Office, Dist Utah, 111 S. Main, Ste 1800, SLC, UT 84111 8015245682

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [ ] 3   Federal Question *(U.S. Government Not a Party)*
- [x] 2   U.S. Government Defendant
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other<br><br>**LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016<br><br>**SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[x] 871 IRS—Third Party 26 USC 7609 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 U.S.C. § 7609 (b)(2)(A) ; 26 U.S.C. § 7609 (d)(2)

Brief description of cause:
Petition to Quash IRS Summons On Third Party Zions Bank

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
5-19-2022

SIGNATURE OF ATTORNEY OF RECORD
*Daniel F. Witte*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

R000016

**VERIFICATION**

I, David Michael Bishop, do hereby declare, state, and verify under penalty of perjury that I am over eighteen years of age; that I have personal knowledge of the facts of the pleading filed simultaneously with this verification and my additional declaration; that I have carefully read this verified complaint; and that the facts contained therein are verified and declared true and correct to the best of my knowledge.

Dated this 19th day of May, 2022.

_____
David Michael Bishop

R000017

Daniel E. Witte (UT 8576)
Pearson Butler & Carson PLLC
1802 W. South Jordan Pkwy, Suite 200
South Jordan, Utah 84095
Telephone: (801) 495-4104
Fax: (801) 254-9427
Email: dan@pearsonbutler.com
*Attorney for Petitioner*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DAVID MICHAEL BISHOP,<br><br>                  Petitioner,<br><br>v.<br><br>UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAURER, Internal Revenue Agent (ID #0324589), in his Official Capacity,<br><br>                  Respondents. | **DECLARATION OF DAVID MICHAEL BISHOP** |

I, David Michael Bishop ("I", "Bishop", or "my"), hereby declares as follows:

1.     Bishop is over eighteen years of age and has personal knowledge of the facts stated herein and is in all respects competent to make this declaration.

2.     In making this declaration, Bishop does not mean to provide a comprehensive account of all facts or knowledge he may have about any point, issue, or event described, but instead intends only to provide very limited information concerning very specific topics which, according to his understanding, the Court is actually interested to know given the current procedural posture and applicable law at this juncture of the proceeding and prior to the Internal Revenue Service, as an agency of the United States, and as directed by a Commissioner, and acting

R000018

through Internal Revenue Agent Timothy Bauer (ID # 0324589) (collectively, all are the "IRS")

setting forth any prima facia justification the IRS might purport to have in support of the challenged

Summons.  Bishop and the named Petitioner reserve the right to introduce further declarations and

exhibits, including among other things in rebuttal, some actual and specific information is available

from the IRS about whether the IRS has purported to set forth a prima facia justification for the

challenged Subpoena, and if so, in what way, and on what rationale or theory, and through what

means, and by what purported facts or evidence.

3.      Bishop is a United States citizen and taxpayer whose private financial information

and records have been made the target of an overreaching IRS Summons (a true and correct copy

of which is attached, incorporated, and filed along with this Declaration, hereinafter the

"Summons") served upon third party stated therein, as well as a collection of various other

inappropriate and unfounded summons.

4.      Bishop is a non-member, non-owner Manager of Slim Ventures.  Bishop resides in

Utah, and Slim Ventures is an entity headquartered and operating in Utah with both a physical

presence and live human beings located in Utah.

5.      The Internal Revenue Service, as an agency of the United States, and as directed by

a Commissioner, has issued the challenged IRS Summons at issue in the accompanying Petition

through Internal Revenue Agent Timothy Bauer (ID # 0324589).

6.      This declaration has been filed less than twenty days from the date of the challenged

IRS Summons and less than 20 days from when Bishop and his legal representatives first received

it.

7.      As reflected by the accompanying exhibits which are true and correct copies of the

internet and other documents they purport to be, the third party targeted by the challenged IRS

Summons is found in, and has at least one physical office and human representative in, the State of Utah.  Indeed, this is true not only of the third party targeted by the challenged IRS Summons, but of the entire collection of business entities targeted with the IRS harassment campaign of impermissible summons:  Zions Bancorporation NA, which has numerous banks, offices, and copies of records found throughout Utah; Wells Fargo Bank N.A., which has numerous banks, offices, and copies of records found throughout Utah; Key Bank, which has numerous banks, offices, and copies of records found throughout Utah.  As for "Summit Crest Finacial, LLC" [sic], I am aware of no entity with that name in either Florida or Utah, although I suspect perhaps there is an effort being made to reference an entity that is really found in Utah or at least may potentially be found in Utah instead of or in addition to Florida; to the extent that the suspected entity or any other entity is referenced, however, my declaration observations would all apply no matter what even if or when any such entity should eventually be properly noticed as required for the IRS to proceed further with a valid summons.

8.      Bishop's understanding is that the challenged Summons must (1) be issued for a legitimate purpose; (2) seek material relevant to that legitimate purpose; (3) seek material that is not already in the government's possession; and (4) satisfy all administrative steps required by the Code, and that no taxpayer shall be subjected to unnecessary examination or investigations. Bishop currently has no information which causes Bishop to believe that the IRS is complying with these requirements, and indeed Bishop is aware of various indications, facts, information, and evidence to the contrary.

9.      Bishop's understanding is that the IRS may not issue a summons to harass the Petitioner or to put pressure on Petitioner to settle a collateral dispute, or for any other improper or inadequate purposes.  Bishop currently has no information which causes Bishop to believe that

R000020

the IRS is complying with these requirements, and indeed Bishop is aware of various indications, facts, information, and evidence to the contrary.

10.     The Petitioner either owes nothing, or only an insubstantial balance to the IRS, and the Summons and pattern of summons issued is severely disproportionate in legal burden and burden to business to any amount even asserted, if any, to be actually owed to the IRS, and there is no reasonable indication of such.

11.     Notwithstanding the absence of any reasonable indication that there is a likelihood of unreported income by the Petitioner or any other relevant person or entity, or any indication of a purpose to improperly escape any legitimate tax liability, the IRS is nonetheless using financial status or economic reality examination techniques to determine the existence of unreported income on the part of someone, somewhere, anywhere.

12.     Bishop and Petitioner are unaware of anything done by the aforesaid, or that any third party may have been alleged to have done anything in coordination with the aforesaid, which is improper, and the Summons is part of a pattern of summons, which have the effect of impermissibly frightening and chilling Petitioner's livelihood and network of business partners and customers. These business partners and customers are frightened away by the unjustified cloud created by the IRS and by the expense and hassle of having to comply with onerous Summons activity from the IRS in relation to individuals and entities who have not been accused of doing anything in actual violation of tax law, and Bishop is not aware that the IRS has actually offered a specific or viable theory of anyone relevant to this petition actually doing anything in actual violation of tax law or even anything that is uncommon in the mainstream business and taxpayer community.

13.     The IRS has already been made aware by Bishop that there is no requisite nexus between the Petitioner and the Summoned records and documents of the third party as would be needed to make the IRS investigation reasonable, nor is there an indication of a realistic expectation by the IRS rather than an idle hope that something may be discovered.  When confronted with this by Petitioner's legal counsel, and when queried, and even after already receiving hundreds of documents from Petitioner, the IRS has shown no sign or indication of being capable of making a showing or explanation of relevance tying purposes, theories and requested records in a valid, connect-the-dot fashion.  The IRS just keeps making unending, ever-expanding, carte blanche, over-broad, irrelevant, sweeping demands, including now on third parties, without any apparent ability or awareness of responsibility to substantiate relevance, proportionality, and justifiable burden as to the records and documents requested.  The IRS is engaged in a blatant fishing expedition and rambling exploration for records.  The IRS is simply casting a dragnet to try to search for any hypothetical and unspecified wrong that might turn up regarding Petitioner or third parties who happen to have encountered Petitioner as part of a business network.

14.     The IRS has already been made aware by Bishop that the IRS has not made any showing or explanation that they have a legitimate purpose associated with even evaluating or assessing any alleged act or omission by Petitioner or any other relevant third party which is even allegedly illegal, in violation of any provision of the Internal Revenue Code or its literature, unusual in the marketplace, contrary to common legal opinion, or indicative of culpable mens rea in any way.  Nor has there been any explanation or showing of any meaningful or legally cognizable nexus or relevance as between what the IRS is seeking by way of its Summons and anything it may (legitimately or illegitimately) purport to have a purpose to examine or demonstrate.

15.     Notwithstanding all this, Petitioner has provided hundreds of pages of documentation already to the IRS, and the IRS has not made any showing or explanation that it does not already have the documentation it needs to make a determination or that it cannot get any documentation it actually wants or needs from directly from Petitioner.   Instead, the IRS is now using a Summons effort to harass third parties by demanding non-existent documents and demanding documents that have no discernable proper purpose or plausible relevance to anything. The effect is one of using a meritless summons campaign to stir up a cloud of fear, imposing needless burdens and costs upon third parties, and trying to harm the business reputation of the Petitioner without a legitimate purpose or need to do so.

16.     Petitioner has not received sufficient information and opportunity in relation to the Summons to even know the supporting justifications, etc., as needed to properly respond to the Summons in Court, and has received nothing more than cursory and vague exposition of legal authority from the IRS.   The Petitioner has not received information and notice sufficient to allow Petitioner to respond with the relevant information themselves to maintain their privacy and to avoid the potential embarrassment of IRS contact with third parties.   The IRS refuses to   comply with these obligations, either in relation to a explaining legitimate, adequate, specific justification of purpose and nexus, or in relation to allowing Petitioner an opportunity to provide any legitimately sought information before using a Summons and summons campaign to unjustifiably harass and chill innocent third parties, or various other details.

17.     Petitioner is suffering considerable and unfair negative economic, business, and legal consequences as a result of the harassment and summons campaign directed by the IRS at Petitioner and Petitioner's network of business entities and contacts.

**\* \* \* \* \* \* Intentionally Left Blank \* \* \* \* \* \***

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in ___Salt Lake___ County, State of ___Utah___, on the 19 day of May, 2022.

_____
David Michael Bishop

R000024

# Key Bank



R000026





R000028

# Wells Fargo







# Zions Bank







R000036

# Summons

In the matter of  David Michael Bishop. 32 West 200 South #628, Salt Lake City, Utah 84101

Internal Revenue Service *(division)*  Small Business Self Employed

Industry/Area *(name or number)*  South West Area Examination

Periods  January 01, 2018 through date of compliance

## The Commissioner of Internal Revenue

To  Zions Bancorporation NA

At  15 West South Temple, Suite 600, Salt Lake City, Utah 84101

You are hereby summoned and required to appear before  Timothy Bauer Identification Number 0324589

an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See Summons Attachment

**Do not write in this space**

**Business address and telephone number of IRS officer before whom you are to appear**

110 North City Parkway, Las Vegas, Nevada 89106, 702-868-5312

**Place and time for appearance at** 110 North City Parkway, Las Vegas, Nevada 89106 - RECORDS CAN BE MAILED

on the 6th ____ day of June _____ , 2022 ____ at 10:00 _____ o'clock a ____ .m.
  *(year)*

**Issued under authority of the Internal Revenue Code this** 4th ____ day of May _____ , 2022 ____
  *(year)*

| Signature of issuing officer | Digitally signed by Timothy Bauer Date: 2022.05.03 10:44:31 -07'00' | Title |
| --- | --- | --- |
| | | Revenue Agent |
| Signature of approving officer *(if applicable)* | Digitally signed by Tiffany Sim Date: 2022.05.02 10:50:50 -07'00' | Title |
| | | Group Manager |

Form **2039** (Rev. 3-2020)  Catalog Number 21405J  publish.no.irs.gov  Department of the Treasury - **Internal Revenue Service**
**Part C** — to be given to noticee

R000037

## Provisions of the Internal Revenue Code

### Sec. 7602. Examination of books and witnesses

(a) Authority to Summon, etc. - For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized -

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry.

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

(b) Purpose may include inquiry into offense. - The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

(c) Notice of contact of third parties.

(1) General notice - An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer unless such contact occurs during a period (not greater than 1 year) which is specified in a notice which—

(A) informs the taxpayer that contacts with persons other than the taxpayer are intended to be made during such period, and

(B) except as otherwise provided by the Secretary, is provided to the taxpayer not later than 45 days before the beginning of such period.

Nothing in the preceding sentence shall prevent the issuance of notices to the same taxpayer with respect to the same tax liability with periods specified therein that, in the aggregate, exceed 1 year. A notice shall not be issued under this paragraph unless there is an intent at the time such notice is issued to contact persons other than the taxpayer during the period specified in such notice. The preceding sentence shall not prevent the issuance of a notice if the requirement of such sentence is met on the basis of the assumption that the information sought to be obtained by such contact will not be obtained by other means before such contact.

(2) Notice of specific contacts. - The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collection of the tax liability of such taxpayer. Such record shall also be provided upon request of the taxpayer.

(3) Exceptions. - This subsection shall not apply-

(A) to any contact which the taxpayer has authorized,

(B) if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person, or

(C) with respect to any pending criminal investigation.

(d) No administrative summons when there is Justice Department referral.-

(1) Limitation of authority. - No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

(2) Justice Department referral in effect. - For purposes of this subsection

(A) In general. -A Justice Department referral is in effect with respect to any person if-

(i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws or

(ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

(B) Termination. - A Justice Department referral shall cease to be in effect with respect to a person when-

(i) the Attorney General notifies the Secretary, in writing, that

(I) he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws,

(II) he will not authorize a grand jury investigation of such person with respect to such an offense, or

(III) he will discontinue such a grand jury investigation.

(ii) a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person, or

(iii) the Attorney General notifies the Secretary, in writing, that he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws relating to the request described in sub paragraph (A)(ii).

(3) Taxable years, etc., treated separately. - For purposes of this subsection, each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this title shall be treated separately.

(e) Limitation on examination on unreported income. - The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income.

(f) Limitation on access of persons other than Internal Revenue Service officers and employees. The Secretary shall not, under the authority of section 6103(n), provide any books, papers, records, or other data obtained pursuant to this section to any person authorized under section 6103(n), except when such person requires such information for the sole purpose of providing expert evaluation and assistance to the Internal Revenue Service. No person other than an officer or employee of the Internal Revenue Service or the Office of Chief Counsel may, on behalf of the Secretary, question a witness under oath whose testimony was obtained pursuant to this section.

Authority to examine books and witness is also provided under sec. 6420 (e)(2) - Gasoline used on farms: sec. 6421(g)(2) - Gasoline used for certain nonhighway purposes by local transit systems, or sold for certain exempt purposes; and sec. 6427(j)(2) - Fuels not used for taxable purposes.

### Sec. 7603. Service of summons

(a) In general - A summons issued under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty

(b) Service by mail to third-party recordkeepers. -

(1) In general. - A summons referred to in subsection (a) for the production of books, papers, records, or other data by a third-party recordkeeper may also be served by certified or registered mail to the last known address of such recordkeeper.

(2) Third party record keeper. - For purposes of paragraph (1), the term *third-party recordkeeper* means -

(A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501 (c)(14)(A));

(B) any consumer reporting agency (as defined under section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681 a(f));

(C) Any person extending credit through the use of credit cards or similar devices;

(D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4));

(E) any attorney;

(F) any accountant;

(G) any barter exchange (as defined in section 6045(c)(3));

(H) any regulated investment company (as defined in section 851) and any agent of such regulated investment company when acting as an agent thereof;

(I) any enrolled agent; and

(J) any owner or developer of a computer software source code (as defined in section 7612(d)(2)). Subparagraph (J) shall apply only with respect to a summons requiring the production of the source code referred to in subparagraph (J) or the program and data described in section 7612(b)(1)(A)(ii) to which source code relates.

### Sec. 7604. Enforcement of summons

(a) Jurisdiction of District Court. - If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

(b) Enforcement. - Whenever any person summoned under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States Commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or Commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States Commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

### Sec. 7605. Time and place of examination

(a) Time and place. - The time and place of examination pursuant to the provisions of section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 shall be fixed at such time and place as may be fixed by the Secretary and as are reasonable under the circumstances. In the case of a summons under authority of paragraph (2) of section 7602, or under the corresponding authority of section 6420(e)(2), 6421 (g)(2) or 6427(j)(2), the date fixed for appearance before the Secretary shall not be less than 10 days from the date of the summons.

### Sec. 7610. Fees and costs for witnesses

(a) In general. - The Secretary shall by regulations establish the rates and conditions under which payment may be made of -

(1) fees and mileage to persons who are summoned to appear before the Secretary, and

(2) reimbursement for such costs that are reasonably necessary which have been directly incurred in searching for, reproducing, or transporting books, papers, records, or other data required to be produced by summons.

(b) Exceptions. - No payment may be made under paragraph (2) of subsection (a) if

(1) the person with respect to whose liability the summons is issued has a proprietary interest in the books, papers, records or other data required to be produced, or

(2) the person summoned is the person with respect to whose liability the summons is issued or an officer, employee, agent, accountant, or attorney of such person who, at the time the summons is served, is acting as such.

(c) Summons to which section applies. -This section applies with respect to any summons authorized under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602.

### Sec. 7210. Failure to obey summons

Any person who, being duly summoned to appear to testify, or to appear and produce books, accounts, records, memoranda or other papers, as required under sections 6420(e)(2), 6421 (g)(2), 6427(j)(2), 7602, 7603, and 7604(b), neglects to appear or to produce such books, accounts, records memoranda, or other papers, shall, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with costs of prosecution.

| To | Date |
|----|------|
| Address | |

Enclosed is a copy of a summons served by the IRS to examine records made or kept by, or to request testimony from, the person summoned. If you object to the summons, you are permitted to file a lawsuit in the United States district court in the form of a petition to quash the summons in order to contest the merits of the summons.

If you are the taxpayer, see important information below on the suspensions of your periods of limitation under I.R.C. section 7609(e)(1) and (e)(2).

## General Directions

1. You must file your petition to quash in the United States district court for the district where the person summoned resides or is found.

2. You must file your petition within 20 days from the date of this notice and pay a filing fee as may be required by the clerk of the court.

3. You must comply with the Federal Rules of Civil Procedure and local rules of the United States district court.

## Instructions for Preparing Petition to Quash

1. Entitle your petition "Petition to Quash Summons."

2. Name the person or entity to whom this notice is directed as the petitioner.

3. Name the United States as the respondent.

4. State the basis for the court's jurisdiction, as required by Federal Rule of Civil Procedure. See Internal Revenue Code Section 7609(h).

5. State the name and address of the person or entity to whom this notice is directed and state that the records or testimony sought by the summons relate to that person or entity.

6. Identify and attach a copy of the summons.

7. State in detail every legal argument supporting the relief requested in your petition. See Federal Rules of Civil Procedure. Note that in some courts you may be required to support your request for relief by a sworn declaration or affidavit supporting any issue you wish to contest.

8. Your petition must be signed as required by Federal Rule of Civil Procedure 11.

9. Your petition must be served upon the appropriate parties, including the United States, as required by Federal Rule of Civil Procedure 4.

10. At the same time you file your petition with the court, you must mail a copy of your petition by certified or registered mail to the person summoned and to the IRS. Mail the copy for the IRS to the officer whose name and address are shown on the face of this summons. See 7609(b)(2)(B).

The court will decide whether the person summoned should be required to comply with the summons request.

## Suspension of Periods of Limitation

If you are the taxpayer being examined/investigated by this summons and you file a petition to quash the summons (or if you intervene in any suit concerning the enforcement of this summons), your periods of limitation for assessment of tax liabilities and for criminal prosecutions will be suspended pursuant to I.R.C. section 7609(e)(1) for the tax periods to which the summons relates. Such suspension will be effective while any proceeding (or appeal) with respect to the summons is pending. Your periods of limitation will also be suspended under section 7609(e)(2) if the summoned person fails to fully respond to this summons for 6 months. The suspension under section 7609(e)(2) will begin 6 months after the summons is served and will continue until the summoned person finally resolves the obligation to produce the summoned information. You can contact the IRS officer identified on the summons for information concerning the suspension under section 7609(e)(2). If you contact the IRS officer for this purpose, please provide the following information: (1) your name, address, home and work telephone numbers and any convenient time you can be contacted and (2) a copy of the summons or a description of it that includes the date it was issued, the name of the IRS employee who issued it, and the name of the summoned person.

The relevant provisions of the Internal Revenue Code are enclosed with this notice. If you have any questions, please contact the Internal Revenue Service officer before whom the person summoned is to appear. The officer's name and telephone number are shown on the summons.

Form **2039** (Rev. 3-2020)     Catalog Number 21405J     publish.no.irs.gov     Department of the Treasury - **Internal Revenue Service**
**Part D** — to be given to noticee
R000039

## Sec. 7609. Special procedures for third-party summons

(a) Notice-

(1) In general. - If any summons to which this section applies requires the giving of testimony or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons.

(2) Sufficiency of notice. - Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice or, in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence.

(3) Nature of summons. - Any summons to which this subsection applies (and any summons in aid of collection described in subsection (c)(2)(D)) shall identify the taxpayer to whom the summons relates or the other person to whom the records pertain and shall provide such other information as will enable the person summoned to locate the records required under the summons.

(b) Right to intervene; right to proceeding to quash. -

(1) Intervention. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.

(2) Proceeding to quash. -

(A) In general. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.

(B) Requirement of notice to person summoned and to Secretary. - If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).

(C) Intervention, etc. - Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A). Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding).

(c) Summons to which section applies. -

(1) In general. - Except as provided in paragraph (2), this section shall apply to any summons issued under paragraph (2) of section 7602(a) or under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7612.

(2) Exceptions. - This section shall not apply to any summons

(A) served on the person with respect to whose liability the summons is issued, or any officer or employee of such person;

(B) issued to determine whether or not records of the business transaction or affairs of an identified person have been made or kept;

(C) issued solely to determine the identity of any person having a numbered account (or similar arrangement) with a bank or other institution described in section 7603(b)(2)(A);

(D) issued in aid of the collection of-

(i) an assessment made or a judgment rendered against the person with respect to whose liability the summons is issued, or

(ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause (i); or

(E) (i) issued by a criminal investigator of the Internal Revenue Service in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws, and

(ii) served on a person who is not a third-party recordkeeper (as defined in section 7603(b)).

(3) John Doe and Certain Other Summonses. - Subsection (a) shall not apply to any summons described in subsection (f) or (g).

(4) Records. - For purposes of this section, the term records includes books, papers, and other data.

(d) Restriction on examination of records. - No examination of any records required to be produced under a summons as to which notice is required under subsection (a) may be made -

(1) before the close of the 23rd day after the day notice with respect to the summons is given in the manner provided in subsection (a)(2), or

(2) where a proceeding under subsection (b)(2)(A) was begun within the 20-day period referred to in such subsection and the requirements of subsection (b)(2)(B) have been met, except in accordance with an order of the court having jurisdiction of such proceeding or with the consent of the person beginning the proceeding to quash.

(e) Suspension of Statute of Limitations. -

(1) Subsection (b) action. - If any person takes any action as provided in subsection (b), and such person is the person with respect to whose liability the summons is issued (or is the agent, nominee, or other person acting under the direction or control of such person), then the running of any period of limitations under section 6501 (relating to the assessment and collection of tax) or under section 6531 (relating to criminal prosecutions) with respect to such person shall be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending.

(2) Suspension after 6 months of service of summons. -In the absence of the resolution of the summoned party's response to the summons, the running of any period of limitations under section 6501 or under section 6531 with respect to any person with respect to whose liability the summons is issued (other than a person taking action as provided in subsection (b)) shall be suspended for the period-

(A) beginning on the date which is 6 months after the service of such summons, and

(B) ending with the final resolution of such response.

(f) Additional requirement in the case of a John Doe summons. Any summons described in subsection (c)(1) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that—

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

The Secretary shall not issue any summons described in the preceding sentence unless the information sought to be obtained is narrowly tailored to information that pertains to the failure (or potential failure) of the person or group or class of persons referred to in paragraph (2) to comply with one or more provisions of the internal revenue law which have been identified for purposes of such paragraph.

(g) Special exception for certain summonses. -

A summons is described in this subsection if, upon petition by the Secretary, the court determines, on the basis of the facts and circumstances alleged, that there is reasonable cause to believe the giving of notice may lead to attempts to conceal, destroy, or alter records relevant to the examination, to prevent the communication of information from other persons through intimidation, bribery, or collusion, or to flee to avoid prosecution, testifying, or production of records.

(h) Jurisdiction of district court; etc. -

(1) Jurisdiction. - The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceedings brought under subsection (b)(2), (f), or (g). An order denying the petition shall be deemed a final order which may be appealed.

(2) Special rule for proceedings under subsections (f) and (g).- The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely on the petition and supporting affidavits.

(i) Duty of summoned party. -

(1) Recordkeeper must assemble records and be prepared to produce records. On receipt of a summons to which this section applies for the production of records, the summoned party shall proceed to assemble the records requested, or such portion thereof as the Secretary may prescribe, and shall be prepared to produce the records pursuant to the summons on the day on which the records are to be examined.

(2) Secretary may give summoned party certificate. - The Secretary may issue a certificate to the summoned party that the period prescribed for beginning a proceeding to quash a summons has expired and that no such proceeding began within such period, or that the taxpayer consents to the examination.

(3) Protection for summoned party who discloses. - Any summoned party, or agent or employee thereof, making a disclosure of records or testimony pursuant to this section in good faith reliance on the certificate of the Secretary or an order of a court requiring production of records or the giving of such testimony shall not be liable to any customer or other person for such disclosure.

(4) Notice of suspension of statute of limitations in the case of a John Doe summons. - In the case of a summons described in subsection (f) with respect to which any period of limitations has been suspended under subsection (e)(2), the summoned party shall provide notice of such suspension to any person described in subsection (f).

(j) Use of summons not required. -

Nothing in this section shall be construed to limit the Secretary's ability to obtain information, other than by summons, through formal or informal procedures authorized by sections 7601 and 7602.

R000040

## Suspension of Corporate Taxpayer's Period of Limitations on Assessment If a Court Proceeding is Brought Regarding a Designated or Related Summons

The IRS may issue designated or related summonses to examine the tax liability of certain corporations. A designated summons will be identified by a statement at the top of the summons that reads: "This is a designated summons pursuant to IRC 6503(j)." A related summons will be identified by a similar statement at the top of the summons indicating that it is a related summons issued pursuant to I.R.C. sec. 6503(j).

If you are a corporate taxpayer and the IRS has issued a designated or related summons to investigate your tax liability, your period of limitations on assessment will be suspended if a court proceeding concerning the summons is begun. This suspension will be effective on the day the court proceeding is brought. If the court orders any compliance with the summons, the suspension will continue until 120 days after the summoned person finally resolves his response to the summons. If the court does not order any compliance with the summons, then the period of limitations will resume running on the day after final resolution (but the period of limitations will not expire before the 60th day after final resolution).

To obtain information about the dates of the suspension under section 6503(j), you can contact the IRS officer before whom the person summoned is to appear. The officer's name and telephone number are identified on the summons.

## Sec. 6503(j). Extension in case of certain summonses

(1) In general.

If any designated summons is issued by the Secretary to a corporation (or to any other person to whom the corporation has transferred records) with respect to any return of tax by such corporation for a taxable year (or other period) for which such corporation is being examined under the coordinated industry case program (or any successor program) of the Internal Revenue Service, the running of any period of limitations provided in section 6501 on the assessment of such tax shall be suspended—

(A) during any judicial enforcement period—

(i) with respect to such summons, or

(ii) with respect to any other summons which is issued during the 30-day period which begins on the date on which such designated summons is issued and which relates to the same return as such designated summons, and

(B) if the court in any proceeding referred to in paragraph (3) requires any compliance with a summons referred to in subparagraph (A), during the 120-day period beginning with the 1st day after the close of the suspension under subparagraph (A).

If subparagraph (B) does not apply, such period shall in no event expire before the 60th day after the close of the suspension under subparagraph (A).

(2) Designated summons For purposes of this subsection—

(A) In general. The term "designated summons" means any summons issued for purposes of determining the amount of any tax imposed by this title if—

(i) the issuance of such summons is preceded by a review and written approval of such issuance by the Commissioner of the relevant operating division of the Internal Revenue Service and the Chief Counsel which—

(I) states facts clearly establishing that the Secretary has made reasonable requests for the information that is the subject of the summons, and

(II) is attached to such summons,

(ii) such summons is issued at least 60 days before the day on which the period prescribed in section 6501 for the assessment of such tax expires (determined with regard to extensions), and

(iii) such summons clearly states that it is a designated summons for purposes of this subsection.

(B) Limitation.

A summons which relates to any return shall not be treated as a designated summons if a prior summons which relates to such return was treated as a designated summons for purposes of this subsection.

(3) Judicial enforcement period. For purposes of this subsection, the term "judicial enforcement period" means, with respect to any summons, the period—

(A) which begins on the day on which a court proceeding with respect to such summons is brought, and

(B) which ends on the day on which there is a final resolution as to the summoned person's response to such summons.

(4) Establishment that reasonable requests for information were made. In any court proceeding described in paragraph (3), the Secretary shall establish that reasonable requests were made for the information that is the subject of the summons.

## ATTACHMENT TO SUMMONS / SUBPOENA

Issued to: Zions Bancorporation NA
In the matter of: David Michael Bishop
Address: 15 West South Temple, Sutie 600, Salt Lake City, Utah 84101
Periods: January 01, 2018 through date of compliance

For the periods specified above, please furnish all books, papers, records, and other data concerning all accounts in which the above-named individual(s) is identified as having any ownership interests, signatory privileges, rights to make withdrawals, or for which the above-named individual(s) is shown as the trustee, co-signer, guardian, custodian, administrator, and/or beneficiary. Records may pertain to an individual, sole proprietor with DBA, member of LLC, officer and/or board member of corporation, partner of general partnership, limited partnership and/or trust. This request for records includes, but is not limited to:

1. Monthly statements
2. Deposit offsets (front and back) $500.00 or greater
3. Deposit tickets
4. Cancelled checks (front and back) $500.00 or greater
5. Signature cards
6. Debit and credit memos
7. Loan applications, including lines of credit, and all documents related to loan(s)
8. Financial statements
9. Safe deposit box entry cards
10. Cashier's checks and applications
11. Money orders
12. Foreign and domestic letters of credit and wires of funds along with related documents disclosing source of funds and, for wires of funds, the destination of the funds along with any related correspondence
13. Agency agreements and correspondence
14. Closing transaction on the account (check, wire transfer, etc. regardless of amount)

Information may be provided in electronic format (i.e., CDs, disks, etc).

Daniel E. Witte (UT 8576)
Pearson Butler & Carson PLLC
1802 W. South Jordan Pkwy, Suite 200
South Jordan, Utah 84095
Telephone: (801) 495-4104
Fax: (801) 254-9427
Email: dan@pearsonbutler.com
*Attorney for Petitioner*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DAVID MICHAEL BISHOP, | |
| Petitioner, | **PROPOSED ORDER TO QUASH SUMMONS** |
| v. | |
| UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity, | Civil No. |
| Respondents. | |

Petitioner David Michael Bishop ("Bishop" or "Petitioner") filed a Petition to Quash Summons and related filings.  After considering the petition filed, and all related filings and information presented from all relevant parties, it is hereby ordered by this Court that the challenged Summons is quashed in its entirety for the reasons set forth in Petitioner's filings.

Signed this ___ day of _____, 2022.

BY THE COURT

_____
Judge Name
United States District Judge

R000044

DAVID A. HUBBERT
Deputy Assistant Attorney General

MATTHEW UHALDE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
(202) 353-0013
Matthew.P.Uhalde@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| David Michael Bishop and Slim Ventures LLC, <br><br> Petitioners, <br><br> v. <br><br> United States of America, *et al.,* <br><br> Respondents. | Case No. 2:22-CV-00340-DBP <br><br> **Motion to (1) Consolidate and Summarily Deny Petitions to Quash IRS Summonses and (2) Enforce the Summonses** <br><br> Magistrate Judge Dustin Pead |

Petitioners David Bishop and Slim Ventures LLC market a tax-avoidance plan called monetized installment sales. The Internal Revenue Service is investigating petitioners to determine whether they may be liable for penalties under 26 U.S.C. § 6700 for promoting abusive tax schemes. In addition, Bishop is currently subject to this Court's permanent injunction ordering him to stop "engaging in conduct subject to penalty" under § 6700.

In response to Information Document Requests (IDRs) issued by the IRS as part of its investigation, Bishop answered some questions and gave the IRS some documents, but he did not provide full information. The IRS also interviewed Bishop but still did not receive full information. The IRS suspected, from Bishop's interview and its own internal data, that multiple

R000045

banks held documents relevant to its investigation. So, in furtherance of its investigation, the IRS summoned these banks to produce records.

Bishop and Slim Ventures now separately petition to quash the summonses served on four banks: Key Bank, Zions Bank, Wells Fargo, and Summit Crest. The Court docketed the eight petitions (two petitioners times four banks) under separate case numbers. But, because they all involve the same IRS investigation, the Court should consolidate the petitions under a single case number.

After doing so, the Court should summarily deny the petitions. Petitioners allege that the IRS issued the summonses for an improper purpose and that the summonses are irrelevant to any legitimate investigation. Yet they offer zero facts supporting either claim. And the attached declaration of Revenue Agent Tim Bauer shows the opposite. More, the petitions to quash summonses served on Key Bank and Zions Bank are moot: Both banks informed the IRS that they have no documents responsive to the summonses, and the IRS does not dispute that claim. As a result, the IRS is not seeking to enforce the Key Bank or Zions Bank summonses. Finally, because the Wells Fargo and Summit Crest failed to respond to the summonses (likely in response to this litigation), we now ask the Court to enforce the summonses served on those banks and order the banks to respond.

## Background

### 1. The IRS's Authority to Summon Records.

Our tax system requires everyone to accurately report what they owe. The danger, of course, is that some people won't. Indeed, a tax system based only on trust would enable all free

R000046

riders to lie. (Or, at the least, not bother to check their tax returns for accuracy.) Which would, in

turn, undercut honest taxpayers.[1]

So, to ensure that taxes are "fairly and equitably distributed,"[2] Congress directed the IRS

to canvass for unassessed tax liabilities.[3] And with that charge, it gave the IRS "essentially the

same" powers as a grand jury. Meaning, among other things, that the IRS can summon any

person to produce any records "as may be relevant or material" to assessing any tax liability.[4]

These summonses are "not to accuse, much less to adjudicate, but only to inquire."[5]

That inquiry receives narrow judicial scrutiny. With certain exceptions, a person being

examined has a right to advance notice of all summonses issued on third parties.[6] This notice, in

turn, triggers a 20-day window to petition in district court to quash the summons.[7] The United

States, if it opposes the petition, can also cross-move for an order enforcing the summons.[8]

Lastly, the Court resolves challenges to the petition in a summary proceeding.[9]

The only issue to be decided in this summary proceeding is whether the IRS issued the

summons in good faith under the rubric that the Supreme Court established in *United States v.*

*Powell.*[10] The United States has the initial burden to show that the IRS acted in good faith.[11]

Typically, the United States "can satisfy that standard by submitting a simple affidavit from the

---

[1] *See United States v. Bisceglia*, 420 U.S. 141, 145 (1975) (explaining that "it would be naive to ignore the reality that some persons attempt to outwit the system, and tax evaders are not readily identifiable").
[2] *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984).
[3] 26 U.S.C. § 7601.
[4] 26 U.S.C. § 7602(a).
[5] *United States v. Clarke*, 573 U.S. 248, 254 (2014) (internal quotation marks omitted).
[6] § 7602.
[7] § 7609(b)(2).
[8] *Id.*
[9] *Clarke*, 573 U.S. at 254.
[10] *United States v. Powell*, 379 U.S. 48, 57–58 (1964); *Clarke*, 573 U.S. at 254.
[11] *Powell*, 379 U.S. at 57–58; *see also Clarke*, 573 U.S. at 254 (cleaned up).

R000047

investigating agent."[12] The burden then shifts to the petitioner to "point to specific facts or circumstances plausibly raising an inference of bad faith."[13] If the petitioner fails to do so, then the Court must enforce the summons and "eschew any broader role of overseeing the IRS's determinations to investigate."[14] In contrast, if the petitioner can plausibly raise an inference of bad faith, then the Court will hold an evidentiary hearing and allow the petitioner to question the investigating agent.[15]

### 2. Monetized Installment Sales.

Monetized installment sales (MIS) are a recent fad among tax scammers. A normal "installment sale" is any "disposition of property" in which title transfers before the year the seller gets paid.[16] Say you buy a farm for $500,000. Afterward, you sell the farm for $900,000 and thus earn a $400,000 capital gain. Your farm title transfers to the buyer in December 2021. But the buyer doesn't pay you until January 2022. Do you report your $400,000 capital gain on your 2021 tax return (the year title transferred) or your 2022 tax return (the year of payment)? The tax code allows you to do either.[17] Deferring capital-gain taxes until the year you're paid is called the installment method.[18]

A *monetized* installment sale is a gimmick to get paid right away but delay reporting your income for decades by misusing the installment method. How does it work? Indulge this example.

---

[12] *Clarke*, 573 U.S. at 254.
[13] *Id.*
[14] *Id.* (cleaned up).
[15] *Id.*
[16] 26 U.S.C. § 453(b)(1).
[17] 26 U.S.C. § 453(c).
[18] *Id.*

R000048

In 2018, Joe invests $5 million in a disinfectant manufacturer. Two years later, in 2020, Rachel offers to buy Joe's stock for $10 million. Joe agrees. A charismatic financial advisor, Paul, then approaches Joe with an offer. For a 5% fee on the sale price, Paul can delay Joe's capital-gain tax for 30 years. But Joe will still receive the remaining $9.5 million today. So, when he reports his $4.5 million capital gain in 30 years, inflation plus investment returns will have reduced the tax burden considerably.

Following this advice, Joe "sells" his stock to Paul for an unsecured $9.5 million IOU, payable in 30 years. Paul, in turn, sells the stock to Rachel and collects the $10 million. Paul keeps $500,000 and partners with a lender, Folly & Proffet, to "loan" the remaining $9.5 million back to Joe. Finally, Joe gives Folly & Proffet an unsecured $9.5 million IOU payable on the same day—30 years from now—as the IOU that Paul gave him.



In the end, Joe is left holding the $9.5 million but doesn't report it on his 2020 tax return since it's only a "loan." Joe intends to report the $4.5 million capital gain on his 2050 tax return

R000049

when Paul's IOU comes due. At the same time, Joe can use Paul's IOU to satisfy his identical

IOU to Folly & Proffet. In fact, the two IOUs perfectly cancel each other out: The interest owed

on each is the same, so no money need change hands after 2020.

Hucksters promote this in real life. And the IRS has done what it can to warn the public.

In 2021, it published a Chief Counsel Advisory that monetized installment sales, for myriad

reasons, have no legal effect.[19] At bottom, substance governs over form.[20] And an arrangement to

swap equal sums of cash in 30 years, solely to avoid taxation, is a quintessential farce. Since

issuing that advisory, the IRS has twice included MIS on its annual list of "dirty dozen" scams to

watch out for.[21] It has also launched investigations into those pushing the scheme.

### 3. Enter David Bishop.

Bishop received a JD from George Mason University in 1996.[22] He first came on the

IRS's radar working as a financial planner in the early 2000s. In that role, Bishop told clients that

they wouldn't have to pay most taxes if they created a foreign corporation and then leased their

own labor to it.[23] This was bad advice.[24] So the United States sued Bishop in November 2003 for

peddling false tax schemes.[25] The next month, the Court entered a permanent injunction barring

Bishop from, among other things, "engaging in conduct subject to penalty under [26 U.S.C.]

---

[19] IRS Chief Counsel Advisory 202118016, 2021 WL 1854328 (May 7, 2021).
[20] "To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." *Comm'r v. Ct. Holding Co.*, 324 U.S. 331, 334 (1945).
[21] IRS News Releases, 2022 WL 2093910 (June 10, 2022) and 2021 WL 2716177 (July 1, 2021).
[22] Bauer Decl. ¶ 11.
[23] Compl. ¶¶ 9–19, *United States v. Bishop*, 2:03-cv-01017 (D. Utah Nov. 20, 2003), ECF No. 1.
[24] *Id.* ¶ 22.
[25] *Id.* ¶¶ 25–31.

§ 6700."[26] That conduct entails promoting any tax plan Bishop "knows or has reason to know is false or fraudulent as to any material matter."[27]

Fast forward to 2021. Bishop's name resurfaced after the IRS's Lead Development Center began identifying MIS promoters.[28] One of these promoters was an entity called Slim Ventures LLC.[29] Promotional material on Slim Ventures' website promised that '[a]n owner of highly appreciated assets can sell them and defer 100% of the capital gains tax for up to 30 years while receiving up to 95% of the value in cash."[30]

Below that, it described the nuts and bolts of MIS. First, a seller of virtually any capital asset can approach Slim Ventures with a buyer lined up.[31] Next, Slim Ventures acts as "an intermediate purchaser from the seller" and "re-sells the asset to the final buyer."[32] The deed or other title instrument, however, "will pass directly (in a 'directed' transfer) from Slim Ventures LLC's seller to Slim ventures LLC's buyer, without going through Slim Ventures LLC."[33] Afterward, Slim Ventures pays the seller with "an unsecured installment contract" for about 95% of the sale proceeds.[34] The entire principal on this installment contract is due in 30 years.[35] At the same time, a "third-party lender" gives the seller a cash loan equal to the principal.[36] The interest that the seller owes the third-party lender likewise equals the interest owed to the seller on Slim

---

[26] Consent Injunction, ECF No. 6 at 2. (*Id.*)
[27] 26 U.S.C. § 6700(a)(2).
[28] Bauer Decl. ¶ 4–5.
[29] *Id.* ¶ 4.
[30] Bauer Decl. Ex. 1 at 1.
[31] *Id.* at 4.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*

R000051

Ventures installment contract.[37] So the seller can delay paying a capital gains tax for 30 years, while having 95% of the sale proceeds up front.[38]

Further research revealed that Bishop is Slim Venture's managing director.[39] On September 30, 2021, IRS Revenue Agent Tim Bauer interviewed Bishop regarding his promotion of MIS.[40] Agent Bauer explained at the start of the interview that he was investigating whether Bishop may be liable for tax penalties under § 6700 resulting from those MIS transactions.[41] Bishop stated that he learned about MIS from a financial advisor named Stanley Crow.[42] Crow had a website promoting MIS, and Bishop studied the website for six months before deciding to market them himself.[43] He then used the information from Crow's website to write Slim Ventures' own promotional material.[44] (Note: Crow's similar effort to quash IRS summonses investigating his MIS promotion, and the case law rejecting that endeavor, come up later.)

Bishop stated that he had tried several things before MIS, but MIS were his first "pay day."[45] Over the past three years, he had averaged three to four sellers per month.[46]

Agent Bauer next asked Bishop if he owned Slim Ventures.[47] Bishop responded that a family trust, of which his daughters are the beneficiaries, owns Slim Ventures.[48] He is just the

---

[37] *Id.*
[38] *Id.*
[39] Bauer Decl. ¶ 5.
[40] *Id.* ¶ 10.
[41] *Id.* ¶ 11.
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.* ¶ 12.
[46] *Id.*
[47] *Id.* ¶ 13.
[48] *Id.*

R000052

manger.[49] He also said that he uses a bank called Summit Crest Financial LLC as Slim Ventures'

third-party lender.[50] Agent Bauer suspects that Bishop may be Slim Ventures' *de facto* owner

and is using the family trust to hide that fact.[51]

The interview ended.

The IRS also sent Bishop a series of IDRs between June 2021 and February 2022,

requesting documents related to his promotion or MIS or similar tax plans.[52] Bishop responded

with some information but also left myriad questions unanswered.[53] For example, Bishop refused

to produce any information in response to the IRS's request for his accounting records, bank

statements, and client list.[54]

So, Agent Bauer decided to dig further. To begin, he searched Slim Ventures on the

IRS's Information Returns Processing (IRP) system.[55] IRP stores data on payments to third

parties.[56] Employers, for example, must report wages to their employees.[57] And banks report

their clients' earnings from things like derivatives and interest.[58] Agent Bauer saw from

searching Slim Ventures in the IRP database that Wells Fargo Bank had paid Slim Ventures

$11,227 in interest in 2020.[59] Such a large amount of ordinary bank interest indicates that Slim

Ventures likely held a substantial sum of money with Wells Fargo in 2020.[60] Further research on

---

[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.* ¶ 8.
[53] *Id.* ¶ 9.
[54] *Id.* ¶ 14.
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*

R000053

internal IRS systems indicated that Key Bank and Zions Bank may likewise have information relevant to Bishop's promotion of MIS.[61]

Next, Agent Bauer prepared IRS summonses to Key Bank, Zions Bank, Wells Fargo, and Summit Crest.[62] The summonses sought records concerning any account over which Petitions, since 2018, either:

1) Held ownership interests, signatory authority, or right to make withdrawal from, or

2) Served as trustee, co-signer, guardian, custodian, administrator, or beneficiary.[63]

Agent Bauer suspected, from Bishop's interview and his IRP search, that the banks may have such records.[64] And those records could, in turn, help determine whether to assess § 6700 penalties against Bishop for promoting MIS.[65] They would likewise be relevant to a contempt inquiry against Bishop for violating the Court's injunction not to promote fraudulent tax schemes.

The IRS served the summonses on all four banks on May 4, 2022.[66] That same day, the IRS notified Petitioners of each summons by certified mail.[67] The summonses required the banks to respond by June 6, 2022.[68] Two days after service, on May 6, Key Bank notified Agent Bauer that it had no documents responsive to the summonses.[69] Zions Bank did the same on May 31.[70] The IRS will not dispute that claim and, as a result, does not seek enforcement of the summonses

---

[61] *Id.* ¶ 15.
[62] *Id.* ¶ 16.
[63] *Id.* A copy of each summons is also attached to the corresponding petition to quash. Other than the name of the bank and party, the summonses are all identical.
[64] *Id.*
[65] *Id.*
[66] *Id.* ¶¶ 17.
[67] *Id.* ¶ 19.
[68] *Id.* ¶ 25.
[69] *Id.* ¶ 23.
[70] *Id.* ¶ 24.

R000054

served on Key Bank or Zions Bank. Meanwhile, between May 20 and 23, 2022, Bishop and Slim

Ventures each petitioned this Court to quash the summonses.

The Court docketed each petition as a separate civil action:

|  | Summons on Wells Fargo | Summons on Summit Crest | Summons on Key Bank | Summons on Zions Bank |
|---|---|---|---|---|
| David Bishop | 2:22-cv-00344 | 2:22-cv-00352 | 2:22-cv-00347 | 2:22-cv-00340 |
| Slim Ventures | 2:22-cv-00351 | 2:22-cv-00345 | 2:22-cv-00341 | 2:22-cv-00348 |

Petitioners informed the United States that they sent copies of the petitions to each bank.

To date, Wells Fargo and Summit Crest have not responded to the summonses.[71]

**Argument**

**1. The Court should consolidate the eight petitions under a single case number.**

Federal Rule of Civil Procedure 42(a) authorizes the Court to consolidate any actions

involving "a common question of law or fact." Local Rule 42-1, in turn, specifies five scenarios

when a party can move to consolidate, at least three of which apply here.

*First*, the petitions all "arise from substantially the same transaction or event."[72] Agent

Bauer issued them as part of a single investigation into Bishop's promotion of MIS. And all

serve the same purpose: To help the IRS determine whether to assess § 6700 penalties and

initiate contempt proceedings against Bishop for violating the Court's injunction.

*Second*, the petitions "call for determination of substantially the same questions of law."[73]

Indeed, except for the case heading and bank name, they're nearly carbon copies. All raise

verbatim reasons to quash the summonses.

---

[71] Bauer Decl. ¶ 25.
[72] LR 42-1(a)(1).
[73] LR 42-1(a)(4).

R000055

Third, requiring different judges to decide the petitions "would entail substantial duplication of labor."[74] Petitioners are related. The defendant is the same. And, as stated, the eight petitions are nearly word-for-word the same. Thus, requiring eight separate proceedings for what is essentially one dispute would be a complete waste of this Court's resources. It would also risk contradictory results on identical facts and issues.

The Court should therefore consolidate the petitions into one proceeding.

**2. The petitions to quash summonses served on Key Bank and Zions Bank are moot.**

"Constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies."[75] Claims become moot when the issues that they present are no longer live or the parties lack a legally cognizable interest in the outcome.[76] That has happened regarding the summonses served on Key Bank and Zions Bank.

Both banks informed Agent Bauer that they have no information responsive to the summonses and thus could not produce records even if ordered to.[77] The IRS accepts that claim and does not seek to enforce the summonses served on Key Bank and Zions Bank. Thus, the petitions to quash those summonses are not a live controversy: Whether quashed or not, the summonses will never be enforced or result in any records production. There is nothing left for the Court to resolve.

In *Wadsworth v. United States*, the Northern District of Ohio reached that conclusion.[78] There, the Wadsworths petitioned to quash IRS summonses served on seven entities.[79]

---

[74] LR 42-1(a)(4).
[75] *Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006) (quoting *Seneca–Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1028 (10th Cir.2003)).
[76] *Id.*
[77] Bishop Decl. ¶ 23–24.
[78] No. 1:97 CV 2241, 1998 WL 180913 (N.D. Ohio Jan. 22, 1998).
[79] *Id.* at *1.

R000056

Meanwhile, three of the entities "responded to the Internal Revenue Service that they do not have documents responsive to the summonses."[80] The court therefore found the claims to quash the summonses served on those entities moot.[81]

So too here. Because the IRS accepted Key Bank and Zions Bank's claim not to have any responsive documents, the Court should summarily deny the petitions to quash summonses served on those banks as moot.

### 3. Agent Bauer's declaration shows that the IRS summoned Wells Fargo and Summit Crest in good faith.

To show good faith, the United States must demonstrate that:[82]

1) The IRS issued the summons for a legitimate purpose;

2) The summons seeks information relevant to that purpose;

3) The IRS does not already possess the information sought; and,

4) The IRS followed all administrative steps required by the Internal Revenue Code.

This test does not require any showing of probable cause.[83] Indeed, the IRS "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."[84] So, considering that low bar—and the facts undergirding the IRS's ongoing investigation—the IRS undoubtedly issued the summonses in good faith.

*First*, determining whether Bishop is liable for § 6700 penalties, and by extension whether he violated the Court's injunction, is a legitimate purpose. This case mirrors *S. Crow Collateral Corp. v. United States*,[85] as alluded to earlier. There, Stanley Crow and his company

---

[80] *Id.* at *1 n. 1.
[81] *Id.*
[82] *Powell*, 379 U.S. at 57–58.
[83] *Id.* at 57.
[84] *Id.*
[85] No. 117MC09828EJLREB, 2018 WL 2454630 (D. Idaho Jan. 19, 2018).

R000057

S. Crow Collateral Corp. petitioned to quash an IRS summons investigating Crow's MIS promotion.[86] The investigating IRS agent then attested in a declaration that the summonses were to determine whether Crow was liable for § 6700 (among other) penalties and, if so, what the penalties should be.[87] From that declaration, the district court found that the IRS issued the summons for a legitimate purpose and denied Crow's request for an evidentiary hearing.[88] The Ninth Circuit affirmed.[89]

Here, Agent Bauer's declaration mandates the same outcome. He attests that the IRS issued the summons to learn whether Bishop is liable for § 6700 penalties for promoting MIS.[90] And to calculate the penalty amounts if Petitioners are found liable.[91] And, on top of that, to determine whether Bishop violated this Court's injunction prohibiting him from promoting fraudulent tax schemes.[92] Indeed, Bishop may well violate that injunction unless the IRS monitored him. The IRS thus had even stronger reason to monitor him than Crow.

*Second*, the summonses seek information relevant to determining Bishop's potential liability for § 6700 penalties. The IRS had already found and publicized that MIS are fraudulent. Promoting them may therefore be grounds for penalties under § 6700. And the IRS has reason to suspect that the summoned banks—Wells Fargo and Summit Crest—have records relevant to Bishop's MIS promotion. Bishop told Agent Bauer that Summit Crest acts as third-party lender for Slim Ventures' MIS transactions.[93] And Wells Fargo reported paying Slim Ventures interest,

---

[86] *Id.* at *1.
[87] *Id.* at *4.
[88] *Id.*
[89] <u>782 F. App'x 597</u> (9th Cir. 2019).
[90] Bauer Decl. ¶ 21.
[91] *Id.*
[92] *Id.*
[93] Bauer Decl. ¶ 13.

R000058

so it may also have information on these transactions, including how many there were.[94] That number, in turn, controls what the highest penalty can be.[95]

*Third*, the IRS doesn't already possess records from Well Fargo or Summit Crest connecting Petitioners to their MIS transactions.[96] Indeed, before summoning the banks, the IRS asked Bishop to provide accounting records and bank statements, and Bishop refused to do so.[97]

*Fourth*, the IRS followed all administrative steps required by the Internal Revenue Code when issuing the summonses at issue.[98] That entailed (1) serving the banks by certified mail,[99] (2) sending Petitioners a notice of the summonses within the following three days, [100] and (3) verifying that Bishop had not been referred to the Justice Department for a criminal investigation.[101] The IRS fulfilled all requirements. It served Wells Fargo and Summit Crest by certified mailed on May 4.[102] And, that same day, the IRS sent Petitioners IRS Forms 2039 via certified mail, which satisfied the notice requirement.[103] Although Petitioners baldly allege that the IRS did not provide the required notice of the summonses,[104] they provide nothing to rebut the facts related to service and notice described above. Finally, the IRS had not referred Bishop to the Justice Department for a criminal investigation before issuing the summonses.[105]

---

[94] *Id.* at ¶ 14.
[95] *See* § 6700(a)(2)(B).
[96] Bauer Decl. ¶ 20.
[97] *Id.*
[98] *Id.* ¶ 22.
[99] § 7603(b).
[100] § 7609(a).
[101] § 7602(d).
[102] Bauer Decl. ¶ 17.
[103] *Id.* ¶¶ 19, 22.
[104] ECF No. 2 at 10.
[105] Bauer Decl. ¶ 26.

R000059

So, in sum, Agent Bauer's declaration meets every element to show that the IRS issued the summonses in good faith. The burden now shifts to Petitioners to "point to specific facts or circumstances" that plausibly raise the opposite inference.[106]

**4. Petitioners offer no facts showing that the IRS acted in bad faith.**

To infer bad faith, the Court must see "credible evidence" that the IRS summoned the banks for an improper purpose, like to harass Petitioners.[107] Yet Petitioners offer nothing of the sort. All they have is Bishop's declaration of what he makes of the summonses. For example, Bishop states that:

- His "private financial information and records have been made the target of an overreaching IRS Summons" and "various other inappropriate and unfounded summons [*sic*]."[108]

- The banks face an "IRS harassment campaign of impermissible summons [*sic*]."[109]

- "The IRS is engaged in a blatant fishing expedition and rambling exploration of records."[110]

But these allegations aren't facts; they're conclusions. Speculative conclusions at that.

Bishop cannot just say that the IRS aims to harass him, or that its summonses are impermissible. He must instead illustrate how he knows what the IRS's intentions are, or why the summonses are improper.[111] And when it comes to details, Bishop is silent. Indeed, he affirmatively pleads ignorance:

---

[106] *Clarke*, <u>573 U.S. at 254</u>.
[107] *Id.* at 251, 254.
[108] Bishop Decl. ¶ 3.
[109] *Id.* ¶ 7.
[110] *Id.* ¶ 13.
[111] *See S. Crow Collateral Corp*, <u>2018 WL 2454630</u>, at *8 ("No specific allegations plausibly raise an inference of bad faith. At its core, Petitioners' argument rests upon their suspicion . . . that the purported investigation into Crow is a pretext.").

R000060

- "Bishop currently has no information which causes Bishop to believe that the IRS" did "not issue a summons to harass . . . or for any other improper or inadequate purposes."[112]

- Petitioners "are unaware of anything" they've done "which is improper."[113]

- "The IRS has not made any showing or explanation that it does not already have the documentation in needs."[114]

Thus, the declaration has no weight: Bishop's attested lack of knowledge is not evidence of anything. That he doesn't know why the summonses are proper is not evidence that they are improper.

Nor must the IRS take Bishop at his word that he owes no taxes.[115] It can summon bank records simply to confirm that claim.[116] More importantly, Bishop will never owe § 6700 penalties unless the IRS first determines that he promoted an abusive tax scheme. The penalties, in other words, come *after* the investigation. Thus, Bishop cannot quash the summonses by claiming not to owe anything now.

Finally, Bishop claims that the summonses "have the effect of" chilling Petitioners' "livelihood and network of business partners and customers."[117] That's another conclusory statement: Bishop doesn't describe how the summonses chill Petitioners' business. And even if they do, that is an effect, not a purpose. It doesn't show that the IRS summoned the banks *to* scare off Petitioners' clients.

---

[112] Bishop Decl. ¶ 9.
[113] *Id.* ¶ 12.
[114] *Id.* ¶ 15.
[115] Bishop Decl. ¶ 10.
[116] *See S. Crow Collateral Corp.*, 2018 WL 2454630, at *5 (D. Idaho Jan. 19, 2018) (explaining that Crow's claim not to have done anything wrong "does not transmute an investigation, ipso facto, into an illegitimate exercise based on the IRS's declining to adopt the defense without further investigation").
[117] Bishop Decl. ¶ 12.

R000061

At bottom, Bishop has only his theories and speculation. None is evidence that the IRS issued the summonses in bad faith. The Court should thus deny the petitions to quash the summonses.

### 5. The Court should order Wells Fargo and Summit Crest to respond to the summonses.

In any proceeding to quash an IRS summons, the United States can seek a Court order enforcing the summons.[118] Here, Agent Bauer's declaration establishes that the summonses are enforceable. Wells Fargo and Summit Crest, however, did not respond to them.[119] The Court should therefore order these banks to respond.

**Conclusion**

For these reasons, the Court should (1) consolidate the petitions to quash, (2) deny the petitions, and (3) enter an order requiring Wells Fargo and Summit Crest to comply with the summonses within 21 days.

Respectfully submitted August 26, 2022.

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Matthew Uhalde*
MATTHEW UHALDE
Trial Attorney, Tax Division
U.S. Department of Justice

---

[118] 26 U.S.C. § 7609(b)(2)(A).
[119] Bauer Decl. ¶ 25.

R000062

**Certificate of Service**

I certify that on August 26, 2022, I served the foregoing via the Court's CM/ECF system, which will serve all parties who have appeared.


/s/ Matthew Uhalde
MATTHEW UHALDE
Trial Attorney, Tax Division
U.S. Department of Justice

R000063

DAVID A. HUBBERT
Deputy Assistant Attorney General

MATTHEW UHALDE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
(202) 353-0013
Matthew.P.Uhalde@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Michael Bishop and Slim Ventures LLC,<br><br>Petitioner,<br><br>v.<br><br>United States of America, *et al.,*<br><br>Respondents. | Case No. 2:22-CV-00340-DBP<br><br>**Declaration of Revenue Agent Tim Bauer**<br><br>Magistrate Judge Dustin Pead |

I, Tim Bauer, in accordance with 28 U.S.C. § 1746, declare that:

1.      I am a duly commissioned Revenue Agent of the of the IRS. I am stationed in Las Vegas, Nevada.

2.      Tim Bauer is not my real name. It is a pseudonym I use in my official capacity as an employee of the IRS. This pseudonym is used for privacy and safety reasons. It is registered with the IRS, in accordance with IRS procedures (Internal Revenue Manual 10.5.7), and all IRS procedures governing the use of pseudonyms have been followed.

3.      I am authorized to issue IRS summonses under 26 U.S.C. § 7602 and 26 C.F.R. § 301.7602-1.

4.      In or around 2021, the IRS's Lead Development Center (LDC) identified Slim

R000064

Ventures LLC as an entity promoting monetized installment sales (MIS). LDC receives, identifies, and develops leads on individuals and entities that promote or aid in the promotion of abusive tax schemes. Attached as Exhibit 1 is a true and correct copy of promotional material downloaded from Slim Ventures' website.

5.     The LDC further learned from material posted on the internet that David Michael Bishop is Slim Ventures' managing director. In 2021, it referred Bishop for investigation relating to his promotion of MIS.

6.     The IRS is investigating Bishop to determine whether he may be subject to penalties under 26 U.S.C. § 6700 for promoting abusive tax schemes and whether he has violated a permanent injunction entered against him in *United States v. Bishop*, 2:03-cv-01017 (D. Utah).

7.     I am assigned to the investigation in my official capacity as a Revenue Agent.

8.     As part of the investigation, I sent Bishop a series of Information Document Requests between June 2021 and February 2022, which requested that he produce documents and answer questions related to his promotion of MIS or similar tax plans.

9.     In response, Bishop produced some documents and answered some questions, but he did not produce all documents requested or answer many of the questions I had. For example, Bishop refused to provide any documents in response to my request for his accounting records, bank statements, and client list.

10.     On September 30, 2021, I interviewed Bishop for the investigation.

11.     I explained to Bishop at the start of the interview that I was investigating whether he may be liable for tax penalties under 26 U.S.C. § 6700 resulting from his promotion of MIS. I next asked Bishop for his educational background. Bishop told me that he received a JD from George Mason University in 1996. Then I asked Bishop how he began marketing MIS. Bishop

2

told me that he learned about MIS from the website of a financial advisor named Stanley Crow. Bishop said he studied Crow's website for six months before deciding to market MIS himself. Bishop also said that he used the information from Crow's website to write Slim Ventures' promotional material.

12.     Bishop told me that he had tried several things before MIS, but MIS were his first "pay day." Over the past three years, he had averaged three to four sellers per month.

13.     I asked Bishop if he owned Slim Ventures. Bishop responded that a family trust, of which his daughters are the beneficiaries, owns Slim Ventures. He claimed to just be the manger. He also said that he uses a bank called Summit Crest Financial LLC as Slim Ventures' third-party lender. From my experiences and training as a Revenue Agent, I suspect that Bishop may be Slim Ventures' *de facto* owner and is using the family trust to hide that fact.

14.     After the interview, I looked up Slim Ventures on the IRS's Information Returns Processing (IRP) system. IRP stores data on payments to third parties. For example, employers must report the wages they pay, and banks must report their clients' earnings from things such as dividends and interest. I saw from searching Slim Ventures in the IRP database that Wells Fargo Bank had paid Slim Ventures $11,227 in interest in 2020. Such a large amount of ordinary bank interest indicates that Slim Ventures likely held a substantial sum of money with Wells Fargo in 2020.

15.     My further research on internal IRS systems indicated that Key Bank and Zions Bank may have had information relevant to Bishop's promotion of MIS.

16.     Afterward, I prepared IRS summonses to Key Bank, Zions Bank, Wells Fargo, and Summit Crest. The summonses sought information concerning any account over which Bishop or Slim Ventures held ownership interests, signatory authority, or right to make

R000066

withdrawal from, or for which they were trustee, co-signer, guardian, custodian, administrator, or

beneficiary, at any time from 2018 to the present. I suspected, from Bishop's interview and my

own research, that the banks may have such records. Those records may, in turn, help determine

whether to assess § 6700 penalties against Bishop for promoting MIS.

17.     In accordance with 26 U.S.C. § 7609(a), on May 4, 2022, attested copies of the

IRS summonses described above were served on Zions Bank, Wells Fargo, and Summit Crest by

certified mail. Key Bank was served by fax per an agreement it has with the IRS.

18.     Before serving the four banks, I followed all administrative steps required by the

IRS.

19.     On May 4, 2022, I sent Bishop and Slim Ventures IRS Forms 2039, by certified

mail, notifying them of each summons served on the four banks.

20.     The summonses seek documents relevant to Bishop's income from promoting

MIS, which are not already in the IRS's possession. Indeed, Bishop earlier refused to produce

any bank statements or accounting records to me.

21.     The information and records sought by the summonses may shed light on the

implementation and details of Bishop's MIS transactions. They may further shed light on

whether Bishop may be liable for penalties under 26 U.S.C. § 6700 and how to calculate the

penalty amount, if necessary. They may similarly be relevant to determining whether Bishop

violated the permanent injunction not to engage in conduct subject to penalties under § 6700.

22.     All administrative steps required by the Internal Revenue Code for enforcement

of the summonses have been followed. The IRS satisfied the notice requirement of 26 U.S.C.

§ 7609(a) by sending Bishop and Slim Ventures IRS Forms 2039 within three days of when it

served the banks.

4

23.     On May 6, 2022, Key Bank notified me that it had no information responsive to the summonses.

24.     On May 31, 2022, Zions Bank notified me that it had no information responsive to the summonses.

25.     The summonses required the four banks to respond by June 6, 2022. But, to date, Wells Fargo and Summit Crest have not responded.

26.     No "Justice Department referral" has been in effect with respect to Bishop since the summonses were served. More specifically, no recommendation has been made by the IRS to the Department of Justice for a grand jury investigation or criminal prosecution of Bishop for the periods under investigation. Moreover, no request has been made under 26 U.S.C. § 6103(h)(B)(3) for the disclosure of any return or return information in connection with a grand jury investigation or potential or pending criminal investigation of Bishop.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _08/26/2022_____.

                                                                    Digitally signed by Timothy
                                                                    Bauer
                                                                    Date: 2022.08.26 12:12:59 -07'00'
                                        Timothy Bauer
                                        IRS Revenue Officer

R000068

# Exhibit 1

**Executive Summary**
**Monetized Installment Sale Transactions**

**Overview**

An owner of highly appreciated assets can sell them and defer 100% of the capital gains tax for up to 30 years while receiving up to 95% of the value in cash.

These appreciated assets can include real estate, mineral rights, water rights, privately held stock, partnership interests, etc.

The transaction allows a seller to:

- Sell  the asset
- Walk away from escrow with no immediate capital gains taxes due
- Defer the taxes for 30 years
- Receive tax free 95% of the sale proceeds in cash in the form of a loan

Slim Ventures LLC offers to purchase the appreciated assets in exchange for an installment note.  In addition, the owner is offered, but is not required to accept, a limited-recourse "monetization loan" from a third-party lender introduced by Slim Ventures LLC.

Slim Ventures LLC will immediately re-sell the asset to the ultimate buyer, who otherwise could have purchased the asset directly from the owner who sells to Slim Ventures LLC  The closing on the Monetized Installment Sale transaction and the closing on the resale will occur simultaneously, typically where the closing would have occurred if there had been no Monetized Installment Sale transaction.

If the seller enters into the monetization loan, it will be funded "up front", i.e. the seller receives the loan proceeds promptly after the closing on the sale of the asset.  The entire transaction occurs within a third party escrow.

**Benefits**

The transactions may achieve the following:

1. An installment sale of the asset, with the capital-gains tax deferred for as long as 30 years, with no net tax cost to the seller during that time;

2. Near immediate availability (i.e. within days) of a non-taxable monetization loan for the seller, with the entire repayment of the monetization loan funded by Slim Ventures LLC's installment payments to the seller, at no net cost to the seller for interest or principal payments;

3.  Ability for the seller to invest the loan proceeds at the seller's full discretion;

4. No risk that the seller will have to use any funds to repay the loan other than the money which Slim Ventures LLC pays to the seller pursuant to the monetized installment sale contract;

5.  Administrative ease on the installments of the Monetized Installment Sale and payments on the loan managed automatically by an escrow company and reported annually to the parties and the Internal Revenue Service;

7. Minimized credit risk, default risk and performance risk.

---

**How It Works**

1. Seller sells an appreciated asset at fair market value to a dealer for an interest only, non-amortizing long term installment note (which Is tax deferred under IRC 453).

2. The dealer sells the asset to the end buyer at fair market value.

3. The seller obtains a loan from a third party lender equal to 95% of the sales price.

4. The seller and the dealer continue to make loan payments on their respective notes.   The dealer's installment payments fund seller's payments on the limited recourse loan.

5. While the seller defers the tax on the sale, inflation during the contract term acts in seller's favor, allowing them to pay the future tax bill tax in depreciated dollars.

6. In the meantime, the seller uses the proceeds to invest or consume as he would on any general purpose loan.

**Other Companies that Have Done This**

Several public companies have engaged in this transaction, in amounts that have ranged from $22 million to over $4.5 billion.  These transactions have been undertaken with full assistance from the companies' teams of auditors at Big 4 accounting firms, investment banks, large Wall Street law firms, and in house attorneys and have been fully disclosed in their SEC financial statements.[1]

These companies and their transactions have include:

1. The $43.25 Million Monetized Installment Sale by GREIF, Inc.
2. The $617 Million Monetized Installment Sale by Kimberly Clark.
3. The $4.8 Billion Monetized Installment Sale by International Paper.
4. The $350 Million Monetized Installment Sale by Plum Creek.
5. The $1.47 Billion Monetized Installment Sale by OfficeMax.
6. The $774 Million Monetized Installment Sale by Meadwestvaco.
7. The $183 Million Monetized Installment Sale by the St. Joe Company.
8. The $22.5 Million Monetized Installment Sale by Rayonier.
9. The $403 Million Monetized Installment Sale by Louisiana Paper.
10. The $37.9 Million Monetized Installment Sale by Glatfelter.

Slim Ventures focuses on the middle market for these transactions.

---

[1] See GREIF Inc. at http://www.investquest.com/iq/g/gef/fin/8k/gef8k060605.htm;
See Kimberly Clark at http://files.shareholder.com/downloads/KMB/4330473318x0xS55785-03-1/55785/filing.pdf at p. 126;
See International Paper at https://www.sec.gov/Archives/edgar/data/51434/000119312511100407/filename1.htm;
 See Plum Creek at investor.weyerhaeuser.com/download/PCL+Q2+2000+10-Q.pdf
See St. Joe's at http://ir.joe.com/secfiling.cfm?filingID=745308-14-22;
See MeadWestvaco at http://phx.corporate-ir.net/External.File?item=UGFyZW50SUQ9NTM3NjAyfENoaWxkSUQ9MiI2NTQwfFR5cGU9MQ==&t=1; and
See OfficeMax at http://investor.officedepot.com/phoenix.zhtml?c=94746&p=irol-faq
See Rayonier at https://www.google.com/url?sa=t&source=web&rct=j&url=https://www.rayonier.com/Documents/2016_Annual_Report_RYN.aspx&ved=0ahUKEwjk6Ka1m4HUAhUT8GMKHQbhCucQFggfMAA&usg=AFQjCNE0YOGQCxnXiXBZf0D_-QwvorYcog&sig2=b5kdrLLVtnl-YlnQ_rxGNg
See L.P. Building Products at http://www.otcmarkets.com/edgar/GetFilingPdf?FilingID=11369524
See Glatfelter at http://www.glatfelter.com/about_us/news_events/press_release.aspx?PRID=10

Executive Summary:  Monetized Installment Sale

R000071

**Tax and Non-tax Considerations**

The core tax issues surrounding this strategy consist in:

1. The tax deferral of installment sales.
2. The tax free nature of loans.
3. Other 'judicial doctrines' related to 'substance over form' and 'business purpose'.

The IRS and the courts have discussed these issues in numerous instances.  In a recent General Counsel Memorandum, the IRS discussed, and declined to challenge, a Monetized Installment Sale that one of the public companies referenced above had engaged in. [2]

Section 453 of the Internal Revenue Code provides that when a taxpayer sells a capital asset and does not receive full payment of the selling price in the year of sale, the transaction is an installment sale and the seller owes the tax to the extent (and when) the seller receives the principal.

In the case of an owner's sale to Slim Ventures LLC, the capital-gains tax may be entirely deferred for as long as 30 years, because Slim Ventures LLC's installment contracts are typically for that period of time with no payment of principal until the end of that time.

When installment reporting was adopted in the first Internal Revenue Code in 1913, there was no widely available system of institutional finance for the buying and selling of farms, homes and businesses, and Congress realized that installment sales were necessary to the functioning of the marketplace and the economy.  Currently, it is estimated that 80% of business sales come with some form of buyer financing; in the residential context, some hundreds of thousands of properties are also financed per year.  These transactions are an important part of the economy and contribute to the soundness of the financial system.

**Congressional Intent**

Congress implicitly recognized monetized installment sales when in 1980 it codified, in Section 453A, provisions allowing for monetization loans taken out at the same time as installment sales occur.

Congress further recognized that if all sales were treated for tax purposes as if they were cash sales, the effect on the economy would be adverse.

Example:  John and Mary own real estate on which, many years ago, they built a modest building in which they have operated a retail business ever since.  They want to sell the business and the real estate and retire, but the tax cost of doing so, if they were to sell for cash, would mean that their after-tax resources for retirement would be insufficient.  Of course, they regularly pay some income taxes because of the business, but that amount is modest.  Because of the tax cost of selling, they feel trapped, and they continue their labors.

Then John and Mary are approached by Sam the Developer, who knows that if he can purchase the property and business from John and Mary, Sam the Developer will close their business, tear down their building and replace it with a much bigger and grander, high-rise retail and residential structure.  If they would sell to him, revenues from property taxes and income taxes related to the new structure and the business and personal tenants therein would increase ten, twenty or thirty times, or more.  The value of the property would rise commensurately, so that when it would later be sold again the capital-gains tax would be many multiples of what it would be if John and Mary were to sell now.  And, the number of taxable transactions would rise, too.

---

[2] See https://www.irs.gov/pub/irs-lafa/20123401F.pdf

Executive Summary:  Monetized Installment Sale

R000072

The answer?  John and Mary sell on a tax-deferred installment contract such as in an Monetized Installment Sale transaction, they defer their tax, they have sufficient funds for retirement, and the tax revenues for city, county, state and federal governments rise—all because of the availability of tax deferral for John and Mary because of their installment sale.

That outcome illustrates why installment reporting was never intended to be available only when a cash sale was not available.  Installment reporting was intended to be available when a cash sale was not desirable, just as much as when a cash sale was not available;  Congress wanted sellers to be able to choose freely the terms and conditions of sale, so that transactions would occur freely and the economy and tax revenues would grow commensurately.

We are happy to discuss additional legal aspects of the transaction, including legal requirements for a valid loan as well as judicial doctrines such as economic substance, business purpose and the step transaction doctrine, which can be satisfied in this transaction.

**Process**

As a dealer in capital assets, Slim Ventures LLC purchases the asset—it can be virtually any capital asset, whether it's a business, investment or personal one—from the owner-seller, on an unsecured installment contract which calls for payments of interest only by Slim Ventures LLC to the seller for 30 years, followed by payment of the entire purchase price at the end of the term.

Most often, the seller has already found an ultimate buyer for the asset before Slim Ventures LLC becomes involved.  Most often, the ultimate buyer is prepared to pay cash, or a considerable portion of the price in cash, and the seller prefers to defer the tax on the cash proceeds.  With that in mind, the seller brings Slim Ventures LLC into the deal, to be an intermediate purchaser from the seller.  The purchase price in the installment contract in an Monetized Installment Sale transaction is typically equal to the resale price, but with provision for a discount at the end of the 30 years if Slim Ventures LLC fully performs.

At the same time as the purchase, Slim Ventures LLC re-sells the asset to the final buyer to whom the seller had planned to sell directly.  Slim Ventures LLC receives and retains the sale proceeds which the final buyer pays. (That's why Slim Ventures LLC doesn't charge a fee to the seller; Slim Ventures LLC retains all of the resale proceeds, so it wouldn't make sense to charge a fee on top of that.)

Although there are two sale transactions—the installment sale to Slim Ventures LLC and the resale to the final buyer—there is only one transfer of title or ownership; the deed or other instrument of transfer will pass directly (in a "directed" transfer) from Slim Ventures LLC's seller to Slim Ventures LLC's buyer, without going through Slim Ventures LLC  Therefore, the final buyer will receive the same instrument of transfer from the same party with the same representations and warranties, on the same day and for the same price as would have been the case if Slim Ventures LLC had not been involved.

Both the installment sale to Slim Ventures LLC and its resale to the final buyer are closed simultaneously, pursuant to mutually agreed closing instructions provided to the closing agent.

**The Monetization Loan**

At the same time and if the seller so desires, a third-party lender which is unrelated to Slim Ventures LLC is willing to lend to Slim Ventures LLC's seller (or, in the case of an entity which is the seller, the owner or owners of the entity) an amount of cash that is equal to a specified high percentage of the cash paid by the final buyer.  Slim Ventures LLC's monthly interest payments on the installment contract will typically equal the seller's loan-interest payments, although the interest rate on the monetization loan will be higher, because the installment purchase price will be higher than the loan amount.  The final due dates on the installment contract and the monetization loan will typically be the same, and the principal amount paid on the installment contract at the end will equal or exceed the amount that the seller then owes on the loan.

**4**

Executive Summary:  Monetized Installment Sale

The seller/borrower may then use those monetization loan proceeds—which should be non-taxable as are any other loan proceeds—for any business or investment purpose which the seller/borrower prefers, including to pay debt on the asset being sold or to pay other business debt. The seller/borrower is not restricted in the use of the proceeds of the investment.

The lender does not receive a lien on the installment contract, on the asset that was sold, on the installment payments made by Slim Ventures LLC, or on the investments made by the seller/borrower.

*Unsecured Loans.* The lender does not require that the seller/borrower provide any security, because the lender is looking to Slim Ventures LLC as the source of funds for the seller/borrower to repay the loan. The lender does not require that Slim Ventures LLC provide security, because Slim Ventures LLC agrees to invest the resale proceeds in accord with the lender's investment criteria.

*30 Year Loans.* The lender accepts a 30 year loan, so that Slim Ventures LLC can invest the resale proceeds for 30 years. History shows that when money can be invested for 30 years the likelihood is high that there will be more than sufficient funds available at the end for Slim Ventures LLC to pay the seller in full on the installment contract, so that the lender will be paid in full on the monetization loan.

Because of the Monetized Installment Sale installment-sale transaction and the monetization loan, you, too, will have the opportunity to pursue long-term investments and long-term returns—and that is where your net cash flow will be after the Monetized Installment Sale transaction closes will occur (because all of your cash flow from the Monetized Installment Sale transaction will go to repay the monetization loan. Slim Ventures LLC is not a party to the loan; the monetization loan is a transaction solely between the seller/borrower and the lender.

*Long Term Escrow Accounts.* With a Monetized Installment Sales, three long-term escrows are established, the "Installment Escrow", the "Funding Escrow", and the "Loan Escrow".

Each month, the long-term escrow company will automatically take an installment-interest payment from Slim Ventures LLC's funds, place that money in the Installment Escrow, and credit Slim Ventures LLC with having made an installment-interest payment. Slim Ventures LLC's connection with that money thereupon ends, and the money then automatically transfers to the Funding Escrow, where the money belongs solely to the seller. The money then automatically transfers to the Loan Escrow, and the seller/borrower is credited with having made a loan interest payment. When the principal is paid at maturity, the same process occurs.

This is an automatic process, just as would occur if a borrower were to arrange for incoming payments to be automatically deposited in the borrower's bank and for outgoing payments to be automatically withdrawn from the borrower's account in that bank.

Every January, the long-term escrow company will provide accountings of moneys received and paid, will perform the required tax reporting of the interest payments, and will bill the seller for the annual escrow fee (a modest sum).

**Recapture Tax**

If recapture tax is a considerable factor in a given situation, the Monetized Installment Sale transaction may be revised in one or more respects, so that all or part of the recapture tax may be deferred, much as the capital gains tax is deferred.

**End of the Term - Paying the Tax**

The primary value of this strategy is that it:

1. Allows investors to re-invest at 95% on a tax deferred basis instead of at 75% by paying the tax;



2. Allows investors to pay with future (inflation eroded) dollars.



At the end of the installment contract term, capital gains tax will then be due, at whatever the rate is at that time for capital gains.

**Our Role as a Dealer - Disclaimer**

As a principal, Slim Ventures LLC does not act in the capacity of a broker, sales representative, investment adviser, or tax or legal adviser; does not sell or recommend any security; and does not accept any transaction fee or payment for transaction services.  Circumstances may affect tax and legal outcomes.  Each transaction is different and unique to each participant.  Neither Slim Ventures LLC nor any of its officers or employees may or does provide tax, legal or investment advice.  Nothing herein is intended to be, or may be taken to be, tax, legal or investment advice.  Interested parties should consult their legal, tax and investment advisers before participating in any transaction.

**Contact**

Liquid Capital Partners                    www.liquidcappartners.com
481 East Fashion Blvd                      **chris@liquidcappartners.com**
Salt Lake City, Utah  84107                **Chris Sargent @ 603-785-2355**

R000075

Daniel E. Witte (UT 8576)
Pearson Butler & Carson PLLC
1802 W. South Jordan Pkwy, Suite 200
South Jordan, Utah 84095
Telephone: (801) 495-4104
Fax: (801) 254-9427
Email: dan@pearsonbutler.com
*Attorney for Petitioners*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity,<br><br>Respondents. | **PETITIONERS' RESPONSE TO IRS MOTION TO (1) CONSOLIDATE AND SUMMARILY DENY PETITIONS TO QUASH IRS SUMMONS AND (2) ENFORCE THE SUMMONS**<br><br>Civil Nos. 2:22-cv-00340-DBP<br>　　　　　2:22-cv-00341-DAK-DBP<br>　　　　　2:22-cv-00344-TS-DBP<br>　　　　　2:22-cv-00345-DBB-DBP<br>　　　　　2:22-cv-00347-CMR<br>　　　　　2:22-cv-00348-RJS-JCB<br>　　　　　2:22-cv-00351-DBB-DBP<br>　　　　　2:22-cv-00352-JNP<br><br>**District Court Judge Dale A. Kimball**<br>**Chief Magistrate Judge Dustin B. Pead**<br><br>**Hearing Requested**<br><br>**District Court Judge Dispositive Adjudication Requested, Including Per 28 U.S.C. § 636 (c) and FRCP 73** |

R000076

Petitioners David Michael Bishop ("Bishop") and Slim Ventures, LLC (collectively, "Petitioners"), by and through counsel, hereby respond with their joint opposition to the motion (Docket 13 filed as a consolidated motion under case number 2:22-cv-00340-DBP, hereinafter the "Motion" or "M.") of the Respondents United States, Internal Revenue Service, and Internal Revenue Agent Timothy Bauer (ID # 0324589) (collectively, the "IRS" or "Government").

## I.   CONSOLIDATION

As an initial matter, Petitioners will consent and not object to the Government's request (M. *at* 2, 11-12) under Federal Rule of Civil Procedure ("FRCP") 42 and Local Rule ("DUCivR ") 42-1 to consolidate consideration, hearing, adjudication, and resolution of the eight petitions referenced in the masthead of this opposition (collectively, the eight are the "Petitions"). However, Petitioners' consent and nonobjection is ***conditional upon the following understanding and reservations of rights***, all of which Petitioners understand to be consistent with the default outcome already dictated by operation of the applicable federal statutes, Federal Rules of Civil Procedure, Local Rules, and standard internal consolidation procedures of the United States District Court of Utah: namely, that 1) all matters for final adjudication will be decided by a District Court judge, since Petitioners hereby exercise their right under 28 U.S.C. § 636 (c) and FRCP 73 to opt for a District Court judge handle adjudication of dispositive matters rather than a Magistrate Judge; and 2) because the lowest applicable case number in the consolidated set (i.e. the assignment for 2:22-cv-00341) had Dale A. Kimball assigned as District Court Judge and Chief Magistrate Judge

2

Dustin B. Pead as the Magistrate assigned to the lowest number case (2:22-cv-00340) as well as

to the largest number (5 of 8) of the cases proposed for consolidation, District Court Judge Kimball

will under default rules and procedures be assigned to decide all dispositive matters, and Chief

Magistrate Judge Dustin B. Pead will under default rules and procedures be assigned as the

Magistrate for handling any non-dispositive matters arising in the consolidated cases that District

Judge Kimball may see fit to delegate.[1]

## II.   MOOTNESS

As a second preliminary matter, four of the summons involved with four of the cases (i.e.

all of the summons directed at Key Bank and Zions Bank, in four[2] of the eight cases now proposed

---

[1] DUCivR 42-1 (b); *see also* 28 U.S.C. § 636 (c); FRCP 73.  If any of these current understandings of
Petitioner (which came as a result of reviewing the various rules and statutes, and contacting the Court
Clerk who handles consolidations) unexpectedly prove to somehow be incorrect in any way, Petitioner's
conditional consent and nonobjection to consolidation and anything else is withdrawn, and Petitioners
reserve the right to contest consolidation or any other aspects of Court management, assignment of judicial
officers, or disposition relative to any and all of the respective cases, litigations, petitions, parties, and
motions.  However, Petitioner does not understand the Government to dispute that District Court Judge
Dale A. Kimball and Chief Magistrate Judge Dustin B. Pead would, under proper default application of
governing statutes, rules, and Court internal procedures, be the proper assignments to handle the eight cases
pursuant to any ordered consolidation, or dispute that Petitioner has a statutory right to opt for dispositive
rulings from a District Court Judge, and does not anticipate the Court will either.  Petitioner's decision to
opt for a District Court Judge should not be understood as a disparagement of the various fine magistrates
assigned to the various eight cases, but only as part of Petitioner's effort to obtain a precedential case
opinion from a District Court Judge which might in turn help curtail and deter the conduct of the IRS in
this matter as well as for other taxpayers who might be subjected to similar treatment.  The fact that circuit
court decisions typically have greater precedential reach than the opinions in a district court does not mean
that all circuit court judges are more incisive than all district court judges, and the same is of course true
with respect to district court judges and magistrates.

[2] After the IRS filed its Motion, Summit Crest followed in the footsteps of Key Bank and Zions Bank by
indicating on September 26, 2022, that Summit Crest has no information responsive to the two IRS
summons served upon it.  A true and correct copy of Summit Crest's communication is enclosed.  Thus,

R000078

for consolidation—22:22cv-00347, 22:22-cv-00341, 2:22-cv-00340, and 2:22-cv-00348—which

are 50% of all summons issued) have already proven to be meritless.[3]  Key Bank and Zions Bank

have already responded to the IRS' fishing expedition and indicated that they had no responsive

documents to any of the four IRS summons.[4]  Faced with this inconvenient fact, the IRS has

requested that this Court simply declare the four inconvenient summons moot, sweep them under

the rug, and ignore the four demonstrably meritless summons for purposes of analysis, resolution,

and remedy.  M. *at* 1, 12-13.  But these four summons are not only *not* moot, they are inherent

---

depending on how the IRS responds, **the mootness and fishing expedition issues may now apply to *six of the eight cases* (75%) now proposed for consolidation, including the additional cases 2:22-cv-00352 and 2:22-cv-00345**.  *See* M. *at* 11.

[3]  The IRS admits that "Both banks informed Agent Bauer that then have no information responsive to the summons and thus could not produce records even if ordered to."  M. *at* 12.  *See also* M. *at* 11 (chart showing relationship between Petitioners, IRS summons on various financial institutions, and case numbers).

[4]  M. *at* 12; *see also* 2:22-cv-00340 Docket No. 13-1, *at* ¶¶ 23-25.  The IRS also notes (M. *at* 2, 11, 11 n.71) that "[t]o date, Wells Fargo and Summit Crest have not responded to the summonses".  However, this is unremarkable, given the fact that both entities were served with notices that petitioner to quash the summons had been filed in Court; standard operating procedure for many financial institutions in that situation is to withhold any commentary or response to summons until a court has ruled upon the petition to quash.  *E.g.* 26 U.S.C. § 7609 (d)(2) ("Restriction on examination of records. No examination of any records required to be produced under a summons to which notice is required under subsection (a) may be made … (2) where a proceeding under subsection (b)(2)(A) was begun within the 20-day period referred to in such subsection and the requirements of subsection (b)(2)(B) have been met, except in accordance with an order of the court having jurisdiction of such proceeding or with the consent of the person beginning the proceeding to quash.").  Thus, for example, the fact that Summit Crest has not yet responded or produced until after this Court orders a resolution is entirely legal, and in addition does ***not*** necessarily mean that there will actually turn out to be any responsive documents; if the Court should refuse to quash, Summit Crest could, as one example, likewise simply end up announcing Summit Crest does not have any responsive documents either (indeed, that is the currently anticipated outcome).  Be that as it may, the issue and the harm here goes far beyond the invasion of any private financial documents or accounts, it also involves the chilling effect on business networks from IRS harassment, which is a concern and consequence even when there has been no illegitimate activity and/or there are no relevant or inculpatory documents to produce.

R000079

indications of the fact that the IRS went on an impermissible fishing expedition with those and all

the summons, and issued a massive, harassing, scattershot of summons against every business

connection imaginable in order to harass and chill Petitioners, and dragnet through Petitioners'

financial records in impermissible general warrant manner, without ever really having had any

valid indication or basis for suspicion, need, or permissible purpose in the first place.[5]

The IRS relies on an unreported case, *Wadsworth v. U.S.,* 1998 WL 180913 *1, 1 n.1 (N.D.

Ohio Jan. 22, 1998), for the proposition that four of the petitions and summons associated with the

present litigations are moot.  M. *at* 12-13.  However, *Wadsworth* contains only one cursory

sentence about mootness, which is unsupported by any citations or legal analysis and appears to

have arisen in a situation where the plaintiffs were *pro se* and did not actually contest the issue of

mootness.  In addition, the present case is readily distinguishable from *Wadsworth,* because here

the IRS has merely indicated that "the IRS accepted Key Bank and Zions Banks claim not to have

any responsive documents" at this juncture, M. *at* 13, but has simultaneously ***expressly indicated***

***to Petitioners' counsel that the IRS reserves the right to re-issue new summons toward Key Bank***

_____

[5] Bishop is an attorney and financial advisor. The IRS attempts to impugn Bishop's motivations, character, and rights by referring back to a stipulated injunction from November 2003, almost 20 years ago, in which Bishop, in an attempt to get along with the IRS rather than wasting his time contesting the point in litigation, and expressly providing he was *not* being found to have done anything wrong, voluntarily stipulated to a consent injunction committing not to advise his clients about a tax approach entailing creation of a foreign corporation with leasing of their own labor to it.  M. *at* 1, 6, 6-7, 7 n. 26.  The IRS does not even attempt to pretend that Bishop ever attempted to continue extolling such a tax approach after the stipulated injunction was entered, or that the current IRS investigation has anything to do with any IRS theory that he continued to utilize the foreign lease approach in any way in violation of the injunction.

**and Zions Bank to target the same two Petitioners in connection with the IRS' present investigation and any future investigation(s)**.  As a corollary, the IRS has not, and will not, **make any commitment, representation, or stipulation to this Court that the IRS will not assert further summons against the same two banks in reference to the same two Petitioners, notwithstanding an express request from the Petitioners to do so.**

Accordingly, under the circumstances in this instant case there is a "live controversy" as to all eight petitions notwithstanding assertions to the contrary, M. *at* 12, and given the IRS's clear predilection to target Petitioners repeatedly even after many years have passed by, the "voluntary cessation"[6] and "capable of repetition, yet evading review"[7] exceptions to mootness both apply.[8]

---

[6]  "[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. . . . Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013); *see also City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982); *U.S. v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 202-03 (1968).

[7]  The "disputes capable of repetition, yet evading review" . . . . exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'"  *Federal Election Com'n v. Wisconsin Right To Life, Inc.,* 551 U.S. 449, 42 (2007); *see also U.S. v. Seminole Nation of Oklahoma,* 321 F.3d 939, 943 (10th Cir. 2002).  Both criteria are satisfied in the present case.

[8]  *See, e.g., McCormack v. Hiedeman,* 900 F.Supp.2d 1128, 1139-40 (D. Idaho 2013) (fact that Idaho had committed not to prosecute plaintiff in the short term could not moot case due to "voluntary cessation" and "capable of repetition, yet evading review" exceptions and fact that plaintiff could be prosecuted again on future occasion).   In this instance, the IRS does not even purport to extend a definitive cessation of summons or jeopardy toward any party or summoned financial institution.

R000081

Thus, the IRS' Motion theories[9] and request should be denied, and all eight cases should be adjudicated and decided on the merits.

## III.  THE IRS'S MOTION PAPERS HAVE EFFECTIVELY ADMITTED THE IMPROPER PURPOSE OF TRYING TO CHILL FIRST AMENDMENT SPEECH CONCERNING "MONETIZED INSTALLMENT SALES" ("MIS")

The IRS dislikes "Monetized Installment Sales" ("MIS"), or expression of any theories extolling the potential legality and/or advantages of such, and effectively admits in its filings that the IRS's (improper) purpose for harassing Petitioners with the summons is to chill Petitioners' expression of the view that MIS (or at least some specific forms of it) is a legal tax loophole.[10]  To even discuss or "promote" such ideas, the IRS insists, is to be a "tax scammer[]" and "[h]uckster" associated with "fad[s]", "gimmick[s]", "scams", "scheme", and "farce", because "substance

---

[9]  One of the two key reported mootness cases cited by the IRS (M. *at* 12, n.75), *Prier v. Steed,* 456 F.3d 1209 (10th Cir. 2006), is inapposite and thus unavailing to the IRS.  In *Prier*, unlike the present situation, a litigant asked the Court to resolve a hypothetical dispute about the legal validity of the litigant's defense to an FMLA claim, even though the FMLA claim had been dismissed with prejudice such that the entire legal controversy was permanently negated and was unlikely to ever reoccur between the parties.  *Id. at* 1213-14.  The IRS' second case (M. *at* 12, n.75), *Seneca-Cayuga Tribe of Okla. V. Nat'l Indian Gaming Comm'n,* 27 F.3d 1019, 1028 (10th Cir. 2002), actually supports *Petitioners'* position, because mootness was *rejected* on the ground that there was still a risk of future prosecutorial activities.

[10]  "Bishop's name resurfaced after the IRS' Lead Development Center began identifying MIS promoters", namely the IRS did not like the posited theory by Petitioner Slim Ventures that "'[an]owner of highly appreciated assets can sell them and defer 100% of the capital gains tax for up to 30 years while receiving up to 95% of the value in cash.'"  M. *at* 7.  The IRS then added Petitioner Bishop as a target when "[f]urther research revealed that Bishop is Slim Ventures' managing director."  M. *at* 8.  According to the unknown IRS Agent fictitiously named "Tim Bauer" for "privacy" reasons, the IRS' Lead Development Center "receives, identifies, and develops leads on individuals and entities that promote or aid in the promotion of" "tax schemes" disfavored by the IRS, and the investigation and summons were specifically targeting Petitioners due to their "promotion of MIS".  *See* 2:22-cv-00340 Docket No. 13-1, *at* ¶¶ 2, 4, 15.

R000082

governs over form" and "'mere formalisms'", and only the IRS gets to decide what is virtuous "substance" at any given time.  *See* M. *at* 4-6, 6 n.20.

Petitioners assert the problem with all this is, inter alia, twofold.   First, they assert it is not definitively clear under actual governing legal authorities that any, let alone all, forms of MIS as self-described in a self-serving way by the IRS (M. *at* 4-6) would actually be illegal *at all*, even, *arguendo*, taking the IRS's assertions at face value and even assuming further, *arguendo*, that there was really any indication that either of the Petitioners actually ever engaged in such a transaction. (Quite to the contrary, as Petitioners advocate only forms of MIS they understand the IRS to have already *approved* for sophisticated, publicly well-known taxpayers, see the accompanying exhibits.)  If the IRS cannot demonstrate that the various variants of MIS are actually illegal, this in turn means the IRS cannot invoke such a theory as a valid basis or motivation for the IRS summons, and indeed to the contrary it would mean the summons would be invalid if the summons rely on a foundational legal theory for justification that is inherently defective. Second, it is unconstitutional to use governmental enforcement, threat of enforcement, and/or harassment in an effort to curtail, suppress, or retaliate against First Amendment topics about disputed matters of public concern that the Government disfavors,[11] even where, *arguendo*, the purported intent may

---

[11]   *E.g. White v. Lee*, 227 F.3d 1214 (2000) (investigation and subpoenas by Government HUD officials designed to chill legal arguments and advocacy in the community about the Bel Air project, which advocacy HUD felt was seeking an illegal and discriminatory objective, violated the First Amendment); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 59-64, 67 (1963) (state created commission whose practice was to notify a distributor that it had received books or magazines that the commission found objectionable and thought illegal for distribution to youth, with follow up by police officer to see if dissemination had stopped,

R000083

somehow be deemed benign or well-meaning rather than malicious and even if it is thought that

the speech may potentially eventually lead to unlawful activity. Each of these considerations will

now be discussed further detail.

1) **Petitioners Contend It Is Not Clear MIS Is Actually Illegal At All, And The IRS's Motion Papers Do Not Make This Required Showing**

Unfortunately--and contrary to what the IRS implies--tax law in practical application is not

always a clearcut endeavor, nor are certain interpretations of the statutes and arbitrary applications

of economic principles and line-drawing always specific or predictable. There is far more arbitrary

line drawing, subjectivity, and analysis of grey areas along a spectrum, in the application of the

tax code and various undergirding economic analysis, than the IRS would care to admit.

Uncertainty and second-guessing about tax law and resultant tax planning can occur with even the

most knowledgeable legal and tax experts.[12] Indeed, the IRS implicitly acknowledges the fickle

---

was unconstitutional); *American Civil Liberties Union v. City of Pittsburgh,* 586 F.Supp. 417, 421-25 (W.D.Pa. 1984) (Mayor could not circulate threats of investigation and prosecution against vendors to chill dissemination of disfavored magazine thought to contain illegal content); *see also National Institute of Family and Life Advocates v. Becerra,* 138 S.Ct. 2361, 2371 (2018) (professional speech is not a separate First Amendment and is subject to the Amendment's strict scrutiny protection; California's efforts to force certain speech and disallow other speech in contradiction of California's preferences under threat of legal retaliation was impermissible); *U.S. v. Powell,* 379 U.S. 48, 58 (1964) (a taxpayer "may challenge the summons on any appropriate ground"; a summons should not be enforced if it was "issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.").

[12] As one example, with regard to the very fundamental tax nexus test, the law and line-drawing was interpreted one way until common understanding was changed by a United States Supreme Court decision in 1992 (*Quill Corp. v. North Dakota,* 504 U.S. 298 (1992)), and then then later after much scholarly, political, and internal debate, the Supreme Court reversed itself again twenty-six years later in *South Dakota v. Wayfair, Inc.,* 138 S.Ct. 2080 (2018). But at no time along the way—whether during the pre-1992 period, the 1992-2018 period, or the post 2018 period—would it be fair to say that any of the legal scholars, industry

R000084

and arbitrary nature of the tax law interpretation undertaking in its own Motion, when it frets that holding "eight separate proceedings" in front of eight separate judicial officers of this Court "would . . . risk contradictory results on identical facts and issues" in this very case in relation to the purported impermissibility of MIS and the viability of summons founded on such a theory.  M. *at* 11-12.  (If the law and its application to the facts was as self-evident as the IRS urges, surely eight intelligent judicial officers of good will in the same Court would be able to reliably and independently reach the same conclusions when applying MIS legality and summons analysis.)  In reality, the IRS and everyone else knows that this level of certainty in tax law is a fiction, especially before extensive case law is developed, and yet the IRS attempts to smear Petitioners as fraudsters simply for extolling any potential legal interpretation different from the one preferred by the IRS but not yet apparently ruled upon by any governing court the IRS can or wishes to cite.

The IRS clearly disfavors "Monetized Installment Sales" ("MIS"), or expression of any theories extolling the potential legality and/or advantages of such, and admits in its filings that the IRS' (improper) purpose for harassing Petitioners with the summons is to chill Petitioners' expression of the view that MIS (or at least some specific forms of it) is a legal tax loophole.  In many instances, the IRS can and should announce to the general public in the IRS' own general bulletins what the IRS' interpretive theories, audit priorities, and court precedent clarification

---

advocates, attorneys, tax advisors, or justices themselves were "hucksters", or that they ought to be censored, investigated, punished, audited, etc., simply because they happened to advocate a position against the prevailing winds as measured at any particular period in time.

R000085

efforts are or will be, so as to let tax professionals and taxpayers know when they may be venturing

onto thin ice from the IRS' perspective.   But the fact that the IRS subscribes to a certain view of

the law or tax interpretation (albeit selectively and inconsistently, per its own literature) does not

automatically mean that the IRS's own position will prevail in whole or in part, in every

jurisdiction or this jurisdiction, when such interpretations are actually ruled upon in Court.  Just as

in the *Quill* scenario, there are various instances where government and/or IRS tax law

interpretations do not actually end up prevailing when actually adjudicated on the merits, and it

may be many years before clarity is actually achieved in governing legal decisions.  Debate,

discussion, advocacy, and petitional activity in and out of court about such matters must be allowed

to occur unchilled in the meantime.

As to the present controversy, there is a conspicuous lack of specificity and conclusiveness

with respect to any actual legal support in the IRS' Motion for the proposition that MIS

arrangements of any kind (and especially of the kind allegedly discussed by Petitioners with all

kinds of citations and caveats[13]) are truly impermissible. When carefully examined, the IRS

---

[13]  *See* 2:22-cv-00340 Docket No. 13-1, Exhibit 1, *at* pages 2-3, 2n.1, 3, 3n.1, 6.  Among other things, the alleged "Executive Summary" of Petitioners actually provides internet links documenting eleven examples of prestigious well-known companies successfully utilizing MIS; a *cite and link to a Chief Counsel Internal Revenue Service Memorandum No. 20123401F (Aug. 24, 2012),* https://www.irs.gov/pub/irs-lafa/20123401F.pdf *discussing "Application of Judicial Doctrines to Monetized Transaction" wherein the IRS appears to indicate that at least some MIS transactions were/are permissible*; discloses that there are a variety of "'judicial doctrines' related to 'substance over form' and 'business purpose'" which must be satisfied in a customized manner; disclaims any role as "a broker, sales representative, investment adviser, or tax or legal advisor" and indicates they do not take "any transaction fee or payment for transaction services".   The alleged "Executive Summary" further warns that "Circumstances may affect

R000086

citations, especially as such pertain to MIS, are a multi-layered nothing burger.[14]  The IRS (M. *at*

4-6) describes one form of MIS without really substantiating that either of the Petitioners has

actually engaged in specific prohibited conduct; moreover, the IRS offers little or nothing when it

comes to actually identifying any statute or case precedent clearly, directly, and specifically

outlawing any applicable variant of MIS.  Instead, the IRS simply cites *itself* via its own self-

serving literature and statements of IRS employees and IRS legal counsel to support the

proposition that an MIS is impermissible.[15]  When the IRS literature cited by the IRS is actually

examined, it contains only the most general and vague of assertions, and little or no detailed,

connect-the-dots reasoning between any purportedly forbidden scheme(s) and any specific

language in any statute or case precedent.[16]  The IRS Motion does include a couple of cases, but

---

tax and legal outcomes"; "Each transaction is different and unique to each participant"; "Neither Slim
Ventures LLC nor any of its officers or employees may or does provide tax, legal or investment advice";
"Nothing herein is intended to be, or may be taken to be, tax, legal or investment advice"; and "Interested
parties should consult their legal, tax and investment advisors before participating in any transaction."  *Id.
at* pages 2-3, 2n.1, 3, 3n.1, 6.  *See also* the accompanying exhibits with IRS and scholarly tax law
publications in favor of MIS.  Neither the fictitious Agent Tim Bauer nor the IRS Motion ever address the
aforesaid content in any way, or explain how MIS can be illegal or how any promotion of anything illegal
can actually even occur here, or why it would be permissible under the First Amendment to chill such
discussion, in light of the actual content and citations afforded in the "Executive Summary".

[14]  This is not to suggest that the legal counsel for the Government has done a poor or improper job in
representing the IRS in this case.  To the contrary, they have clearly scoured the legal landscape for legal
precedents and justifications, and in general made the most in their advocacy with what scant and
inconsistent support is actually available for them to use to support the IRS' position concerning MIS.

[15]  *See* M. *at* 6 n.19 (citing the very generalized and sparse IRS Chief Counsel Advisory 202118016, 2021
WL 1854328 (May 7, 2021) without explanation); M. *at* 6 n.21 (citing the very generalized and sparse IRS
New Releases, 2022 WL 2093910 (June 10, 2022) and 2021 WL 2716177 (July 1, 2021)).

[16]   *See* the preceding note.  In addition to the conflicting exhibits and everything else, Petitioners
respectfully urge the Court to consider whether the purported guidance would be sufficiently granular or
detailed to actually tell tax and financial planners with certainty how all of the myriad different scenarios

12

careful examination of the actual opinions for the IRS' citations reveals that such have little or nothing to do with MIS, and at best the IRS has simply excerpted some very general, vague quotes (often with circular logic or assumption of the premise built into them) which are extracted from opinions with inapposite legal issues and facts.[17]

Apparently cognizant of the dearth of governing legal authority (statutes, caselaw, etc.) actually declaring MIS specifically to be impermissible, the IRS breathlessly mentions, and relies heavily upon, an unpublished, non-binding, inapposite case in the Ninth Circuit, *S. Crow Collateral Corp. v. U.S.,* 2018 WL 2454630 (D. Idaho Jan. 19, 2018), *aff'd,* 782 F. App'x 597 (9th Cir. 2019) (collectively, "*Crow*").[18]  M. *at* 8, 13-14, 13 n.85, 14 n.89.   But an actual reading of *Crow* reveals that the parties in that case, unlike the present ones, ***did not raise as an issue whether MIS is even illegal to begin with, nor did they query whether it was an improper purpose for the IRS to use its investigation to chill First Amendment speech about whether MIS is legal****.[19]  The

---

in practical real life ought to be handled or reported in the innumerable leveraged transaction situations which arise in the private sector, or exactly how much leverage proportion would be sufficient to show "substance" instead of "formality".

[17] *E.g.* M. *at* 6 n.20 (quoting the inapposite *Comm'r v. Ct. Holding Co.,* 324 U.S. 331, 334 (1945) case for the very general and conclusory admonishment against "'mere formalisms'", a phrase that in many instances in the eye of the beholder); M. *at* 7 (citing 26 U.S.C. § 6700, which makes only vague reference to "abusive tax shelters" and "false or fraudulent" "plan or arrangements", without ever explaining what might qualify and without ever identifying MIS as constituting such).

[18]  Petitioners are not accused of actually colluding with Crow or being involved in, or bound by, Crow's litigation, but only of allegedly looking at Crow's website and copying expression of some ideas from the website which were disfavored by the IRS.   M. at 8.

[19]  *See S. Crow Collateral Corp.,* 2018 WL 2454630 *at* *1 n. 2 (noting that "[w]hether the transactions comply with applicable law" was not "at issue" in the case as raised by the parties, and so the Court

13

*Crow* Court **expressly did not endorse the IRS's theories about MIS illegality**, or consider whether MIS might be legal and therefore negate the proper purpose and non-harassing justification for any summons purporting to investigate or chill advocacy or such or transactions related thereto.[20] Instead, the *Crow* taxpayers relied almost exclusively on an unsuccessful "dual purpose" theory, not relied upon in the present case, which posited that the IRS could not use a pretextual summons ostensibly initiated for one person/entity for dual purposes[21] in order to de facto investigate a completely different party through subterfuge.[22]

Petitioners continue to assert it is not definitively clear under actual governing legal authorities that any, let alone all, forms of MIS as self-described in a self-serving way by the IRS (M. *at* 4-6) would actually be illegal *at all*, even, *arguendo*, taking the IRS's assertions at face value and even assuming further, *arguendo*, that there was any indication that either of the Petitioners actually ever engaged in some kind of disfavored transaction.   Again, if the IRS cannot demonstrate that the various variants of MIS are actually illegal, this in turn means the IRS cannot invoke such a theory as a valid basis or motivation for the IRS summons, and indeed to the contrary

---

expressly did "not opine on the legality or tax treatment of these or any other particular transactions" and thus left open the issue of whether MIS is legal).

[20] *S. Crow Collateral Corp.,* 2018 WL 2454630 *at* *1 n. 2.

[21] The *Crow* Court at the trial and appellate levels found that there was a bona fide intent to investigate the original taxpayer as well, and in any event the summons could be used to investigate others as a dual purpose investigation.

[22] *See S. Crow Collateral Corp.,* 2018 WL 2454630 *at* *2, 5-8.  Also, in contrast to *Crow*, the IRS admits it "doesn't possess records" which actually "connect[]" Petitioners" to "MIS transactions".  M. *at* 15.

R000089

it would mean the summons would be invalid if the summons rely on a foundational legal theory for justification that is inherently defective.[23]

### 2) Petitioners Contend The IRS Has The Improper Motive And Harassing Pattern Of Conduct Designed To Impermissibly Chill First Amendment Advocacy Of The Legality Of MIS—And The IRS' Own Filings Evidence It

Although the IRS's Motion attempts to evade the point through non-acknowledgement,[24] it is clear that in addition to applying the test associated with other *Powell* criteria,[25] a taxpayer "may challenge the summons on any appropriate ground" and a summons should not be enforced if it was "issued for an improper purpose, such as to harass the taxpayer . . . or for any other purpose

---

[23]   To use an analogy, if someone drives 65 miles per hour on a freeway with normal conditions where the speed limit is 70, and a law enforcement pulls the driver over because law enforcement has an incorrect understanding that anyone driving must not go over 60 and that driving 65 furnishes a justification for pulling over the driver and searching him and harassing him, the search and harassment would be impermissible even if the officer's motivation to promote traffic safety was sincere.  That would be all the more true if the officer then attempted to search or harass the driver for asserting in law firm literature that driving 65 miles an hour is legal and law enforcement cannot validly enforce a 60 mile an hour limit under current applicable law.  In such event, everything would be irreparable fruit from a poisonous tree.

[24]   The IRS has contented, erroneously, that "[t]he only issue to be decided in this summary proceeding is whether the IRS issued the summons in good faith under the rubric established in *United States v. Powell*." M. at 3.  But as discussed elsewhere in this Opposition, *Powell* itself does not say this, and instead makes it clear that its criteria are a mandatory floor but not exclusive to other rights, principles, and protections that also apply.   Indeed, Powell has various other standards and criteria not mentioned by the IRS.  But in addition, and as cited elsewhere, there are statutes and case holdings which have emerged after the 1964 *Powell* case was decided, which also must be obeyed by the IRS.

[25]   Some of the other mandatory, though not exhaustive or exclusive, requirements for a permissible summons, include that summons must: (1) be issued for a legitimate purpose; (2) seek material relevant to that legitimate purpose; (3) seek material that is not already in the government's possession; and (4) satisfy all administrative steps required by the Code.  *U.S. v. Powell,* 379 U.S. 48, 57-58 (1964).  In addition, pursuant to a taxpayer statute enacted subsequent to *Powell*, namely 26 U.S.C. § 7605(b), no taxpayer "shall be subjected to unnecessary examination or investigations.…"

R000090

reflecting on the good faith of the particular investigation."[26]  One form of improper purpose, and

form of harassing conduct, involves precisely what the IRS has already in essence admitted to in

its own IRS Motion—an unconstitutional effort to deploy governmental enforcement, threat of

enforcement, auditing, and harassment of the Petitioners and their business network in an effort to

curtail, suppress, and retaliate against discussion of First Amendment topics about disputed matters

of public concern (namely, the debated legality of MIS as a permissible tax loophole) that the

Government disfavors.[27]  Although the Biden Administration has shown a disturbing appetite for

using investigation, threat of investigation, and adverse Government action to suppress discussion

and advocacy of ideas, theories and allegations disfavored by the Biden Administration, both

generally[28] and here in regard to disputed tax law interpretations, this kind of conduct has long ago

---

[26]  *Powell,* 379 U.S. at 58; *U.S. v. Clarke,* 573 U.S. 248, 254-55 (2014).

[27]  The IRS does not deny that if the IRS summoned the banks to scare off Petitioners' clients and/or to
chill First Amendment speech about controversies in tax law, those would be impermissible purposes as
well as impermissible harassing behavior.  *See* M. *at* 17.  Instead, the IRS asserts that such chilling would
be an "effect, not a purpose".  M. *at* 17.  The problem for the IRS is that a purpose can be inferred from
circumstantial facts and evidence, and here there is sufficient facts and evidence to do so even if the IRS
urges a different interpretation.  *Clarke,* 573 U.S. *at* 254-55 ("As part of the adversarial process concerning
a summons's validity, the taxpayer is entitled to examine an IRS agent when he can point to specific facts
or circumstances plausibly raising an inference of bad faith. . . . The taxpayer must offer some credible
evidence supporting his charge. But circumstantial evidence can suffice to meet that burden; after all, direct
evidence of another person's bad faith, at this threshold stage, will rarely if ever be available. And although
bare assertion or conjecture is not enough, neither is a fleshed out case demanded: The taxpayer need only
make a showing of facts that give rise to a plausible inference of improper motive.").

[28]  Unfortunately, the Biden Administration has exhibited a pattern of using federal law enforcement
agencies, federal tax agencies, and federal health agencies to engage in threatening, harassing, censoring,
investigating, and harassing tactics to suppress advocacy of ideas, legal theories, and political positions the
Administration disfavors, as to a wide-ranging spectrum of topics ranging from COVID, to election laws,
to the Russia investigation of the previous administration, to MIS and other tax theory, etc.  For example,
Mark Zuckerberg of Facebook recently revealed that the FBI strong-armed Facebook into suppressing the

been ruled unconstitutional and it is the responsibility of the Judicial Branch to stand as a guardian of First and Fourteenth Amendment protected free speech and associational expressive and petitional speech.[29]   As discussed in the prior section, tax law in practical application is not always

---

Hunter Biden laptop story just prior to an election, on the ground that it was fake and likely a figment of Russian propaganda; it turned out that this was false and accurate First Amendment dialog had been stifled. David Molloy, *Zuckerberg tells Rogan FBI warning prompted Biden laptop story censorship,* https://www.bbc.com/news/world-us-canada-62688532 (Aug. 26, 2022).   The Biden Administration has also used coercive tactics, harassment, and collusion with private industry to disallow speech about COVID news and theories it disfavors, including censored theories and facts offered by highly qualified doctors and medical professionals that later proved to be true.   *See, e.g.,* Joe Concha, *Hypocritical Psaki leads chilling effort to flag 'misinformation',* https://thehill.com/opinion/white-house/563547-hypocritical-psaki-leads-chilling-effort-to-flag-misinformation/ (Jul. 18, 2021); Leah Barkoukis, *'The Single Most Qualified' mRNA Expert        Censored        After        Discussing        Concerns        Over        Vaccines,* https://townhall.com/tipsheet/leahbarkoukis/2021/06/24/the-single-most-qualified-mrna-expert-censored-after-discussing-concerns-over-vaccines-n2591500 (Jun. 24, 2021); Mike Davis, *Big Tech Censorship of COVID Information Leads to Vaccine Hesitancy,* https://www.newsweek.com/big-tech-censorship-covid-information-leads-vaccine-hesitancy-opinion-1644051 (Nov. 2, 2021).   As another example, prior to *District of Columbia v. Heller,* 552 U.S. 1229 (2008), settling the question, the consensus view of Senator Joe Biden and many of his government agency allies was that the Second Amendment does not confer an individual constitutional right to possess firearms.

Regardless of one's views of such issues, there is great hazard and harm to public policy, the legal system, the tax system, the health system, and democracy itself to the extent the Government is allowed to step into the arena of a controverted issue and declare that the promotion or advocacy of officially disfavored ideas is will be disallowed through Government pressure, intimidation, and retaliation because the Government has already ascertained the "correct" answer ahead of courts actually ruling, scientists actually collecting longitudinal data, voters actually voting, and investigations actually reaching an official conclusion. This principal applies to MIS just as it does to everything else.

[29]   *E.g. White*, 227 F.3d 1214 (investigation and subpoenas by Government HUD officials designed to chill legal arguments and advocacy in the community about the Bel Air project, which advocacy HUD felt was illegal and discriminatory in the outcome promoted, violated the First Amendment); *Bantam Books, Inc.,* 372 U.S. *at* 58, 59-64, 67 (state created commission whose practice was to notify a distributor that it had received books or magazines that the commission found objectionable for distribution to youth, with follow up by police officer to see if dissemination had stopped, was unconstitutional); *American Civil Liberties Union,* 586 F.Supp. *at* 421-25 (Mayor could not circulate threats of investigation and prosecution against vendors to chill dissemination of disfavored magazine thought to contain illegal content); *National Institute of Family and Life Advocate,* 138 S.Ct. *at* 2371 (professional speech is not a separate First Amendment and is subject to the Amendment's strict scrutiny protection; California's efforts to force certain speech and

R000092

a clearcut endeavor, nor are certain interpretations of the statutes and arbitrary applications of economic principles and line-drawing always specific or predictable.  Uncertainty and second-guessing about tax law and resultant tax planning can and has occurred even amongst the most knowledgeable legal and tax experts, as to many issues and sometimes for many years.

In the present case, M. *at* 2, 16-17, the IRS contends there is no indication it has engaged in an improper purpose and that its anonymous agent with a pseudonym cannot even be examined; yet it is clear from what the IRS itself has filed and acknowledged in its motion papers[30] and supporting affidavit that it engaged in the very kind of conduct that the previously discussed *White*, *Bantam Books, Inc., American Civil Liberties Union, National Institute of Family and Life Advocates,* and *Powell* cases all forbid.  Contrary to what the IRS has asserted (M. *at* 4), Petitioners have "plausibly raised an inference of bad faith" such that the Court should, given the confirmatory indications furnished by the IRS and its agent, "hold an evidentiary hearing and allow the "[P]etitioner[s] to question the investigating agent."

---

disallow other speech in contradiction of California's preferences under threat of legal retaliation was impermissible).

[30] *E.g.* M. *at* 8, 9 (admitting that IRS Revenue Agent Time Bauer was targeting Petitioners' "promotion of MIS" as a concept, advocacy which the IRS did not like).

R000093

IV.   **PUTTING ASIDE IMPROPER PURPOSE AND FIRST AMENDMENT SPEECH CONCERNS, THE SUMMONS ARE OVERBROAD, IMPERMISSIBLE FISHING EXPEDITIONS WHICH SHOULD BE QUASHED OR AT MINIMUM SUBJECTED TO *IN CAMERA* REVIEW**

The IRS Motion disregards various established statutory and case law limitations on IRS power. Pursuant to 26 U.S.C. § 7605(b), a taxpayer protection statute enacted subsequent to the *Powell*, no taxpayer "shall be subjected to unnecessary examination or investigations. …" Furthermore, "[t]he Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income."[31] Additionally, when assessing relevance, "[t]he question […] is whether from what the Government already knows there exists the requisite nexus between the taxpayer and the records of another's affairs to make the investigation reasonable [or] an

---

[31] 26 U.S.C. § 7602 (e).  The IRS has not even *asserted* that there is a reasonable indication that there is a likelihood of unreported income on the part of the Petitioners.  Instead, the IRS has attempted to evade its threshold duty to make an assertion by erecting an entirely different strawman proposition: namely that the IRS is not required to "take Bishop at his word that he owes no taxes" and that it is fine for the IRS to speculate that if the IRS engages in a fishing expedition it might turn out that Petitioners somehow owe *penalties* even though it is not even asserted that Petitioners might owe a deficiency in taxes paid.  M. *at* 17.  In other words, the IRS' theory is really that they can first investigate taxpayers general warrant style without any practical guardrails or limitations, and without even making an IRS assertion that the IRS is even pretending a realistic expectation rather than an idle hope that something may be discovered or that the Secretary has a reasonable indication that there is a likelihood of such unreported income, and then retroactively backfill with any justification the IRS might be able to glean after the fact from their improper free-ranging fishing expedition.  *See* M. *at* 17 ("Bishop will never owe § 6700 penalties unless the IRS first determines that he promoted an abusive tax scheme.  The penalties, in other words, come *after* the investigation. . . . [and regardless of if there is an undisputed proposition that the taxpayer does not] owe anything now.").

19

indication of a realistic expectation rather than an idle hope that something may be discovered."[32] The IRS must make a showing of relevance which ties permissible purposes, theories and requested records in a valid, connect-the-dot fashion, for the burden to shift to the Petitioner and for a Summons to be valid.[33]

Additionally, the IRS is not entitled to "*carte blanche* discovery"; a summons will not be enforced if "overbroad and disproportionate" to the investigation, or a mere "fishing expedition" through a taxpayer's records that "might" uncover something about someone.[34]  "A summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the end sought. … The Government cannot go on a "fishing expedition" through appellants' records, . . . and where it appears that the purpose of the summons is 'a rambling exploration' of a third party's files, it will not be enforced. … '[t]his judicial protection against the sweeping or irrelevant order is particularly appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party who may have had some dealing with the person under investigation.'"[35]

---

[32]  *U.S. v. Harrington,* 388 F.2d 520, 524 (2nd Cir. 1968); *Venn v. U.S.,* 400 F.2d 207, 212 (5th Cir. 1968); *Garpeg Ltd. v. U.S,* 583 F.Supp. 789, 794 (S.D.N.Y. 1984).

[33]  *See U.S. v. Goldman,* 637 F.2d 664, 667-68 (9th Cir. 1980); *U.S. v. Monumental Life Ins. Co.,* 440 F.3d 729, 726-37 (6th Cir. 2006) (quash due to failure to substantiate relevance and undue burden of records requested).

[34]  *U,S. v. Coopers & Lybrand*, 550 F.2d 615, 617, 619, 621 (10th Cir. 1977).

[35]  *U.S. v. Theodore,* 479 F.2d 749, 754 (4th Cir. 1973); *see also U.S. v. Matras,* 487 F.2d 1271, 1275 (8th 1973)("[T]he government should not, for the mere sake of its convenience, impose unnecessary burdens on a taxpayer in conducting an audit or investigation for tax liability, particularly where, as here, there is no indication of a purpose to escape any tax liability. The term 'relevant' connotes and encompasses more than 'convenience.' Consequently, . . . the government failed to sustain its burden of proof by alleging a general need for a 'road map.' If we were to accede to the government's view, it is difficult to imagine corporate

R000095

Even when, *arguendo*, the IRS's own facts, evidence, and arguments are accepted at face value, as is largely the approach for this oppositional response of Petitioners, it is clear the IRS has not satisfied these standards, and indeed spent most of its Motion denying or ignoring its obligations rather demonstrating satisfaction of them.  Putting aside the previous independent basis for quashing the summons due to improper purpose and First Amendment speech concerns, the summons are overbroad, impermissible fishing expeditions which should be quashed.

As a less desirable alternative, to the extent, if any, some of the summons are not completely quashed, they should at minimum be subject to *in camera* review prior to release of such materials to the IRS to ensure any produced documents are allowed only to the narrowly tailored extent of what meets the permissible criteria and does not constitute a "fishing expedition" or an "unreasonable and disproportionate", unduly "broad" and burdensome, "vague" and/or intrusive inquiry, and the IRS will be disallowed from exceeding any protective limits on legitimate purpose that the Court may identify.[36]

DATED THIS 28 day of September, 2022.

/s/ Daniel E. Witte
    Daniel E. Witte
    *Attorney for Petitioners*

---

materials that might not contribute to a more comprehensive understanding of the workings of the corporation, and thus, according to the government, be deemed relevant to the tax investigation.").

[36] *See, e.g., David H. Tedder & Assoc., Inc. v. U.S.,* 77 F.3d 1166, 1170 (9th Cir. 1996); *Software Capital Holdings, Inc.,* 2008 WL 11470729 *12. (N.D. Ga.); *see also U.S. v. Richards,* 479 F. Supp. 828, 832-33 (E.D. Va. 1979); *U.S. v. Massengale, et al.,* 1980 WL 1519 * 1-3; *U.S. v. Brooks*, 1976 WL 996, at 2-3 (D.S.C.).

R000096

**Certificate of Word Length**

"I, Daniel E. Witte, certify that this response to the Government's Motion to dismiss and deny quashing of summons in the eight cases sought for consolidation contains 7,747 words and complies with DUCivR 7-1 (a)(4)(B) and/or DUCivR 7-1(a)(4)(A)(i)."

*Daniel E. Witte*
Daniel E. Witte
*Attorney for Petitioners*


**Certificate of Service**

I certify that on September 28, 2022, I served the foregoing via the Court's CM/ECF system, which will serve all parties who have appeared, including without limitation:


DAVID A. HUUBERT
Deputy Assistant Attorney General

MATTHEW UTHALDE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
(202) 353-0013
Mathew.P.Uhalde@usdoj.gov


*Daniel E. Witte*
Daniel E. Witte
Attorney for Petitioners

R000097

Daniel E. Witte (UT 8576)
Pearson Butler & Carson PLLC
1802 W. South Jordan Pkwy, Suite 200
South Jordan, Utah 84095
Telephone: (801) 495-4104
Fax: (801) 254-9427
Email: dan@pearsonbutler.com
*Attorney for Petitioners*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity, <br><br> Respondents. | **NOTICE OF PETITIONERS' JOINT RESPONSE TO IRS MOTION TO (1) CONSOLIDATE AND SUMMARILY DENY PETITIONS TO QUASH IRS SUMMONS AND (2) ENFORCE THE SUMMONS** <br><br> Civil Nos. 2:22-cv-00340-DBP <br>           2:22-cv-00341-DAK-DBP <br>           2:22-cv-00344-TS-DBP <br>           2:22-cv-00345-DBB-DBP <br>           2:22-cv-00347-CMR <br>           2:22-cv-00348-RJS-JCB <br>           2:22-cv-00351-DBB-DBP <br>           2:22-cv-00352-JNP <br><br> **District Court Judge Dale A. Kimball** <br> **Chief Magistrate Judge Dustin B. Pead** <br><br> **Hearing Requested** <br><br> **District Court Judge Dispositive Adjudication Requested, Including Per <u>28 U.S.C. § 636</u> (c) and <u>FRCP 73</u>** <br><br> ***Other Related District Judges Include:*** <br> **Chief Judge Robert J. Shelby,** <br> **Hon. Ted Stewart, Hon. Jill N. Parrish,** <br> **Hon. David B. Barlow** <br><br> ***Other Related Magistrate Judges Include:*** <br> **Hon. Cecilia M. Romero, Hon. Daphne A. Oberg, Hon. Jared C. Bennet** |

Petitioners David Michael Bishop ("Bishop") and Slim Ventures, LLC (collectively, "Petitioners"), by and through counsel, hereby give notice that they have filed a joint "Response To IRS Motion To (1) Consolidate And Summarily Deny Petitioner To Quash IRS Summons And (2) Enforce The Summons" (hereinafter "Response"), which IRS motion was filed by the United States on August 26, 2022 (hereinafter, "IRS Motion"), pursuant to Local Rule 42-1, in *David Bishop v. United States,* 2:22-cv-000340 (D. Utah) (hereinafter "First Filed Case"), for and in relation to all of Civil Nos. 2:22-cv-00340-DBP, 2:22-cv-00341-DAK-DBP, 2:22-cv-00344-TS-DBP, 2:22-cv-00345-DBB-DBP, 2:22-cv-00347-CMR, 2:22-cv-00348-RJS-JCB, 2:22-cv-00351-DBB-DBP, and 2:22-cv-00352-JNP (collectively the "Eight Cases").

Petitioners' substantive Response has been filed in the First Filed Case, but is asserted and applies with equal force relative to Petitioners' opposition to the IRS Motion as such IRS Motion is meant to apply to all of the Eight Cases.  It is Petitioners' best current understanding from inquiry to the Court that the IRS Motion will be assigned and heard before District Court Judge Dale A. Kimball, with Chief Magistrate Judge Dustin B. Pead also assigned to the matter.

Respectfully submitted this September 28, 2022.

/s/ Daniel E. Witte
  Daniel E. Witte
  *Attorney for Petitioners*

R000099

**Certificate of Service**

I certify that on September 28, 2022, I served the foregoing via the Court's CM/ECF system, which will serve all parties who have appeared, including without limitation:


DAVID A. HUUBERT
Deputy Assistant Attorney General

MATTHEW UTHALDE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
(202) 353-0013
Mathew.P.Uhalde@usdoj.gov

*Daniel E. Witte*
Daniel E. Witte
**Attorney for Petitioners**

R000100



*Summit Crest*

September 26. 2022

RE: IRS Summons to Summit Crest Financial, LLC

To Whom it may concern:

Upon review of the two Summons received from the IRS addressed to Summit Crest Financial, LLC copies of which are attached.

Both of which are asking for any documents where either David Michael Bishop or Slim Ventures are identified as Seller and Borrower in all monetized installment sale transactions. Upon review of our companies' transactions, I can find no transactions in where either David Michael Bishop or Slim Ventures are identified as Seller and Borrower.

So, I hereby attest there is no such thing that the request is asking for, and hence have not and cannot provide anything further.

_____                    9/26/22

David C Helm II, manager                    Date

FL Office: 239-206-1249                   David C Helm II          UT Office: (801) 550-2788
13379 McGregor Blvd, STE 2          Principal Broker / Owner        41 E 7720 South
Ft Myers, FL 33919                                              Midvale UT, 84047

R000101



**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**Washington, D.C. 20224**

SMALL BUSINESS/SELF-EMPLOYED DIVISION

05/04/2022

Summit Crest Financial, LLC
13379 McGregor Blvd #2
Fort Myers, FL 33919

Dear Sir or Madam:

Enclosed is an Administrative Summons (Form 2039) and Invoice and Authorization for Payment of Administrative Summons Expenses (Form 6863) relating to the matter of name of David Michael Bishop.

To assist in identifying account numbers, the TIN for David Michael Bishop is 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.

Compliance with this summons will be satisfied by mailing photocopies of the requested information to the address below by the date specified in the summons.  Documents may also be provided on electronic media in an Adobe (pdf) format (preferred format). Your personal appearance is not necessary.

It is not anticipated that the information gathering, or transmittal will be a lengthy or costly process. If you expect delays of more than 30 days or costs exceeding $800.00, please contact my group manager, Tiffany Sim, at phone number (626) 927-1213, in advance.

Federal Law allows reimbursement according to the schedule attached on Form 6863. You must complete and return Form 6863, along with a copy of the summons to be reimbursed for research costs.  The reimbursement form should only be returned upon full compliance with the summons.

Mail your response to:  Internal Revenue Service, 110 North City Parkway, Las Vegas, NV 89106, Attention: Timothy Bauer or email Timothy.Bauer@irs.gov.
Thank you for your cooperation, and if you have any questions, please call me at (702) 868-5312.

Sincerely,

Digitally signed by
Timothy Bauer
Date: 2022.05.03 07:15:45
-07'00'

Timothy Bauer
Revenue Agent
ID # 0324589

R000102

# Summons

In the matter of David Michael Bishop. 32 West 200 South #628, Salt Lake City, Utah 84101

Internal Revenue Service *(division)*  Small Business Self Employed

Industry/Area *(name or number)*  South West Area Examination

Periods  January 01, 2018 through date of compliance

## The Commissioner of Internal Revenue

To  Summit Crest Finacial, LLC

At  13379 McGregor Blvd #2, Fort Myers, Florida 33919

You are hereby summoned and required to appear before Timothy Bauer Identification Number 0324589
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books,
records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any
offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the
periods shown.

See Summons Attachment

## Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of
the original.

| Signature of IRS officer serving the summons Digitally signed by Timothy Bauer Date: 2022.05.03 11:25:04 -07'00' | Title Revenue Agent |
|---|---|

**Business address and telephone number of IRS officer before whom you are to appear**

110 North City Parkway, Las Vegas, Nevada 89106, 702-868-5312

**Place and time for appearance at** 110 North City Parkway, Las Vegas, Nevada 89106 - RECORDS CAN BE MAILED

on the 6th _____ day of June _____ , 2022 _____ at 10:00 _____ o'clock a _____ .m.
                                        *(year)*

**Issued under authority of the Internal Revenue Code this** 4th _____ day of May _____ , 2022 _____
                                                                                    *(year)*

| Signature of issuing officer  Digitally signed by Timothy Bauer Date: 2022.05.03 11:25:31 -07'00' | Title Revenue Agent |
|---|---|
| Signature of approving officer *(if applicable)* Digitally signed by Tiffany Bim Date: 2022.05.03 10:59:35 -07'00' | Title Group Manager |

Form **2039** (Rev. 3-2020)        Catalog Number 21405J        publish.no.irs.gov        Department of the Treasury - **Internal Revenue Service**
**Part A** — to be given to person summoned

R000103

## Notice of Payment Information for Recipients of IRS Summons

If you are a third-party recipient of a summons, you may be entitled to receive payment for certain costs directly incurred which are reasonably necessary to search for, reproduce, or transport records in order to comply with a summons.

This payment is made only at the rates established by the Internal Revenue Service to certain persons served with a summons to produce records or information in which the taxpayer does not have an ownership interest. The taxpayer to whose liability the summons relates and the taxpayer's officer, employee, agent, accountant, or attorney are not entitled to this payment. No payment will be made for any costs which you have charged or billed to other persons.

The rate for search costs is limited to the total amount of personnel time spent locating and retrieving documents or information requested by the summons. Specific salaries of such persons may not be included in search costs. In addition, search costs do not include salaries, fees, or similar costs for analysis of material or for managerial or legal advice, expertise, research, or time spent for any of these activities. If itemized separately, search costs may include the actual costs of extracting information stored by computer in the format in which it is normally produced, based on computer time and necessary supplies. Time for computer search may be paid.

Rates for reproduction costs for making copies or duplicates of summoned documents, transcripts, and other similar material may be paid at the allowed rates. Photographs, films, and other material are reimbursed at cost.

The rate for transportation costs is the same as the actual cost necessary to transport personnel to locate and retrieve summoned records or information, or costs incurred solely by the need to transport the summoned material to the place of examination.

In addition to payment for search, reproduction, and transportation costs, persons who appear before an Internal Revenue Service officer in response to a summons may request payment for authorized witness fees and mileage fees. You may make this request by contacting the Internal Revenue Service officer or by claiming these costs separately on the itemized bill or invoice as explained below.

### Instructions for requesting payment

After the summons is served, you should keep an accurate record of personnel search time, computer costs, number of reproductions made, and transportation costs. Upon satisfactory compliance, you may submit an itemized bill or invoice to the Internal Revenue Service before whom you were summoned to appear, either in person or by mail to the address furnished by the Internal Revenue Service officer. Please write on the itemized bill or invoice the name of the taxpayer to whose liability the summons relates.

If you wish, Form 6863, Invoice and Authorization for Payment of Administrative Summons Expenses, may be used to request payment for search, reproduction, and transportation costs. Standard Form 1157, Claims for Witness Attendance Fees, Travel, and Miscellaneous Expenses, may be used to request payment for authorized witness fees and mileage fees. These forms are available from the Internal Revenue Service officer who issued the summons.

If you have any questions about the payment, please contact the Internal Revenue Service officer before whom you were summoned to appear.

Anyone submitting false claims for payment is subject to possible criminal prosecution.

Form **2039** (Rev. 3-2020)     Catalog Number 21405J     publish.no.irs.gov     Department of the Treasury - **Internal Revenue Service**
**Part B** — to be given to person summoned

R000104

## SUMMONS ATTACHMENT

Issued to:  Summit Crest Financial, LLC
In the matter of:  David Michael Bishop
    Address:  13379 McGregor Blvd #2, Fort Myers, Florida 33919
    Periods:  January 01, 2018 through date of compliance

For the periods specified above, please furnish all books, papers, records, and other data concerning all accounts in which the above-named individual(s) is identified as seller and borrower in all monetized installment sale transactions. Records may pertain to an individual, sole proprietor with DBA, member of LLC, officer and/or board member of corporation, partner of general partnership, limited partnership and/or trust. This request for records includes, but is not limited to:

The records summonsed are described as (but not limited to):

- Escrow file
- Loan records including applications and supporting documentation
- All checks (front and back) paid into and out of the escrow
- Payment instructions
- Wire transfers or other means of monetary transfer of escrow funds
- Memorandums or notes of contact
- Contracts
- Promissory notes
- Payment records
- Closing statement
- 1099 INT issued
- 1099 INT received

Personal appearance is not required if the required records are received by mail by the date specified by the summons.

Form **6863**
(Rev. 4-2014)

Department of the Treasury – Internal Revenue Service

**Invoice and Authorization for Payment of Administrative Summons Expenses**

**Section A – Invoice** *(Items 1 - 11 must be completed by payee)*
**IMPORTANT: Failure to complete each field in Section A may result in payment delays.**

1. Payee's invoice no.: *

2. Payee's Federal Tax ID: *

3. Name and address of payee  *

4. Name and address of taxpayer to whose liability the summons relates *

5. Payment method:
Remittance should be made by EFT *(electronic funds transfer)* to the following account:

☐ Checking     ☐ Savings     ☐ General ledger

*IRS Agent/Officer: Do not hold form 6863 trying to obtain or clarify information for item 5. Beckley Finance Center will pursue any needed information from the payee and return the invoice to the payee if necessary.*

ABA Routing # _____ Account # _____
**Note:** If receipt of payment via EFT creates a hardship and you are a sole proprietor, please contact the Beckley Finance Center at (304) 254-3300 and ask to speak with a Summons Technician.

**Service/Financial Records Provided**

6. Reproduction

  a. Photocopies or paper copies of microfiche *(per frame):* * _____ documents at $0.20 per page        a.

  b. Storage media *(compact disk, flash drive, etc.):* Actual cost *        b.

  *Search and processing*

  c. Clerical/technical: *        _____ hours at $8.50 per hour        c.

  *Search and processing*

  d. Other costs *(including transportation)* - please specify: *        d.

I certify that this invoice, and any other information therein, is true and correct to the best of my knowledge and belief, and that payment has not been received for the above services.        **Total Amount Claimed  6e.**

7. Printed name of financial institution official or payee *

8a. Title  *

8b. Business e-mail address  *

9. Signature of financial institution or payee. Handwritten or electronic signature accepted *

10. Date signed *

11. Telephone number *

* Indicates a required field

**Section B – Authorization and Certification**
*(Section B below for IRS use only)*

12. Date summons issued: * _____

15. Total amount claimed: * _____

13. Date complied with: * _____

16a. Disallowance *(if any):* * _____

14. Date invoice received: * _____

16b. Disallowance reason: * _____

17. Amount to payee: * _____

18. Accounting Classification: *(For questions, contact your Budget Office)*

Requisition # * _____ OR Cost Center * _____ AND Functional Area * _____

I certify that the articles and services listed were received and that claims for excessive and unauthorized amounts have been disallowed for payment to the requestor.

19. Printed name of IRS Representative *

20. Title *

21. Telephone number *

22. Signature of IRS Representative *

23. Date signed *

Payment is approved and it is within my delegated authority to approve payment of this invoice.

24. Printed name of IRS Representative *

25. Title *

26. Telephone number *

27. Signature of IRS Representative *

28. Date signed *

29. Submitted by:   ☐ Fax   ☐ Email   ☐ Mail

30. Date submitted to Beckley: *

Catalog Number 25140B        www.irs.gov        *(Prior revisions are obsolete)*        Form **6863** (Rev. 4-2014)

R000106



**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**Washington, D.C. 20224**

SMALL BUSINESS/SELF-EMPLOYED DIVISION

05/04/2022

Summit Crest Financial, LLC
13379 McGregor Blvd #2
Fort Myers, FL 33919

Dear Sir or Madam:

Enclosed is an Administrative Summons (Form 2039) and Invoice and Authorization for Payment of Administrative Summons Expenses (Form 6863) relating to the matter of name of Slim Ventures.

To assist in identifying account numbers, the TIN for Slim Ventures is 20-7111042.

Compliance with this summons will be satisfied by mailing photocopies of the requested information to the address below by the date specified in the summons. Documents may also be provided on electronic media in an Adobe (pdf) format (preferred format). Your personal appearance is not necessary.

It is not anticipated that the information gathering, or transmittal will be a lengthy or costly process. If you expect delays of more than 30 days or costs exceeding $800.00, please contact my group manager, Tiffany Sim, at phone number (626) 927-1213, in advance.

Federal Law allows reimbursement according to the schedule attached on Form 6863. You must complete and return Form 6863, along with a copy of the summons to be reimbursed for research costs. The reimbursement form should only be returned upon full compliance with the summons.

Mail your response to: Internal Revenue Service, 110 North City Parkway, Las Vegas, NV 89106, Attention: Timothy Bauer or email Timothy.Bauer@irs.gov.
Thank you for your cooperation, and if you have any questions, please call me at (702) 868-5312.

Sincerely,

Digitally signed by
Timothy Bauer
Date: 2022.05.03 07:30:37
-07'00'

Timothy Bauer
Revenue Agent
ID # 0324589

# Summons

In the matter of Slim Ventures 1935 West 4700 South Suite 501, Salt Lake City, Utan

Internal Revenue Service *(division)*    Small Business Self Employed

Industry/Area *(name or number)*    South West Area Examination

Periods  January 01, 2018 through date of compliance

## The Commissioner of Internal Revenue

To  Summit Crest Finacial, LLC

At  13379 McGregor Blvd #2, Fort Myers, Florida 33919

You are hereby summoned and required to appear before Timothy Bauer Identification Number 0324589

an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See Summons Attachment

## Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

| Signature of IRS officer serving the summons | Title |
|---|---|
| *[signature]* Digitally signed by Timothy Bauer Date: 2022.05.03 10:21:48 -07'00' | Revenue Agent |

Business address and telephone number of IRS officer before whom you are to appear

110 North City Parkway, Las Vegas, Nevada 89106, 702-868-5312

Place and time for appearance at 110 North City Parkway, Las Vegas, Nevada 89106 - RECORDS CAN BE MAILED

on the 6th          day of June          , 2022          at 10:00          o'clock a          .m.
                                   *(year)*

Issued under authority of the Internal Revenue Code this 4th          day of May          , 2022
                                                                                      *(year)*

| Signature of issuing officer | | Title |
|---|---|---|
| *[signature]* Digitally signed by Timothy Bauer Date: 2022.05.03 10:22:14 -07'00' | | Revenue Agent |
| Signature of approving officer *(if applicable)* | | Title |
| *[signature]* Digitally signed by Tiffany Sim Date: 2022.05.02 10:46:24 -07'00' | | Group Manager |

Form **2039** (Rev. 3-2020)          Catalog Number 21405J          publish.no.irs.gov          Department of the Treasury - **Internal Revenue Service**
Part A — to be given to person summoned

R000108

## Notice of Payment Information for Recipients of IRS Summons

If you are a third-party recipient of a summons, you may be entitled to receive payment for certain costs directly incurred which are reasonably necessary to search for, reproduce, or transport records in order to comply with a summons.

This payment is made only at the rates established by the Internal Revenue Service to certain persons served with a summons to produce records or information in which the taxpayer does not have an ownership interest. The taxpayer whose liability the summons relates and the taxpayer's officer, employee, agent, accountant, or attorney are not entitled to this payment. No payment will be made for any costs which you have charged or billed to other persons.

The rate for search costs is limited to the total amount of personnel time spent locating and retrieving documents or information requested by the summons. Specific salaries of such persons may not be included in search costs. In addition, search costs do not include salaries, fees, or similar costs for analysis of material or for managerial or legal advice, expertise, research, or time spent for any of these activities. If itemized separately, search costs may include the actual costs of extracting information stored by computer in the format in which it is normally produced, based on computer time and necessary supplies. Time for computer search may be paid.

Rates for reproduction costs for making copies or duplicates of summoned documents, transcripts, and other similar material may be paid at the allowed rates. Photographs, films, and other material are reimbursed at cost.

The rate for transportation costs is the same as the actual cost necessary to transport personnel to locate and retrieve summoned records or information, or costs incurred solely by the need to transport the summoned material to the place of examination.

In addition to payment for search, reproduction, and transportation costs, persons who appear before an Internal Revenue Service officer in response to a summons may request payment for authorized witness fees and mileage fees. You may make this request by contacting the Internal Revenue Service officer or by claiming these costs separately on the itemized bill or invoice as explained below.

### Instructions for requesting payment

After the summons is served, you should keep an accurate record of personnel search time, computer costs, number of reproductions made, and transportation costs. Upon satisfactory compliance, you may submit an itemized bill or invoice to the Internal Revenue Service officer before whom you were summoned to appear, either in person or by mail to the address furnished by the Internal Revenue Service officer. Please write on the itemized bill or invoice the name of the taxpayer to whose liability the summons relates.

If you wish, Form 6863, Invoice and Authorization for Payment of Administrative Summons Expenses, may be used to request payment for search, reproduction, and transportation costs. Standard Form 1157, Claims for Witness Attendance Fees, Travel, and Miscellaneous Expenses, may be used to request payment for authorized witness fees and mileage fees. These forms are available from the Internal Revenue Service officer who issued the summons.

If you have any questions about the payment, please contact the Internal Revenue Service officer before whom you were summoned to appear.

Anyone submitting false claims for payment is subject to possible criminal prosecution.

Form **2039** (Rev. 3-2020)    Catalog Number 21405J    publish.no.irs.gov    Department of the Treasury - **Internal Revenue Service**
**Part B** — to be given to person summoned

R000109

# SUMMONS ATTACHMENT

Issued to:    Summit Crest Financial, LLC
In the matter of:  Slim Ventures
Address:    13379 McGregor Blvd #2, Fort Myers, Florida 33919
Periods:    January 01, 2018, through date of compliance

For the periods specified above, please furnish all books, papers, records, and other data concerning all accounts in which the above-named individual(s) is identified as seller and borrower in all monetized installment sale transactions. Records may pertain to an individual, sole proprietor with DBA, member of LLC, officer and/or board member of corporation, partner of general partnership, limited partnership and/or trust. This request for records includes, but is not limited to:

The records summonsed are described as (but not limited to):

- Escrow file
- Loan records including applications and supporting documentation
- All checks (front and back) paid into and out of the escrow
- Payment instructions
- Wire transfers or other means of monetary transfer of escrow funds
- Memorandums or notes of contact
- Contracts
- Promissory notes
- Payment records
- Closing statement
- 1099 INT issued
- 1099 INT received

Personal appearance is not required if the required records are received by mail by the date specified by the summons.

**Office of Chief Counsel**
**Internal Revenue Service**
# Memorandum

Number: **20123401F**
Release Date: 8/24/2012

CC:LB&I:NR:HOU2:JSLuff
POSTF-126770-10

UILC: 453.00-00, 453A.04-00

date: July 18, 2012

to: Michael FitzGerald
Revenue Agent
(Large Business & International)

from: Associate Area Counsel (Houston, Group 2)
(Large Business & International)

---

subject: Application of Judicial Doctrines to Monetization Transaction

This memorandum responds to your request for assistance. This advice may not be
used or cited as precedent. This writing may contain privileged information. Any
unauthorized disclosure of this writing may undermine our ability to protect the
privileged information. If disclosure is determined to be necessary, please contact this
office for our views.

LEGEND

| | | |
|---|---|---|
| Taxpayer | = | . |
| Transaction | = | |
| Asset | = | |
| Purpose | = | |
| Plan | = | |
| Group | = | |
| Advisors | = | |
| Buyer | = | |
| Buyer Parent | = | |
| Lender | = | |
| Hedge Bank | = | |
| Paying Agent Bank | = | |
| Year 1 | = | |
| Year 2 | = | |

POSTF-126770-10                              2

| | |
|---|---|
| Year 3 | = |
| $A | = |
| $B | = |
| $C | = |
| $D | = |
| $E | = |
| $F | = |
| $G | = |
| $H | = |
| I Rate | = |
| J Amount | = |
| K Amount | = |
| L Amount | = |
| M Date | = |
| N Date | = |
| O Date | = |
| P Date | = |
| Q Date | = |
| R | = |
| S | = |
| Entity T | = |
| U% | = |
| V% | = |
| W% | = |
| X% | = |
| Y% | = |
| Z | = |
| AA Bank | = |
| BB Bank | = |
| CC Bank | = |
| DD Bank | = |
| EE Bank | = |
| FF Bank | = |
| Event GG | = |
| Event HH | = |

<u>ISSUES</u>

I.    Whether the Service should assert the substance over form doctrine to
      disregard the form of Taxpayer's Transaction and disallow the taxpayer's
      deferral of gain recognition on its sale of Asset.

R000112

POSTF-126770-10                                        3

II.     Whether, in the alternative, the Service should assert the step transaction doctrine to disregard certain steps of Taxpayer's Transaction and disallow the taxpayer's deferral of gain recognition on its sale of Asset.[1]

CONCLUSIONS

I.      The Service should not assert the substance over form doctrine.  The substance of Taxpayer's Transaction does not vary from its form.

II.     The Service should not assert the step transaction doctrine.  Each step of the Transaction has independent economic significance.

FACTS

A "Transaction" is an orchestrated series of transactions between several parties pursuant to a promoted transaction.  Taken as a whole, the Transaction enables the seller to (1) defer reporting sale proceeds and recognizing gain from the sale of Asset under the installment sales method of I.R.C. § 453, but (2) obtain cash roughly equal to the sales proceeds from a loan secured by the installment sale notes.

In Year 1, Taxpayer held approximately J Amount of Asset in various locations around the United States.  That year, Taxpayer was put in a position that required the generation of a large amount of cash.  In an effort to accomplish Purpose, Taxpayer's Board of Directors approved a plan (the Plan) that required Event GG, the retirement of corporate debt, and Event HH.  In order to fund the Plan, Taxpayer needed to sell approximately K Amount of its Asset.  The remaining L Amount of Asset would be retained by Entity T.

Taxpayer retained the Advisors as advisors in selling its Asset.  The sale was accomplished through a four stage bid selection process through which interested parties were invited to bid on the Asset.  The preferred structure of the sale was through the use of installment notes and standby letters of credit, and such preferred structure was outlined as part of the bid package provided by the Advisors.

Taxpayer signed a sales contract with the winning bidder, Buyer, a subsidiary of Buyer Parent, on M Date of Year 1.  The sales price was approximately $A.  Buyer paid U% of this amount in cash and the remaining W% as installment notes (the "Purchase Notes").  The Purchase Notes are R-year, interest-only notes, are in registered form, and are supported by irrevocable standby letters of credit (the "Letters of Credit") issued by four separate banks (the "LOC Banks"), which at the time were all Z banks:  AA Bank, BB Bank, CC Bank, and DD Bank.  The Letters of Credit are non-negotiable, non-transferable, and can be drawn upon only in the event of default.  Interest on the

---

[1] This advice does not implicate the Service's recently issued guidance (see e.g., LB&I Directive dated July 15, 2011 and Chief Counsel Notice CC-2012-08), regarding assertion of the "Economic Substance Doctrine."   Exam is considering assertion of substance over form and step transaction judicial doctrines and not the economic substance doctrine.

Purchase Notes is paid quarterly and is tied to I Rate.

The Letters of Credit are backed by cash time deposits (the "Deposits") made by Buyer in an amount equal to the Purchase Notes.  The Deposits serve as collateral for the LOC Banks in the event that Buyer defaults on the Purchase Notes.  If any of the LOC Banks do not maintain a required credit rating of at least "A+" by Standard & Poor's and at least "A1" by Moody's, the LOC Bank in question must be replaced (via "substitution") with another bank within 30 days of the reduced credit rating.[2]  The Deposits provide for variable interest payments to Buyer in nearly identical terms to those of the Purchase Notes.  Buyer also entered into an interest rate protection agreement ("Swap Agreement") with Hedge Bank to hedge against any difference in interest paid on the Deposits and due under the Purchase Notes.

Payments from the Deposits and the Swap Agreement are assigned to fund the interest due on the Purchase Notes each quarter.  Paying Agent Bank acts as paying agent on these amounts and allocates funds received and payable under the various agreements.  In addition to the Deposits, Buyer paid an additional U% for fees to the LOC Banks and an additional W% for fees paid to the Paying Agent.

After signing the Asset sales contract, Taxpayer created two wholly-owned, bankruptcy-remote limited liability companies (LLCs) (the "Special Purpose Entities," or "SPEs"), which are disregarded entities for tax purposes.  Taxpayer then conveyed the Purchase Notes to the SPEs.  Taxpayer treated X% of the conveyance as a sale of the Purchase Notes to the SPEs in exchange for intercompany notes totaling an amount equal to X% of the face value of the Purchase Notes.  Taxpayer treated the remaining Y% of the Purchase Notes as a contribution of capital.

The SPEs took out loans ("Monetization Loans") from Lender, for $B, approximately X% of the face value of the Purchase Notes.  The SPEs pledged the Purchase Notes and Letters of Credit as security for the Monetization Loans.  The loan agreements were signed and the proceeds from the Monetization Loans were distributed to the SPEs on Q Date of Year 1, S days after the Asset sale.  The SPEs then distributed the entire amount of the loan proceeds to Taxpayer to repay the intercompany loans.

To fund the loans to the SPEs, Lender initially used its own conduit lenders to issue participations in the Monetization Loans to various investors.  The interest rates on the Monetization Loans are variable and are tied to the funding costs incurred by Lender or its conduit lenders, plus additional basis points for fees, commissions, and profit

---

[2] On P Date of Year 2, Standard & Poor's lowered its credit rating of CC Bank, one of the LOC Banks, which constituted a substitution event.  At Buyer's request, EE Bank issued substitute letters of credit and replaced CC Bank.  Taxpayer paid approximately $H in fees associated with this substitution.  On N Date, Year 3, the credit rating of the replacement bank, EE Bank, was lowered and another substitution event occurred.  FF Bank replaced EE Bank, and Taxpayer paid approximately $E in fees associated with this substitution and an additional $F in fees associated with terminating the EE Bank letter of credit. Currently, the four LOC Banks are AA Bank, BB Bank, FF Bank, and DD Bank.

POSTF-126770-10                          5

margins.[3]

The $A sale of the Asset provided the funds necessary to complete Event GG, reduce existing debt of Taxpayer, and complete Event HH in order to accomplish Purpose. While Taxpayer recognized a substantial gain on the Asset sale for financial reporting purposes, it used the installment sale method under I.R.C. §§ 453 and 453A to defer the $C tax gain for R years.

LAW

Section 453

Section 453(a)[4] provides, in general, that income from an installment sale is accounted for, for tax purposes, under the installment method.  Section 453(b) defines an "installment sale" as a disposition of property if at least one payment is received after the close of the taxable year of the sale.  Section 453(c) defines the term "installment method" as a method under which the income recognized for any taxable year is the proportion of the payments received in that year which the gross profit (realized or to be realized when payment is completed) bears to the total contract price.

Section 453(b)(2)(A) excludes dealer dispositions from the installment method of reporting income for tax years beginning after December 31, 1987.  Section 453(l)(1)(B) defines a dealer disposition of real property as any disposition of real property which is held by the taxpayer for sale to customers in the ordinary course of the taxpayer's business.  Section 453(l)(2)(A) specifically excludes farm property dispositions from the definition of dealer property. Farm property is defined as any property used in the trade or business of farming within the meaning of I.R.C. §§ 2032A(e)(4) or (5).

Section 2032A(e)(4) states the term "farm" includes stock, dairy, poultry, fruit, furbearing animals, and truck farms, plantations, ranches, nurseries, ranges, greenhouses, orchards, and woodlands.  Section 2032A(e)(5) states that the term "farming purposes" means – cultivating the soil or raising or harvesting any agricultural or horticultural commodity on a farm; handling, drying, packing, grading, or storing on a farm any agricultural or horticultural commodity in its un-manufactured state; and the planting, cultivating, caring for, or cutting of trees, or the preparation (other than milling) of trees for market.

---

[3] In a memorandum dated O Date of Year 1 addressed to Taxpayer's board of directors, Taxpayer's Group (group responsible for implementing Taxpayer's Plan) predicted $G in tax savings by structuring the Asset sale as Transaction.  The Group also states that such a prediction ignored the spread (if any) between the interest rate on the Purchase Notes and the interest rate on the Monetization Loans.  The exam team has interpreted this to mean that Taxpayer did not expect to see much of a difference in interest received on the Purchase Notes and paid on the Monetization Loans.  However, during the initial loan period Taxpayer's SPEs actually made a profit on the interest rate spread between the Purchase Notes and the Monetization Loans.

[4] Unless otherwise indicated, section references are to sections of the Internal Revenue Code effective for the taxable years at issue.

6

Section 453A(d) provides that if an installment obligation is pledged to secure a loan or other indebtedness, the receipt of the proceeds from the indebtedness is treated as a payment on the installment obligation.  Section 453A(b)(3)(B) provides an exception to the pledge prohibition for farm property, within the meaning of I.R.C. § 2032A(e)(4) or (5).

Section 453(f)(3) provides that an evidence of indebtedness of the person acquiring the property will not be considered a payment "whether or not payment of such indebtedness is guaranteed by another person."  The legislative history indicates that Congress enacted I.R.C. § 453(f)(3) in 1980 in response to the conflicting court opinions as to whether a standby letter of credit securing an installment note should be treated as a payment for purposes of the installment sale provisions.  In Griffith v. Commissioner, 73 T.C. 933 (1980), the Tax Court held that the taxpayer received full payment in the year of sale because a standby letter of credit secured future payment for the sale of a cotton crop.  In Griffith, the taxpayer used certificates of deposit as collateral for the letter of credit.  In contrast, Sprague v. United States, 627 F.2d 1044 (10th Cir. 1980), held that a letter of credit used to secure payment for the sale of stock did not constitute payment for purposes of the installment sale provisions.  In explaining I.R.C. § 453(f)(3), the Senate Finance Committee clearly expressed that a third party guarantee (including a standby letter of credit) used as security for a deferred payment sale should not be treated as a payment received on an installment obligation.  S. Rep. No. 1000, 96th Cong., 2nd Sess. 18 (1980).

Consistent with the Code and the legislative history, Temp. Treas. Reg. § 15a.453-1(b)(3)(i) provides that the term "payment" does not include the receipt of evidences of indebtedness of the person acquiring the property ("installment obligation"), whether or not payment of such indebtedness is guaranteed by a third party.  The regulations provide that payments include amounts actually or constructively received in the taxable year under an installment obligation.  An evidence of indebtedness which is secured directly or indirectly by cash or a cash equivalent, such as a bank certificate of deposit or Treasury note, will be treated as the receipt of payment.

Section 15a.453-1(b)(3) provides that a standby letter of credit is treated as a third party guarantee.  Section 15a.453-1(b)(3)(iii) defines the term "standby letter of credit" as a non-negotiable, non-transferable (except together with the evidence of indebtedness which it secures) letter of credit, issued by a bank or other financial institution, which serves to guarantee payment of the installment indebtedness.  A letter of credit is not a standby letter of credit if it may be drawn upon in the absence of default in payment of the underlying indebtedness.  The crucial distinction between an ordinary letter of credit and a standby letter of credit is that a seller may draw upon (or access funds pursuant to) an ordinary letter of credit in the absence of a default on the installment note(s).  That access constitutes constructive receipt to the seller, and the seller must recognize gain on all the sales proceeds despite the existence of the installment sale contract.  Because a seller may not draw upon a standby letter of credit in the absence of a default, the seller is not deemed to have constructively received the sales proceeds.

POSTF-126770-10                                          7

Examples (7) and (8) of Temp. Treas. Reg. § 15a.453-1(b)(5) illustrate the effect of a standby letter of credit that secures an installment obligation.  In Example (7), A sells the stock of X corporation to B for a $1 million installment obligation payable in equal annual installments over 10 years with adequate stated interest.  The installment obligation is secured by a standby letter of credit issued by M bank.  Under the agreement between B and M bank, B is required (1) to maintain a compensating balance in an account B maintains with M bank and (2) to post additional collateral, which may include cash or a cash equivalent, with M bank.  Under neither the standby letter of credit nor any other agreement or arrangement is A granted a direct lien upon or other security interest in the cash or cash equivalent collateral.  The example concludes that receipt of B's installment obligation secured by the standby letter of credit will not be treated as receipt of payment by A.

In Example (8), the facts are the same as in Example (7), except that the standby letter of credit is in the drawable sum of $600,000.  To secure fully its $1 million note issued to A, B deposits in escrow $400,000 in cash and Treasury bills.  Under the escrow agreement, upon default in payment of the note, A may look directly to the escrowed collateral.  The example concludes that receipt of B's installment obligation will be treated as the receipt of payment by A in the sum of $400,000.

Substance Over Form Doctrine

In Gregory v. Helvering, 293 U.S. 465 (1935), the court held that where a transaction has no substantial business purpose other than the avoidance or reduction of Federal tax, the tax law will not respect the transaction. The doctrine of substance over form is essentially that, for Federal tax purposes, a taxpayer is bound by the economic substance of a transaction where the economic substance varies from its legal form.

The concept of the substance over form doctrine is that the tax results of an arrangement are better determined based on the underlying substance rather than an evaluation of the mere formal steps by which the arrangement was undertaken.  Joint Committee on Taxation, Background and Present Law Relating to Tax Shelters (JCX-19-02), March 19, 2002.  Under this doctrine, two transactions that achieve the same underlying result should not be taxed differently simply because they are achieved through different legal steps.  As stated by the Supreme Court, a "given result at the end of a straight path is not made a different result because reached by following a devious path."  Minnesota Tea Co. v. Helvering, 302 U.S. 609, 613 (1938).

The application of the substance over form doctrine is highly factual.  In Newman v. Commissioner, the Second Circuit (citing Frank Lyon v. U.S., 435 U.S. 561 (1978)), indicated that relevant criteria in applying the substance over form doctrine included: (1) the existence of a legitimate non-tax business purpose, (2) whether the transaction has changed the economic interests of the parties, (3) whether the parties dealt with each other at arm's length, and (4) whether the parties disregarded their own form.  902 F.2d 159, 163-164 (2d Cir. 1990).

POSTF-126770-10                                8

If the doctrine applies, it allows the Service to recast the transaction in question according to the underlying substance of the transaction rather than being bound by the taxpayer's form.  However, taxpayers are typically bound by their chosen legal form.  Commissioner v. Danielson, 378 F.2d 771 (3d Cir. 1967), cert. denied, 389 U.S. 858 (1967); In the matter of: Insilco Corporation v. United States, 53 F.3d 95 (5th Cir. 1995).

Step Transaction Doctrine

The step transaction doctrine is considered an extension of the substance over form doctrine.  Under the step transaction doctrine, a particular step in a transaction can be disregarded for tax purposes if the taxpayer could have achieved its objective more directly, but instead included the step for no purpose other than to avoid tax.  See Del Commercial Properties, Inc. v. Commissioner, 251 F.3d 210-213, 214 (D.C. Cir. 2001), cert. denied, 534 U.S. 1104 (2002).  The step transaction doctrine applies in cases where a taxpayer seeks to go from point A to point D and does so by stopping at intermediary points B and C.  The purpose of the unnecessary stops is to achieve tax consequences differing from those which a direct path from A to D would have produced.  In such a situation, courts may disregard the taxpayer's path and the unnecessary steps.  See Gregory v. Helvering, 293 U.S. 465 (1935).

The step transaction doctrine "treats a series of formally separate 'steps' as a single transaction if such steps are in substance integrated, interdependent, and focused toward a particular result."  Penrod v. Commissioner, 88 T.C. 1415, 1428 (1987).  The courts have developed three methods of testing whether to invoke the step transaction doctrine:  (1) the end result test, (2) the interdependence test, and (3) the binding commitment test.

The end result test is the broadest of the three methods.  The end result test evaluates whether it is evident that each of a series of steps is undertaken for the purpose of achieving the ultimate result.  King Enterprises, Inc. v. United States, 418 F.2d 511, 516 (Ct. Cl. 1969).  The interdependence test requires showing that each step was so interdependent that the completion of an individual step would have been meaningless without the completion of the remaining steps.  Stated differently, under the interdependence test, the step transaction doctrine applies if "the steps are so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series."  Redding v. Commissioner, 630 F.2d at 1177.  The binding commitment test is the narrowest of the three step transaction methods and looks to whether, at the time the first step is entered into, there is a legally binding commitment to complete the remaining steps.  Commissioner v. Gordon, 391 U.S. 83, 96 (1968).

In determining whether to invoke the step transaction doctrine, the courts have looked to two factors: (1) the intent of the taxpayer, and (2) the temporal proximity of the separate steps.  Excluding cases involving a legally binding agreement, if each of a series of steps has independent economic significance, the transactions should not be stepped together.  Reef Corporation v. Commissioner, 368 F.2d 125 (5th Cir. 1966);

POSTF-126770-10                                    9

Rev. Rul. 79-250,1979-2 C.B. 156, modified by Rev. Rul. 96-29, 1996-1 C.B. 50.  In addition, the courts have refused to apply the step transaction doctrine where its application would create steps that never actually occurred.  Esmark, Inc. v. Commissioner, 90 T.C. 171 (1988), aff'd without published opinion, 886 F.2d 1318 (7th Cir. 1989); Walt Disney, Inc. v. Commissioner, 97 T.C. 221 (1991); Grove v. Commissioner, 490 F.2d 241 (2d Cir. 1973).  If the doctrine does apply, then the unnecessary steps are disregarded and the transaction is recast.

ANALYSIS

The Transaction meets the statutory and regulatory requirements of I.R.C. § 453.  Because Asset meets the definition of farm property under I.R.C. § 2032A(e)(4), Taxpayer can pledge the Purchase Notes and obtain cash through a separate loan under I.R.C. § 453A(b)(3)(B) without the proceeds being treated as a payment for installment sale purposes.  The Code and the regulations also specifically allow a standby letter of credit to secure an installment sale obligation.  The Letters of Credit issued in the Transaction meet the definition of a standby letter of credit under Temp. Treas. Reg. § 15a.453-1(b)(3)(iii) because they are non-negotiable, non-transferable, and can be drawn upon only in the event of default.  Example (7) of the regulations clearly provides that a standby letter of credit can be secured by cash collateral.  As in Example (7), the Deposits secure the Letters of Credit, not the Purchase Notes.  The Taxpayer cannot look directly to the Deposits for payment; only the LOC Banks and Buyer have a direct interest in the Deposits.  At the time of the sale, Taxpayer received the proceeds of the Monetization Loans secured by the Purchase Notes and Letters of Credit; Taxpayer did not receive funds from the Deposits securing the Purchase Notes.

Application of the Substance Over Form Doctrine

In form, Taxpayer's Transaction comprised:  (1) an installment sale, pursuant to which Taxpayer received the Purchase Notes backed by the Letters of Credit, and (2) a loan monetizing the Purchase Notes.  The question presented is whether the substance of the Transaction was essentially a cash sale—shortly after the Asset sale Taxpayer obtained U% of the sales price in cash and an additional X% of the face value of the Purchase Notes through loan proceeds, all while deferring most of the gain recognition and tax on the transaction for R years.

We conclude that the substance over form doctrine does not apply in this case.  Using the Newman v. Commissioner criteria discussed above, the substance of the Transaction is consistent with its form.  First, each step in the transaction had a specific business purpose.  The sale of the Asset was a real transaction carried out to raise cash for Taxpayer.  The Letters of Credit, by definition, provided economic security for Taxpayer in the event of Buyer's default.  The Deposits served as the collateral.  Taxpayer negotiated the Monetization Loans with a financial institution separate from the financial institutions that issued the Letters of Credit and held the Deposits.

Second, the economic interests of the parties did in fact change.  After the Transaction,

POSTF-126770-10                        10

Taxpayer no longer owned the K Amount of Asset, Taxpayer held the Purchase Notes backed by the Letters of Credit, and Taxpayer's SPEs were obligors under the Monetization Loans with Lender in the total amount of $B.  The economic interests of Buyer and Lender changed as well.  Buyer deposited $D with the LOC Banks to secure the standby letters of credit and pay associated fees and became the new owner of the Asset.  Lender parted with $B in exchange for the Monetization Loans, secured by the Purchase Notes and Letters of Credit.

Third, there is no indication that the terms of the Transaction are not arm's length.  The terms of the Purchase Notes appear to be regular, commercial terms, with market-based interest rates.  While the interest rate to be paid on the Monetization Loans is unusual, the loan agreement shows it to be structured as a commercial loan.  Fourth, all parties involved have treated the steps of the Transaction as a separate installment sale and monetization loan.

The Taxpayer reduced its risk exposure on the Monetization Loans by carrying out the monetization of the Purchase Notes through its two bankruptcy-remote LLCs and by making the Monetization Loans nonrecourse.  Nevertheless, the taxpayer is still at risk.  The Taxpayer only received X% of the face value of the Purchase Notes in loan proceeds and is therefore still at risk on the remaining Y% should one or more LOC banks fail.  Taxpayer tried to limit this risk by spreading the LOCs among several banks and requiring LOC replacement if a bank's credit rating went below a certain level.  This limited the risk, but did not eliminate it, given the high concentration of Z banks acting as counterparties.  In addition, to recast the transaction as a cash sale would be to assume Taxpayer had already forfeited that remaining Y%, which it clearly has not done.

<u>Application of the Step Transaction Doctrine</u>

Because the step transaction doctrine is an extension of the substance over form doctrine, the step transaction doctrine also does not apply to this case.  As noted above, the step transaction doctrine applies in cases where a taxpayer seeks to go from point A to point D and does so by stopping at intermediary points B and C, steps which give the taxpayer a tax benefit.  The question is whether the interrelated steps between Taxpayer signing the sales contract and Lender wiring the Monetization Loan proceeds directly into Taxpayer's accounts should be collapsed.

"Step A" is the transfer of the Asset to Buyer while "Step D" is the transfer of the Monetization Loan proceeds from Lender to Taxpayer (through Taxpayer's SPEs).  Collapsing the Transaction and going straight from Step A to Step D does not make sense.  Taxpayer is selling the Asset to Buyer, while the loan proceeds are coming from Lender, which is unrelated to both Taxpayer and Buyer.  In fact, to go from Step A to Step D and to treat the Transaction as a cash sale would require additional steps, which the Internal Revenue Service is prohibited from creating.  See <u>Grove v. Commissioner</u>, <u>490 F.2d at 247</u>.

Furthermore, the steps that did occur between "Step A" and "Step D" were not

POSTF-126770-10                                11

unnecessary or meaningless steps.  The Deposits made by Buyer were necessary to back the Letters of Credit.  The Letters of Credit were necessary to secure the Purchase Notes in the event of Buyer's default.  The transfer of the Purchase Notes to the SPEs was necessary to protect Taxpayer in the event of Buyer's default.  The pledging of the Purchase Notes and Letters of Credit was necessary in order for Taxpayer to receive the amount of loan proceeds it needed to carry out its Plan, pay off its existing corporate debt, and complete Event HH in order to accomplish Purpose.

Each of the steps has independent economic significance; therefore, the step transaction does not apply under either the end result test or the interdependence test.  The binding commitment test would not be applicable in this case because there is no contractual obligation to complete all of the Transaction steps.

In summary, the judicial doctrines of substance over form and step transaction do not apply in this case.  The steps in the Transaction accomplished legitimate business purposes and had independent economic significance.  Taxpayer needed to sell its Asset and structured the sale in a way that minimized its taxes.  Taxpayer did not create transactions with no substance merely to obtain tax benefits.  Substantively, the steps of the Transaction matched their form:  an installment sale coupled with a monetization loan.  The Transaction allowed Taxpayer to take advantage of tax deferral on the Asset sale, which is a permitted result under I.R.C. §§ 453 and 453A.

We have coordinated this advice with the National Office, which agrees with our views.

Please call 281-721-7322 if you have any further questions.


                        CAROL BINGHAM MCCLURE
                        Associate Area Counsel
                        (Large Business & International)



                By:    _____
                        Jamie S. Luff
                        Senior Attorney (Houston)
                        (Large Business & International)




cc:

1.

# 26 U.S. Code § 453 - Installment method

- **US Code**
- **Notes**
- **IRS Rulings**
- **Authorities (CFR)**

prev | next

§ 453.
Installment method
(a) General rule

Except as otherwise provided in this section, income from an installment sale shall be taken into account for purposes of this title under the installment method.
(b) Installment sale definedFor purposes of this section—
(1) In general

The term "installment sale" means a disposition of property where at least 1 payment is to be received after the close of the taxable year in which the disposition occurs.
(2) ExceptionsThe term "installment sale" does not include—
(A) Dealer dispositions

Any dealer disposition (as defined in subsection (*l*)).
(B) Inventories of personal property

A disposition of personal property of a kind which is required to be included in the inventory of the taxpayer if on hand at the close of the taxable year.
(c) Installment method defined

For purposes of this section, the term "installment method" means a method under which the income recognized for any taxable year from a disposition is that proportion of the payments received in that year which the gross profit (realized or to be realized when payment is completed) bears to the total contract price.
(d) Election out
(1) In general

Subsection (a) shall not apply to any disposition if the taxpayer elects to have subsection (a) not apply to such disposition.
(2) Time and manner for making election

Except as otherwise provided by regulations, an election under paragraph (1) with respect to a disposition may be made only on or before the due date prescribed by law (including extensions) for filing the taxpayer's return of the tax imposed by this chapter for the taxable year in which the disposition occurs. Such an election shall be made in the manner prescribed by regulations.
(3) Election revocable only with consent

An election under paragraph (1) with respect to any disposition may be revoked only with the consent of the Secretary.

R000122

(e) Second dispositions by related persons

(1) In general

If—

(A)

any person disposes of property to a related person (hereinafter in this subsection referred to as the "first disposition"), and

(B)

before the person making the first disposition receives all payments with respect to such disposition, the related person disposes of the property (hereinafter in this subsection referred to as the "second disposition"),

then, for purposes of this section, the amount realized with respect to such second disposition shall be treated as received at the time of the second disposition by the person making the first disposition.

(2) 2-Year cutoff for property other than marketable securities

(A) In general

Except in the case of marketable securities, paragraph (1) shall apply only if the date of the second disposition is not more than 2 years after the date of the first disposition.

(B) Substantial diminishing of risk of ownershipThe running of the 2-year period set forth in subparagraph (A) shall be suspended with respect to any property for any period during which the related person's risk of loss with respect to the property is substantially diminished by—

(i)

the holding of a put with respect to such property (or similar property),

(ii)

the holding by another person of a right to acquire the property, or

(iii)

a short sale or any other transaction.

(3) Limitation on amount treated as receivedThe amount treated for any taxable year as received by the person making the first disposition by reason of paragraph (1) shall not exceed the excess of—

(A) the lesser of—

(i)

the total amount realized with respect to any second disposition of the property occurring before the close of the taxable year, or

(ii)

the total contract price for the first disposition, over

(B) the sum of—

(i)

the aggregate amount of payments received with respect to the first disposition before the close of such year, plus

(ii)

the aggregate amount treated as received with respect to the first disposition for prior taxable years by reason of this subsection.

(4) Fair market value where disposition is not sale or exchange

For purposes of this subsection, if the second disposition is not a sale or exchange, an amount equal to the fair market value of the property disposed of shall be substituted for the amount realized.

(5) Later payments treated as receipt of tax paid amounts

If paragraph (1) applies for any taxable year, payments received in subsequent taxable years by the person making the first disposition shall not be treated as the receipt of payments with respect to the first disposition to the extent that the aggregate of such payments does not exceed the amount treated as received by reason of paragraph (1).

(6) Exception for certain dispositionsFor purposes of this subsection—

(A) Reacquisitions of stock by issuing corporation not treated as first dispositions

Any sale or exchange of stock to the issuing corporation shall not be treated as a first disposition.

(B) Involuntary conversions not treated as second dispositions

A compulsory or involuntary conversion (within the meaning of section 1033) and any transfer thereafter shall not be treated as a second disposition if the first disposition occurred before the threat or imminence of the conversion.

(C) Dispositions after deathAny transfer after the earlier of—

(i)

the death of the person making the first disposition, or

(ii)

the death of the person acquiring the property in the first disposition,

and any transfer thereafter shall not be treated as a second disposition.

(7) Exception where tax avoidance not a principal purpose

This subsection shall not apply to a second disposition (and any transfer thereafter) if it is established to the satisfaction of the Secretary that neither the first disposition nor the second disposition had as one of its principal purposes the avoidance of Federal income tax.

(8) Extension of statute of limitations

The period for assessing a deficiency with respect to a first disposition (to the extent such deficiency is attributable to the application of this subsection) shall not expire before the day which is 2 years after the date on which the person making the first disposition furnishes (in such manner as the Secretary may by regulations prescribe) a notice that there was a second disposition of the property to which this subsection may have applied. Such deficiency may be assessed notwithstanding the provisions of any law or rule of law which would otherwise prevent such assessment.

(f) Definitions and special rulesFor purposes of this section—

(1) Related personExcept for purposes of subsections (g) and (h), the term "related person" means—

(A)

a person whose stock would be attributed under section 318(a) (other than paragraph (4) thereof) to the person first disposing of the property, or

(B)

a person who bears a relationship described in section 267(b) to the person first disposing of the property.

(2) Marketable securities

The term "marketable securities" means any security for which, as of the date of the disposition, there was a market on an established securities market or otherwise.

(3) Payment

Except as provided in paragraph (4), the term "payment" does not include the receipt of evidences of indebtedness of the person acquiring the property (whether or not payment of such indebtedness is guaranteed by another person).

(4) Purchaser evidences of indebtedness payable on demand or readily tradableReceipt of a bond or other evidence of indebtedness which—

(A)

is payable on demand, or

(B)

is readily tradable,

shall be treated as receipt of payment.

(5) Readily tradable definedFor purposes of paragraph (4), the term "readily tradable" means a bond or other evidence of indebtedness which is issued—

(A)

with interest coupons attached or in registered form (other than one in registered form which the taxpayer establishes will not be readily tradable in an established securities market), or

(B)

in any other form designed to render such bond or other evidence of indebtedness readily tradable in an established securities market.

(6) Like-kind exchangesIn the case of any exchange described in section 1031(b)—

(A)

the total contract price shall be reduced to take into account the amount of any property permitted to be received in such exchange without recognition of gain,

(B)

the gross profit from such exchange shall be reduced to take into account any amount not recognized by reason of section 1031(b), and

(C)

the term "payment", when used in any provision of this section other than subsection (b)(1), shall not include any property permitted to be received in such exchange without recognition of gain.

Similar rules shall apply in the case of an exchange which is described in section 356(a) and is not treated as a dividend.

(7) Depreciable property

The term "depreciable property" means property of a character which (in the hands of the transferee) is subject to the allowance for depreciation provided in section 167.

(8) Payments to be received definedThe term "payments to be received" includes—

(A)

the aggregate amount of all payments which are not contingent as to amount, and

(B)

the fair market value of any payments which are contingent as to amount.

(g) Sale of depreciable property to controlled entity

(1) In generalIn the case of an installment sale of depreciable property between related persons—

(A)

subsection (a) shall not apply,

(B) for purposes of this title—

(i)

except as provided in clause (ii), all payments to be received shall be treated as received in the year of the disposition, and

(ii)

R000125

in the case of any payments which are contingent as to the amount but with respect to which the fair market value may not be reasonably ascertained, the basis shall be recovered ratably, and

(C)

the purchaser may not increase the basis of any property acquired in such sale by any amount before the time such amount is includible in the gross income of the seller.

(2) Exception where tax avoidance not a principal purpose

Paragraph (1) shall not apply if it is established to the satisfaction of the Secretary that the disposition did not have as one of its principal purposes the avoidance of Federal income tax.

(3) Related persons

For purposes of this subsection, the term "related persons" has the meaning given to such term by section 1239(b), except that such term shall include 2 or more partnerships having a relationship to each other described in section 707(b)(1)(B).

(h) Use of installment method by shareholders in certain liquidations

(1) Receipt of obligations not treated as receipt of payment

(A) In general

If, in a liquidation to which section 331 applies, the shareholder receives (in exchange for the shareholder's stock) an installment obligation acquired in respect of a sale or exchange by the corporation during the 12-month period beginning on the date a plan of complete liquidation is adopted and the liquidation is completed during such 12-month period, then, for purposes of this section, the receipt of payments under such obligation (but not the receipt of such obligation) by the shareholder shall be treated as the receipt of payment for the stock.

(B) Obligations attributable to sale of inventory must result from bulk saleSubparagraph (A) shall not apply to an installment obligation acquired in respect of a sale or exchange of—

(i)

stock in trade of the corporation,

(ii)

other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and

(iii)

property held by the corporation primarily for sale to customers in the ordinary course of its trade or business,

unless such sale or exchange is to 1 person in 1 transaction and involves substantially all of such property attributable to a trade or business of the corporation.

(C) Special rule where obligor and shareholder are related personsIf the obligor of any installment obligation and the shareholder are married to each other or are related persons (within the meaning of section 1239(b)), to the extent such installment obligation is attributable to the disposition by the corporation of depreciable property—

(i)

subparagraph (A) shall not apply to such obligation, and

(ii)

for purposes of this title, all payments to be received by the shareholder shall be deemed received in the year the shareholder receives the obligation.

(D) Coordination with subsection (e)(1)(A)

R000126

For purposes of subsection (e)(1)(A), disposition of property by the corporation shall be treated also as disposition of such property by the shareholder.

(E) Sales by liquidating subsidiaries

For purposes of subparagraph (A), in the case of a controlling corporate shareholder (within the meaning of section 368(c)) of a selling corporation, an obligation acquired in respect of a sale or exchange by the selling corporation shall be treated as so acquired by such controlling corporate shareholder. The preceding sentence shall be applied successively to each controlling corporate shareholder above such controlling corporate shareholder.

(2) Distributions received in more than 1 taxable year of shareholderIf—

(A)

paragraph (1) applies with respect to any installment obligation received by a shareholder from a corporation, and

(B)

by reason of the liquidation such shareholder receives property in more than 1 taxable year,

then, on completion of the liquidation, basis previously allocated to property so received shall be reallocated for all such taxable years so that the shareholder's basis in the stock of the corporation is properly allocated among all property received by such shareholder in such liquidation.

(i) Recognition of recapture income in year of disposition

(1) In generalIn the case of any installment sale of property to which subsection (a) applies—

(A)

notwithstanding subsection (a), any recapture income shall be recognized in the year of the disposition, and

(B)

any gain in excess of the recapture income shall be taken into account under the installment method.

(2) Recapture income

For purposes of paragraph (1), the term "recapture income" means, with respect to any installment sale, the aggregate amount which would be treated as ordinary income under (or so much of section 751 as relates to section 1245 or 1250) for the taxable year of the disposition if all payments to be received were received in the taxable year of disposition.

(j) Regulations

(1) In general

The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the provisions of this section.

(2) Selling price not readily ascertainable

The regulations prescribed under paragraph (1) shall include regulations providing for ratable basis recovery in transactions where the gross profit or the total contract price (or both) cannot be readily ascertained.

(k) Current inclusion in case of revolving credit plans, etc.In the case of—

(1)

any disposition of personal property under a revolving credit plan, or

(2) any installment obligation arising out of a sale of—

(A)

stock or securities which are traded on an established securities market, or

(B)

to the extent provided in regulations, property (other than stock or securities) of a kind regularly traded on an established market,

subsection (a) shall not apply, and, for purposes of this title, all payments to be received shall be treated as received in the year of disposition. The Secretary may provide for the application of this subsection in whole or in part for transactions in which the rules of this subsection otherwise would be avoided through the use of related parties, pass-thru entities, or intermediaries.

(l) Dealer dispositionsFor purposes of subsection (b)(2)(A)—

(1) In generalThe term "dealer disposition" means any of the following dispositions:

(A) Personal property

Any disposition of personal property by a person who regularly sells or otherwise disposes of personal property of the same type on the installment plan.

(B) Real property

Any disposition of real property which is held by the taxpayer for sale to customers in the ordinary course of the taxpayer's trade or business.

(2) ExceptionsThe term "dealer disposition" does not include—

(A) Farm property

The disposition on the installment plan of any property used or produced in the trade or business of farming (within the meaning of section 2032A(e)(4) or (5)).

(B) Timeshares and residential lots

(i) In general

Any dispositions described in clause (ii) on the installment plan if the taxpayer elects to have paragraph (3) apply to any installment obligations which arise from such dispositions. An election under this paragraph shall not apply with respect to an installment obligation which is guaranteed by any person other than an individual.

(ii) Dispositions to which subparagraph appliesA disposition is described in this clause if it is a disposition in the ordinary course of the taxpayer's trade or business to an individual of—

(I)

a timeshare right to use or a timeshare ownership interest in residential real property for not more than 6 weeks per year, or a right to use specified campgrounds for recreational purposes, or

(II)

any residential lot, but only if the taxpayer (or any related person) is not to make any improvements with respect to such lot.

For purposes of subclause (I), a timeshare right to use (or timeshare ownership interest in) property held by the spouse, children, grandchildren, or parents of an individual shall be treated as held by such individual.

(C) Carrying charges or interest

Any carrying charges or interest with respect to a disposition described in subparagraph (A) or (B) which are added on the books of account of the seller to the established cash selling price of the property shall be included in the total contract price of the property and, if such charges or interest are not so included, any payments received shall be treated as applying first against such carrying charges or interest.

(3) Payment of interest on timeshares and residential lots

(A) In general

R000128

In the case of any installment obligation to which paragraph (2)(B) applies, the tax imposed by this chapter for any taxable year for which payment is received on such obligation shall be increased by the amount of interest determined in the manner provided under subparagraph (B).

(B) Computation of interest

(i) In generalThe amount of interest referred to in subparagraph (A) for any taxable year shall be determined—

(I)

on the amount of the tax for such taxable year which is attributable to the payments received during such taxable year on installment obligations to which this subsection applies,

(II)

for the period beginning on the date of sale, and ending on the date such payment is received, and

(III)

by using the applicable Federal rate under section 1274 (without regard to subsection (d)(2) thereof) in effect at the time of the sale compounded semiannually.

(ii) Interest not taken into account

For purposes of clause (i), the portion of any tax attributable to the receipt of any payment shall be determined without regard to any interest imposed under subparagraph (A).

(iii) Taxable year of sale

No interest shall be determined for any payment received in the taxable year of the disposition from which the installment obligation arises.

(C) Treatment as interest

Any amount payable under this paragraph shall be taken into account in computing the amount of any deduction allowable to the taxpayer for interest paid or accrued during such taxable year.

1  Marc C. Forsythe - State Bar No. 153854
   Elizabeth A. LaRocque – State Bar No. 219977
2  **GOE & FORSYTHE, LLP**
   18101 Von Karman Avenue, Suite 510
3  Irvine, CA 92612
   mforsythe@goeforlaw.com
4  Telephone: (949) 798-2460
   Facsimile: (949) 955-9437
5
   Attorneys for Debtor and Debtor-in-Possession
6

**FILED & ENTERED**

**FEB 26 2014**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY daniels   DEPUTY CLERK

7
8                                  CHANGES MADE BY COURT

**UNITED STATES BANKRUPTCY COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
                  **SANTA ANA DIVISION**
10
11  In re:                          Case No. 8:13-bk-13134-TA

12  LINDA J. MARTIN, an individual,   Chapter 11 Proceeding

13                                    **ORDER ON DEBTOR'S MOTION FOR ORDER:**
          Debtor and Debtor-in-
14        Possession.                1.  **AUTHORIZING SALE OF PROPERTY (239
                                         Carnation Ave., Corona Del Mar, California)
15                                       FREE AND CLEAR OF LIENS AND FINDING
                                         BUYER TO BE GOOD FAITH PURCHASER
16                                       PURSUANT TO 11 U.S.C. §363(b), (f) and (m);**
17                                   2.  **APPROVAL OF THE SALE AS AN
                                         COLLATERALIZED INSTALLMENT SALE
18                                       PURSUANT TO I.R.S. CODE § 453;**
19                                   3.  **APPROVAL OF OVERBID PROCEDURES;
                                         AND**
20
                                     4.  **AUTHORIZING COMPENSATION OF REAL
21                                       ESTATE BROKER.**
22
                                     Hearing Date:    January 22, 2013
23                                   Time:                10:00 a.m.
                                     Place:             5B
24
25       On January 22, 2013 at 10:00 a.m. in Courtroom 5B of the United States Bankruptcy

26  Court located at 411 West Fourth Street, Santa Ana, California 92701, the motion of Linda

27  Martin, Debtor and Debtor-in-Possession herein ("Debtor"), an Order: Authorizing Sale ("Sale")

28  of Property Free and Clear of Liens and Finding Buyer to be Good Faith Purchaser Pursuant to

R000130

1  11 U.S.C. Sections §363(b(, (f) and (m); Approval of the Sale as Collateralized Installment Sale

2  Pursuant to I.R.S. Code Section 453 between Debtor and S. Crow Collateral Corporation

3  ("SCC"); Approval of Overbid Procedures; Authorizing Compensation of Real Estate Broker;

4  Authorizing Debtor to Incur Post-Petition Financing to Pay Off All Her Creditors (pursuant to 11

5  U.S.C. Section 364) with the Loan Proceeds (the "Sale Motion") [Docket No. 54] came on for

6  hearing on regular notice.  The Honorable Judge Theodor C. Albert presiding.  All appearances

7  were noted on the record.  At the hearing, Debtor withdrew her request in the Sale Motion to

8  Authorize Debtor to Incur Post-Petition Financing to Pay Off All Her Creditors (pursuant to 11

9  U.S.C. Section 364)

10      THEREFORE, upon the record of the hearing on the Motion and findings recited on the

11  record and all other pleadings and proceedings in this case, including the Motion and all papers

12  filed in support thereof, no objections having been filed, after proper notice was provided; and

13  after due deliberation and good and sufficient cause appearing therefore,

14      IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

15      1.  Debtor's request in the Sale Motion to Authorize Debtor to Incur Post-Petition

16          Financing to Pay Off All Her Creditors (pursuant to 11 U.S.C. Section 364) was

17          withdrawn by the Debtor.

18      2.  Subject to the terms of this Order, the Debtor is authorized to perform on the

19          contract and related documents with S. Crow Collateral Corporation ("SCC"),

20          executed versions of which are attached hereto as **Exhibits "1"**, **"2"**, **"3"**, **"4"**,

21          **"5"**, **"6"**, **"7"**, **"8"** and **"9"**(which are, respectively, the same as **Exhibits"3"**, **"4"**

22          **"5"**, **"6"**, **"7"**, **"8"**, **"9"** **"10"** and **"11"** to the Declaration of Stanley D. Crow

23          filed in support of the Sale Motion (dkt # 57).

24      3.  Debtor and SCC have created new escrow instructions to reflect the Court's

25          ruling noted in items #14 and #15 below regarding Goe & Forsythe, LLP holding

26          the proceeds from the sale of the Property.  Attached hereto as **Exhibits "2"** and

27          **"8"** are the revised and executed Supplemental Closing Instructions and a New

28          Loan Closing Instructions needed to comply with the Court's ruling.

R000131

4.     As a result of the contracts entered into with SCC as noted in #2 above, Debtor will transfer the real property known as 239 Carnation Ave., Corona Del Mar, California ("Property") to SCC and then SCC will sell the Property to Jeff McAninch ("Buyer"), or his assigns, for $3,900,000, to purchase the Property, which transactions are approved pursuant to 11 U.S.C. §363(b) (f) and (m).

5.     Jeff McAinch, or his assigns, is approved as the final buyer of the Property for $3,900,000, pursuant to the terms of the Residential Purchase Agreement and signed Counter Offer with three (3) Addendums (collectively the "CRPA") attached as **Exhibit "1"** to the Linda Martin Declaration, which is attached to the Sale Motion.

6.     Wilmington Trust Company, as successor Trustee to Bank of America, National Association, successor by merger of LaSalle Bank National Association, as Trustee for Morgan Stanly Mortgage Loan Trust 2007-10XS, Mortgage Pass-Through Certificates, Series 2007 (the "Lender") has a valid, first priority lien against the Property that as of January 31, 2014 is in the amount of $1,608,674.59, subject to an updated payoff demand valid through the close of escrow to be submitted upon receipt from Lender.   The transfer of the Property to SCC and the sale of the Property to the final Buyer is free and clear of all liens and interest against the Property with the lien of the Lender immediately attaching to the proceeds from the transfer of the Property to SCC and the sale of the Property by SCC to the final Buyer to the same extent and priority that existed prior to the Debtor's bankruptcy case.

7.     Debtor is authorized to sign any and all documents necessary, and to undertake any non-material amendments and modifications necessary, to complete the sale of the Property without further notice, hearing or Court order.

8.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and

R000132

Case 2:22-cv-00340-DBB   Document 16-5   Filed 09/28/22   PageID.157   Page 4 of 5
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 165

Case 8:13-bk-13134-TA   Doc 87   Filed 02/26/14   Entered 02/26/14 17:20:03   Desc
Main Document        Page 4 of 10

1     the fourteen day stay of a sale provided for in Bankruptcy Rule 6004(h) is hereby

2     waived to allow the sale of the Property to close forthwith.

3     9.    All of the remaining funds held in escrow, which are the Property of SCC and

4     subject to the Lender's lien noted in paragraph 6 above, will be transferred to the

5     trust account of Debtor's counsel, Goe & Forsythe, LLP, in order for Goe &

6     Forsythe, LLP to pay the creditors of Debtor's estate and to hold enough monies

7

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

R000133

1    in its trust account as an estimate of the professional fees pending Court approval of such

2    professional fees and costs.

3    APPROVED BY:

4

5    DATED:  February 26, 2014          GOE & FORSYTHE, LLP

6
                                        By:    /s/Marc C. Forsythe
7                                              Marc C. Forsythe
                                               Attorneys for Debtor and Debtor-in-
8                                              Possession

9
10   DATED:  February 26, 2014          PITE DUNCAN, LLP

11

12                                      By:    _____
13                                             Casey O'Connell
                                               Attorneys for Wilmington Trust Company, as
14                                             successor Trustee to Bank of America,
                                               National Association, successor by merger of
15                                             LaSalle Bank National Association, as
                                               Trustee for Morgan Stanly Mortgage Loan
16                                             Trust 2007-10XS, Mortgage Pass-Through
                                               Certificates, Series 2007
17

18

19                                             ###

20

21

22

23   Date: February 26, 2014
24                                      _____
                                        Theodor C. Albert
25                                      United States Bankruptcy Judge

26

27

28

5

R000134

**Monetizing Installment Sale Transactions, Corporate Taxation (WG&L), Nov/Dec 2004**

Journal of Corporate Taxation (WG&L)

*INSTRUMENTS, TECHNIQUES, AND TRANSACTIONS*

# Monetizing Installment Sale Transactions

*Author: Robert S. Bernstein*

*Robert S. Bernstein is a partner of Foley & Lardner LLP, an international law firm, and is resident in its Jacksonville, Florida office.*

In this issue, we will look at two interesting installment sale transactions. The first transaction is described in the facts of Chief Counsel Advice 200423028, which was released on 6/4/04. While the two legal issues addressed in the CCA are rather unremarkable, the facts of the transaction illustrate a creative form of secured, contingent installment sale transaction where the return on the installment obligation was based on public market indexes that could be changed monthly by the installment seller. In the second transaction, Boise Cascade Corporation (NYSE: BCC) arranged for a $3.7 billion sale of its paper, forest products and 2.3 million acres of timberland assets in part through an installment sale that will be monetized without current tax after the transaction closing. Although Congress has acted a number of times over the years to stop the tax-free monetization of installment obligations and to eliminate the income tax deferral benefits for installment sales where the sales price exceeds $5 million, this latter transaction has been structured to escape the application of these rules.

# Boise Cascade Corporation

On 7/26/04, Boise Cascade Corp. announced that it had reached a definitive agreement to sell its paper, forest products, and timberland assets for approximately $3.7 billion to Madison Dearborn Partners, Inc., a private equity investment firm located in Chicago, Illinois. **1** Boise Cascade Corp. will change its company and trade name to OfficeMax shortly after the close of the transaction.

Of the assets sold, approximately $1.65 billion of the purchase consideration is being delivered in the form of installment obligations for the timber properties. **2** The balance of the transaction proceeds will be paid in cash. Boise Cascade will use its tax basis in its non-timber properties and approximately $100 million worth of net operating loss carry-forwards to eliminate much of the gain on the cash portion of the transaction. **3** In a conference call, Boise Cascade indicated that its tax basis in the timberlands "is quite low relative to today's market values." **4**

The installment obligations will be secured by standby letters of credit issued by one or more banks. **5**

Liquid or other substantial assets will be deposited by Madison Dearborn Partners as collateral with the issuing banks to secure the banks against a draw under the standby letters of credit. The interest rate payable under the installment obligations will be equal to the rate of return payable on the collateral, less the costs associated with the standby letters of credit. **6** Boise Cascade will then pledge the installment obligation to one or more lending institutions as collateral for a loan equal to 90% of its face amount. **7**

Boise Cascade will reinvest approximately $175 million of the gross proceeds received by Boise Cascade, L.L.C. and its affiliates, the entities formed by Madison Dearborn Partners, to acquire the paper, forest products, and timberland assets.

By way of background, Congress initially acted in 1987 in an attempt to deny the benefits of installment sale treatment to certain large transactions by enacting **Section 453A** . **8 Section 453A** , as initially enacted, only applied to installment obligations arising from sales of real property used in the taxpayer's trade or business or held for production of rental income. Congress amended **Section 453** in 1988 to apply to any property sold under the installment method, but only if the sales price of such property exceeds $150,000.

**Section 453A(c)** contains the interest charge rule. This section provides that installment sellers in some large transactions are required to pay an additional tax that is computed like interest and is intended to compensate the Treasury for the delay in the payment of the regular tax on installment gains. Generally, the interest charge applies to gain on all sales for more than $150,000 made during a tax year if, at year-end the taxpayer holds installment obligations from sales during the year in an aggregate principal amount exceeding $5 million. **9** If an interest charge is required to be paid with respect to an installment obligation that arose during a tax year, the interest charge must be paid for any subsequent tax year at the close of which any part of that installment obligation remains outstanding.

**Section 453(d)** contains the pledge rule. This section generally provides that if an installment obligation is used by the seller as security for a loan, the net proceeds from that loan are treated as a payment received on the installment obligation. **10** A secured loan is a loan secured by an installment obligation to the extent that payment of principal or interest on the loan is directly secured under the terms of the loan, or other underlying arrangements, by an interest in the installment obligation. **11** An arrangement that gives the taxpayer the right to satisfy an obligation with an installment note is treated in the same manner as the direct pledge of the installment note.The balance of the deferred tax would be subject to the interest charge rule of **Section 453A(c)** . **12**

If these rules applied to the installment obligations received by Boise Cascade, it would recognize a substantial portion of the otherwise deferred taxable gain upon the pledge of the obligations to secure its borrowing. The balance of the deferred tax would be subject to the interest charge rule of Section 453A(c). **12a** However, because Boise Cascade structured the installment obligations as consideration for only the timberland, it intends to take advantage of an exception for farm property.

Specifically, **Section 453A(b)(3)** excludes from application of the interest charge and pledge rules any obligations arising from the disposition of certain personal use property, property used or produced in the

trade or business of farming as defined in **Section 2032A(e)(4)** or (5), and certain timeshares and residential lots. In the case of Boise Cascade, it is the exception for property used or produced in the trade or business of farming that provides the apparent exception from the interest charge and pledge rules.

Sections 2032(A)(e)(4) and (5) provide:

>   **(4)Farm.** The term "farm" includes stock, dairy, poultry, fruit, furbearing animal, and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards and *woodlands.*

>   **(5)Farming Purposes.** The term "farming purposes" means-

>   (A) cultivating the soil or raising or harvesting any agricultural or horticultural commodity (including the raising, shearing, feeding, caring for, training, and management of animals) on a farm;

>   (B) handling, drying, packing, grading, or storing on a farm any agricultural or horticultural commodity in its unmanufactured state, but only if the owner, tenant, or operator of the farm regularly produces more than one-half of the commodity so treated; and

>   (C)(i) the *planting, cultivating, caring for, or cutting of trees*, or

>   (ii) *the preparation (other than milling) of trees for market.* (Emphasis added.)

It would appear that Boise Cascade timber and the land on which the timber is situated qualify as being used for farming purposes. **13** This seems reasonable since the timber is either being planted, cultivated, cared for, or cut. **14** Boise Cascade certainly appears to be taking that position and it seems reasonable enough. **15** This should permit Boise Cascade to monetize 90% of the installment obligations without any current tax. Moreover, the interest charge rule will be inapplicable. Since the installment obligation is credit enhanced by bank standby letters of credit (which are themselves presumably secured by liquid or other substantial assets), the borrowing should be on fairly advantageous terms.

## CCA 200423028

In CCA 200423028, the IRS reviewed two separate installment sale transactions in which a purchaser issued nonnegotiable, nonassignable contingent installment obligations in exchange for two lottery prize

receivables. **15a** In its analysis, the IRS detailed a transaction structure offered by a factoring organization, pursuant to which "individuals who have the right to receive certain discrete, periodic payments of cash may sell all or a portion of the future periodic payments to [the organization] or a trust that [the organization] sponsors in exchange for non-negotiable, non-assignable installment notes." One of the most unique aspects of the structure was highlighted by the IRS when it noted "that the amount of payments Taxpayers would receive under the notes would be determined with reference to 'investments selected by' Taxpayers." The IRS also pointed out that the taxpayers could "change the investment menu on a monthly basis and that the obligations were credit enhanced by standby letters of credit." **16**

It was also interesting to observe that in the IRS's recitation of the facts and circumstances incident to the transactions under review, it was specifically noted that each of the lottery prizes purchased by the organization in connection therewith included a then-currently exercisable "cash out option." **17** Pursuant to the cash out option, the holder of the lottery receivable could request an immediate lump sum payout (in lieu of periodic payments). In these two separate transactions, the holders of the receivables chose to sell their receivables to the organization in exchange for an installment obligation and forgo the option of obtaining an immediate lump sum payout from the state. The facts of the CCA indicate that the organization did, in fact, exercise the cash out options within a short time of acquiring the lottery receivables and was in receipt of payment thereafter.

Note that the ability of the seller to request prompt payment (i.e., within ten days) did not preclude such individual from disposing of the lottery receivable in exchange for an installment obligation, thereby enabling such individual to effectuate a deferral of income recognition. This is consistent with **Section 451(h)** , which generally ignores the short term right to elect to receive a lump sum lottery prize payment for constructive receipt purposes. This is also consistent with existing constructive receipt authorities. **18**

The ability to issue an installment obligation, the return on which is based on market indexes and other public securities references finds much support in case law. At least two courts have expressly approved the direction of investments of escrowed amounts in securities and rejected application of the constructive receipt doctrine where the sellers could not access the money currently. For example, in *Murray*, **19** an installment seller was permitted under the terms of the sale to direct the investment of escrowed funds into any NYSE securities. In *Murray*, a cash escrow had been set up to ensure compliance by the seller with a covenant not to compete and to otherwise guarantee payment. The seller was entitled to receive any income earned on such securities and all appreciation, but was subject to the risk of any loss from declines in market value. The court held that the transaction qualified as an installment sale and that the seller was not in constructive receipt of any of the invested funds prior to actual receipt. **20**

Similarly, in *Anderson*, **21** an installment seller was permitted to direct the investment of certain escrowed funds in U.S. government securities or any securities listed on the NYSE, AMEX, the San Francisco Stock Exchange, and/or the Los Angeles Stock Exchange. The sellers were entitled to payments of all interest and net profits from the investment of the escrowed funds on a semi-annual basis. The escrow had been set up to secure certain representations and warranties of the sellers. The

sellers bore substantially all risk of loss from the investments and were entitled to substantially all of the appreciation. The IRS asserted that the sellers were taxable on the placement of the money in escrow based upon their control over the amounts. In rejecting the IRS's claim, the Tax Court stated:

> On the one hand, we have the following factors weighting the balance toward respondent's position: The full purchase price was paid for the stock, some $500,000 of which was set aside to protect the purchaser; the fund could be reached by the purchaser, in the event the liabilities materialized, only with the consent of petitioners; the fund was subject to being, and in fact was, tapped to reimburse petitioners for the expenses incurred in prosecuting mining patents; petitioners received all the income from the fund; they could direct the investment of the fund in recognized securities including those listed on the Los Angeles and San Francisco exchanges. Thus, in effect, it would be possible apparently for petitioners to utilize the funds as capital for a new corporate venture undertaken by them.

> However, we must recognize that the following facts shift the balance toward the petitioners: The fund was not unqualifiedly petitioners', i.e., just as Buyer could not freely use the funds, neither could the petitioners; the fund might never belong to petitioners if the liabilities materialized and, in fact, Buyer filed a letter with the bank, thus making claim to $225,000 of the fund; and as of the date of the trial, the bank was still holding this amount. This qualified control of the fund and income is particularly demonstrated by the provision that the bank withhold income if the fund dropped below $500,000. It appears that income was in fact withheld for that very reason. *Although the petitioners had a free hand in investment of the money, still they lacked the ultimate incident of ownership, viz., the power simply to pick up the money, put it into their pockets, and spend it at will and for whatever they deemed advisable.* (Emphasis added.) **22**

Also, commentators have noted that the "installment sale rules impose no restrictions on the index used to determined the taxpayer's return. ... For instance, the installment obligation ... could provide that the taxpayer's return is based on the S&P 500 index (or based on the taxpayer's favorite hedge fund) and the installment sale principles would appear to provide support for the proposition that the taxpayer is not the tax owner of the trading account used to hedge the purchaser's obligations under the note." **23**

In summary, these facts highlight that installment obligations can provide a market based return which can be periodically changed. This can eliminate a factor from the decision whether to pursue a cash sale or not. That is, in a traditional installment sale, the seller will often get only a fixed annual return, whereas under a variable installment obligation or a cash sale, the seller can obtain a market based return on the after-tax cash proceeds or on the pre-tax amount under the variable installment obligation. **24**

## Conclusion

Both of the structures discussed above suggest some interesting installment sale transactions that can be utilized in appropriate circumstances. A common element in both-the presence of a standby letter of credit-enables sellers to generally ignore the credit risk of the purchaser and hence defer tax without taking on any credit risk. Moreover, by obtaining a return on the installment obligation equal to the return generated by the collateral for the standby letter of credit, the seller can obtain a market based return on the entire pre-tax sale amount.

**1** See Boise Cascade Corp. Form 8-K SEC File No. 001-05057 (7/29/04). Of the $3.7 million in gross sales proceeds, BCC has indicated that it expects to use approximately $2.2 to $2.3 billion of the net proceeds to pay down debt and meet other obligations and to distribute the remaining net proceeds to its shareholders through common and/or preferred stock buybacks and/or cash dividends.

**2** See section 3.1 of the Asset Purchase Agreement, attached to the Boise Cascade Corp. Form 8-K SEC File No. 001-05057 (7/29/04) (hereinafter, the "Asset Purchase Agreement").

**3** See statements of Theodore Crumley, Chief Financial Officer, of Boise Cascade, contained in Exhibit 99 of the Boise Cascade Corp. Form 8-K SEC File No. 001-05057 (7/29/04).

**4** *Id*.

**5** See section 4.1.2 of the Asset Purchase Agreement.

**6** *Id*. Standby letters of credit secured by liquid assets are specifically permitted by the applicable Treasury regulations. Temp. Reg. 15A. 453-1(b)(3); see also **TAM 200105061** (IRS approved installment sale treatment for a buyer's installment obligation that was secured by a standby letter of credit issued by a financial institution. The buyer pledged cash and government securities to the bank to secure the buyer's reimbursement obligations to the bank under the letter of credit issuance documents).

**7** See statements of Theodore Crumley, Chief Financial Officer, of Boise Cascade, contained in Exhibit 99 of the Boise Cascade Corp. Form 8-K SEC File No. 001-05057 (7/29/04). It has been suggested that a greater amount was not borrowed so as to prevent a constructive sale or other disposition of the installment obligation under pre- **Section 453A** authorities in the installment sale area. See Willens, "Boise Cascade's Excellent (Divestiture) Adventure-A Case Study," 101 J. Tax'n 151 (2004).

**8** P.L. No. 100-203, section 10202(e)(1), 101 Stat. 1330-38 (1987). Unless otherwise indicated, all Section references are to the Internal Revenue Code of 1986, as amended.

**9** The interest charge payable on an installment obligation is an amount equal to the "applicable percentage" of the deferred tax liability multiplied by the IRS's underpayment rate in effect for the month in which the tax year ends. **Section 453A(c)(2)** . The "applicable percentage" for all obligations arising during a tax year is determined by dividing the portion of the aggregate face amount of such obligations outstanding as of the close of the tax year in excess of $5 million by the aggregate face amount of such obligations arising in and outstanding at the close of the tax year. **Section 453A(c)(4)** . Once the applicable percentage is determined, this percentage does not change as payments on the obligations are made in subsequent years.

**10 Section 453A(d)(1)** .

**11 Section 453A(d)(4)** .

**12** *Id*.

**12a** It is worth noting that commentators have pointed out that the use of the phrase directly in Section 453A leaves the pledge rule open to creative avoidance strategies. Rubin&Cejudo, *Getting Out of the Deal: Creative Exit Strategies*, 496 PLI/Tax 505 (2001) (presenting arguments for and against treating a pledge of an interest in an entity as a pledge of an underlying installment obligation); B. Bittker&L. Lokken,*Federal Income, Estates and Gifts* ¶106.1 ("by limiting the [pledge] rule to directly secured arrangements, however, Congress left the IRS defenseless against artful avoidance devices." These authors also cite to legislative history to proposed but unenacted language which explained that the regulations could address a situation, for example, "where a parent corporation has a wholly-owned subsidiary that holds primarioy installment obligations, and the parent pledges the stock of the subsidiary as collateral for a loan").

**13** See **Reg. 20.2032A-3(g), Ex. 7** (discussing how the **Section 2032A** material participation requirement is applied to a "tree farm."); Estate of Rogers, **TC Memo 2000-133** RIA TC Memo ¶2000-133 79 CCH TCM 1891 (timber property valued under **Section 2032A** ); Estate of Sherrod, **82 TC 523** (1984) (estate allowed to specially value timberland, crop land, and pasture land under **Section 2032A** ), *rev'd on grounds not relevant here*, **56 AFTR 2d 85-6594** 774 F2d 1057 85-2 USTC ¶13644 (CA-11, 1985); Jurinski, "Special Use Valuation Can Reduce Estate Tax For Timber Owners," 5 Valuation Strategies 34 (Jan/Feb 2002).

**14** For detailed discussion of the timber business and the general tax rules associated therewith, see

Burnett, 610 T.M., "Timber Transactions"; Bellatti, *Estate Planning for Farms and Other Family-Owned Businesses*.

**15** But see **Section 2032A(e)(13)** which requires a special election for standing timber to be treated as part of the farm realty, and not a crop, for valuation purposes.

**15a** There appear to be no issues with a lottery prize qualifying as property for installment sale purposes. **119 TC 1** (2002) (the "right to receive future annual lottery payments is property in the ordinary sense of the word."); **54 TC 1083** (1979), *aff'd* 478 F.2d 1049 (CA-9, 1973).

**16** The two issues addressed in the CCA were (1) whether the organization's subsidiary both acquired the lottery prize and issued the installment obligation (required by **Reg. 15a.453-1(b)(3)** to be done by the purchaser of the property) or whether the person who acquired the lottery prize (i.e., the purchaser) was different than the entity that issued the installment obligation and (2) who was entitled to recover the income taxes withheld by the state lottery commission with respect to post sale lottery prize payments. In the case of the first issue, the IRS ruled that the subsidiary had both issued the installment obligation and acquired the lottery prize, and hence the requirement that an installment obligation be issued by the purchaser was met. On the second issue, the IRS ruled that the subsidiary, not the seller, was entitled to credit for the taxes withheld by the state lottery commission.

**17** Presumably, this referred to the window period, which expired 12/31/00, under which states offered lottery prize winners who were receiving payments on a periodic basis the option to elect a lump sum payment prior to such date without being in constructive receipt of the full value of the lottery prize. See Section 5301(b)(2) of PL 105-277, which provided that, for an 18-month period commencing on 7/1/99 and continuing to 12/31/00, lottery prize winners receiving payment in the form of an annuity could be given the right to elect a lump-sum distribution equal to the present value of the remaining annuity payments without being in constructive receipt of any amount. For a complete discussion of the application of the constructive receipt doctrine to lottery prize winners, see Aghdami, "The Morning After: Tax Planning for Lottery Winners," 90 J. Tax'n 228 (1999).

**18** Veit, **8 TC 809** (1947); Veit, PH TCM ¶49253 8 CCH TCM 919 (1949); Oates, **18 TC 570** (1952), *aff'd* **44 AFTR 535** 207 F2d 711 53-2 USTC ¶9596 (CA-7, 1953); Olmstead Inc. Life Agency, **9 AFTR 2d 1699** 304 F2d 16 62-2 USTC ¶9511 (CA-8, 1961); Martin, **96 TC 814** 13 EBC 2400 (1991).

**19 28 BTA 624** (1933).

**20** It should be noted that the installment obligation in CCA 200423028 bears many similarities to a private annuity. The tax principles applicable to private annuities are conceptually similar to those applicable to installment sale obligations and permit realized gain to be deferred over the term of the

annuity. **Rev. Rul. 69-74, 1969-1 CB 43** . The legislative history of the installment sales rules indicates that they do not "deal directly with" private annuities. S. Rep. No. 1000, 96th Cong., 1st Sess. 12 n.12 (1980), reprinted in 1980-2 CB 494, 500. See also **Reg. 15a.453-1(c)** (dealing extensively with installment sales under contracts providing contingent payments, apparently without affecting private annuities). The IRS has set forth factors which distinguish private annuities and installment obligations. See **GCM 39503** (5/19/86). Under this GCM, an obligation is an annuity if it is to be paid over the life expectancy of the seller. Otherwise, the obligation is generally an installment sale. Since the installment obligation at issue in the CCA was for a fixed term, presumably it should be treated as an installment obligation and not as an annuity.

**21** TC Memo 1961-139 PH TCM ¶61139 20 CCH TCM 697 (1961).

**22** But see Lustgarden, **47 AFTR 2d 81-1113** 639 F2d 1208 81-1 USTC ¶9273 (CA-5, 1981) (ability to change investments cited as significant factor in finding taxpayer in constructive receipt of escrow and trust funds controlled by taxpayer's son). cf., **Ltr. Rul. 9433030** (requiring various representations regarding lack of investment control by life insurance policy owner as a pre-condition to or rulings on owner control under **Section 817(h)** ); see also, **Rev. Rul. 77-85, 1977-1 CB 12** ; **Rev. Rul. 80-274, 1980-2 CB 27** ; **Rev. Rul. 81-225, 1981-2 CB 13** (generally, under these revenue rulings, in order for the insurance company to be considered the owner of the assets in a separate account, control over individual investment decisions must not be in the hands of the policyowners; Investment Annuity, Inc. et. al. v. Blumenthal, **40 AFTR 2d 77-6151** 442 F Supp 681 77-2 USTC ¶9723 (D.D.C. 1977) (declaring **Rev. Rul. 77-85** invalid), reversed on procedural grounds; Christopherson, **55 AFTR 2d 85-407** 749 F2d 513 84-2 USTC ¶9990 (CA-8, 1984) (court, citing **Reg. 1.451-2(a)** used a constructive receipt analysis to hold the policyowner taxable on separate account income invested under the control of the policyowner.).

**23** Miller, "Taxpayers' Ability to Avoid Tax Ownership: Current Law and Future Prospects," 51 Tax Law. 279, 301 (1998).

**24** This structure raises a host of other issues that should be considered, including the possibility of structuring the standby letter of credit to be variable in amount to track the amounts due, the possibility that the obligation could be bifurcated into a fixed rate obligation coupled with an equity swap (see, e.g., **Reg. 1.446-3(g)(4)** (bifurcating a swap with a significant non-periodic payment into a loan and an on-market swap)) and, if the issuer elected to hedge its exposure under the obligation by purchasing the underlying index, how any resulting income and gains therefrom might be accounted for.

© 2017 Thomson Reuters/Tax & Accounting. All Rights Reserved.



PARADIGM

BECAUSE IT'S A BIG COUNTRY
AND SOMEONE HAS TO FINANCE IT.

(http://paradigmcre.com/)



**(https://nyrej.com)**

Search...  







(http://nerej.com)   (https://www.facebook.com/nyrej/)   (https://twitter.com/NYREJ)



(https://www.youtube.com/channel/UCivR72KoCtAYLgyMLcXSkdA)



(https://www.linkedin.com/company/new-york-real-estate-journal/)



(https://www.instagram.com/newyorkrealestatejournal/)

# Utilizing installment sales instead of 1031: Section 453 is a unique part of the tax code – by Michael Packman

November 17, 2020 - New York City (https://nyrej.com/section/NYC)

R000144



As I write this article, many are bracing for what may be major changes to the tax code that could add millions in additional liabilities for many. Real estate investors have taken advantage of section 1031 for many years to defer capital gains and is something that has been extremely beneficial to me. However, I was recently speaking with Mark Bianchi, the president of Titan Capital Recovery, who introduced me to another strategy that might be worth considering as well. This is a unique approach that uses section 453 of the tax code, instalment sales, as opposed to 1031.

An installment sale is a unique tax deferral strategy for any "highly appreciated asset" with a low basis. The strategy allows the seller to sell the asset and defer 100% of the capital gains tax for up to 30 years. Unlike 1031s, which are now limited to real estate, installment sales can be used for other assets such as art or an operating business.

The particular strategy that I have been evaluating is a monetization loan with an installment sale. The Internal Revenue Service permits capital assets to be sold without the immediate gain recognition via a monetization loan with an installment sale. Instead of the traditional installment sale structure, a seller can use the monetized installment sale (formerly known as a collateralized installment sale) strategy to defer taxable gain recognition.

Under a monetized installment sale, the seller agrees to sell the business or property to a dealer who resells the property to a final buyer using the original terms. Typically, the seller has already found the ultimate buyer and agreed upon terms, which the dealer follows. The seller takes back an installment contract from the dealer. The buyer pays the dealer in cash at closing, which is held in an escrow account.

The seller receives a limited-recourse loan from a third-party lender nearly equal to the sales price (usually 93.5%). This is a no-money-down, non-amortizing, interest-only loan. Sellers can then invest non-taxable loan proceeds as they see fit. Monthly interest payments on the installment contract will usually equal the seller's loan interest payments. The final due dates on the installment contract and the monetization loan will typically be aligned, and the principal paid at the end equals or exceeds the outstanding principal balance the seller owes on the loan. When the installment contract ends the seller will recognize the gain from the installment sale.

This strategy can be applied to a wide variety of asset types and is a compelling alternative to more widely known deferral techniques, such as the 1031 tax deferred exchanges and deferred sales trusts. There are a few reasons why an installment sale may make sense. The most obvious reason is to avoid making a lump-sum capital gains payment to the IRS and state and local governments. For someone who is in the upper echelon tax brackets, this can easily be 30-35% of your sales proceeds.

Someone who sells a highly appreciated asset for $10 million in a high state tax state, with no basis can walk away with $9.35 million at closing instead of $6.5 million, an amount that can make a big difference when trying to find new investment opporttunities. While a 1031 exchange would allow you to differ the entire $10 million in this case, there are some rigid rules and regulations that you must adhere to, such as identifying a property within 45 days and closing in 180. When faced with uncertain environments as we are currently experiencing, it might be beneficial for some to sell a current holding and sit on the proceeds for a longer period of time. They would then have the ability to reinvest when they felt the time was right, as opposed to within the forced 1031 windows. Another potential advantage of the installment sale is that depreciation resets when the new property is purchased, unlike an exchange which might limit you to your current basis. For those who have owned a property for many years and have no or very little basis left to deduct, this can have a large impact on your after-tax cash flow on the new property. Mr. Bianchi cites the following example, "By utilizing an Installment Sale, an investor purchasing $10 million in real estate could potentially claim $2 million of depreciation upfront which yield as much as $740,000 in tax savings with another $2.2 million in tax savings over the 39 years."

As with any deferral strategy, the monetized installment sale strategy does not eliminate the capital gains tax, rather it defers the payment. At the end of the installment contract between the seller and the dealer, the capital gains tax will be due at the prevailing tax rate. While not a replacement for all potential 1031 exchanges, it may be an interesting strategy for certain holders of highly appreciated assets. As with any investment decision, always consult your attorney, CPA or other advisors before moving forward, but it is something I am looking at very closely myself, and others might find it worth exploring as well.

**Michael Packman is a founder and principal of KNPRE (https://nyrej.com/directory/knpre), New York, N.Y.**

Tags:  installment sale (/story/tagged/installment%20sale)    tax (/story/tagged/tax)    1031 (/story/tagged/1031)

Previous Story (https://nyrej.com/rosewood-realty-group-closes-5-35-million-bronx-mu

Next Story (https://nyrej.com/hajibay-of-heritage-affordable-acquires-new-constructio

🖶 Print (https://nyrej.com/print/43751)
%3A%2F%2Fnyrej.com%2Futilizing-installment-sales-instead-of-1031-by-michael-
&20instead%20of%201031%3A%20Section%20453%20is%20a%20unique%20part%20of%20the%20tax%20code9
J)

📄 PDF (https://nyrej.com/pdf/43751)

**Comments**

[Add Comment]

**More from the New York Real Estate Journal**

AD

**Trusted Estate Planner - Convenient and Reliable**

Ad  olsonharnish.com

**Boost Solar Revenue**

Ad  Modernize

**David Schechtman, Meridian Investment Sales**

nyrej.com

**Whole Sale Shelf Corporations**

Ad  WholeSaleShelfCorporation

**How a purchase price may affect your property taxes:…**

nyrej.com

**Why filing a Real Property Income & Expense (RPIE) is…**

nyrej.com

**Michael Murphy, Douglas Elliman Real Estate, Commercial…**

nyrej.com

**2016 Women in Real Estate: Michelle Abramov**

nyrej.com

**How the limitation on Excess Business Losses affects real**

R000147

Losses affect us beyond

nyrej.com

**Guarino of Friedman-
Roth sells Korea Village
SC for $26.5 ...**

nyrej.com

**2020 Women
AnaTracey Ha
CNY**

nyrej.com

**An in-depth lo
New York Sta
additional mo**

nyrej.com



# Digital Access

(https://reader.mediawiremobile.com/NYREJ/titles/100350)



(http://paradigmcre.com/)

# Trending Stories

Project of the Month: Rochester Management and SWBR begin construction on $13.4m Zion Hill Senior Ap... (https://nyrej.com/pom-rochester-management-and-swbr-begin-13-4m-zion-hill)

**DB (HTTPS://NYREJ.COM/SECTION/DB)**

Hudson Cos., CetraRuddy Architecture and NV5 Landscape Architecture celebrate opening of The Lois lo... (https://nyrej.com/hudson-cos-cetraruddy-and-nv5-celebrate-opening-of-the-lois)

**DB (HTTPS://NYREJ.COM/SECTION/DB)**

Conway Capital acquires two mixed-use buildings in Park Slope for $7.9 million - plans to renovate a... (https://nyrej.com/conway-capital-acquires-two-brooklyn-buildings-for-7-9million)

**ROP (HTTPS://NYREJ.COM/SECTION/ROP)**



(https://nycapartmentmanagement.com/)

# This week's columnist

Coaching: Concussion leads to clarity & communication - by Rod Santomassimo
(https://nyrej.com/coaching-concussion-leads-to-clarity-communication-by-rod-santomassimo)



(https://nyrej.com/coaching-concussion-leads-to-clarity-communication-by-rod-santomassimo)







(https://www.swc-law.com/)

Design / Build (https://nyrej.com/section/DB)   Financial Digest (https://nyrej.com/section/FD)
Front Section (https://nyrej.com/section/ROP)   Green Buildings (https://nyrej.com/section/GB)
Long Island (https://nyrej.com/section/LI)   New York City (https://nyrej.com/section/NYC)
Owners Developers & Managers (https://nyrej.com/section/ODM)   Shopping Centers (https://nyrej.com/section/SC)
Spotlights (https://nyrej.com/section/SP)   Upstate New York (https://nyrej.com/section/UPS)

New York Real Estate Journal • 17 Accord Park Drive #207, Norwell MA 02061 • (781) 878-4540 • Contact
(https://nyrej.com/contact)

R000151

file:///C:/Users/.../AppData/Local/Microsoft/Windows/INetCache/Content.Outlook/RYMZ72B/Office%20Depot,%20Inc.%20-%20Office%20Depot,%20Max%20-%20Investor%20Relations%20-Timber%20Notes%20FAQs.html

**Office DEPOT** **OfficeMax**®

NASDAQ: ODPOffice Depot, Inc.

▼ 0.02 (0.57%)$3.50

[shop officedepot.com](shop officedepot.com)

[Investor Relations](Investor Relations) Â» Timber Notes FAQs

# Timber Notes FAQs

(last updated: April 2010)

 Timber Notes FAQ

1. [Can you describe the timberland sale transaction?](#)

2. [How were the timber Installment Notes credit enhanced?](#)

3. [Why didnâ€™t OfficeMax pursue a cash transaction versus accepting Installment Notes in exchange for the timberlands?](#)

4. [How did OfficeMax monetize the Installment Notes received in exchange for the timberlands?](#)

5. [What did OfficeMax receive as a result of the Installment Notes and Securitized Notes transactions?](#)

6. [When will the Wachovia Guaranteed Installment Notes and related Securitization Notes mature and how will they eventually be defeased?](#)

7. [What recourse do the Securitization Note holders have against OfficeMax in the event of a default on either the Lehman or Wachovia guaranteed tranches?](#)

8. [How did the Lehman bankruptcy affect the Installment Notes transaction?](#)

9. [Why was the value of the Timber Notes Receivable written down in the third quarter of 2008?](#)

10. [Why was the value of the corresponding liability (Securitized Notes) on the OfficeMax consolidated balance sheet not written down subsequent to the Lehman bankruptcy?](#)

11. [Can you describe other cash and non-cash financial impact to OfficeMax resulting from the Lehman bankruptcy?](#)

12. [How does Lehmanâ€™s recently proposed bankruptcy plan affect OfficeMax?](#)

13. [Does OfficeMax expect any additional adverse financial ramifications related to the timber notes transactions?](#)

14. [How can I find more information on the timber notes transaction?](#)

R000152

15. Do you consider the timber securitization notes debt?

16. How will OfficeMax pay the taxes it's currently deferring on the Wachovia-related notes when they come due?

17. Can OfficeMax unwind this securitization or somehow remove it from the balance sheet?

18. Do you include the Timber Notes Receivable and the corresponding liability (Securitization Notes) when calculating various financial metrics and ratios used to assess the financial health or valuation of OfficeMax including total debt, debt leverage ratios, enterprise valuation ratios, Z-Scores or other metrics?

1. Can you describe the timberland sale transaction?

   In October 2004, as part of a larger transaction, OfficeMax Incorporated (the "Company"), formerly known as Boise Cascade Corporation, sold our timberlands for $1,650 million consisting of $15 million in cash plus credit-enhanced timber installment notes in the amount of $1,635 million (the "Installment Notes"). The Installment Notes were issued by single-member limited liability companies (the "Note Issuers") formed by Boise Cascade, L.L.C. (the purchaser of the timberlands). The Installment Notes are 15-year non-amortizing obligations and were issued in two equal $817.5 million tranches. In order to support the issuance of the Installment Notes, the Note Issuers transferred a total of $1,635 million in cash ($817.5 million each) to Lehman Brothers Holdings Inc. ("Lehman") and Wachovia Corporation ("Wachovia") (Wachovia was later acquired by Wells Fargo & Co.). Lehman and Wachovia issued collateral notes (the "Collateral Notes") to the Note Issuers.

2. How were the timber Installment Notes credit enhanced?

   Concurrently with the issuance of the Installment Notes and Collateral Notes, Lehman and Wachovia guaranteed the respective Installment Notes (referred to respectively as the "Lehman and Wachovia Guaranteed Installment Notes") and the Note Issuers pledged the Collateral Notes as security for the performance of the Installment Note obligations.

3. Why didn't OfficeMax pursue a cash transaction versus accepting Installment Notes in exchange for the timberlands?

   The note structure allowed us to defer recognition of the capital gain and payment of the related taxes on the sale of the timberlands until 2020, the scheduled maturity date of the Installment Notes.

4. How did OfficeMax monetize the Installment Notes received in exchange for the timberlands?

   In December 2004, we completed a securitization transaction in which the Company's interests in the Installment Notes and related guarantees were transferred to wholly-owned bankruptcy remote subsidiaries (the "subsidiaries"). The subsidiaries pledged the Installment Notes and related guarantees and issued securitized notes (the "Securitization Notes") in the amount of $1,470 million, or 90% of the face value of the Installment Notes, ($735 million through the structure supported by the Lehman guaranty and $735 million through the structure supported by the Wachovia guaranty). Recourse on the Securitization Notes is limited to the applicable pledged Installment Notes and underlying Lehman or Wachovia guaranties. The Securitization Notes are 15-year non-amortizing, and were issued in two equal $735

R000153

Appraluhes Case 22-4021   Non-recourse debt Document 1285179   Dmtx Filed 04/28/2022   Page 186

million branches. This appears as a "Non-recourse debt" on the OfficeMax balance sheet (formerly "Timber notes securitized").

5. What did OfficeMax receive as a result of the Installment Notes and Securitized Notes transactions?

 As a result of these transactions, we received $1,470 million in cash. Through maturity of the notes, the subsidiaries were expected to earn approximately $82.5 million per year in interest income on the Installment Notes receivable and expected to incur annual interest expense of approximately $80.5 million on the Securitization Notes. The interest income and expense amounts are reflected on the consolidated income statement of OfficeMax Incorporated.

6. When will the Wachovia Guaranteed Installment Notes and related Securitization Notes mature and how will they eventually be defeased?

 The pledged Installment Notes receivable and Securitization Notes payable are scheduled to mature in 2020 and 2019, respectively. The Securitization Notes have an initial term that is approximately three months shorter than the Installment Notes. We expect to refinance our ownership of the Installment Notes in 2019 with a short-term secured borrowing to bridge the period from initial maturity of the Securitization Notes to the maturity of the Installment Notes. At maturity, the principal received from the final payment on the Installment Notes will be used to pay the principal due on the Securitization Notes. The principal amount due to the Securitized Note holders is equal to 90% of the principal due to OfficeMax on the Installment Notes. The remaining 10% will be retained by OfficeMax.

7. What recourse do the Securitization Note holders have against OfficeMax in the event of a default on either the Lehman or Wachovia guaranteed tranches?

 Recourse on the Securitization Notes is limited to the applicable pledged Installment Notes and underlying Lehman and Wachovia guarantees. As a result, there is no recourse to OfficeMax.

8. How did the Lehman bankruptcy affect the Installment Notes transaction?

 On September 15, 2008, Lehman, the guarantor of half of the Installment Notes and the Securitization Notes, filed a petition in the United States Bankruptcy Court for the Southern District of New York seeking relief under Chapter 11 of the United States Bankruptcy Code. Lehman's bankruptcy filing constituted an event of default under the $817.5 million Installment Note guaranteed by Lehman. Various cash and non-cash impacts to OfficeMax are described in the questions and answers below and shown in Exhibit A.

9. Why was the value of the Timber Notes Receivable written down in the third quarter of 2008?

 We are required for accounting purposes to assess the carrying value of assets whenever circumstances indicate that a decline in value may have occurred. After evaluating the situation, we concluded in late October 2008 that as a result of the Lehman bankruptcy, it was probable that we would be unable to collect all amounts due according to the contractual terms of the Installment Note guaranteed by Lehman (the "Lehman Guaranteed Installment Note"). Accordingly, we evaluated the carrying value of the Lehman Guaranteed Installment Note and reduced it to the estimated amount we expect to collect ($81.8 million) by recording a non-cash impairment charge of $735.8 million, pre-tax in the third quarter

Case 2:22-cv-00340-DBB   Document 16-8   Filed 09/28/22   PageID.187

of 2008. We based our estimate of the recoverable amount of the Lehman Guaranteed Installment Note on a variety of factors, including consultations with financial advisors and review of the trading prices on outstanding Lehman debt instruments with similar contractual interest rates and maturities. In conjunction with the non-cash impairment charge, we also recorded a deferred tax asset of $286.2 million ($735.8 million non-cash impairment charge multiplied by 38.9% marginal tax rate). Measuring impairment of a loan requires judgment and estimates, and the eventual outcome may differ from our estimate by a material amount. The Lehman Guaranteed Installment Note has been pledged as collateral for the related Securitization Notes, and therefore it may not be freely transferred to any party other than the indenture trustee for the Securitization Note holders. Accordingly, the ultimate amount to be realized on the Lehman Guaranteed Installment Note depends entirely on the proceeds from the Lehman bankruptcy estate, which may not be finally determined for several years.

10. Why was the value of the corresponding liability (Securitized Notes) on the OfficeMax consolidated balance sheet not written down subsequent to the Lehman bankruptcy?

Â   Recourse on the Securitization Notes is limited to the proceeds from the applicable pledged Installment Notes and underlying Lehman and Wachovia guaranty (the â€œLehman and Wachovia Guaranteed Installment Notesâ€• , respectively). Accordingly, the Lehman Guaranteed Installment Note and underlying guarantees by Lehman will be transferred to the holders of the Securitization Notes guaranteed by Lehman in order to settle and extinguish that liability. However, under current generally accepted accounting principles, we are required to continue to recognize the liability related to the Securitization Notes guaranteed by Lehman until such time as the liability has been extinguished. This will occur when the Lehman Guaranteed Installment Note and the guaranty are transferred to and accepted by the note holders. We expect that this will occur no later than the date when the assets of Lehman are distributed and the bankruptcy is finalized. Accordingly, we expect to recognize a non-cash gain equal to the difference between the carrying amount of the Securitization Notes guaranteed by Lehman and the carrying value of the Lehman Guaranteed Installment Note in a later period when the liability is legally extinguished. The actual gain to be recognized in the future will be measured based on the carrying amounts of the Lehman Guaranteed Installment Note and the Securitization Notes guaranteed by Lehman at the date of settlement.

11. Can you describe other cash and non-cash financial impact to OfficeMax resulting from the Lehman bankruptcy?

Â   Accelerated cash taxes At the time of the sale of the timberlands in 2004, we generated a tax gain and recognized the related deferred tax liability. The timber note structure (Installment Note and Securitization Note transaction) allowed the Company to defer the resulting tax liability of $543 million until 2020, the maturity date for the Installment Notes. Due to the Lehman bankruptcy and note defaults, we have concluded that the Lehman portion of the gain will be triggered when the note receivable is transferred to the note holders as payment and/or when the Lehman bankruptcy is resolved. Ongoing financial impact- interest income Per the Installment and Securitization note agreements, the OfficeMax subsidiary was expected to receive approximately $41 million in interest annually under the Lehman Guaranteed Installment Note. This interest income was to fund approximately $40 million in interest payable annually to holders of the Securitization Notes guaranteed by Lehman, which would have resulted in net interest income to us of approximately $1 million. Continued nonpayment under the installment note guaranteed by Lehman or the related Lehman guaranty will result in a discontinuance of this $1 million of annual net interest income. One-time 2008 interest impact On October 29, 2008, Lehman failed to pay the $21.5 million interest payment due to the Note Issuer. As a result, the Note Issuer did not make the $20.9 million interest payment due to us and because we are only obligated to make interest payments on the Securitization Notes supported by the Lehman guarantee to the extent that we receive interest payments on the related Lehman Guaranteed Installment Note from the Note Issuer, we did not pay the interest payment due on the Securitization Notes supported by the Lehman guarantee. We did, however, record the ongoing interest expense on the Securitization Notes guaranteed by Lehman until the default date, October 29, 2008. This

resulted in $20.4 million of additional interest expense that will only be paid if the corresponding interest income is collected. We ceased recording interest expense on the Securitization Notes guaranteed by Lehman on the default date pursuant to the terms of the securitization note indenture.

12. How does Lehman's recently proposed bankruptcy plan affect OfficeMax?

Â   On April 14, 2010, Lehman filed its Debtors Disclosure Statement with the United States Bankruptcy Court for the Southern District of New York. The Disclosure Statement indicated a range of estimated recoveries for general unsecured creditors of Lehman. As our estimate is similar to the estimate included in the Disclosure Statement, we have not adjusted our estimated carrying value for the Lehman Guaranteed Installment Note.

13. Does OfficeMax expect any additional adverse financial ramifications related to the timber notes transactions?

Â   As recourse under the Securitization Notes is limited to the applicable pledged Installment Note and guaranty, we do not expect to make further cash payments on the Lehman guaranteed portion of the Securitization Notes. With regards to the Securitization Notes guaranteed by Wachovia (which was later acquired by Wells Fargo & Co.), we are not experiencing any disruption in the notes structure.

14. How can I find more information on the timber notes transaction?

Â   The securitization note indenture, secured by the Installment Note guaranteed by Lehman, was filed as an exhibit to the form 8-K filed on 9/22/08. The installment notes and guarantees were filed as exhibits to the form 10-Q for the period ended 9/30/04. These documents can be viewed on our website under "SEC Filings."

15. Do you consider the timber securitization notes debt?

Â   While the Securitization Notes are listed as liabilities on our balance sheet, they are non recourse to OfficeMax. As a result, we do not consider them payment obligations of OfficeMax. In fact, Moody's and S&P, exclude the Timber Notes transaction when reviewing OfficeMax debt.

16. How will OfficeMax pay the taxes it's currently deferring on the Wachovia-related notes when they come due?

Â   Taxes on the gain of approximately $272 million will come due in 2020 when the Installment Notes, guaranteed by Wachovia, mature. The proceeds from the Installment Notes will be used to pay the cash taxes and the principal due on the Securitization Notes backed by the Wachovia guaranty maturing approximately 3 months earlier in 2019.

17. Can OfficeMax unwind this securitization or somehow remove it from the balance sheet?

Â   No. No call provisions exist for either the Installment or Securitization Notes. While no call provision exists, half of the notes structure, or the $735 million received from investors in the Securitization Notes guaranteed by Wachovia,

continued to enable OfficeMax to defer a significant amount of taxes for OfficeMax until 2020. We are not experiencing any disruption in the Wachovia notes structure.

18. Do you include the Timber Notes Receivable and the corresponding liability (Securitization Notes) when calculating various financial metrics and ratios used to assess the financial health or valuation of OfficeMax including total debt, debt leverage ratios, enterprise valuation ratios, Z-Scores or other metrics?

Â   No. We exclude the Installment and Securitization Notes transactions from all business ratios. As previously stated, while the Securitization Notes are listed as liabilities on our balance sheet, they are non recourse to OfficeMax. As a result, we do not consider them payment obligations of OfficeMax. Moody's and Standard & Poor's also exclude these transactions when assessing OfficeMax's debt and various business ratios. Please review the attached Exhibit A and contact us for assistance in computing these calculations without the impact from the Timber Notes.

## Company Information

Press ReleasesSEC FilingsQuarterly EarningsAnnual ReportsPresentationsCompany Fact Sheet

## Corporate Governance

Senior LeadershipOverviewBoard of DirectorsBoard CommitteesGovernance DocumentsCommittee Charters

## Investor Resources

Investor Relations Contact Information
561-438-7878 | For Customer Service

R000157

DAVID A. HUBBERT
Deputy Assistant Attorney General

MATTHEW UHALDE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
(202) 353-0013
Matthew.P.Uhalde@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Michael Bishop, | Case No. 2:22-cv-00340-DBP |
| Petitioner, | **Reply to Opposition** |
| v. | Magistrate Judge Dustin Pead |
| United States of America, *et al.,* | |
| Respondents. | |

Petitioners misunderstand what matters here and what doesn't. A petition to quash an IRS summons is not a chance to contest liability while the investigation remains ongoing. The IRS need not prove that Petitioners owe tax penalties to justify investigating whether they owe tax penalties. Rather, this is a summary proceeding.[1] And the Court can consider only one binary issue: Did the IRS issue the summons in good faith, on one hand, or bad faith, on the other?[2]

The United States has the initial burden to show that the IRS acted in good faith. To do so, it must meet the four *Powell* factors: (1) The IRS issued the summons for a legitimate purpose; (2) the summons seeks information relevant to that purpose; (3) the IRS does not already possess the information sought; and (4) the IRS followed all administrative steps required by the Internal Revenue Code.[3] Critically, *Powell* does not require the IRS to show that Petitioners is fact owe any taxes. Instead, the IRS need only show that it wants to confirm whether they owe taxes. And here, Agent Bauer's declaration meets that minimal burden.[4]

Petitioners must therefore counter the IRS's showing of good faith on an "appropriate ground"—*e.g.*, that the IRS had an improper purpose, the summonses are overbroad, enforcing it would be an abuse of process, *etc*.[5] Petitioners have not done so. Rather than focus on what's relevant—the IRS's good faith—they jump the gun and ask the Court to decide now the irrelevant question of whether the IRS can prove them liable for anything. But that issue is not before the Court. And it isn't ripe. Thus, the Court should summarily deny the petitions to quash and enforce the Summit Crest and Wells Fargo summonses.

---

[1] *United States v. Clarke*, 573 U.S. 248, 254 (2014).
[2] *Id.* at 249.
[3] *United States v. Powell*, 379 U.S. 48, 57–58 (1964).
[4] *Id.* at 250 (explaining that "the IRS usually files an affidavit from the responsible investigating agent" to make its showing).
[5] *Id.*

R000159

1.      **Petitioners have not opposed consolidating the eight petitions.**

As the United States explained, the eight petitions are nearly carbon copies and seek to quash identical summonses issued as part of the same IRS investigation.[6] The Court should therefore consolidate the petitions under one case number. Petitioners do not deny this, although they do "reserve the right" to oppose which district judge is assigned to the case if it's not Judge Dale Kimball.[7]

2.      **The petitions to quash summonses served on Key Bank and Zions Bank are moot.**

The IRS cannot enforce its own summonses.[8] Instead, if a person or entity summoned to provide information to the IRS fails to do so, the IRS may refer the summons to the Justice Department, and the Justice Department, on behalf of the United States, may petition in district court for an enforcement order.[9]

Here, Key Bank and Zions Bank both notified the IRS that they have no documents responsive to the summonses.[10] The IRS accepts this response, and the United States will not ask a court to enforce the summonses served on Key Bank and Zions Bank.[11] Thus, the live controversy concerning those summonses is over.[12] The summonses will not be enforced, and the banks will not produce anything in response to them. So there is nothing to quash.

---

[6] Motion, ECF No. 13 at 11–12.
[7] Opp'n at 3 n. 1.
[8] *United States v. Gilleran*, 992 F.2d 232, 233 (9th Cir. 1993).
[9] 26 U.S.C. § 7604.
[10] Bauer Decl. ¶¶ 23–24.
[11] Summit Crest apparently told Petitioners that it likewise has no documents responsive to the summonses. But the IRS did not receive that same representation in a formal response. Instead, it appears that Summit Crest is waiting until this case is resolved to communicate with the IRS directly. Therefore, the United States still asks the Court to enforce the summonses served on Summit Crest.
[12] *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007) ("Without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious.").

R000160

Petitioners respond that the IRS should stipulate that it will never again summon those banks as part of its investigation into Bishop. The IRS declines to do so, but not because it has any current plans to summon the banks again. Rather, any talk of future summonses simply falls beyond the case at hand. The Internal Revenue Code only authorizes challenges to summonses that have already issued.[13] It does not empower courts to prospectively enjoin the IRS from issuing future summonses. And as this constitutes a limited waiver of the federal government's sovereign immunity, it must be interpreted narrowly.[14] More, Petitioners lack Article III standing to hamstring the IRS's future actions, since future summonses remain "conjectural" rather than "actual or imminent."[15] And to be clear, the IRS does not anticipate summoning the banks again. It just won't promise Petitioners something they have no right to.

In *Pacific Fisheries Inc. v. United States*, Pacific Fisheries petitioned to quash IRS summonses served on Bank of America.[16] Afterward, the IRS sent Bank of America a letter to disregard and not answer the summonses.[17] The United States then moved to dismiss the petitions as moot.[18] Like Petitioners here, Pacific Fisheries countered that the case was not moot without "assurances that the IRS would not reissue the summons."[19] The district court rejected that argument, and the Ninth Circuit agreed.[20] Once the IRS withdrew the summonses, the controversy ended.[21] So too here.

---

[13] 26 U.S.C. § 7609(a).
[14] *Lane v. Pena*, 518 U.S. 187, 192 (1996) (explaining that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign").
[15] *Mink*, 482 F.3d at 1253.
[16] 84 F.3d 1103, 1105 (9th Cir. 2007).
[17] *Id.*
[18] *Id.*
[19] *Id.* at 1106.
[20] *Id.* at 1111.
[21] *Id.*

R000161

3.      **Petitioners offer no "credible evidence"[22] that the IRS summoned the banks for an improper purpose.**

On this front, Petitioners have nothing but Bishop's terse declaration that the summonses frightened his business partners and customers.[23] They call the declaration "circumstantial evidence" that the IRS intended that effect, *i.e.*, to "scare off" Bishop's clients.[24] But it's not.

To begin, the declaration is too conclusory to credit: It omits all essential details. Who are Bishop's clients? How were they frightened? How does Bishop know? And, most of all, who told Bishop's clients about the summonses? It wasn't the IRS: The only groups it notified were Petitioners and the banks. So how then did Bishop's clients find out about the investigation? Did Bishop tell them?

Plus, when it comes to an IRS summons, effect is not evidence of purpose. Consider *La Mura v. United States*.[25] There, the IRS summoned La Maura's bank records to determine whether his claimed charitable deductions were accurate.[26] La Maura, in response, accused the IRS of summoning the bank statements for an improper purpose: to scare him from claiming another deduction going forward.[27] In support, La Maura signed an affidavit that the summons had that effect on him.[28] Still, the Eleventh Circuit said no dice.[29] Indeed, a summons may have many effects, not all of which the IRS can control, but that's irrelevant. A summons' impact does not prove the IRS's purpose for issuing it.[30]

---

[22] *Clarke*, <u>573 U.S. at 254</u>.
[23] Bishop Decl. ¶ 12.
[24] Opp'n at 16 n. 27.
[25] <u>765 F.2d 974, 981</u> (11th Cir. 1985).
[26] *Id.* at 976–77.
[27] *Id.* at 980.
[28] *Id.*
[29] *Id.*
[30] *Id.*

R000162

Petitioners also try to cast a shadow over the summonses served on Key Bank and Zions Bank by emphasizing that the summonses did not turn up documents in the end.[31] They thus call these summonses "demonstrably meritless" and accuse the IRS of trying to "sweep them under the rug."[32] Yet that overlooks the nature of an investigation. It's less about following roadmaps and more about hitting dead ends until you locate something—or discover that there's nothing to locate. Summonses, after all, are "only to inquire,"[33] and the IRS "can hardly be expect to know"[34] what they will yield beforehand. So you can't judge the investigation by its individual prods. Some aspects are more fruitful than others. And that's normal.

### 4.     The IRS can investigate Bishop before deciding if he is liable for § 6700 penalties.

According to Petitioners, before the IRS can investigate Bishop, it must first prove that MIS are illegal.[35] Otherwise, the IRS will chill Bishop's "speech"—*i.e.*, his promotion of MIS.[36] Which would, they claim, violate the First Amendment.[37] But this argument "place[s] the cart before the horse."[38]

Bishop cannot contest liability at the investigation stage. After all, the IRS has not found him liable for anything: It's still investigating.

Ditto for Bishop's First Amendment defense. It doesn't yet matter whether the First Amendment protects Bishop's conduct because the IRS hasn't penalized him for it. Bishop

---

[31] Opp'n at 4.
[32] *Id.*
[33] *Clarke*, 573 U.S. at 254 (internal quotations marks omitted).
[34] *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984).
[35] Opp'n at 8.
[36] *Id.*
[37] *Id.*
[38] *United States v. Kaiser*, 308 F. Supp. 2d 946, 955 (E.D. Mo. 2004), *aff'd*, 397 F.3d 641 (8th Cir. 2005).

R000163

could, of course, raise a First Amendment defense in court *if* the IRS ultimately assesses a § 6700 penalty against him. Indeed, that could happen in several ways:

- Bishop could pay 15% of the penalty and then file a refund suit in district court;[39]

- The United States could sue in district court to reduce the penalty to a judgment;[40] or

- Bishop could challenge his liability in the Tax Court if the IRS tried to levy payment toward the penalty.[41]

These procedural safeguards assure Bishop his day in court before the government can collect a dime toward any future tax penalties against him. And it would be a *de novo* court proceeding, with the burden to prove liability resting on the government.[42]

That would be Bishop's time to argue that MIS are "a legal tax loophole."[43] Or that promoting them is "First Amendment speech."[44] This summons proceeding is, in contrast, too early to raise those claims.

The IRS is still uncovering the facts. It doesn't know everything that Bishop preached. It doesn't know who listened to him. It doesn't know who, if anyone, helped him. And it doesn't know how much he profited.

Nor, for that matter, does the IRS know that it will penalize Bishop at all. It might. It might not. An investigation isn't over until it's over. And until then, no one can say for certain how it will end.

---

[39] 26 U.S.C. § 6703(c)(2).
[40] *See United States v. Alexander*, No. CA6:08CV03760GRA, 2010 WL 1643425, at *1 (D.S.C. Apr. 22, 2010), *aff'd*, 434 F. App'x 246 (4th Cir. 2011).
[41] 26 U.S.C. § 6330(d); *Davison v. Comm'r of Internal Revenue*, 119 T.C.M. (CCH) 1373, 2020 WL 2498420 (T.C. 2020).
[42] 26 U.S.C. § 6703(a); *Davison*, 2020 WL 2498420, at *16.
[43] Opp'n at 7.
[44] *Id.* at 13.

R000164

Which is why courts don't consider arguments against liability at the summons stage. Instead, they consider only whether the IRS believes in good faith[45] that the summoned information "may be relevant"[46] to determining a person's liability. And, once a court finds that the IRS acted in good faith, the court must enforce the summons.[47]

The ultimate decision on liability will still be a court's to make, when the issue is ripe. But, in the meantime, the IRS is the expert on how to conduct tax investigations. So any "determinations to investigate" are its alone to make.[48]

The *Crow* court explained as much. Recall that (1) Bishop modeled his MIS plan after Stanley Crow's;[49] (2) the IRS also launched a similar § 6700 investigation into Crow's MIS promotions; and (3) Crow petitioned the Idaho district court to quash analogous summonses issued in that investigation.[50] In his petition, Crow pressed the same "I'm not liable" claim that Bishop makes here. And the court rejected it as premature, for the reasons we've explained.

Petitioners do more than overlook this: They mischaracterize *Crow*. As Petitioners tell it—in bold and italics—"an actual reading of *Crow* reveals that the parties in that case . . . ***did not raise as an issue whether MIS is even illegal to begin with***."[51] Not so. The discussion is there, plain as day:

> During the course of several interactions between Crow (or his counsel) and the IRS, Crow provided the IRS his perspective on the facts and law pertinent to the [MIS] transactions at issue. *Petitioners' argument is unmistakably a denial of any possible liability* . . . However, it is up to the IRS, not Petitioners, to consider in the first instance whether Petitioners' defenses disprove liability. The fact that

---

[45] *Powell*, 379 U.S. at 58.

[46] 26 U.S.C. § 7602(a)(2).

[47] *Clarke*, 573 U.S. at 254.

[48] *Id.*

[49] Bauer Decl. ¶ 11, ECF No. 13-1.

[50] *S. Crow Collateral Corp. v. United States*, No. 117MC09828EJLREB, 2018 WL 2454630, at *5 (D. Idaho Jan. 19, 2018) (internal citations omitted).

[51] Opp'n at 13.

Petitioners proffer a factual and legal defense does not transmute an investigation, ipso facto, into an illegitimate exercise based on the IRS's declining to adopt the defense without further investigation.[52]

Other courts have reached the same conclusion on comparable facts. In *United States v. Greenberger*, for example, the IRS investigated Greenberger for possible § 6700 penalties after he promoted conservation-easement partnerships as a tax-avoidance strategy.[53] In a proceeding to enforce a summons issued during the investigation, Greenberger argued that the IRS had "not established that he engaged in any wrongdoing."[54] And that the summons "chilled his business relationship, infringed upon his First Amendment rights, and targeted him for his political beliefs."[55] The court rejected both claims. As it explained, the only issue was whether the IRS issued the summons in good faith, not whether Greenberger had in fact done anything illegal.[56] Greenberger's First Amendment argument was likewise an attempt to contest liability too soon.[57]

Same here. Petitioners cannot require the IRS to prove wrongdoing while its investigation is ongoing. Nor can they raise a First Amendment defense to conduct that has not been penalized. Simply put, neither argument is ripe.

**5.     The summonses are not overbroad.**

Petitioners bear a "heavy burden" to prove that the summonses are overbroad.[58] They have not done so. Indeed, except for footnote 31, this entire section of their brief is boilerplate. It

---

[52] *S. Crow Collateral Corp.*, 2018 WL 2454630, at *5 (emphasis added).
[53] No. 1:15-CV-03532-AT-JFK, 2016 WL 3912065, at *1–2 (N.D. Ga. Jan. 11, 2016).
[54] *Id.* at *6.
[55] *Id.*
[56] *Id.* at *7.
[57] *Id.* at *11. *See also Benistar Emp. Servs. Tr. Co. v. United States*, No. 3:04 CV 02197 (JBA), 2005 WL 3429423, at *7 (D. Conn. May 12, 2005) (finding petitioners' constitutional challenge to § 6700 unripe at the summons stage), aff'd, 184 F. App'x 93 (2d Cir. 2006).
[58] *Standing Akimbo, LLC v. United States*, 955 F.3d 1146, 1166 (10th Cir. 2020).

R000166

doesn't even identify who was summoned or what was requested. Nor do Petitioners attempt to

argue, with any specificity, why the summoned information would be overbroad.

"Overbroad" has a different meaning in this summary proceeding than in civil discovery.

Section 7602 empowers the IRS to summon any information that "may be relevant" to

determining any person's tax liability.[59] "The language 'may be' reflects Congress' express

intention to allow the IRS to obtain items of even *potential* relevance to an ongoing

investigation."[60] Material has potential relevance, in turn, when it "might throw light on" a

person's tax liability.[61]

Now consider what the IRS summoned from Wells Fargo and Summit Crest: Records of

any account over which Petitioners, since 2018, either,

1)   Held ownership interests, signatory authority, or right to make withdrawal from, or,

2)   Served as trustee, co-signer, guardian, custodian, administrator, or beneficiary.[62]

Those records "might throw light on" how much Bishop profited from MIS. After all, Bishop

told Agent Bauer that MIS earned him a "pay day."[63] He runs the scam through Slim Ventures.[64]

And the IRS has linked both Petitioners to the two banks. Wells Fargo reported paying Slim

Ventures $11,227 in interest in 2020.[65] Given how low bank interest rates are, Slim Ventures

likely held a sizable bank balance in 2020, potentially in MIS profits. And IRS seeks that figure

because Bishop's potential § 6700 penalty would equal half those profits.[66] Likewise, Bishop

---

[59] 26 U.S.C. § 7602(a)(2).
[60] *Arthur Young & Co.*, 465 U.S. at 814.
[61] *United States v. Sw. Bank & Tr. Co.*, 693 F.2d 994, 996 (10th Cir. 1982).
[62] Copy of Summons to Wells Fargo, *Bishop v. United States*, 2:22-cv-00344 (D. Utah May 20, 2022), ECF No. 2-6 at 7.
[63] Bauer Decl. ¶ 12, ECF No. 13-1 at 3.
[64] *Id.* ¶ 13.
[65] *Id.* ¶ 14.
[66] 26 U.S.C. § 6700(a)(2)(B).

R000167

uses Summit Crest as his third-party lender for the MIS deals.[67] So it may also have records relevant to Bishop's earnings. The records sought from both banks may therefore be relevant to the IRS's investigation. Indeed, they probably are. The summonses' timeline—2018 to the present—is also appropriate: Bishop told Agent Bauer in 2021 that he had been profiting from MIS for the past three years, *i.e.*, since 2018.[68]

So, in sum, the summonses seek potentially relevant information, specifically describe that information, and limit the request to the years in question. They "are thus proportionate to the ends sought and not [overbroad or] a 'fishing expedition.'"[69]

## 6.    Petitioners' arguments regarding liability are irrelevant and incorrect.

Petitioners devote most of their brief to irrelevant arguments supposedly showing that promoting MIS is not subject to § 6700 penalties.[70] As discussed, the Court need not address these arguments. The United States contests Petitioners claims and will fully address them, if need be, in an appropriate proceeding. Here, the United States briefly says the following.

Section 6700 penalizes any person who sells a plan or arrangement for tax benefits that the person "knows or has reason to know is false or fraudulent as to any material matter."[71] The MIS that Bishop marketed on Slim Ventures' website fit that bill.

First recall what MIS are. Bishop promises his clients that they can sell "highly appreciated assets" for cash up front and still "defer 100% of the capital gains tax for up to 30 years."[72] To make that happen, Bishop alchemizes the cash payments into two things: (1) an

---

[67] Bauer Decl. ¶ 13.
[68] *Id.* ¶ 12.
[69] *Standing Akimbo*, 955 F.3d at 1166.
[70] Opp'n at 7-18.
[71] 26 U.S.C. § 6700(a). *See United States v. RaPower-3, LLC*, 343 F. Supp. 3d 1115, 1170 (D. Utah 2018) (reciting the elements of liability), *aff'd*, 960 F.3d 1240 (10th Cir. 2020).
[72] Bauer Decl. Ex. 1, ECF No. 13-1 at 7.

unsecured loan that the client must repay in 30 years, and (2) an equal credit that the client will receive on the same day, in 30 years.[73]

Now here's why that's fraudulent. "In the field of taxation, administrators of the law and the courts are concerned with the substance and realities of a transaction, and formal written documents are not rigidly binding."[74] Thus, "how the agreement in question is to be construed depends not upon any particular phraseology used in the document but rather upon what the parties actually did."[75] It's called the substance-over-form doctrine.[76] And it "operates to prevent the true nature of a transaction from being disguised by mere formalisms, which exist solely to alter tax liabilities."[77]

So what have Bishop's clients actually done? Well, as Bishop himself admits in promotional materials, they sold "highly appreciated assets" for cash "up front."[78] Which means that they earned a capital gain the year the transaction took place. And they must therefore report it as income earned the same year—not 30 years later. The 30-year, counterpoise debt and credit exist only on paper. In realty, they cancel out and serve no economic purpose. Thus, they carry no tax benefits.

And Bishop "has reason to know"[79] as much. Section 6700's knowledge element is met when "a reasonable person in [Bishop's] subjective position would have discovered the falsity of his representations."[80] Here, robust case law explains the substance-over-form doctrine. The IRS

---

[73] *Id.* at 10.
[74] *Rogers v. United States*, 281 F.3d 1108, 1121 (10th Cir. 2002) (cleaned up).
[75] *Id.* (cleaned up).
[76] *Id.*
[77] *True v. United States*, 190 F.3d 1165, 1174 (10th Cir. 1999) (cleaned up).
[78] Bauer Decl. Ex. 1, ECF No. 13-1 at 7.
[79] 26 U.S.C. § 6700(a)(2)(A).
[80] *United States v. Hartshorn*, 751 F.3d 1194, 1202 (10th Cir. 2014) (internal quotation marks omitted).

R000169

also published that MIS are fraudulent. [81] And "Bishop is an attorney and financial advisor."[82] He should therefore have figured out that what he was doing was wrong.

Bishop counters that no court has yet considered whether MIS are fraudulent. And that several Internet articles tout their supposed efficacy. Perhaps so. But that does not make it legal.

Bishop is probably also in contempt of this Court's permanent injunction. The Court permanently enjoined Bishop from promoting false tax schemes back in 2003.[83] Petitioners, in response, claim that the Court only enjoined Bishop from advising clients that they could save taxes by leasing their labor to foreign corporations.[84] But they're wrong. The injunction went further than that. It also barred any "conduct subject to penalty under [26 U.S.C.] § 6700" and then explained what that entailed—*i.e.*, promoting tax plans Bishop has reason to know are false.[85] Bishop did not obey.[86]

Finally, the First Amendment does not allow Bishop to promote MIS. As previously discussed, the Court should not address petitioners' First Amendment arguments at this stage. But ultimately, the First Amendment does not protect the promotion of improper tax transactions, like MIS. Not all speech is the same. In applying the First Amendment, courts distinguish "core" speech, like political or cultural expression, from commercial speech.[87] They

---

[81] IRS News Releases, <u>2022 WL 2093910</u> (June 10, 2022) and <u>2021 WL 2716177</u> (July 1, 2021).
[82] Opp'n at 5 n. 5.
[83] Consent Injunction ¶ 4(d), United States v. Bishop, 2:03-cv-01017 (D. Utah Dec. 5, 2003), <u>ECF No. 6</u>.
[84] Opp'n at 5 n. 5.
[85] Consent Injunction ¶ 4(d).
[86] Petitioners also highlight that the Court entered the injunction "almost 20 years ago." Opp'n at 5 n. 5. But permanent injunctions are permanent. *See Fla. Ass'n for Retarded Citizens, Inc. v. Bush*, <u>246 F.3d 1296, 1298</u> (11th Cir. 2001) (holding that a consent decree from 1982 was still in force). And this Court's injunction against Bishop is no exception.
[87] *Fla. Bar v. Went For It, Inc.*, <u>515 U.S. 618, 623</u> (1995).

R000170

also distinguish truthful commercial speech from false commercial speech. And a different tier of scrutiny applies to each category.

| Type of Speech | Tier of Scrutiny | Test |
|---|---|---|
| Core Speech | Strict | Content-based restrictions must be "narrowly tailored to serve compelling state interests."[88] |
| Truthful Commercial Speech | Intermediate | Content-based restrictions must be in proportion to a substantial state interest.[89] |
| False Commercial Speech | Rational Basis | "The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading, or that proposes an illegal transaction."[90] |

Like all conduct prohibited under § 6700, Bishop's MIS scam falls into the bottom rung: It's false commercial speech. So the IRS is free to penalize it, and the First Amendment offers no defense. [91]

Petitioners nonetheless claim that the IRS "engaged in the very kind of conduct" found to violate the First Amendment in earlier cases.[92] Yet, of the four cases Petitioners cite, three applied strict scrutiny to restraints on core speech, and the last found only a violation of procedural due process, not free speech at all.

First, the three core-speech cases:

- *Nat'l Inst. of Fam. & Life Advocs. v. Becerra* struck down a state law compelling pro-life pregnancy centers to tell patients about low-cost abortion services.[93]

---

[88] *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).
[89] *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980).
[90] *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 638 (1985).
[91] *United States v. Stover*, 650 F.3d 1099, 1114 (8th Cir. 2011) (holding that § 6700's restriction on "false or fraudulent commercial tax advice [does] not violate the First Amendment"); *United States v. Bell*, 414 F.3d 474, 480 (3d Cir. 2005) (same); *Nat'l Commodity & Barter Ass'n v. United States*, 843 F. Supp. 655, 666 (D. Colo. 1993) (same), aff'd, 42 F.3d 1406 (10th Cir. 1994).
[92] Opp'n at 18.
[93] 138 S. Ct. 2361, 2369 (2018).

13

- *Bantam Books, Inc. v. Sullivan* invalidated a Cold-War-era commission created to blacklist books deemed "objectionable" for young people.[94] (Hopefully *Fahrenheit 451* survived the purge.) And,

- *White v. Lee* found that federal housing officials had retaliated against a neighborhood group after it petitioned to halt construction of a homeless shelter.[95]

Never bring a strict-scrutiny sword to a rational-basis fight. Americans can speak against abortion and homeless shelters. They can read erotic teen novels. But they can't sell bogus tax advice, for a profit, to unsuspecting and potentially vulnerable clients. They can't be a charlatan.

Last, the procedural-due-process case: *ACLU v. City of Pittsburgh*. There, a mayor tried to ban the Easter 1984 edition of *Hustler* magazine because he disliked its not-so-pious depiction of biblical women.[96] A court then found that the mayor had denied the magazine publishers due process by deciding himself that the images were obscene and therefore unprotected by the First Amendment.[97] Instead, the mayor should have asked a neutral magistrate to make that determination and allowed the magazine an opportunity to respond.[98]

That's not an issue here. The IRS would not decide by decree that Bishop violated § 6700. Instead, as we explained, the IRS would at most assess the § 6700 penalties, at which point Bishop could contest his liability in court *de novo*.[99]

## 9.    This is not the place for political bluster.

Petitioners ask the Court "to stand as a guardian" against the Biden Administration's "disturbing appetite" for oppression.[100] Next, they cite a slew of political op-eds about Covid,

---

[94] 372 U.S. 58, 62 (1963).
[95] 227 F.3d 1214, 1221 (9th Cir. 2000).
[96] 586 F. Supp. 417, 419 (W.D. Pa. 1984).
[97] *Id.* at 423–24.
[98] *Id.*
[99] *Davison*, 2020 WL 2498420, at *16.
[100] Opp'n at 16–17.

firearms, and Russia.[101] Finally, Petitioners attempt to link the IRS's current tax investigation into Bishop with a greater assault on "democracy itself."[102]

The Court need not consider these irrelevant attacks on the career public servants who work to administer the Internal Revenue Code "with integrity and fairness to all,"[103] regardless of who occupies the White House. Consider that the IRS investigated Stanley Crow's nearly identical MIS scheme during the last presidential administration. Consider also that the United States sued to enjoin Bishop from violating § 6700 during a different Republican administration in 2003. Presidents come and go. But the IRS's fair administration of our tax law does not.

### Conclusion

For these reasons, the Court should (1) consolidate the eight petitions to quash IRS summonses, (2) summarily deny the petitions, and (3) enter an order enforcing the summonses served on Summit Crest and Wells Fargo.

Respectfully submitted October 24, 2022.

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Matthew Uhalde*
MATTHEW UHALDE
Trial Attorney, Tax Division
U.S. Department of Justice

---

[101] *Id.* n. 28.
[102] *Id.*
[103] IRS Mission Statement, https://www.irs.gov/about-irs/the-agency-its-mission-and-statutory-authority.

15

R000173

**Certificate of Service**

I certify that on October 24, 2022, I served the foregoing via the Court's CM/ECF

system, which will serve all counsel of record.


/s/ Matthew Uhalde
MATTHEW UHALDE
Trial Attorney, Tax Division
U.S. Department of Justice

16

R000174

Daniel E. Witte (UT 8576)
Pearson Butler & Carson PLLC
1802 W. South Jordan Pkwy, Suite 200
South Jordan, Utah 84095
Telephone: (801) 495-4104
Fax: (801) 254-9427
Email: dan@pearsonbutler.com
*Attorney for Petitioners*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity, <br><br> Respondents. | **NOTICE OF ADDITIONAL CASES IN SUPPORT OF PETITIONERS' JOINT RESPONSE TO IRS MOTION TO (1) CONSOLIDATE AND SUMMARILY DENY PETITIONS TO QUASH IRS SUMMONS AND (2) ENFORCE THE SUMMONS AND IN REBUTTAL TO IRS REPLY** <br><br> Civil Nos. 2:22-cv-00340-DBP <br>         2:22-cv-00341-DAK-DBP <br>         2:22-cv-00344-TS-DBP <br>         2:22-cv-00345-DBB-DBP <br>         2:22-cv-00347-CMR <br>         2:22-cv-00348-RJS-JCB <br>         2:22-cv-00351-DBB-DBP <br>         2:22-cv-00352-JNP <br><br> **District Court Judge Dale A. Kimball** <br> **District Court Judge David B. Barlow** <br> **Chief Magistrate Judge Dustin B. Pead** <br><br> **Hearing Requested** <br><br> ***Other Related District Judges Include:*** <br> **Chief Judge Robert J. Shelby,** <br> **Hon. Ted Stewart, Hon. Jill N. Parrish** <br><br> ***Other Related Magistrate Judges Include:*** <br> **Hon. Cecilia M. Romero, Hon. Daphne A.  Oberg, Hon. Jared C. Bennet** |

R000175

Petitioners David Michael Bishop ("Bishop") and Slim Ventures, LLC (collectively, "Petitioners"), by and through counsel, hereby give notice that they submit the following additional legal authorities in support of the joint "Response To IRS Motion To (1) Consolidate And Summarily Deny Petitioner To Quash IRS Summons And (2) Enforce The Summons" (hereinafter "Response"), which IRS motion was filed by the United States on August 26, 2022 (hereinafter, "IRS Motion"), pursuant to Local Rule 42-1, in *David Bishop v. United States,* 2:22-cv-000340 (D. Utah) (hereinafter "First Filed Case"), for and in relation to all of Civil Nos. 2:22-cv-00340-DBP, 2:22-cv-00341-DAK-DBP, 2:22-cv-00344-TS-DBP, 2:22-cv-00345-DBB-DBP, 2:22-cv-00347-CMR, 2:22-cv-00348-RJS-JCB, 2:22-cv-00351-DBB-DBP, and 2:22-cv-00352-JNP (collectively the "Eight Cases").  The IRS filed a reply with new caselaw and arguments which Petitioners dispute as a matter of fact and law, and in addition advances misinterpretation and unconstitutional misuse of an aged, vague consent decree which if necessary should be interpreted, terminated, or modified in light of constitutional, equity, intent, current circumstance, and reasonable intent considerations.  Petitioners respectfully submit for Court review, without limitation, the following additional legal authorities in all of the Eight Cases:

1. *Greenberg v. Haggerty,* 491 F.Supp.3d 12, 25-33 (E.D. Pa. 2020), *appeal dismissed*, 2021 WL 2577514 (3d Cir.)(attempts to regulate or suppress content of professional attorney speech violated First Amendment)
2. *In re Pearson,* 990 F.2d 653, 658 (1st Cir. 1993) ("the district court is not doomed to some Sisyphean fate, bound forever to enforce and interpret a preexisting decree without occasionally pausing to question whether changing circumstances have rendered the decree unnecessary, outmoded, or even harmful to the public interest")
3. *Jewell v. U.S.,* 749 F.3d 1295, 1297-1300 (10th Cir. 2014) (denial of enforcement of summons due to IRS failing to comply with Powell and administrative requirements)
4. *Lightborne Pub., Inc. v. Citizens For Community Values,* 2009 WL 778241 *7-8 (S.D. Ohio)(unpublished)(First Amendment was violated when IRS used threats and investigation to suppress speech)

R000176

5. *Otto v. City of Boca Raton, Florida,* 981 F.3d 854, 859-872 (11th Cir. 2020), *rehearing en banc denied,* 41 F.4th 1271 (11th Cir. 2022) (government efforts to suppress, disallow, or punish professional speech subject to First Amendment strict scrutiny)

6. *Ridley v. Phillips Petroleum Co.,* 427 F.2d 19, 22-23 (10th Cir. 1970) ("federal courts have an inherent equitable power to modify a continuing decree of injunction" and can at any time terminate, modify, and/or interpret a prior consent decree based on a variety of legal and factual considerations, including what would be reasonable in light of the scope and purpose of the earlier proceedings and current circumstances, and use of decree)

7. *U.S. v. Church of World Peace,* 775 F.2d 265, 266-68 (10th Cir. 1985) (IRS request to enforce summons denied due to improper purpose and chilling effect of summons on First Amendment rights)

8. *U.S. v. Gertner,* 65 F.3d 963, 965 (1st Cir. 1995) (IRS summons quashed for having improper purpose)

9. *U.S. v. City of Miami*, 2 F.3d 1497, 1508 (11th Cir. 1993) (Termination or modification of consent decrees, "The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action. Equitable remedies must be flexible if these underlying principles are to be enforced with fairness and precision.")

10. *U.S. v. Solomon,* 437 F.2d 110, 110 (5th Cir. 1971) (IRS summons would not be enforced, as it was unacceptably ambiguous, and District Court could summon the IRS or anyone else to testify in regard to summons)

Submitted December 14, 2022.   /s/ Daniel E. Witte
                               Daniel E. Witte
                               *Attorney for Petitioners*

**Certificate of Service**

I certify that on December 14, 2022, I served the foregoing via the Court's CM/ECF system, which will serve all parties who have appeared, including without limitation:

DAVID A. HUUBERT
Deputy Assistant Attorney General

MATTHEW UTHALDE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
(202) 353-0013
Mathew.P.Uhalde@usdoj.gov

                               *Daniel E. Witte*
                               Daniel E. Witte
                               Attorney for Petitioners

3

R000177

Daniel E. Witte (UT 8576)
Pearson Butler & Carson PLLC
1802 W. South Jordan Pkwy, Suite 200
South Jordan, Utah 84095
Telephone: (801) 495-4104
Fax: (801) 254-9427
Email: dan@pearsonbutler.com
*Attorney for Petitioners*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity, <br><br> Respondents. | **OPPOSITION TO MOTION TO STRIKE ADDITIONAL CASES IN SUPPORT OF PETITIONERS' JOINT OPPOSITION** <br><br> Civil Nos. 2:22-cv-00340-DBP <br> 2:22-cv-00341-DAK-DBP <br> 2:22-cv-00344-TS-DBP <br> 2:22-cv-00345-DBB-DBP <br> 2:22-cv-00347-CMR <br> 2:22-cv-00348-RJS-JCB <br> 2:22-cv-00351-DBB-DBP <br> 2:22-cv-00352-JNP <br><br> **District Court Judge Dale A. Kimball** <br> **District Court Judge David B. Barlow** <br> **Chief Magistrate Judge Dustin B. Pead** <br><br> **Hearing Requested** <br><br> ***Other Related District Judges Include:*** <br> **Chief Judge Robert J. Shelby,** <br> **Hon. Ted Stewart, Hon. Jill N. Parrish** <br><br> ***Other Related Magistrate Judges:*** <br> **Hon. Cecilia M. Romero, Hon. Daphne A. Oberg, Hon. Jared C. Bennet** |

1

R000178

Petitioners David Michael Bishop ("Bishop") and Slim Ventures, LLC (collectively, "Petitioners"), hereby respond with their joint opposition to the motion to strike (Docket 25 filed on December 16, 2022, as a motion under case number 2:22-cv-00340-DBP, hereinafter the "Motion" or "M.") of the Respondents United States, Internal Revenue Service, and Internal Revenue Agent Timothy Bauer (ID # 0324589) (collectively, the "IRS" or "Government"), apparently for and in relation to all of Civil Nos. 2:22-cv-00340-DBP, 2:22-cv-00341-DAK-DBP, 2:22-cv-00344-TS-DBP, 2:22-cv-00345-DBB-DBP, 2:22-cv-00347-CMR, 2:22-cv-00348-RJS-JCB, 2:22-cv-00351-DBB-DBP, and 2:22-cv-00352-JNP (collectively, "Eight Cases").

On  December 14, 2022, Petitioners filed supplemental notices of legal authority in each of the Eight Cases which indicated (on page 2, in the first paragraph after the header) a concern on the part of Petitioners that "The IRS filed a reply with new caselaw and arguments which Petitioners dispute as a matter of fact and law, and in addition advances misinterpretation and unconstitutional misuse of an aged, vague consent decree which if necessary should be interpreted, terminated, or modified in light of constitutional, equity, intent, current circumstance, and reasonable intent considerations."  The Petitioners then provided a list of supplemental authorities[1]

---

[1]   The list of supplemental authorities (collectively, the "Supplemental Authorities") and cursory explanation of relevant points to which they relate included *Greenberg v. Haggerty,* 491 F.Supp.3d 12, 25-33 (E.D. Pa. 2020), *appeal dismissed,* 2021 WL 2577514 (3d Cir.)(attempts to regulate or suppress content of professional attorney speech violated First Amendment); *In re Pearson,* 990 F.2d 653, 658 (1st Cir. 1993) ("the district court is not doomed to some Sisyphean fate, bound forever to enforce and interpret a preexisting decree without occasionally pausing to question whether changing circumstances have rendered the decree unnecessary, outmoded, or even harmful to the public interest); *Jewell v. U.S.,* 749 F.3d 1295,

2

(not a sur-reply with additional briefing and arguments or such) which Petitioners reserved the

right to assert, invoke, and discuss while rebutting the IRS Reply during hearing and/or any

potential sur-reply which the Court might eventually find appropriate.

     The IRS contends that Petitioners' filing is somehow an improperly filed sur-reply that

should be stricken, but this is incorrect for at three reasons.   First, a mere supplementary authority

list of cases is not a brief or memorandum, and indeed is not a "sur-reply" at all (or even a "sur-

---

1297-1300 (10th Cir. 2014) (denial of enforcement of summons due to IRS failing to comply with *Powell* and administrative requirements); *Lightborne Pub., Inc. v. Citizens For Community Values,* 2009 WL 778241 *7-8 (S.D. Ohio)(unpublished)(First Amendment was violated when IRS used threats and investigation to suppress speech); *Otto v. City of Boca Raton, Florida,* 981 F.3d 854, 859-872 (11th Cir. 2020), *rehearing en banc denied,* 41 F.4th 1271 (11th Cir. 2022) (government efforts to suppress, disallow, or punish professional speech subject to First Amendment strict scrutiny); *Ridley v. Phillips Petroleum Co.,* 427 F.2d 19, 22-23 (10th Cir. 1970) ("federal courts have an inherent equitable power to modify a continuing decree of injunction" and can at any time terminate, modify, and/or interpret a prior consent decree based on a variety of legal and factual considerations, including what would be reasonable in light of the scope and purpose of the earlier proceedings and current circumstances, and use of decree);   *U.S. v. Church of World Peace,* 775 F.2d 265, 266-68 (10th Cir. 1985) (IRS request to enforce summons denied due to improper purpose and chilling effect of summons on First Amendment rights); *U.S. v. Gertner,* 65 F.3d 963, 965 (1st Cir. 1995) (IRS summons quashed for having improper purpose); *U.S. v. City of Miami,* 2 F.3d 1497, 1508 (11th Cir. 1993) (Termination or modification of consent decrees, "The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action. Equitable remedies must be flexible if these underlying principles are to be enforced with fairness and precision."); *U.S. v. Solomon,* 437 F.2d 110, 110 (5th Cir. 1971) (IRS summons would not be enforced, as it was unacceptably ambiguous, and District Court could summon the IRS or anyone else to testify in regard to summons).

R000180

response");[2] therefore no "sur-reply" has yet been filed and the IRS is invoking the wrong rule (*i.e.*

DUCivR 7-1(a)(8)) in even suggesting that any advance leave of Court is (or was) required at all.[3]

Second, even if, arguendo, Petitioners' notice of Supplemental Authorities was construed

to constitute a "sur-reply", there are two permissible ways for a party to ask for leave to file a sur-

reply; the first is to file a proposed sur-reply and file a motion for leave to file the sur-reply before

or contemporaneously with the filing of the proposed sur-reply, and the second is to file a proposed

sur-reply and then make the motion request to accept it during or after the relevant motion hearing.[4]

The Petitioner's original thought, especially given that transfer or consolidation had not yet

occurred, was to provide early notice of Petitioners' additional caselaw and concerns which might

be discussed at hearing and then potentially result in a more tailored set of post-hearing filings (a

---

[2]  Although the IRS describes the Petitioners' notice of Supplemental Authorities as a "sur-reply" (and
Petitioners continue to use that phrase throughout to avoid confusion), technically Petitioners could in this
situation, at most, have only a "sur-response" and not a "sur-reply".  *Lee v. City of Kingman,* 124 F.Supp.3d
985, 986 n.1 (D.Ariz. 2015) (also quoting Black's Law Dictionary and indicating that a "sur-response" is a
second response (*i.e.* not something less such as a list of supplementary cases) and noting further that the
Lees had filed a technically "improper" "sur-response" without leave but that their "sur-response" filing
would nonetheless be considered because doing so would "advance the purpose of securing a just, speedy,
and inexpensive determination of the action" consistent with Federal Rule Of Civil Procedure 1).
[3]  Pursuant to DUCivR 7-1 (c), a Notice of Supplemental Authority does not even require leave of the Court.
And contrary to the IRS' assertion (M. *at* 1) that there is a requirement that the supplementary list of legal
authorities must only include cases "decided after briefing closed", such notice can be filed under DUCivR
7-1 (c) whenever "pertinent and significant authority comes to the attention of a party before the court has
entered a decision on a motion".
[4]  *See, e.g. Navajo Health Foundation-Sage Memorial Hosp., Inc. v. Burwell,* 110 F.Supp.3d 1140, 1180
(D.N.M. 2015) (citing *Pimentel & Sons Guitar Makers, Inc. v. Pimentel,* 229 F.R.D. 201, 204 (D.N.M.
2005) ("A party may request leave to file a surreply either before or after a hearing on the motion in
question, but it is preferable that the surreply be filed before the hearing, so that the parties can come to the
hearing fully informed on the issues and arguments.").

R000181

sur-reply/sur-response and a separate contingent motion if needed) at a later juncture based on the predilections of the relevant District Court judge and perceived need at that time. However, if the IRS prefers for the Petitioners to file Petitioners' full-blown proposed sur-rely with motion for leave now and in advance of any hearing, out of an abundance of caution Petitioners will submit both filings in advance and will also file a contingent separate affirmative motion concerning certain related matters the IRS has de facto forced into the realm of necessary decision.

Third, even if, arguendo, Petitioners' notice of Supplemental Authorities was construed to be a "sur-reply" in and of itself rather than notice of cases and a potential discussion at hearing about a possible post-hearing "sur-reply", the Petitioners' "sur-reply" would be justified (whenever offered) from the point of view of the substantive criteria applied by the Courts. This Court has frequently and liberally granted leave and consideration of sur-replies, as a sur-reply is appropriate and allowed whenever new arguments, facts, evidence, and/or legal authority have been introduced in the reply brief, or there is inapposite or incomplete or misleading legal authority citation in the reply brief, or where the reply contains novel or arcane arguments that benefit from response, or where the sur-reply would be helpful in clarifying a question or issue, and/or the case involves constitutional rights or due process or complex issues.[5]

---

[5] *Modern Font Applications LLC v. Peak Restaurant Partners, LLC,* 2020 WL 3065245 * 1, 3 (D. Utah) (allowing sur-reply); *Pro Star Logistics, Inc. v. AN Enterprise, Inc.,* 2017 WL 5891774 *1, 4, 6 (D. Utah) (allowing sur-reply); *U.S. v. Johnson,* 2016 WL 4087351 *1 (D. Utah) (allowing sur-reply); *Phipps v. U.S. Postal Service,* 2011 WL 900580 *1 (D. Utah) (allowing sur-reply); *Salt Lake Tribune Pub. Co., LLC v. MediaNews Group, Inc.,* 2007 WL 2156612 * 14 (D. Utah) (allowing sur-reply); *see also Fleming v. Coulter,* 573 Fed.Appx. 765, 768 n.4 (10th Cir. 2014) (allowing sur-reply); *Acosta v. United States,* 2017

5

In the present situation, this case involves a remarkable situation (with no apparent exact factual and evidentiary analog in prior legal authority uncovered by any party up to this point) where it is admitted that a secret undercover IRS "Revenue Agent" using a "pseudonym" and acting as an operative for a secret IRS unit known as the "Lead Development Center"—which "Center" (among other things) trolls the internet searching for individuals and entities who express public viewpoints[6] about tax law disfavored by the IRS and the Biden Administration—acted to target Petitioners for investigation and a harassing shower of summons on affiliates solely on account of the Petitioners' First Amendment expression[7] about MIS.[8]   The legal, political,

---

WL 3701614 *3 (D.N.M. 2017) (allowing sur-reply); *Navajo Health Foundation-Sage Memorial Hosp., Inc.,* 110 F.Supp.3d at 1163-67, 1169-70, 1180 (allowing sur-reply); *Itron, Inc. v. Johnston,* 2016 WL 11613006 *1 (S.D. Miss.) (noting that sur-replies are a "recognized alternative" to striking, disallowing, or prejudicially allowing legal theories, facts, or evidence raised on reply, and to ensuring the Court makes sound decisions).  The sole case cited by the IRS in support of its motion strike appears to embrace the same criteria and can be read to say that the primary reason leave for a sur-reply was denied was that the proffered sur-reply in that case simply had nothing useful to add and that the reply had not introduced any new wrinkles. *See Simmler v. Reyes,* 2021 WL 535501 *1 (D. Utah).

[6]  In this instance, internet views about monetized installment sales, or "MIS", which MIS the IRS does not dispute have been treated as *legal* by various courts, tax scholars and tax scholarly publications, and the IRS itself in regard to certain well-heeled taxpayers using MIS). *See* note 8 and page 10.

[7]  In other words, the IRS chose the Petitioners based on the content of the First Amendment expression of public opinions and did not choose Petitioners through a random audit, an informant with inside knowledge, a consumer complainant or other whistleblower, an outgrowth of an audit of some other taxpayer discovered to have violated the law or to have documents or evidence pointing to violation of the law by Petitioners, or some other method which would constitute a proper "purpose" under *Powell* and not violate the First Amendment by seeking to chill or punish disfavored expression about MIS and the potentially politically embarrassing selective availability of MIS afforded under the IRS and by the Biden Administration.

[8] *See generally* the "Declaration of Revenue Agent Tim Bauer" at paragraphs 1-6; and also the extended explanations and exhibit evidence submitted throughout, and/or filed contemporaneously in support of, Petitioner's Response To IRS Motion as filed with the Court by Petitioner on September 28, 2022.

R000183

administrative, constitutional, free speech, and civil rights implications of such a situation are quite profound and could well result in appeal regardless of which side prevails in District Court.

Given all this, one would hope (and Petitioners certainly respectfully anticipate) that the Court's preeminent goal will be to get the law, evidence, and facts substantively correct, ensure that all relevant information has been considered, and consider all supplemental lists of legal authorities, sur-replies, sur-responses, motions, hearings, and the like which in any way would operate to "advance the purpose of securing a just, speedy, and inexpensive determination of the action" consistent with Federal Rule of Civil Procedure 1.[9]  That is especially true where, as here, the supplemental authorities list includes three potentially controlling Tenth Circuit cases which may be deemed to undermine or negate IRS positions asserted on Reply, and seven other cases (most from federal circuit courts) which debunk or negate IRS positions asserted on Reply.

In its Reply filed on October 24, 2022, the IRS takes the new position that it can use its secret Center and secret agents to deliberately target and chill citizen speech on the internet disfavored by the IRS and the Biden Administration, through use of audits, investigations, and summons in an unbridled, limitless, arbitrary, unjustified, and harassing manner, with apparently no limiting principles of any practical effect.  But the IRS goes further still in its Reply and asserts the IRS is effectively beyond the reach of any federal court when the IRS engages in such conduct.

---

[9]  *Lee,* 124 F.Supp.3d at 986 n.1 (permitting a "sur-response" in the pursuit of facilitating its preeminent goal; of reaching a sound decision consonant with Federal Rule of Civil Procedure 1).

R000184

The IRS Reply implicitly admits that with all of the taxpayer protection statutes and precedents which have emerged post-*Powell*, the Court can consider whether the IRS's targeting of a taxpayer for summons had an "improper purpose".  Reply *at* 2 of 17.  In this instance, the Agent's own declaration accidentally admitted an improper purpose associated with targeting First Amendment internet speech disfavored by the Government (a point further bolstered by the Supplementary Authorities).

The IRS Reply *at* pages 6-7 of 17 also asserts a new argument that the only way the IRS can penalize or chill Petitioners' speech is through *assessment of a monetary tax fine or penalty*; in reality, there are numerous cases establishing that *weaponized Government investigations, summons, warrants, audits, and other burdensome exercises of Government power, which are designed to target, chill, or retaliate against First Amendment expression*, are in and of themselves constitutionally impermissible and harmful (especially given the legal, financial, and reputational harm involved) even if (or even especially because) a citizen is ultimately never fined, convicted, imprisoned, collected upon, etc., after being dragged through a process that never leads to any finding or consequence associated with actual culpability.

The IRS Reply *at* pages 7-8 of 17 asserts a new argument that Petitioners can't even *argue* that MIS are a legal tax loophole or tax minimization technique, because such an argument is not "ripe".  Yet simultaneously, the IRS Reply also asserts a conflicting new argument that the IRS can go after Petitioner Bishop—both under law purportedly creating an illegal commercial speech

8

exception to the First Amendment and also pursuant to an existing vaguely-worded 20-year old

existing consent decree the IRS urges this Court to misconstrue—based on the precise notion that

MIS is somehow an existing illegal violation of 26 U.S.C. § 6700(a), a fact which in turn

purportedly provided the necessary legal justification and legitimate purpose for the IRS to target

Petitioners on the basis of speech content in the first instance.  Reply *at* 11-13 of 17.  The IRS also

argues that even mentioning MIS in commercial speech to the public or potential clients is a

violation of § 6700 because a taxpayer "knows or has reason to know" such speech "is false or

fraudulent as to [a] . . material matter."  Reply *at* 11-13 of 17.  The IRS also newly asserts (Reply

*at* 13 of 17) that that the IRS can invoke a 20-year-old consent decree injunction to investigate and

summon in relation to Petitioner Bishop presently,  even though the stipulated injunction was only

intended to enjoin Bishop form advising clients that they could save taxes by leasing their labor to

foreign corporations and made only vague mention of not violating 26 U.S.C. § 6700 (which makes

no mention of MIS whatsoever).  The IRS further asserts for the first time—and incorrectly—that

a consent decree is rigid and "permanent" such that this Court is powerless to terminate, modify,

adjust, or contextually interpret a consent decree for any number of common sense, fairness, and

constitutional reasons, including but not limited to avoiding enablement of abusive conduct or

unfair application.[10]  Reply *at* 13 of 17, n.86.  This is all so, the IRS insists, even though the IRS

---

[10]   The Supplemental Authorities establish the Court's power to do such by motion or sua sponte, and
Petitioners so request such a step if necessary.

9

admits "no court has yet considered whether MIS are fraudulent", scholarly tax articles "tout their supposed efficacy", and the IRS itself has allowed MIS for various well-heeled taxpayers as reflected in Petitioners' exhibits.  *See* Reply *at* 13 of 17.  The IRS also asserts "Bishop is an attorney and financial advisor" and so Bishop's advocacy of MIS "falls into the bottom rung" of First Amendment protection and gets no strict scrutiny protection because "It's false commercial speech", and "the IRS is free to penalize it" with investigation, fines, penalties, summons, and the like.[11]  Reply *at* 13-14 of 17.

But Petitioners contend that the procedural, substantive, and constitutional aspects of what the IRS has newly asserted in Reply—often through invocation of outdated or misconstrued caselaw—is all debunked by the various Supplementary Authorities submitted by Petitioners to rebut such assertions.   The Petitioners should certainly be allowed a fair opportunity to rebut such new arguments and identify legal authorities to the Court which debunk the arguments and use of citations the IRS is attempting to assert for the first time on Reply.   Indeed, given the complexity and importance of the disputed legal doctrines and principles in this case, the real question is not whether the Court should consider what has already been submitted by all parties, but whether the Court ought to order more supplemental briefing of various constitutional and procedural points which currently receive only very succinct legal analysis.   Petitioners therefore respectfully urge

---

[11]   Misconduct by the Government and IRS isn't new, but the new wrinkle introduced by the Biden Administration is overt and openly brazen use of federal agencies, investigations, and threats to target, chill, and retaliate against commercial, professional, political, scholarly, religious, internet, and social media First Amendment expression and advocacy from those with whom the Administration disagrees.

R000187

the Court to hold a hearing and otherwise allow fair leave, consideration, argument, filings, and the like in relation to the Supplemental Authorities and all other matters which might prove necessary or prudent.

DATED THIS 21 day of December, 2022.

/s/ Daniel E. Witte
  Daniel E. Witte
  *Attorney for Petitioners*

R000188

**Certificate of Word Length**

"I, Daniel E. Witte, certify that this response to the Government's Motion to strike contains 3,009 words and complies with DUCivR 7-1 (a)(4)(D)(i)."

*Daniel E. Witte*
Daniel E. Witte
*Attorney for Petitioners*

**Certificate of Service**

I certify that on December 21, 2022, I served the foregoing via the Court's CM/ECF system, which will serve all parties who have appeared, including without limitation:

DAVID A. HUUBERT
Deputy Assistant Attorney General

MATTHEW UTHALDE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
(202) 353-0013
Mathew.P.Uhalde@usdoj.gov

*Daniel E. Witte*
Daniel E. Witte
Attorney for Petitioners

R000189

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity,<br><br>Respondents. | **ORDER TRANSFERRING CASES SUA SPONTE TO DISTRICT JUDGE DAVID BARLOW**<br><br>Case No. 2:22-cv-00340-DBB<br>Case No. 2:22-cv-00341-DAK-DBP<br>Case No. 2:22-cv-00344-TS-DBP<br>Case No. 2:22-cv-00348-RJS-JCB<br>Case No. 2:22-cv-00352-JNP-DAO<br><br>District Judge David Barlow |

On August 26, 2022, Respondents United States, Internal Revenue Service ("IRS"), and Agent Timothy Bauer (collectively "Respondents") moved to consolidate seven cases under the instant case number pursuant to Federal Rule of Civil Procedure 42(a) and District of Utah Local Rule of Civil Practice 42-1.[1] On September 28, 2022, Petitioners David Michael Bishop and Slim Ventures LLC (collectively "Petitioners") responded that they would not object to consolidation as long as the court assigned certain judges.[2]

Upon review of Respondents' motion, the court finds that transfer of the related cases would be a better vehicle than consolidation.[3] As such, the court gave notice of its intent to

---

[1] Mot. to Consolidate & Summarily Deny Pets. to Quash IRS Summonses & Enforce the Summonses, ECF No. 13, filed Aug. 26, 2022.
[2] Pets. Resp. to IRS Mot. 2–3, ECF No. 16, filed Sept. 28, 2022. Petitioners requested the assignment of District Judge Dale A. Kimball and Chief Magistrate Judge Dustin B. Pead to the consolidated cases. *Id.*
[3] *See Kane County, Utah (1) v. United States*, No. 2:08-cv-00315, 2021 WL 4502814, at *3 (D. Utah Oct. 1, 2021).

transfer sua sponte four cases to the undersigned on December 13, 2022.[4] The deadline for objections was December 20, 2022. No party filed an objection.[5]

The transfer of cases to a single district judge will meet the same judicial economy and efficiency purposes as consolidation while avoiding the downsides of the consolidation process.[6] Additionally, the factors set forth in District of Utah Local Civil Rule of Practice 83-2(g) support transfer. The cases are related. They arise from the same IRS investigation and involve the same parties. They address the same legal questions. And transfer will help avoid inconsistent rulings and eliminate duplication of labor. As the district judge assigned to the lower numbered case, the undersigned is the appropriate judge to receive the transferred cases.[7]

## ORDER

Accordingly, the following cases are reassigned and transferred sua sponte to District Judge David Barlow for all future proceedings:

- *Slim Ventures v. United States et al.*, No. 2:22-cv-00341-DAK-DBP (D. Utah);

- *Bishop v. United States et al.*, No. 2:22-cv-00344-TS-DBP (D. Utah);

- *Slim Ventures v. United States et al.*, No. 2:22-cv-00348-RJS-JCB (D. Utah); and

- *Bishop v. United States et al.*, No. 2:22-cv-00352-JNP-DAO (D. Utah).

IT IS FURTHER ORDERED that case numbers 2:22-cv-00348 and 2:22-cv-00352 are hereby referred to Chief Magistrate Judge Dustin B. Pead under 28 U.S.C. § 636(b)(1)(A). Judge Pead shall hear and determine all non-dispositive pretrial matters.

---

[4] ECF No. 23. The court may transfer sua sponte related cases. DUCivR 83-2(g).
[5] *See* Docket.
[6] *See, e.g.*, *XPO Logistics, Inc. v. Peterson*, No. 2:15-cv-00703, 2022 WL 1469397, at *2 (D. Utah May 10, 2022) (discussing how consolidation may lead to "delay, confusion, and prejudice").
[7] *See* DUCivR 83-2(g).

Signed December 22, 2022.

BY THE COURT

David Barlow
United States District Judge

☐  01/03/2023 29 ORDER REFERRING CASE to Chief Magistrate Judge Dustin B. Pead under 28:636 (b)(1)(A). Magistrate Judge to hear and determine all non-dispositive pretrial matters. Signed by Judge David Barlow on 1/3/2023. (cfm)

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC,<br><br>                              Petitioners,<br><br>v.<br><br>UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity,<br><br>                              Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING RESPONDENTS' MOTION TO (1) SUMMARILY DENY PETITIONS TO QUASH IRS SUMMONSES AND (2) ENFORCE THE SUMMONSES AND DENYING PETITIONERS' MOTIONS TO QUASH**<br><br>Case No. 2:22-cv-00340-DBB-DBP<br>Case No. 2:22-cv-00341-DBB-DBP<br>Case No. 2:22-cv-00344-DBB-DBP<br>Case No. 2:22-cv-00345-DBB-DBP<br>Case No. 2:22-cv-00347-DBB-DBP<br>Case No. 2:22-cv-00348-DBB-DBP<br>Case No. 2:22-cv-00351-DBB-DBP<br>Case No. 2:22-cv-00352-DBB-DBP<br><br>District Judge David Barlow |

There are two matters before the court. Petitioners David Michael Bishop ("Mr. Bishop")

and Slim Ventures, LLC ("Slim Ventures") (collectively "Petitioners") have filed eight Petitions

to Quash IRS Third Party Summons regarding four different financial institutions.[1] Also before

the court is Respondents United States, Internal Revenue Service ("IRS"), and Agent Timothy

Bauer's ("Agent Bauer") (collectively "Respondents") Motion to (1) Consolidate and Summarily

---

[1] Pet. to Quash Summons ("Pet. to Quash"), ECF No. 2, filed May 20, 2022, *Bishop v. United States*, No. 2:22-cv-00340 (D. Utah 2022). In seven related cases, Petitioners filed nearly identical motions to quash IRS summonses in the District of Utah: *Slim Ventures v. United States*, No. 2:22-cv-00341; *Bishop v. United States*, No. 2:22-cv-00344; *Slim Ventures v. United States*, No. 2:22-cv-00345; *Bishop v. United States*, No. 2:22-cv-00347; *Slim Ventures v. United States*, No. 2:22-cv-00348; *Slim Ventures v. United States*, No. 2:22-cv-00351; and *Bishop v. United States*, No. 2:22-cv-00352. As a result, the court references the petition to quash filed by Mr. Bishop regarding Zions Bancorporation NA in this Memorandum Decision & Order.

R000194

Deny Petitions to Quash IRS Summonses and (2) Enforce the Summonses.[2] Having considered

the briefing and relevant law, the court finds that oral argument is unnecessary.[3] For the

following reasons, the court grants Respondents' motion and denies the eight petitions.

## BACKGROUND

Mr. Bishop is the managing director of Slim Ventures,[4] which describes itself as a "dealer

in capital assets" that promotes Monetized Installment Sale ("MIS") transactions.[5] A typical

installment sale transaction occurs when a seller conveys property to a buyer and transfers the

associated title before receiving payment.[6] For example, if title transfer takes place in December

but the buyer pays the seller in January, the tax code allows the seller to defer capital gains tax

until the next calendar year.[7]

A MIS transaction is different. This type of transaction occurs when a party

simultaneously sells an appreciated asset[8] and receives payment while deferring capital gains tax

for an extended period of time.[9] As advertised by Slim Ventures, "[a]n owner of highly

appreciated assets can sell them and defer 100% of the capital gains tax for up to 30 years while

receiving up to 95% of the value in cash."[10] Slim Ventures describes the process as follows: (1)

---

[2] Mot. to (1) Consolidate & Summarily Deny Pets. to Quash IRS Summonses & (2) Enforce Summonses ("Mot. to Deny & Enforce"), ECF No. 13, filed Aug. 26, 2022. On December 22, 2022, the court transferred sua sponte the four related cases to the undersigned. ECF No. 27. Accordingly, Respondents' request for consolidation is moot and the court terminates the portion of Respondents' motion seeking consolidation.
[3] *See* DUCivR 7-1(g).
[4] Decl. of David Michael Bishop ("Bishop Decl.") ¶ 4, ECF No. 2-3, filed May 20, 2022; Decl. of Revenue Agent Tim Bauer ("Bauer Decl.") ¶ 5, ECF No. 13-1, filed Aug. 26, 2022.
[5] Exec. Summ. Monetized Installment Sale Transactions ("Exec. Summ.") 1, 4, Ex. 1, ECF No. 13-1, filed Aug. 26, 2022.
[6] 26 U.S.C. § 453(b)(1).
[7] *Id.* § 453(c).
[8] Slim Ventures describes "appreciated assets" as including "real estate, mineral rights, water rights, privately held stock, partnership interests, etc." Exec. Summ. 1.
[9] *See id.*
[10] *Id.*

Slim Ventures offers to buy the seller's assets in exchange for an installment note; (2) the seller

is offered a "limited-recourse 'monetization loan' from a third-party lender introduced by Slim

Ventures"; (3) Slim Ventures resells the asset to the buyer, and the closing on the MIS

transaction and the resale closing happens simultaneously; (4) assuming that the seller accepted

the loan, the seller would receive the proceeds immediately after closing on the asset's sale.[11]

Slim Ventures explains that the strategy allows investors to "re-invest at 95% on a tax deferred

basis instead of at 75% by paying the tax" so that investors can "pay with future (inflation

eroded) dollars."[12]

The IRS considers MIS transactions as an example of an "abusive tax scheme[]."[13]

Around 2021, the IRS identified Slim Ventures and its manager Mr. Bishop as promoters of MIS

transactions.[14] Consequently, the IRS began an investigation into Mr. Bishop for possible

violations of 26 U.S.C. § 6700 for promoting illegal tax schemes and violations of a permanent

injunction.[15] As part of the investigation, the IRS sent Mr. Bishop information and document

requests.[16] The IRS avers that he cooperated to some extent, but claims that he did not produce

"accounting records, bank statements, [or a] client list."[17] After an interview and further

investigation, Agent Bauer found four financial institutions purportedly connected to Slim

---

[11] *Id.*

[12] *Id.* at 6.

[13] *See* Bauer Decl. ¶ 4.

[14] *Id.* ¶ 2.

[15] *Id.* ¶ 6; Final J. of Permanent Inj., ECF No. 6, filed Dec. 5, 2003, *United States v. Bishop*, No. 2:03-cv-01017 (D. Utah, filed Nov 20, 2003). The injunction ordered Mr. Bishop to stop engaging in any activity that would subject him to penalty under § 6700.

[16] Bauer Decl. ¶ 8.

[17] *Id.* ¶ 9; Bishop Decl. ¶ 15.

R000196

Ventures and Mr. Bishop: Key Bank, Summit Crest Financial, LLC ("Summit Crest"), Wells

Fargo Bank, N.A. ("Wells Fargo"), and Zions Bancorporation NA ("Zions Bank").

On May 7, 2022, the IRS issued eight summons to the four financial institutions under

the authority of 26 U.S.C. § 7602(a).[18] Each summons directed the specified bank to produce

records relevant to Mr. Bishop's or Slim Venture's income.[19] The IRS notified Petitioners of the

summonses by certified mail.[20] Key Bank and Zions Bank responded on May 6 and May 31,

respectively.[21] Summit Crest and Wells Fargo have not responded.[22] And the IRS has not

referred the cases for grand jury investigation or criminal prosecution.[23]

On May 20 and May 23, 2022, Petitioners filed timely petitions to quash the IRS third-

party summonses.[24] All eight petitions are virtually identical.[25] On August 26, 2022,

Respondents filed a motion to consolidate and summarily deny the petitions, and a motion to

enforce the summonses against Summit Crest and Wells Fargo.[26] Petitioners filed a response on

September 28, 2022.[27] Respondents replied on October 24, 2022.[28]

---

[18] *E.g.*, Summons, ECF No. 2-6, filed May 20, 2022. The summons in the seven other cases are identical except for the bank information and the name of the IRS' target (Mr. Bishop or Slim Ventures).
[19] Bauer Decl. ¶ 20.
[20] *Id.* ¶ 19.
[21] *Id.* ¶¶ 23, 24.
[22] *Id.* ¶ 25. While Petitioners claim that Summit Crest has indicated that it has "no information responsive to the two IRS summons served upon it[,]" Pets. Resp. to IRS Mot. ("Resp.") 3 n.2, ECF No. 16, filed Sept. 28, 2022, Respondents assert that the IRS has yet not "receive[d] that same representation in a formal response[,]" Reply to Opp'n ("Reply") 2 n.11, ECF No. 19, filed Oct. 24, 2022.
[23] Bauer Decl. ¶ 26.
[24] *E.g.*, Mot. to Quash. A petitioner has twenty days to move to quash an IRS summons. 26 U.S.C. § 7609(b)(2)(A).
[25] The only differences are the parties' information and the banks' locations. *See, e.g.*, Mot. to Quash ¶¶ 1, 4.
[26] Mot. to Deny & Enforce.
[27] *See* Resp.
[28] *See* Reply.

On December 13, 2022, the court gave notice that it would transfer the related cases to the undersigned and gave the parties one week to object.[29] No party objected. As such, the court transferred the related cases on December 21, 2022.[30]

Petitioners filed a Notice of Additional Cases on December 14, 2022 ("Notice").[31] Respondents then filed a Motion to Strike Petitioners' Surreply on December 16, 2022.[32] Petitioners filed an opposition on December 20, 2022,[33] and Respondents replied on December 27, 2022.[34] Pursuant to local rules, a party may file a notice of supplemental authority when "pertinent and significant authority comes to the attention of a party before the court has entered a decision on a motion."[35] Asking the court to take notice of ten cases, Petitioners claim that Respondents "filed a reply with new caselaw and arguments."[36] But Petitioners "ignore[] the fact that [Respondents' arguments] rebut[] matters [Petitioners] raised in [their] opposition memorandum."[37] Further, Petitioners could have cited the cases in their opposition brief since all ten cases were published before the close of briefing.[38] Given this fact, Petitioners fail to explain why the cases only came to their attention after Respondents' reply brief. Additionally, the Notice provides only generic case summaries; it does not explain adequately why the cases are "pertinent and significant authority." Thus, the court treats the Notice as a surreply. Because

---

[29] ECF No. 23.
[30] ECF No. 27.
[31] ECF No. 24.
[32] ECF No. 25.
[33] ECF No. 26.
[34] ECF No. 28.
[35] DUCivR 7-1(c).
[36] ECF No. 24.
[37] *Simmler v. Reyes*, No. 2:19-cv-01009, 2021 WL 535501, at *1 (D. Utah Feb. 12, 2021), *appeal dismissed*, No. 21-4062, 2021 WL 8323748 (10th Cir. June 2, 2021).
[38] The cases were published between 1970 and 2021. *See* ECF No. 24.

Petitioners have not sought leave to file a surreply,[39] the court grants Respondents' motion to strike.[40]

## STANDARD

The IRS has "broad latitude to issue summonses '[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . , or collecting any such liability.'"[41] "Indeed, the very language of § 7602 reflects . . . a congressional policy choice *in favor of disclosure* of all information relevant to a legitimate IRS inquiry."[42] "[T]he IRS's burden . . . is 'slight,' because statutes like 26 U.S.C. § 7602(a) 'must be read broadly to ensure that the enforcement powers of the IRS are not unduly restricted.'"[43]

## DISCUSSION

Petitioners seek to quash IRS summonses sent to Key Bank, Summit Crest, Wells Fargo, and Zions Bank. The court first addresses the summonses against Key Bank and Zions Bank.

### I.   The Petitions to Quash IRS Summonses as to Key Bank and Zions Bank Are Moot.

Respondents contend that there is no live controversy as to Key Bank and Zions Bank for two reasons. First, the banks informed the IRS that they had no information responsive to the

---

[39] *See* DUCivR 7-1(a)(8).
[40] ECF No. 25.
[41] *Standing Akimbo, LLC v. United States Through Internal Revenue Serv.*, 955 F.3d 1146, 1154 (10th Cir. 2020), *cert. denied sub nom. Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236 (2021), *reh'g denied,* 142 S. Ct. 919 (2021) (quoting *United States v. Clarke*, 573 U.S. 248, 250 (2014)).
[42] *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984).
[43] *Speidell v. United States Through Internal Revenue Serv.*, 978 F.3d 731, 738 (10th Cir. 2020), *cert. denied sub nom. Speidell v. United States*, 141 S. Ct. 2800 (2021), *reh'g denied,* 142 S. Ct. 921 (2021) (quoting *Standing Akimbo*, 955 F.3d at 1155).

summonses.[44] And second, the IRS confirms that "the[se] summonses will never be enforced or result in any records production."[45]

      In response, Petitioners argue that there is a live controversy because the IRS purportedly "indicated to Petitioners' counsel that the IRS reserves the right to reissue new summons toward Key Bank and Zions Bank to target the same two Petitioners in connection with the IRS' present investigation and future investigation(s)."[46] On that basis, Petitioners argue that the "voluntary cessation" and "capable of repetition, yet evading review" mootness exceptions apply.[47]

      Petitioners' arguments are unpersuasive. Both banks have responded to the IRS summonses and stated that they have no relevant information. The IRS accepted their responses and declared its intention not to seek enforcement of the summonses. In essence, Petitioners ask the court to preemptively enjoin the IRS from issuing future summonses.[48] The court declines to do so. The banks have responded to the summonses, indicated that they have no relevant information, and the IRS states that it will not enforce the summonses. Even if the IRS were to leave open the possibility of future summonses, there is no live controversy as to Key Bank or Zions Bank at this time.[49]

---

[44] Bauer Decl. ¶¶ 23–24.

[45] Mot. to Deny & Enforce 12.

[46] Resp. 5–6.

[47] *Id.* at 6.

[48] *See id.* ("[T]he IRS has not, and will not, ***make any commitment, representation, or stipulation to this Court that the IRS will not assert further summons against the same two banks in reference to the same two Petitioners, notwithstanding an express request from the Petitioners to do so.***").

[49] *Cf. Wilson v. United States*, No. 841247, 1984 WL 15653, at *1 (10th Cir. Aug. 22, 1984) (unpublished) (citing *United States v. Trails End Motel, Inc.*, 657 F. 2d 1169 (10th Cir. 1981)) ("[C]ompliance with the summonses . . . renders all arguments concerning enforcement moot."); *see also Wadsworth v. United States*, No. 1:97 CV 2241, 1998 WL 180913, at *1 n.1 (N.D. Ohio Jan. 22, 1998) ("These claims are moot because [the three banks] have each responded to the Internal Revenue Service that they do not have documents responsive to the summonses." (citation omitted)).

The court rejects Petitioners' exception-to-mootness arguments. For the "voluntary cessation" exception, the IRS has not "voluntary[ily] ce[ased] a challenged practice"[50] or stopped an "allegedly wrongful behavior."[51] It has properly executed the summonses by service on Key Bank and Zions Bank pursuant to 26 U.S.C. § 7609(a) and in support of a lawful investigation. The banks then responded to the summonses and the IRS has no intention of enforcing the summonses. Speculation as to future IRS summonses is inappropriate.

Next, the court finds that the "capable of repetition, yet evading review" exception is inapt. "A dispute qualifies for th[is] exception only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'"[52] Petitioners satisfy neither prong. "[A] challenge to the issuance of a summons is not 'too short' to be fully litigated prior to its having any effect on [Petitioners]."[53] Should the IRS reissue a summons, Petitioners may again bring a motion to quash "and the need to comply with the summons could be postponed until the completion of court review, no matter how long it took."[54] In addition, given the IRS' statements, there is only a speculative chance that these specific banks would be subjected to future summonses involving these cases.[55]

---

[50] *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

[51] *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2607 (2022) (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)).

[52] *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (citation omitted).

[53] *Schaeffler v. United States*, No. 13 CIV. 4864, 2016 WL 3369538, at *3 (S.D.N.Y. June 17, 2016), *aff'd*, 696 F. App'x 542 (2d Cir. 2017) (unpublished).

[54] *Id.*; *see United States v. Arthur Anderson & Co.*, 623 F.2d 720, 725 (1st Cir. 1980) (holding that "in the absence of some compelling circumstances that militate in favor of our deciding an otherwise moot case, the 'capable of repetition yet evading review' exception is not available to a litigant aggrieved by a summons or subpoena who could have avoided mootness by refusing to comply").

[55] *See McCormack v. Hiedeman*, 900 F. Supp. 2d 1128, 1138 (D. Idaho 2013), *aff'd sub nom. McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015) ("The mootness doctrine therefore requires a federal court to refrain from

For these reasons, the court dismisses as moot the petitions to quash IRS summonses for Key Bank and Zions Bank.[56] The court now turns to the remaining four petitions.

## II. Respondents Have Made a Prima Facie Case that the IRS Properly Issued the Summonses as to Summit Crest and Wells Fargo.

To raise a prima facie case that it has properly issued third-party summonses, the IRS must demonstrate that they have not referred the case for criminal prosecution and that they have issued the summonses in good faith.[57] The court analyzes good faith using the *Powell* factors, which require that the IRS establish (1) that the "investigation will be conducted pursuant to a legitimate purpose," (2) "that the inquiry may be relevant to the purpose," (3) "that the information sought is not already within the [IRS]'s possession," (4) "and that the administrative steps required by the [IRS] Code have been followed."[58] If the government meets its burden, "generally . . . with an affidavit of the agent who issued the summons[,]" "a 'heavy' burden falls on the taxpayer 'to factually refute the *Powell* showing or factually support an affirmative defense.'"[59] "Because the burden of showing an abuse of the court's process is on the taxpayer, he or she must make a substantial preliminary showing before even limited discovery . . . ."[60]

---

deciding a case if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future" (citing *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000))).

[56] ECF No. 2, No. 2:22-cv-00340; ECF No. 2, No. 2:22-cv-00341; ECF No. 2, No. 2:22-cv-00347; ECF No. 2, No. 2:22-cv-00348.

[57] *Speidell*, 978 F.3d at 738.

[58] *United States v. Powell*, 379 U.S. 48, 57–58 (1964).

[59] *Speidell*, 978 F.3d at 738 (quoting *Standing Akimbo*, 955 F.3d at 1155).

[60] *Id.* (cleaned up).

### A. Criminal Prosecution

Agent Bauer avers that the IRS has not recommended to the Department of Justice a grand jury investigation or criminal prosecution.[61] Petitioners agree that there has been no referral.[62] The IRS has therefore satisfied the first prong.

### B. *Powell* Factors

The second prong involves the *Powell* factors. Petitioners do not contest the fact that the IRS lacks pertinent records from Summit Crest and Wells Fargo based on the banks' inability to locate any relevant documents and Mr. Bishop's refusal to provide any such documents.[63] The third *Powell* factor thus weighs in favor of Respondents. As to the remaining three factors, Petitioners contend that the summonses serve no legitimate purpose, that they are irrelevant, and that the government has failed to observe proper procedural steps.

Under the legitimacy factor, Petitioners claim that the IRS' investigation is disproportionate and an unnecessary burden since they owe nothing or a minimal amount to the IRS.[64] They also argue that the IRS' failure to assert specific evidence of wrongdoing and its pattern of summonses has created the "effect of impermissibly frightening and chilling Petitioner's livelihood and network."[65] For relevancy, Petitioners claim that the IRS has not met its burden to show a nexus between Petitioners and the banks.[66] Petitioners further assert that the IRS summonses are overbroad, and since they have submitted hundreds of pages of documents

---

[61] Bauer Decl. ¶ 26.
[62] Pet. to Quash ¶ 13.
[63] Bauer Decl. ¶ 20.
[64] Pet. to Quash ¶ 7.A, 10; Bishop Decl. ¶ 10.
[65] Pet. to Quash ¶ 7.B, 11.C; Bishop Decl. ¶¶ 12, 17.
[66] Pet. to Quash ¶ 8; Bishop Decl. ¶ 13.

to the government,[67] the IRS has failed to show why the existing documentation is insufficient.[68] Last, Petitioners assert that the IRS failed to follow appropriate procedural steps. Citing the tax code, they state that the IRS has failed to give them "sufficient information and notice" to allow them to "respond with the relevant information . . . to maintain their privacy and avoid the potential embarrassment of IRS contact with third parties."[69] And they argue that the IRS failed to explain its "legitimate, adequate, specific justification of purpose" for the summonses.[70]

Respondents argue that they have met their burden to show legitimacy, relevance, and adherence to proper procedures. First, they contend that the investigation into whether Mr. Bishop is liable for statutory penalties and whether he has violated the court's permanent injunction is a legitimate purpose.[71] Next, they argue that the summonses would help determine Mr. Bishop's potential liability for statutory penalties because the investigation has revealed a nexus between Petitioners and the banks.[72] As to process, Respondents explain that they have met all required steps: serving the banks by certified mail, giving Petitioners timely notice, and ensuring that Mr. Bishop had not been referred for a criminal investigation.[73]

The court finds that Respondents have met their burden to show relevancy and legitimacy. Determining whether an individual has promoted false tax schemes can be a legitimate purpose.[74] Agent Bauer sought information to "shed light on the implementation and

---

[67] Pet. to Quash ¶ 11.E; Bishop Decl. ¶ 15.
[68] Pet. to Quash ¶ 9, 11.D; Bishop Decl. ¶ 14.
[69] Pet. to Quash ¶ 12.
[70] *Id.*
[71] Mot. to Deny & Enforce 13.
[72] *Id.* at 14–15.
[73] *Id.* at 15.
[74] *See, e.g.*, *S. Crow Collateral Corp. v. United States*, No. 1:17-mc-09828, 2018 WL 2454630, at *4 (D. Idaho Jan. 19, 2018), *R. & R. adopted*, No. 1:17-mc-09828, 2018 WL 2454628 (D. Idaho Apr. 10, 2018), *aff'd*, 782 F. App'x 597 (9th Cir. 2019) (unpublished).

details of [Mr.] Bishop's MIS transactions," whether he would be liable for penalties under § 6700, the amount he was liable for, and whether he had violated the permanent injunction.[75]

Agent Bauer also sought information from the financial institutions because Mr. Bishop or Slim Ventures "held ownership interests, signatory authority, or right to make withdraw from, or for which they were" a fiduciary.[76] The IRS investigation indicated that Summit Crest and Wells Fargo were connected with Mr. Bishop and Slim Ventures through lending and other banking services.[77] Indeed, Agent Bauer discovered that Mr. Bishop uses Summit Crest as Slim Venture's third-party lender and that Wells Fargo paid Slim Ventures $11,227 in interest during 2020.[78] Mr. Bishop also informed Agent Bauer that he had been averaging three to four MIS sales per month since 2018.[79] Taken together, these facts show that the summonses met the threshold of "*potential* relevance to an ongoing investigation."[80]

Finally, Respondents have shown that they followed proper procedures when they issued the summonses. The IRS complied with 26 U.S.C. § 7601 *et seq.* by serving Summit Crest and Wells Fargo with certified mail that was received on May 7, 2022,[81] sending Petitioners timely notice of the served summons,[82] and verifying that Mr. Bishop had not been referred for a grand jury investigation or criminal prosecution.[83]

---

[75] Bauer Decl. ¶ 21.
[76] *Id.* ¶ 16.
[77] *Id.* ¶ 13–14.
[78] *Id.* "Such a large amount of ordinary bank interest indicates that Slim Ventures likely held a substantial sum of money with Wells Fargo in 2020." *Id.*
[79] *Id.* ¶ 12.
[80] *Standing Akimbo*, 955 F.3d at 1160; *see also Arthur Young & Co.*, 465 U.S. at 814.
[81] Bauer Decl. ¶ 17.
[82] *Id.* ¶ 19.
[83] *Id.* ¶ 26.

Petitioners contend that the IRS failed to give them the opportunity to provide the necessary documents before sending the third-party summons.[84] Yet simply citing cases for general statements of law is not enough to show that notice was insufficient for purposes of the *Powell* factors. To the extent that Petitioners argue that the IRS' actions were insufficient notice under § 7602(c),[85] the court need not address this question here. Because the IRS adhered to the prescribed procedures under § 7609(a), the IRS has made a prima facie showing.

In sum, the IRS has not referred the case for criminal investigation or prosecution, the summonses serve a legitimate purpose, they are relevant, and the IRS has observed proper process.[86] The court therefore finds that Respondents have made a prima facie showing of good faith.

### III.   Petitioners Have Not Met Their Burden to Refute the Government's Prima Facie Showing of Good Faith.

"To defeat the government's prima facie case, 'it is clear that a taxpayer must factually oppose the Government's allegations by affidavit. Legal conclusions or mere memoranda of law will not suffice.'"[87] Petitioners attempt to do so by focusing on the first two *Powell* factors: legitimacy and relevance.

### A.  Legitimacy

Petitioners argue that the IRS began its investigation to chill their expressive view that MIS transactions are legal. In support, they assert that customers and business partners are

---

[84] Pet. to Quash ¶ 12 (citing *J.B. v. United States*, 916 F.3d 1161, 1172–73 (9th Cir. 2019) (addressing whether notice to the taxpayer was reasonable advance notice under 26 U.S.C. § 7602(c)(1))).
[85] *See id.*
[86] *See United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985).
[87] *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1183 (10th Cir. 2019) (quoting *Balanced Fin. Mgmt.*, 769 F.2d at 1444).

frightened away by the IRS investigation, which creates "considerable and unfair negative economic, business, and legal consequences."[88] But evidence of an alleged adverse effect from an investigation is not evidence of improper intent. "That [loss of customers] might be the effect, rather than the purpose, of the investigation is of no consequence."[89] The claim that unnamed persons have been scared off is both conclusory and not material.

Relatedly, Petitioners claim that the absence of relevant documents from Key Bank and Zions Bank indicate that the IRS summonses as a whole are "demonstrably meritless."[90] Yet the investigation into Petitioners began only in 2021,[91] and the IRS has not yet received documents from Summit Crest or Wells Fargo. The IRS "can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized."[92]

Next, Petitioners argue that because MIS transactions are permissible, the IRS' investigation violates the First Amendment by attempting to chill their expressive speech.[93] They contend that the IRS has failed to connect the dots "between any purportedly forbidden scheme(s) and any specific language in any statute or case precedent."[94] Thus, "if the IRS cannot demonstrate that the various variants of MIS are actually illegal, . . . the IRS cannot invoke such a theory as a valid basis . . . for the IRS summons, and . . . the summons [are] invalid."[95]

Petitioners' argument fails because they do not offer support for the proposition that the IRS must prove the illegality of MIS transactions before beginning its investigation. Indeed,

---

[88] Bishop Decl. ¶¶ 12, 15, 17.
[89] *La Mura v. United States*, 765 F.2d 974, 981 (11th Cir. 1985).
[90] Resp. 4.
[91] Bauer Decl. ¶ 5.
[92] *Arthur Young & Co.*, 465 U.S. at 814.
[93] *See* Resp. 9–14; Bishop Decl. ¶¶ 9, 12, 17.
[94] Resp. 12.
[95] *Id.* at 15.

courts have rejected the notion that the IRS must show probable cause to open investigations.[96]
The IRS need not prove that promoting MIS transactions incurs § 6700 penalties before issuing
summonses. Indeed, the IRS must only show "that it has a realistic expectation rather than an
idle hope that something might be discovered."[97] Additionally, "[t]he fact that Petitioners proffer
a factual and legal defense does not transmute an investigation, ipso facto, into an illegitimate
exercise based on the IRS' declining to adopt the defense without further investigation."[98] In
short, Petitioners' arguments amount to preemptive defenses as to their ultimate liability and do
not rebut the government's showing of good faith.

Further, Petitioners rely on an expansive First Amendment argument to assert an
improper purpose for the summonses. They claim that the IRS has deployed "governmental
enforcement, threat of enforcement, auditing, and harassment of the Petitioners and their
business network in an effort to curtail, suppress, and retaliate against discussion of First
Amendment topics about disputed matters of public concern . . . that the Government
disfavors."[99] Specifically, Petitioners contend that the IRS' investigation into MIS transactions—
despite not proving the transactions' illegality—chills their expressive rights.

---

[96] See United States v. Kaiser, 308 F. Supp. 2d 946, 955 (E.D. Mo. 2004), aff'd, 397 F.3d 641 (8th Cir. 2005)
("Powell explicitly rejected the notion that the Internal Revenue Service was required to demonstrate the existence
of probable cause for its investigations which used the broad summons power given to the IRS by section 7602 of
the Internal Revenue Code."); S. Crow Collateral, 2018 WL 24554630, at *5 (prima facie showing of good cause
because the information sought "may shed light" on "the implementation and details of the installment sale
transactions" as to whether the taxpayer may be subject to penalties).
[97] La Mura, 765 F.2d at 981 (cleaned up).
[98] S Crow Collateral, 2018 WL 24554630, at *5.
[99] Resp. 16; see Bishop Decl. ¶¶ 12, 15, 17. Petitioners also accuse the Biden Administration of a pattern of using
investigation and threat of investigation to suppress disfavored ideas and theories. See Resp. 16–17 nn.28–29.

Petitioners' "assertion[s] are pure conjecture."[100] They merely reprise the argument that the IRS has not proven that MIS transactions are unlawful and so the investigation chills their speech. But this is a premature and unsupported claim. Thus, Petitioners fail to show an illegitimate purpose for the summonses.

### B. Relevancy

Petitioners also argue that the IRS has not met its burden to show relevancy because it has not proven a nexus between Petitioners' actions and the summonses.[101] They maintain that the summonses are irrelevant, "overbroad fishing expeditions[,]"[102] and that the IRS cannot engage in "*carte blanche* discovery" to uncover some evidence of wrongdoing.[103] Citing the tax code, Petitioners contend that the IRS has failed to "*assert*[] that there is a reasonable indication that there is a likelihood of unreported income on the part of the Petitioners."[104] They liken the IRS' investigation to a general warrant "without any practical guardrails or limitations."[105]

The court has previously explained that Respondents have met their burden to show that the summonses to Summit Crest and Wells Fargo are relevant and proportional. In opposition, Petitioners state merely that they have submitted hundreds of pages of documents to the IRS.[106] Otherwise, they offer boilerplate statements of law and conclusory claims. At the summons

---

[100] *United States v. Greenberger*, No. 1:15-CV-03532, 2016 WL 3912065, at *11 (N.D. Ga. Jan. 11, 2016), *R. & R. adopted,* No. 1:15-CV-3532, 2016 WL 3912060 (N.D. Ga. June 21, 2016). In *Greenberger*, the taxpayer asserted that the IRS investigation was improper because it had the effect of chilling him from exercising free speech. *Id.* The court soundly rejected the taxpayer's claims because the taxpayer offered "no basis for concluding that the IRS [wa]s conducting the investigation for the purpose of chilling any rights." *Id.* Here, Petitioners likewise fail to show that the IRS pursued its investigation to chill their expressive rights.
[101] Resp. 19–20 (citing *United States v. Goldman*, 637 F.2d 664, 667–68 (9th Cir. 1980)); Bishop Decl. ¶ 13.
[102] *Id.* at 19.
[103] *Id.* at 20–21 (quoting *United States v. Coopers & Lybrand*, 550 F.2d 615, 619 (10th Cir. 1977)).
[104] *Id.* at 19 n.31.
[105] *Id.*; *see* Bishop Decl. ¶ 11.
[106] Bishop Decl. ¶ 15.

stage, the burden is squarely on the taxpayer to rebut the government's prima facie showing of good faith with "plausible inference[s] of improper motive."[107] "Bare assertion[s] or conjecture," as Petitioners offer here, are not enough.[108] For that reason, they have not overcome the government's low burden to show that material retrieved from Summit Crest and Wells Fargo "might throw light on the correctness of" Petitioners' tax liability.[109]

### IV. Petitioners' Requests for an Evidentiary Hearing and *in camera* Review Are Denied.

The court addresses two other matters: Petitioners' request for an evidentiary hearing and *in camera* review. First, Petitioners request an evidentiary hearing to question Agent Bauer because they have purportedly "raised an inference of bad faith."[110] However, Petitioners fail to "point to specific facts or circumstances plausibly raising an inference of bad faith."[111] Thus, they are not entitled to an evidentiary hearing. Second, Petitioners ask that the court conduct an *in camera* review of documents submitted by the financial institutions before their release to the IRS. They argue that such a review is needed to ensure that the documents are narrowly tailored to what is reasonable and proportionate, and not unduly broad, burdensome, or vague.[112] Though "[a] district court has broad discretion in deciding whether or not to grant an *in camera* review,"[113] "an *in camera* review should not be resorted to as a matter of course, simply on the

---

[107] *Clarke*, 573 U.S. at 254.
[108] *Id.*
[109] *United States v. Sw. Bank & Tr. Co.*, 693 F.2d 994, 996 (10th Cir. 1982) (citation omitted).
[110] Resp. 18; Pet. to Quash 11.
[111] *Clarke*, 573 U.S. at 254.
[112] Pet. to Quash 12; Resp. 21.
[113] *Rifle Remedies, LLC v. Internal Revenue Serv.*, No. 18-cv-00949, 2021 WL 981317, at *12 (D. Colo. Mar. 16, 2021) (citing *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987)).

theory that it can't hurt."[114] Finding no basis for an *in camera* review, the court denies the

request.[115]

## V.   The Court Grants Respondents' Motion to Enforce the Summonses for Summit Crest and Wells Fargo.

Respondents seek a court order enforcing the summonses against Summit Crest and

Wells Fargo in light of the financial institutions' failure to respond.[116] "In [a proceeding to

quash], the [IRS] may seek to compel compliance with the summons."[117] Given that the banks

have not yet responded to the IRS, the court orders the enforcement of the summonses against

Summit Crest and Wells Fargo.

### ORDER

Accordingly, the court GRANTS Respondents' Motion to (1) Summarily Deny Petitions

to Quash IRS Summonses and (2) Enforce the Summonses,[118] and DENIES the Petitions to

Quash IRS Summonses:

1.      As to Key Bank and Zions Bank, the court GRANTS Respondents' Motion to

Deny Petitions to Quash IRS Summonses and DENIES as moot the associated Petitions

to Quash IRS Summonses.[119]

---

[114] *Hull v. I.R.S., U.S. Dep't of Treasury*, 656 F.3d 1174, 1178 (10th Cir. 2011) (cleaned up).
[115] *See MVT Servs., LLC v. Great W. Cas. Co.*, No. 2:18-cv-01128, 2021 WL 1227729, at *5 (D.N.M. Apr. 1, 2021) ("[T]he Court cannot issue a hypothetical or advisory opinion.").
[116] Bauer Decl. ¶ 25.
[117] 26 U.S.C. § 7609(b)(2)(A).
[118] ECF No. 13.
[119] ECF No. 2, No. 2:22-cv-00340; ECF No. 2, No. 2:22-cv-00341; ECF No. 2, No. 2:22-cv-00347; ECF No. 2, No. 2:22-cv-00348.

2.      As to Summit Crest and Wells Fargo, the court GRANTS Respondents' Motion to
Deny Petitions to Quash IRS Summonses and DENIES the associated Petitions to Quash
IRS Summonses.[120]

3.      The court GRANTS Respondents' Motion to Enforce the Summonses against
Summit Crest and Wells Fargo. The two financial institutions are ORDERED to respond
to the summons within 30 days of this Memorandum Decision and Order.


Signed January 9, 2023.

                         BY THE COURT


                         _____
                         David Barlow
                         United States District Judge

---

[120] ECF No. 2, No. 2:22-cv-00344; ECF No. 2, No. 2:22-cv-00345; ECF No. 2, No. 2:22-cv-351; ECF No. 2, No. 2:22-cv-352.

# The United States District Court

## District of Utah

DAVID MICHAEL BISHOP,

      Plaintiff,

**JUDGMENT IN A CIVIL CASE**

v.

UNITED STATES, INTERNAL REVENUE
SERVICE, and TIMOTHY BAUER, Internal
Revenue Agent (ID #0324589), in his
Official Capacity,

Case No. 2:22-cv-00340-DBB-DBP

District Judge David Barlow

      Defendants.

    IT IS ORDERED AND ADJUDGED

    that judgment is entered in favor of Defendants and against Plaintiff.

January 9, 2023
_____
Date

BY THE COURT:

_____
David Barlow
United States District Judge

R000213

# The United States District Court

## District of Utah

SLIM VENTURES, LLC,

      Plaintiff,

**JUDGMENT IN A CIVIL CASE**

v.

UNITED STATES, INTERNAL REVENUE
SERVICE, and TIMOTHY BAUER, Internal
Revenue Agent (ID #0324589), in his
Official Capacity,

Case No. 2:22-cv-00341-DBB-DBP

District Judge David Barlow

      Defendants.


IT IS ORDERED AND ADJUDGED

that judgment is entered in favor of Defendants and against Plaintiff.


January 9, 2023

_____
*Date*

BY THE COURT:

_____
David Barlow
United States District Judge

R000214

# The United States District Court

## District of Utah

DAVID MICHAEL BISHOP,

      Plaintiff,

v.

UNITED STATES, INTERNAL REVENUE
SERVICE, and TIMOTHY BAUER, Internal
Revenue Agent (ID #0324589), in his
Official Capacity,

      Defendants.

**JUDGMENT IN A CIVIL CASE**

Case No. 2:22-cv-00344-DBB-DBP

District Judge David Barlow

IT IS ORDERED AND ADJUDGED

that judgment is entered in favor of Defendants and against Plaintiff.

January 9, 2023
_____
*Date*

BY THE COURT:

_____
David Barlow
United States District Judge

R000215

# The United States District Court

## District of Utah

SLIM VENTURES, LLC,

        Plaintiff,

v.

UNITED STATES, INTERNAL REVENUE
SERVICE, and TIMOTHY BAUER, Internal
Revenue Agent (ID #0324589), in his
Official Capacity,

        Defendants.

**JUDGMENT IN A CIVIL CASE**

Case No. 2:22-cv-00345-DBB-DBP

District Judge David Barlow

IT IS ORDERED AND ADJUDGED

that judgment is entered in favor of Defendants and against Plaintiff.

January 9, 2023
_____
*Date*

BY THE COURT:

_____
David Barlow
United States District Judge

R000216

# The United States District Court

## District of Utah

DAVID MICHAEL BISHOP,

       Plaintiff,

v.

UNITED STATES, INTERNAL REVENUE
SERVICE, and TIMOTHY BAUER, Internal
Revenue Agent (ID #0324589), in his
Official Capacity,

       Defendants.

**JUDGMENT IN A CIVIL CASE**

Case No. 2:22-cv-00347-DBB-DBP

District Judge David Barlow


IT IS ORDERED AND ADJUDGED

that judgment is entered in favor of Defendants and against Plaintiff.


January 9, 2023

_____
_Date_

BY THE COURT:

_____
David Barlow
United States District Judge

# The United States District Court

## District of Utah

SLIM VENTURES, LLC,

         Plaintiff,

v.

UNITED STATES, INTERNAL REVENUE
SERVICE, and TIMOTHY BAUER, Internal
Revenue Agent (ID #0324589), in his
Official Capacity,

         Defendants.

### JUDGMENT IN A CIVIL CASE

Case No. 2:22-cv-00348-DBB-DBP

District Judge David Barlow

    IT IS ORDERED AND ADJUDGED

    that judgment is entered in favor of Defendants and against Plaintiff.

January 9, 2023
_____
*Date*

BY THE COURT:

_____
David Barlow
United States District Judge

R000218

# The United States District Court

## District of Utah

SLIM VENTURES, LLC,

        Plaintiff,

v.

UNITED STATES, INTERNAL REVENUE
SERVICE, and TIMOTHY BAUER, Internal
Revenue Agent (ID #0324589), in his
Official Capacity,

        Defendants.

**JUDGMENT IN A CIVIL CASE**

Case No. 2:22-cv-00351-DBB-DBP

District Judge David Barlow

IT IS ORDERED AND ADJUDGED

that judgment is entered in favor of Defendants and against Plaintiff.

January 9, 2023

_____
*Date*

BY THE COURT:

_____
David Barlow
United States District Judge

R000219

# The United States District Court

## District of Utah

DAVID MICHAEL BISHOP,

        Plaintiff,

v.

UNITED STATES, INTERNAL REVENUE
SERVICE, and TIMOTHY BAUER, Internal
Revenue Agent (ID #0324589), in his
Official Capacity,

        Defendants.

**JUDGMENT IN A CIVIL CASE**

Case No. 2:22-cv-00352-DBB-DBP

District Judge David Barlow

 

IT IS ORDERED AND ADJUDGED

that judgment is entered in favor of Defendants and against Plaintiff.

January 9, 2023
_____
*Date*

BY THE COURT:

_____
David Barlow
United States District Judge

R000220

Daniel E. Witte (UT 8576)
Pearson Butler & Carson PLLC
1802 W. South Jordan Pkwy, Suite 200
South Jordan, Utah 84095
Telephone: (801) 495-4104
Email: dan@pearsonbutler.com
*Attorney for Petitioners*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity, <br><br> Respondents. | **MOTION FOR RELIEF FROM ORDER AND JUDGMENT, AND/OR TO STAY EXECUTION ON JUDGMENT PENDING APPEAL** <br><br> Civil Nos. 2:22-cv-00340-DBB-DBP <br> 2:22-cv-00341-DBB-DBP <br> 2:22-cv-00344-DBB-DBP <br> 2:22-cv-00345-DBB-DBP <br> 2:22-cv-00347-DBB-DBP <br> 2:22-cv-00348-DBB-DBP <br> 2:22-cv-00351-DBB-DBP <br> 2:22-cv-00352-DBB-DBP <br><br> **District Court Judge David B. Barlow** <br> **Chief Magistrate Judge Dustin B. Pead** <br><br> **Hearing Requested** |

Petitioners David Bishop ("Bishop") and Slim Ventures, LLC (collectively, "Petitioners"), pursuant to, inter alia, Federal Rule of Civil Procedure ("FRCP") 46 (objection to order or judgment), FRCP 59(e) ("motion to alter or amend a judgment"), FRCP 60(a) ("mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record"), FRCP 60(b)(1) ("mistake, inadvertence, . . . or excusable neglect"), FRCP 60(b)(6) ("any other reason that justified relief"), FRCP 62(a)("execution on a judgment" is "stayed for 30 days

1

R000221

after its entry, unless the court orders otherwise"), and <u>DUCivR 7-1(g)</u> ("The court may set any motion for oral argument" and if the court does not do so, "a party may request oral argument on a motion" and the hearing argument should be allowed if there is "good cause"), hereby files this joint motion for relief from the "Memorandum Decision And Order Granting Respondent's Motion To (1) Summarily Deny Petitions To Quash IRS Summonses And (2) Enforce The Summonses And Denying Petitioners' Motions To Quash" and related judgment as both entered by the Court on January 9, 2023 (collectively, "Order" or "O&J"), and/or to stay execution on said Order pending appeal to the United States Tenth Circuit Court of Appeals ("Tenth Circuit").

At minimum, Petitioners urge that Respondents United States, Internal Revenue Service, and Internal Revenue Agent Timothy Bauer (ID # 0324589) and attorneys of the same (collectively, the "IRS" or "Government"), not be permitted to execute on any summons associated with Civil Nos. 2:22-cv-00340-DBB-DBP, 2:22-cv-00341-DBB-DBP, 2:22-cv-00344-DBB-DBP, 2:22-cv-00345-DBB-DBP, 2:22-cv-00347-DBB-DBP, 2:22-cv-00348-DBB-DBP, 2:22-cv-00351-DBB-DBP, and 2:22-cv-00352- DBB-DBP (collectively, the "Eight Cases"), until appeal to the Tenth Circuit is decided.

### Error, Mistake, Oversight, Omission, Inadvertence, And Other Considerations Justifying Relief

Without limitation, Petitioners hereby assert various instances of error, mistake, oversight, omission, inadvertence, and other considerations justifying relief, which are, as relevant in each instance, of a factual, legal, and procedural nature (denoted "Errors" and as "Error"), and

2

R000222

respectfully motion the Court to vacate its Order and initiate further proceedings, hearing, and amended order and judgment to correct the same.

**Error #1**   The Court stated (O&J 19) that "The court GRANTS Respondents' Motion to Enforce the Summonses against Summit Crest and Wells Fargo. The two financial institutions are ORDERED to respond to the summons within 30 days of this Memorandum Decision and Order." However, FRCP 62(a) provides that normally "execution on a judgment" is "stayed for 30 days after its entry", and also provides the Court can order "otherwise" for an even longer stay, such as for a pending appeal.  Petitioners are appealing and it would be prejudicial for the Government to execute on summons and/or review responsive private financial documents (if any) prior to the Tenth Circuit permitting the Government to do so. [1]  Therefore, at the very least, this Court is requested to temporarily stay its order and stay execution of all remaining summons until the Tenth Circuit Court of Appeals can opine on appeal.

**Error #2**   The Court should not have unfairly truncated the proceedings and deprived Petitioners of a fair opportunity to be heard and make a record.  Given the number, importance, and complexity of the various issues, including various constitutional and legal issues, as to both

---

[1]  *See* O&J 8, 8 n.54 (citing *Schaeffler v. United States,* 2016 WL 3369538, at *3 (S.D.N.Y.), *aff'd,* 696 F. App'x 542 (2d Cir. 2017 (acknowledging "'the need to comply with . . . summons" can and should "be postponed until the completion of court review, no matter how long it took'").

In a January 11, 2023, email, Government Counsel indicated the Biden Administration "won't stipulate to hold off serving the court's order pending appeal" and "will tell them [the 'banks'] that they cannot delay responding to the summonses absent a court order staying enforcement".  But execution on the summons without first waiting for Petitioners' pending appeal to the Tenth Circuit would deprive Petitioners of meaningful mandatory right of appeal, and an opportunity to receive a fair hearing, in violation of taxpayer due process, financial privacy, and procedural rights.

R000223

the Petitioners and the public at large, and the need to fairly understand, characterize, and address all arguments actually made by Petitioners, and the need to ensure Petitioners actually had some opportunity to rebut or address some of the citations and points asserted by the Government (and the Court in a vacuum only after Petitioners' opportunity for briefing was concluded), the Court should have allowed the filing of a surreply and allowed a motion hearing for argument, and an evidentiary hearing also.  The failure to do so resulted in a denial of due process; unfair preclusion of the ability to explore the existing evidence (let alone cross-examine Agent Bauer about various disputed aspects of his affidavit); and various omissions and strawman mischaracterizations of Petitioners' various arguments, positions, facts, evidence, and legal authorities.

The Court cursorily found standard motion "oral argument is unnecessary"[2] but gave no explanation.  The Court also asserted that "Petitioners have not sought leave to file a surreply",[3] which is inaccurate; Petitioners requested opportunities for both for a surreply and a motion hearing and also indicated (most recently in Petitioners' December 21, 2022 filing at 4-5, 10-12) further motion was also pending in that regard.  For the record, Petitioners not only made past requests for oral argument hearing and surreply, but by this motion hereby again requests both a motion hearing and a surreply opportunity.

The Court acknowledged "a party may file a notice of supplemental authority when 'pertinent and significant authority comes to the attention of a party before the court has entered a

---

[2] O&J 2, 2 n.3 (citing DUCivR 7-1(g)).  Petitioners disagree for reasons in the preceding paragraph and this motion.
[3] O&J 5-6, 5 n. 35, 6 n.39 (citing DUCivR 7-1 (a)(8), 7-1(c)).

R000224

decision on a motion'" and Petitioners submitted a list of cases with parentheticals in the nature of

a supplemental authorities list,[4] but then the Court mischaracterized the list of cases itself as a

"surreply".[5]   The Court invented a non-existent requirement that supplemental cases must be

published only after the date of "the close of briefing"; the rule requires only "significant authority"

of any date that "*comes to the attention of a party before the court has entered a decision on a*

---

[4] The list of supplemental authorities (collectively, the "Supplemental Authorities") and explanation of relevant points to which they relate included *Greenberg v. Haggerty,* 491 F.Supp.3d 12, 25-33 (E.D. Pa. 2020), *appeal dismissed,* 2021 WL 2577514 (3d Cir.)(attempts to regulate or suppress content of professional attorney speech violated First Amendment); *In re Pearson,* 990 F.2d 653, 658 (1st Cir. 1993) ("the district court is not doomed to some Sisyphean fate, bound forever to enforce and interpret a preexisting decree without occasionally pausing to question whether changing circumstances have rendered the decree unnecessary, outmoded, or even harmful to the public interest"); *Jewell v. U.S.,* 749 F.3d 1295, 1297-1300 (10th Cir. 2014) (denial of enforcement of summons due to IRS failing to comply with *Powell* and administrative requirements); *Lightborne Pub., Inc. v. Citizens For Community Values,* 2009 WL 778241 *7-8 (S.D. Ohio)(First Amendment was violated when IRS used threats and investigation to suppress speech); *Otto v. City of Boca Raton, Florida,* 981 F.3d 854, 859-872 (11th Cir. 2020), *rehearing en banc denied,* 41 F.4th 1271 (11th Cir. 2022) (government efforts to suppress, disallow, or punish professional speech subject to First Amendment strict scrutiny); *Ridley v. Phillips Petroleum Co.,* 427 F.2d 19, 22-23 (10th Cir. 1970) ("federal courts have an inherent equitable power to modify a continuing decree of injunction" and can at any time terminate, modify, and/or interpret a prior consent decree based on a variety of legal and factual considerations, including what would be reasonable in light of the scope and purpose of the earlier proceedings and current circumstances, and use of decree); *U.S. v. Church of World Peace,* 775 F.2d 265, 266-68 (10th Cir. 1985) (IRS request to enforce summons denied due to improper purpose and chilling effect of summons on First Amendment rights); *U.S. v. Gertner,* 65 F.3d 963, 965 (1st Cir. 1995) (IRS summons quashed for having improper purpose); *U.S. v. City of Miami,* 2 F.3d 1497, 1508 (11th Cir. 1993) (Termination or modification of consent decrees, "The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action. Equitable remedies must be flexible if these underlying principles are to be enforced with fairness and precision."); *U.S. v. Solomon,* 437 F.2d 110, 110 (5th Cir. 1971) (IRS summons would not be enforced, as it was unacceptably ambiguous, and District Court could summon the IRS or anyone else to testify in regard to summons).  Petitioners continue to assert these are pertinent and significant authorities with obvious and relevant controlling precedents and rebuttals to both the Government's nuanced assertions raised for the first time on reply, and the Court's assertions in ruling which Petitioners never had opportunity to address through motion hearing, and the various points of error raised in this present motion.

[5]  O&J 5.

R000225

motion."[6]  The Court stated "Petitioners fail to explain why the cases only came to their attention

after Respondents' reply brief", but on December 21, 2022, Petitioners explained the Government

had "'filed a reply with new caselaw and arguments" introducing First Amendment wrinkles

rebutted with precedents the Petitioners found by scrutinizing Government citations.[7]

**Error #3**  The Court engaged in various severe strawman omissions and mischaracterizations of

Petitioners' factual, evidentiary, and legal case, including without limitation points which were

central to the analysis and to considerations which made Petitioners' case readily distinguishable

from various inapposite precedents shoehorned into the Order.

The present case involves a situation (with no apparent exact factual and evidentiary analog

in prior legal authority uncovered by anyone up to this point) where it is ***expressly admitted in the***

***IRS' own Court filings and Agent affidavit*** that a secret undercover IRS "Revenue Agent" using

a "pseudonym" and acting as an operative for a secret IRS unit known as the "Lead Development

---

[6]  *See* O&J 5 (quoting DUCivR 7-1(c)).  Under DUCivR 7-1 (c), Notice of Supplemental Authority doesn't
require leave of the Court.  Also, when the Government makes an argument, especially on reply, it should
make even-handed mention of unhelpful cases from the Tenth Circuit and sister circuits along with the
Government-friendly precedents urged.  Petitioners' cases were from the Tenth Circuit and sister circuits;
Petitioners urge that court decisions should take into account all pertinent legal authorities, especially
potentially controlling Tenth Circuit decisions, regardless of how such may come to the Court's attention.
[7]  O&J 5.  Petitioners cannot mind-read in advance all potential arguments or precedents the Government
might assert on reply, and lack filing length to do so; this is another reason motion oral argument is typically
afforded.  The Court further compounded the prejudice by ignoring arguments, statutes, and controlling
authorities from the Supreme Court and elsewhere, cited in Petitioners' various filings *prior* to the
Government's reply.  *E.g.* 26 U.S.C. § 7605(b); 26 U.S.C. § 7602 (e); *White v. Lee,* 227 F.3d 1214 (2000),
*Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 59-64, 67 (1963); *American Civil Liberties Union v. City of
Pittsburgh,* 586 F.Supp. 417, 421-25 (W.D.Pa. 1984).  The Court neglected Petitioner-cited statutes and
Tenth Circuit cases implemented post-*Powell* to enhance protections for taxpayers.  *See U.S. v. Clarke,* 573
U.S. 248, 250 (2014)(summons may be quashed "on any appropriate ground", not just those in *Powell*).

R000226

Center"—which "Center" (among other things) **_dragnetted the internet searching for individuals and entities who expressed public viewpoints_** about tax law disfavored by the IRS and the Biden Administration—acted to target Petitioners for investigation and a harassing shower of summons on affiliates **_SOLELY on account of the Petitioners' First Amendment expression[8] about MIS._[9]**

This admitted initiation of an IRS investigation **_solely on the basis of First Amendment speech content_**—as opposed to a taxpayer who is targeted due to a **_speech-neutral reason_** and/or **_speech-neutral scenario_** and belatedly asserts "incidental" or "inadvertent" "impact" on First Amendment activities—is a factual, evidentiary, and legal consideration distinguishing this case from the scant and inapposite precedents relied upon in the Opinion.  Respectfully, this Court erred in its factual and legal analysis by refusing to acknowledge this distinction, and in relying on one (or perhaps two) trial court cases where the IRS had **_already initiated or widened an investigation_**

---

[8]  **_By the IRS' own admission in the IRS' own Agent affidavit and Court filings_**, the IRS chose to investigate Petitioners and carpet-bomb Petitioners with summons **_based expressly and solely on the content of the First Amendment expression of public opinions_**.  The IRS does **_not_** even **_purport_** to have chosen Petitioners through any method which might constitute an arguably more proper **_speech-content-neutral selection_** and investigatory "purpose" under *Powell* and well-established First Amendment precedent (i.e. a **_random audit procedure_**, a **_tip from an informant with inside knowledge_** of an actual specific tax violation, a **_consumer complainant or other whistleblower_**, an **_outgrowth of an audit or investigation_** of some other wayward taxpayer or return, etc.).  The IRS admits it **_targeted Petitioners_** after running across **_disfavored expression on the internet_** about the legality of MIS and various IRS literature which, to boot, Petitioners contended showed the Biden Administration's IRS engaging in potentially politically embarrassing selective availability of MIS afforded to large, well-lobbied clients.

[9] *See* "Declaration of Revenue Agent Tim Bauer" at paragraphs 1-6; and also the extended explanations, exhibit evidence, and a declarations submitted throughout, and/or filed contemporaneously in support of, Petitioner's Response To IRS Motion as filed with the Court by Petitioner on September 28, 2022.  For these and other reasons, it is erroneous to say (O&J 13, 16-17, 17 n.106-07) the IRS demonstrated "prima facia" "good faith", or there are no supporting affidavits or declarations (admissions in IRS declaration and filings are powerful evidence), or Petitioners lack necessary "specific facts or circumstances" or rely on "bare assertions" or "pure conjecture" about improper purpose or motive.

R000227

which **_did not start out targeting a taxpayer_** on the basis of speech content (let alone **_solely_** on the basis of speech content associated with internet advocacy, as admitted in the affidavit of the IRS agent in the instant case)—and a taxpayer had backfilled with a First Amendment objection where no circumstances or IRS admissions suggested any speech content motive.[10]  "[C]ircumstantial evidence can suffice to meet [taxpayer's] . . . burden; after all, direct evidence of another person's bad faith, at this threshold stage [prior to evidentiary hearing], will rarely if ever be available. And although bare assertion or conjecture is not enough, neither is a fleshed out case demanded: The taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive."[11]

**Error #4**   Further exacerbating the constitutional and First Amendment violations, and the "improper purposes" problem both generally and as to the First Amendment, the IRS **_admits_** in its own filings "no court has yet considered whether MIS are fraudulent", and scholarly tax articles

---

[10]  *See* O&J 11 n. 74 (relying on *S. Crow Collateral Corp. v. U.S.,*, 2018 WL 2454630, at *1-3 (D. Idaho), *R. & R. adopted,* 2018 WL 2454628 (D. Idaho), *aff'd,* 782 F. App'x 597 (9th Cir. 2019)(complaining taxpayer was caught up in the widening of a *preexisting* IRS investigation originating with *preexisting audit* of a different taxpayer and did not invoke similar First Amendment argument)); O&J 16 n.100 (relying on *U.S. v. Greenberger,* 2016 WL 3912065, at *1-3, 9-12 (N.D. Ga.), *adopted* 2016 WL 3912060 (N.D. Ga.) (IRS started and targeted its investigation **not** on the basis of the content of any taxpayer's public First Amendment expression or advocacy, but instead after reviewing *inculpating tax returns from taxpayer and others*, *documents and information from a third-party source* about the illegal easements, and corroboration through *public records verifying illegal easements actually utilized*; taxpayer backfilled with First Amendment defense when it was clear origin and motivation was not solely, or even possibly partially, based on targeting disfavored speech content)).  *See also* O&J 8, 8 n.53 (misreading *Schaeffler*, 2016 WL 3369538, at *3 (*Schaeffler* stated mootness does *not* arise when the IRS' conduct is challenged as "illegal"; here Petitioners have expressly challenged the IRS' manner of choosing and incepting investigation and summons on the basis of expressive content as an illegal violation of the First Amendment.)).
[11]  *Clarke,* 573 U.S. at 255.

8

R000228

"tout their supposed efficacy"; it is undisputed the IRS has allowed MIS for various well-resourced taxpayers, as reflected in Petitioners' exhibits.  *See* Reply *at* 13 of 17.  Nor does the IRS dispute that there is not a single federal statute which actually mentions MIS and purports to make MIS illegal.  Indeed, all the IRS can demonstrate is that Petitioners expressed internet views about the legality and potential *hypothetical contingent applicability* of MIS arrangements for some taxpayers—MIS which the IRS doesn't dispute has been treated as *legal* by various courts, tax scholars and tax scholarly publications, and the IRS itself as to the well-connected.[12]

There is no basis for asserting Petitioners violated **_any_** law or tax provision, let alone that their disfavored public advocacy was unprotected as speech somehow inherently illegal or potentially inherently illegal.  To say "the IRS began an investigation into Mr. Bishop for possible violations of 26 U.S.C. § 6700 for promoting illegal tax schemes" (O&J 3), and that the IRS can have the "legitimate purpose" of "[d]etermining whether an individual has promoted false tax schemes" (O&J 11, 11 n.74), is to assume a premise the IRS never substantiated.

It is also erroneous and in violation of due process, for the Court to rely (O&J 2-3, 12, 12 n.79) solely on purported second-hand hearsay from the misleading notes of an agent using an affidavit without hearing or cross-examination, to assert that either of the Petitioners ever admitted before the IRS agent to doing anything which could fairly be said to constitute anything in

---

[12] A bald assertion by a federal agency (O&J 3, 3 n.13 (citing Bauer Decl. ¶ 4)("The IRS considers MIS transactions as an example of an 'abusive tax scheme[].'")) does not establish anything is actually illegal or public debate is illegal.  *Cf. Cargill v. Garland,* 2023 WL 119435 *1-4 (5th Cir. 2023)(en banc)(Biden Administration erred in believing ATF regulation rendered bump stocks illegal).

R000229

particular, or admitted to any particular version of MIS, or admitted to any violation of any law

(even a "violation" of "law" as apparently imagined by the IRS in relation to this particular case).

Respectfully, for these and other reasons, the Opinion should be temporarily stayed and

this motion otherwise granted.

DATED THIS 16 day of January, 2023.

*/s/ Daniel E. Witte*
Daniel E. Witte
*Attorney for Petitioners*

10

R000230

**Certificate of Word Length**

"I, Daniel E. Witte, certify that motion is ten pages or less and is also 3,100 words, and thus complies with DUCivR 7-1 (a)(4)(D)(i)."

*Daniel E. Witte*
Daniel E. Witte
*Attorney for Petitioners*

**Certificate of Service**

I certify that on January 16, 2023, I served the foregoing via the Court's CM/ECF system, which will serve all parties who have appeared, including without limitation:

DAVID A. HUUBERT
Deputy Assistant Attorney General

MATTHEW UTHALDE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
(202) 353-0013
Mathew.P.Uhalde@usdoj.gov

*Daniel E. Witte*
Daniel E. Witte
Attorney for Petitioners

R000231

Daniel E. Witte (UT 8576)
Pearson Butler & Carson PLLC
1802 W. South Jordan Pkwy, Suite 200
South Jordan, Utah 84095
Telephone: (801) 495-4104
Email: dan@pearsonbutler.com
*Attorney for Petitioners*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC,<br><br>        Petitioners,<br><br>v.<br><br>UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity,<br><br>        Respondents. | **ORDER TO VACATE ORDER AND JUDGMENT, AND TEMPORARILY STAY EXECUTION ON JUDGMENT PENDING APPEAL**<br><br>Civil Nos. 2:22-cv-00340-DBB-DBP<br>        2:22-cv-00341-DBB-DBP<br>        2:22-cv-00344-DBB-DBP<br>        2:22-cv-00345-DBB-DBP<br>        2:22-cv-00347-DBB-DBP<br>        2:22-cv-00348-DBB-DBP<br>        2:22-cv-00351-DBB-DBP<br>        2:22-cv-00352-DBB-DBP<br><br>**District Court Judge David B. Barlow**<br>**Chief Magistrate Judge Dustin B. Pead** |

The Court, having heard and reviewed in regard to the motion filings of Petitioners David

Michael Bishop ("Bishop") and Slim Ventures, LLC (collectively, "Petitioners"), and

Respondents United States, Internal Revenue Service, and Internal Revenue Agent Timothy Bauer

(ID # 0324589) and attorneys of the same (collectively, the "Government"), pursuant to, inter alia,

Federal Rule of Civil Procedure ("FRCP") 46 (objection to order or judgment), FRCP 59(e)

R000232

("motion to alter or amend a judgment"), FRCP 60(a) ("mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record"), FRCP 60(b)(1) ("mistake, inadvertence, . . . or excusable neglect"), FRCP 60(b)(6) ("any other reason that justified relief"), FRCP 62(a)("execution on a judgment" is "stayed for 30 days after its entry, unless the court orders otherwise"), and DUCivR 7-1(g) ("The court may set any motion for oral argument" and if the court does not do so, "a party may request oral argument on a motion" and the hearing argument should be allowed if there is "good cause"), hereby ORDERS as follows:

1.      The Court's "Memorandum Decision And Order Granting Respondent's Motion To (1) Summarily Deny Petitions To Quash IRS Summonses And (2) Enforce The Summonses And Denying Petitioners' Motions To Quash" and related judgment as both entered by the Court on January 9, 2023, is hereby vacated.  The Court grant leaves for an additional surreply from all parties; orders that a hearing be conducted for oral argument in relation to existing motions; and orders that an evidentiary hearing be scheduled at which Agent Timothy Bauer will testify and be subject to cross-examination in relation to his affidavit on behalf of the Government and at which the Petitioners will be able to testify and present witnesses.  After these and other steps have occurred as needed, the Court will eventually issue a modified order and judgment.

        **[AND/OR THE FOLLOWING PARAGRAPH]**

2.      Notwithstanding the Court's "Memorandum Decision And Order Granting Respondent's Motion To (1) Summarily Deny Petitions To Quash IRS Summonses And (2) Enforce The Summonses And Denying Petitioners' Motions To Quash" and related judgment as both entered

R000233

by the Court on January 9, 2023, or any other future order or judgment of this Court, Respondents

United States, Internal Revenue Service, and Internal Revenue Agent Timothy Bauer (ID #

0324589) and attorneys of the same (collectively, the "IRS" or "Government"), are not permitted

to execute on any summons associated with Civil Nos. 2:22-cv-00340-DBB-DBP, 2:22-cv-00341-

DBB-DBP, 2:22-cv-00344- DBB-DBP, 2:22-cv-00345-DBB-DBP, 2:22-cv-00347- DBB-DBP,

2:22-cv-00348-DBB-DBP, 2:22-cv-00351-DBB-DBP, and 2:22-cv-00352- DBB-DBP, and are

temporarily stayed from doing so, unless and until A) the Petitioners have missed the deadline to

file an appeal or otherwise exhausted all appellate opportunities, B) any appeal by the Petitioners

can first be decided by the United States Tenth Circuit Court of Appeals, or C) the United States

Tenth Circuit Court of Appeals has first issued its own order lifting the temporary stay.

DATED _____

_____
Hon. David B. Barlow

Daniel E. Witte (UT 8576)
Pearson Butler & Carson PLLC
1802 W. South Jordan Pkwy, Suite 200
South Jordan, Utah 84095
Telephone: (801) 495-4104
Email: dan@pearsonbutler.com
_Attorney for Petitioners_

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC,<br><br>       Petitioners,<br><br>v.<br><br>UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity,<br><br>       Respondents. | **REPLY TO GOVERNMENT'S OPPOSITION (2:22-CV-00340, Dk. 35) TO MOTION FOR RELIEF FROM ORDER AND JUDGMENT, AND/OR TO STAY EXECUTION ON JUDGMENT PENDING APPEAL**<br><br>Civil Nos. 2:22-cv-00340-DBB-DBP<br>           2:22-cv-00341-DBB-DBP<br>           2:22-cv-00344-DBB-DBP<br>           2:22-cv-00345-DBB-DBP<br>           2:22-cv-00347-DBB-DBP<br>           2:22-cv-00348-DBB-DBP<br>           2:22-cv-00351-DBB-DBP<br>           2:22-cv-00352-DBB-DBP<br><br>**District Court Judge David B. Barlow**<br><br>**Hearing Requested** |

Petitioners David Bishop and Slim Ventures, LLC ("Petitioners"), reply to the Government's ("Government" or "IRS") Opposition (2:22-CV-00340, Dk. 35, hereinafter "Opp.", page numbers from blue Court stamp).

Petitioners and the IRS agree on two points. First, since there was no hearing, no opportunity to object, and no reason or opportunity to file anything additional before the Court hastily issued its order and judgment, and various Petitioner legal arguments and authorities were

1

R000235

left unaddressed, Petitioners will be able to raise objections and arguments on appeal that Petitioners had no "'opportunity'" to present "'when the ruling or order was made'" (Opp. 35). Lacking a full record and many necessary legal explanations from this Court, the Appeals Court will need to construe numerous resultant counterfactual assumptions in Petitioners' favor. It is true (Opp. 4, 8-9) that persuading any court to alter or amend its own judgment, or declare its own ruling as likely to be overturned on appeal for stay analysis, is tacking into a headwind. Applicable standards for error analysis and stay factor discretion accord Court latitude in leaving existing ruling defects undisturbed, taking various approaches to post-judgment stay, or exercising discretion under rules and inherent authority to fix "clear errors".[1] The Court has now had ample opportunity to weigh in.[2]

Second, Petitioners agree with the Government[3] that per *Church of Scientology*, if this Court forces an improper summons production before the Court of Appeals can rule for reversal,

---

[1] *See* Opp. 12 n.12.

[2] Contrary to assertion (Opp. 6), the impromptu judgment short-circuited Petitioners from filing the separate request for leave petitioners expressly indicated they were preparing (Dk. 26 at 5).

[3] Opp. 10 (explaining *Church of Scientology v. U.S.,* 506 U.S. 9, 11, 13, 18 (1992)("When the Government has obtained . . . materials as a result of an unlawful summons, that interest is violated and a court can effectuate relief by ordering the Government to return the records. Moreover, even if the Government retains only copies of the disputed materials, a taxpayer still suffers injury by the Government's continued possession of those materials, namely, the affront to the taxpayer's privacy. A person's interest in maintaining the privacy of his 'papers and effects is of sufficient importance to merit constitutional protection.'"   "[C]ompliance with the summons enforcement order" doesn't "moot" violated taxpayer's appeal)).

R000236

the petitions will not be moot; instead, the IRS can be ordered to return or destroy everything

produced,[4] with resultant information disallowed as fruit of a poisonous tree.

The Government (Opp. 9-11) correctly notes some federal courts have refused to grant a

stay on execution of summons pending appeal, rationalizing that a district court needn't worry

about improper summons enforcement because an appellate court is empowered under *Church of*

*Scientology* to try to clean up the mess on the back end.  However, both before and after *Church of*

*Scientology*, the Supreme Court has exhibited a less cavalier approach toward taxpayer privacy and

the inherent irreparable harm caused by violation of such privacy absent stay,[5] imposing a stay

until a final appellate decision can first be rendered.[6]  Numerous lower federal courts, including

---

[4]  Regardless of whether some kind of stay is granted, any documents received by IRS summons should be
carefully marked and segregated to facilitate tracking and purging.  *U.S. v. Clark,* 1980 WL 1502 *2
(M.D.N.C.)(" make and preserve a detailed, itemized list of, and mark, all documents produced in response
to the summonses in order that the information gathered in response to these summonses may be clearly
identified in the event  . . . [of] successful . . . appeal. . . Orders enforcing the summonses . . . stayed for a
period of time . . . to allow . . . time to apply for a stay from . . . Court of Appeals").

[5]  Contrary to IRS contention (Opp. 9-10), factor "2)" "irreparable injury absent a stay" can be met even if,
arguendo, the only harm would be invasion of the privacy and security of the taxpayer.  Moreover, as per
cases in the next three footnotes, ***satisfaction of the four-factor test urged by the Government isn't***
***required at all*** for a district court to temporarily stay (or arrange delay in production) long enough for a
***court of appeals*** to rule on an ***appellate motion to stay***; this approach is often taken because a district court
judge has an obvious reticence (and conflict of interest) when evaluating whether the judge's own decision
is likely to be overturned on appeal (*i.e.* factor "1)" of the stay until completed appeal test (*see* Opp. 8)).  A
court of appeals is often in a better position to objectively assess likelihood of success on appeal.  Also, as
reflected by the next three footnotes, the factors of the test urged by the Government are sliding and
offsetting; even if applied, factor "1)" of the Government's favored test only requires a "substantial case on
the merits" and ***not*** a finding that "ultimate success by the movant is a mathematical probability".

[6]  *Trump v. Mazars USA, LLP,* 205 L.Ed.2d 352 (2019)(Roberts, C.J.)(overriding lower courts, staying
disclosure of subpoenaed tax and financial documents pending request for Supreme Court review), *aff'd*
140 S.Ct. 581 (2019) (unanimous)("Should the petition for a writ of certiorari be denied, this stay shall
terminate automatically. In the event the petition for a writ of certiorari is granted, the stay shall terminate
upon the issuance of the judgment of this Court. If no petition for a writ of certiorari is filed on or before
December 5, 2019, by noon, the stay shall terminate."); *Reisman v. Caplin,* 375 U.S. 440, 450 (1964) ("Code

some the IRS cited in an artful way, have ruled taxpayers should have a fair opportunity to protect

their interests pending appeal—whether by a stay until the final appeals decision, a stay until a

Court of Appeals can rule on an appellate motion for stay, or other arrangements not technically a

"stay" but ensuring no summons production until a Court of Appeals can rule on an appellate

motion for stay.[7] The Department of Justice has advocated similar stays.[8]

---

. . . provides full opportunity for judicial review before any coercive sanctions may be imposed" for taxpayer refusal to disgorge). *Cf. Nken v. Holder*, 556 U.S. 418, 427 (2009)("A reviewing court must bring considered judgment . . . but that cannot always be done quickly enough to afford relief to the party aggrieved by the order under review. The choice for a reviewing court should not be between justice on the fly or participation in what may be an 'idle ceremony.' . . . The ability to grant interim relief is . . . a means of ensuring that appellate courts can responsibly fulfill their role. . ."); *Church of Scientology*, 506 U.S. at 11, 13, 18 ("a taxpayer still suffers injury by the Government's continued possession of those materials, namely, the affront to the taxpayer's privacy. A person's interest in maintaining the privacy of his 'papers and effects is of sufficient importance to merit constitutional protection.'").

[7] *E.g. U.S. v. Secor*, 476 F.2d 766, 770 (2d Cir. 1973) (stay order pending appeal testing IRS summons is needed to prevent "injury"); *Schaeffler v. United States*, 2016 WL 3369538, at *3 (S.D.N.Y.), *aff'd*, 696 F. App'x 542 (2d Cir. 2017) ("'need to comply with . . . summons' should "be postponed until the completion of court review, no matter how long it took'"); *U.S. v. Bright*, 2008 WL 351215 *4 (D. Haw.)("Court . . . will stay the summons enforcement . . . to permit Respondents to seek a stay from the Ninth Circuit."); *U.S. v. Diversified Group, Inc.*, 2002 WL 31812701 *2 (S.D.N.Y)("the IRS has summonsed numerous documents. . . . this Court should do nothing to forestall DGI's right to request a stay from the Court of Appeals. . . . DGI has forty days . . . "); *U.S. v. Ferndale Co-op Credit Union*, 1982 WL 1679 *3 (E.D. Mich.) ("since the taxpayer in these IRS summons enforcement actions has not demonstrated a likelihood of success on the merits*, a stay pending appeal is not justified*. ***However***, the Court agrees with the rationale expressed in the cases mentioned previously that ***the taxpayer-intervenor should have an opportunity to present his petition for a stay pending appeal to the Court of Appeals***, if he so desires. Therefore, the Court will grant a stay on the enforcement of its June 7, 1982 orders . . ."); *Clark*, 1980 WL 1502 *2 (same); *U.S. v. Combank/Casselberry*, 1979 WL 1289 *2 (M.D. Fla.)("enforcement [of IRS summons] will be stayed for a period . . . to permit an application to the Court of Appeals for a stay pending appeal"); *U.S. v. Neve*, 80 F.R.D. 461, 463 (E.D. La. 1978)(". . . granting of the stay [against IRS summons] in this case comes within Rule 62(d) . . . . Motion to Stay Execution of Judgment will be granted . . .").

[8] *E.g. New York Times Co. v. Department of Health & Human Serv.*, 2021 WL 235138 *2-3 (S.D.N.Y.) (strong showings not required for every factor; "court must weigh the factors depending on the circumstances of the particular case . . . . order . . . enjoining the Government to produce . . . is hereby stayed pending appeal"); *Dunlap v. Presidential Advisory Commission on Election Integrity*, 390 F.Supp.3d 128, 135 (D.D.C. 2019) (same); *Shapiro v. U.S. Dept. of Justice*, 2016 WL 3023980 *8-9 (D.D.C.)("a court may 'grant a stay if the movant has made a substantial case on the merits, and is not required to conclude

4

To manufacture a showing that "a stay will substantially injure the United States" per factor "3)" and/or harm "the public's interest" per factor "4)", the IRS (Opp. 2, 9, 11)  resorts to unfounded smears, insisting Petitioners pose a "threat" and "danger" because Petitioners are "peddling" a "tax scam" and committing "ongoing tax fraud" such that "extra delay" from stay would "allow illegal activity to continue longer than it otherwise might."

But it is undisputed[9] that **A)** neither Petitioner has **_any existing delinquent tax balance_** (i.e. no risk of assets dissipating to thwart satisfaction of a judgment or known obligation); **B)** per the IRS' stipulation, Bishop wasn't found to have **_done_** anything unlawful two decades ago (the IRS didn't like Bishop's theory about a deduction *unrelated* to MIS, and he agreed to stop talking about it);[10] **C)** the IRS has no evidence either Petitioner **_has ever engaged in or induced any "improper" financial or tax transaction at any time_** (even as measured against the **_IRS' recently gainsaid anti-MIS position_**), Petitioners merely mused in abstract on the internet;[11] **D)** even if, *arguendo*, the IRS could show Petitioners had actually committed any MIS which the IRS now disfavors, the

---

'that ultimate success by the movant is a mathematical probability.' . . . FBI's obligation to produce . . . is hereby stayed . . . if the FBI files a notice of appeal . . . "); *Charles v. Office of the Armed Forces Medical Examiner,* 2013 WL 12332949 *1 (D.D.C.) ("party seeking a stay need not make a strong showing as to every factor . . . harm to plaintiff from further delay . . . is not insignificant. . . . substantial public interest in the information" but stay pending appeal granted).

[9]   *See, e.g.,* 2-22-cv-00340, Dk. 19 at 13.

[10]   *U.S. v. Bishop et al.,* 2:03-cv-01017 (Nov. 20, 2003) (¶¶ 2-3)(final judgment).

[11]   *See* 2:22-cv-00340 Dk. 13-1, Exhibit 1, *at* pages 2-3, 2n.1, 3, 3n.1, 6.  Petitioners provided internet links documenting eleven examples of prominent companies successfully utilizing MIS; a **link to a Chief Counsel Internal Revenue Service Memorandum No. 20123401F (Aug. 24, 2012), https://www.irs.gov/pub/irs-lafa/20123401F.pdf** discussing **"Application of Judicial Doctrines to Monetized Transaction" indicating some MIS transactions are permissible**; and **_disclaimed the discussion as intended for tax advice_**. *See also* 2:22-cv-00340 Dk. 16-1 through 16-8 (IRS and scholarly tax law publications favoring MIS).  Petitioners' speech urges the same IRS standards for **_all_** taxpayers.

***IRS cannot show MIS is actually illegal at all***, and ***admits*** in its own  filings "no court has yet considered whether MIS are fraudulent", and scholarly tax articles "tout their supposed efficacy";[12] **E)** the ***IRS has allowed MIS for various other (well-resourced) taxpayers***[13] without dire public consequences, and **F)** the IRS has ***already crapped out on 6 of 8 summons*** used for its fishing expedition.  These considerations not only call into question the efficacy of the IRS' underlying case and the Court's substantive ruling about summons, but also preclude credible argument "a stay will substantially injure the United States" (factor "3)" as urged at Opp. 9) or injure the "public's interest" (factor "4)" as urged at Opp. 9).

Moreover, legal authority establishes ***the Government has no legitimate interest or purpose in using investigations and/or summons to improperly target a citizen or taxpayer on the basis of the content of their First Amendment expression*** and/or professional speech of the kind at issue here.[14]  The "public's interest" is advanced when the public is ***protected*** against efforts to use tax investigations and summons harassment to target taxpayers solely for the content of speech;[15] otherwise, the Biden Administration could engage in the impermissible implementation

---

[12] *E.g.,* 2-22-cv-00340, Dk. 19 at 13; 2:22-cv-00340 Dk. 16-1 through 16-8 (cases, articles, announcements, IRS bulletins favoring MIS). The IRS doesn't dispute there is ***not a single federal statute which actually mentions MIS as illegal***.
[13] 2:22-cv-00340 Dk. 16-1 through 16-8 (exhibits).
[14] *See U.S. v. Church of World Peace,* 775 F.2d 265, 266-68 (10th Cir. 1985) (IRS request to enforce summons denied due to improper purpose and chilling effect of summons on First Amendment rights); *U.S. v. Gertner,* 65 F.3d 963, 965 (1st Cir. 1995) (IRS summons quashed for having improper purpose); *Lightborne Pub., Inc. v. Citizens For Community Values,* 2009 WL 778241 *7-8 (S.D. Ohio)(First Amendment violated when IRS used threats and investigation to suppress speech).
[15] *See Lightborne Pub., Inc.,* 2009 WL 778241 *7-8.

R000240

of a Chinese-style system of social credits,[16] where the Government as a Ministry of Truth trolls the internet, courts, hospitals, churches, and the public arena to target attorneys, doctors, clerics, professionals, politicians, journalists, entities, and individuals for tax penalties, de-licensure, sanctions, and even imprisonment, to deter disfavored expression.[17]

The IRS admits[18] a secret undercover IRS "Revenue Agent" for the secret "Lead Development Center" targeted and instigated an investigation (with subsequent summons) **_solely_** on the (illegal) criteria of Petitioners' **_speech content on the internet_**; the IRS did **_not_** utilize speech-neutral[19] means or criteria.  Government use of disfavored speech content alone as the sole criterion to select a person or business target for investigation or summons constitutes an unconstitutional practice and impermissible purpose[20] and is insufficient justification for enforcement or stay denial.

---

[16]   Katie Canales & Aaron Mok, *China's 'social credit' system ranks citizens,* BUSINESS INSIDER, https://www.businessinsider.com/china-social-credit-system-punishments-and-rewards-explained-2018-4 (Nov. 28, 2022).

[17]   *See Greenberg v. Haggerty,* 491 F.Supp.3d 12, 25-33 (E.D. Pa. 2020), *appeal dismissed,* 2021 WL 2577514 (3d Cir.)(regulation of attorney speech violated First Amendment, sweeping, vague standards created due process defects); *Høeg M.D. v. Newsome,* 2023 WL 414258 *1-2, *5-12 (E.D. Cal.) (statute prohibiting medical professionals from disseminating "disinformation" or "misinformation" about COVID was unconstitutionally vague, violated First Amendment).

[18]   *E.g.* 2-22-cv-00340, Dk. 13-1 ¶¶ 4-6 (**_Agent's affidavit attests Petitioners were detected, selected, targeted for investigation solely based on "material" "downloaded" Petitioners' "website" which involved "promotion of MIS" views disfavored by IRS_**).

[19]   Such includes pre-existing review of *inculpating tax returns from taxpayer and others*, *documents and information from a third-party source*, discoveries through *public records,* preexisting *leads from litigation or conviction, etc.,* which, in contrast to this instant situation, characterized the IRS' (Opp. 5-6) only case about First Amendment versus summons, *U.S. v. Greenberger,* 2016 WL 3912065, at *1-3, 9-12 (N.D. Ga.), *adopted* 2016 WL 3912060 (N.D. Ga.).  The First Amendment defense asserted in *Greenburger* was contrary to compelling evidence about how the *Greenburger* investigation actually and neutrally incepted.

[20]   *E.g. White v. Lee,* 227 F.3d 1214 (2000) (investigation and subpoenas by Government HUD officials designed to chill legal arguments and community advocacy HUD felt was seeking illegal objective, violated

7

A taxpayer "may challenge the summons on any appropriate ground"; a summons shouldn't be enforced if "issued for an improper purpose, such as to harass the taxpayer. . . or for any other purpose reflecting on the good faith of the particular investigation."[21] A summons may be quashed or stayed "on any appropriate ground", not just those in *Powell*.[22]  The IRS lacks a viable rationale against First Amendment and caselaw cited herein, and is unable to rebut other controlling legal authorities implemented post-*Powell* to enhance taxpayer protections.[23]

Contrary to assertion (Opp. 5), Petitioners' argument is **not** that agent affidavits can't serve as evidence, but instead that "circumstantial evidence can suffice to meet [taxpayer's] . . . burden; . . . a fleshed out case is [not] demanded . . . only . . . facts that give rise to a plausible inference of improper motive."[24]  That standard was met here; as Agent Bauer admitted,[25] the investigation improperly incepted, so Bauer's misattributed statements to Petitioners by affidavit should receive cross-examination and rebuttal testimony.

---

the First Amendment); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 59-64, 67 (1963) (use of police investigation to censor distribution of publications thought illegal for distribution to youth was unconstitutional); *American Civil Liberties Union v. City of Pittsburgh,* 586 F.Supp. 417, 421-25 (W.D.Pa. 1984) (Mayor could not circulate threats of investigation and prosecution against vendors to chill dissemination of disfavored magazine thought to contain illegal content).

[21] *U.S. v. Powell,* 379 U.S. 48, 58 (1964).

[22] *See U.S. v. Clarke,* 573 U.S. 248, 250 (2014).

[23] *E.g.* 26 U.S.C. § 7605(b) ("**Restrictions on examination of taxpayer.**--No taxpayer shall be subjected to unnecessary examination or investigations . . . "); 26 U.S.C. § 7602 (e) (curtailing IRS use of "financial status or economic reality examination techniques").

[24] *Clarke,* 573 U.S. at 255.

[25] Written admission in affidavit by an opponent's witness and by an opposing party in their own filings, and the IRS's own past literature, is the most powerful evidence of all.  There is no "speculation" or even question of material fact with such evidence.

8

Despite assertions (Opp.4), the IRS has ignored many of Petitioners' actual arguments, authorities, and evidence; mischaracterized others; and deployed strawman arguments.   This induced a premature Court ruling without the benefit of hearing or full information, thus resulting in opinion misstatements of facts, evidence, and law.

Respectfully, execution of summons should be stayed until either 1) an appellate motion to stay can be entertained, or 2) a final substantive appellate ruling can be issued; and other requests in this motion for corrections should otherwise be granted.

DATED January 8, 2023.

*/s/ Daniel E. Witte*
   Daniel E. Witte
   *Attorney for Petitioners*

R000243

**Certificate of Word Length**

"I, Daniel E. Witte, certify that motion is ten pages or less and is also 3,100 words, and thus complies with DUCivR 7-1 (a)(4)(D)(i)."

*Daniel E. Witte*
Daniel E. Witte
*Attorney for Petitioners*

**Certificate of Service**

I certify that on January 8, 2022, I served the foregoing via the Court's CM/ECF system, which will serve all parties who have appeared, including without limitation:

DAVID A. HUUBERT
Deputy Assistant Attorney General

MATTHEW UTHALDE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
(202) 353-0013
Mathew.P.Uhalde@usdoj.gov

*Daniel E. Witte*
Daniel E. Witte
Attorney for Petitioners

10

R000244

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES; INTERNAL REVENUE SERVICE; and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity, <br><br> Respondents. | **MEMORANDUM DECISION AND ORDER DENYING [32] MOTION FOR RELIEF FROM ORDER AND JUDGMENT, AND/OR TO STAY EXECUTION ON JUDGMENT PENDING APPEAL** <br><br> Case No. 2:22-cv-00340-DBB-DBP <br> Case No. 2:22-cv-00341-DBB-DBP <br> Case No. 2:22-cv-00344-DBB-DBP <br> Case No. 2:22-cv-00345-DBB-DBP <br> Case No. 2:22-cv-00347-DBB-DBP <br> Case No. 2:22-cv-00348-DBB-DBP <br> Case No. 2:22-cv-00351-DBB-DBP <br> Case No. 2:22-cv-00352-DBB-DBP <br><br> District Judge David Barlow |

The matter before the court is Petitioners David Michael Bishop ("Mr. Bishop") and Slim Ventures, LLC's ("Slim Ventures") (collectively "Petitioners") Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal.[1] Petitioners move for relief from judgment in favor of Respondents United States, the Internal Revenue Service (the "IRS"), and Internal Revenue Agent Timothy Bauer (ID #0324589) ("Agent Bauer") (collectively "Respondents"). Petitioners also move for a stay pending appeal. Having reviewed the briefing and relevant law, the court finds that oral argument would not materially assist the court.[2] For the reasons below, the court denies Petitioners' motion.

---

[1] Mot. for Relief from Order & J. and/or to Stay Execution on J. Pending Appeal ("Mot. for Relief"), ECF No. 32, filed Jan. 16, 2023.
[2] *See* DUCivR 7-1(g).

R000245

## BACKGROUND

On May 7, 2022, the IRS issued eight summonses to four financial institutions.[3] In May 2022, Petitioners filed corresponding petitions to quash.[4] On August 26, 2022, Respondents moved to deny the eight petitions and enforce the summonses against Summit Crest Financial, LLC ("Summit Crest") and Wells Fargo Bank NA ("Wells Fargo").[5] On January 9, 2023, the court granted the motion.[6] The court ordered the two financial institutions to respond within thirty days.[7] Petitioners filed the instant motion on January 16, 2023.[8] Respondents filed an opposition on February 2, 2023.[9] Petitioners replied six days later.[10]

## DISCUSSION

Petitioners move the court to provide relief from judgment. Alternatively, they move to stay enforcement of the summonses pending appeal. The court addresses each request in order.

### I.    Relief from Final Judgment Is Not Warranted.

Petitioners ask the court to vacate and amend its order pursuant to Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure.[11] They filed their motion seven days after

---

[3] *See, e.g.*, Summons, ECF No. 2-6, *Bishop v. United States*, 2:22-cv-00340 (D. Utah May 20, 2022).

[4] Pet. to Quash Summons, ECF No. 2, filed May 20, 2022. In seven related cases, Petitioners filed nearly identical motions to quash IRS summonses: *Slim Ventures v. United States*, No. 2:22-cv-00341; *Bishop v. United States*, No. 2:22-cv-00344; *Slim Ventures v. United States*, No. 2:22-cv-00345; *Bishop v. United States*, No. 2:22-cv-00347; *Slim Ventures v. United States*, No. 2:22-cv-00348; *Slim Ventures v. United States*, No. 2:22-cv-00351; and *Bishop v. United States*, No. 2:22-cv-00352.

[5] ECF No. 13.

[6] Order Granting Resp'ts Mot. to Summarily Deny Pets. to Quash IRS Summonses & Denying Pets. Mots. to Quash ("Order Denying Pets.") 18–19, ECF No. 30, filed Jan. 9, 2023.

[7] *Id.* at 19.

[8] *See* Mot. for Relief.

[9] Opp'n to Pets. Mot. to Vacate J. or Stay J. Pending Appeal ("Opp'n"), ECF No. 35, filed Feb. 2, 2023.

[10] Reply to Govt's Opp'n ("Reply"), ECF No. 36, filed Feb. 8, 2023.

[11] Petitioners' motion references Rule 46 and Rule 60(a) of the Federal Rules of Civil Procedure. "Rule 46 generally requires objections during trial proceedings to preserve questions for appeal." *Blaurock v. Kansas*, No. 12-3066, 2014 WL 6472870, at *1 (D. Kan. Nov. 18, 2014). And "Rule 60(a) covers a subset of 'mistake[s]'—*e.g.*, 'clerical' ones—whereas Rule 60(b)(1) covers 'mistake[s] *simpliciter*[.]" *Kemp v. United States*, 142 S. Ct. 1856, 1863

R000246

judgment. The motion is timely under either rule.[12] "[H]ow we construe [which rule applies] depends upon the reasons expressed by the movant."[13] Petitioners' arguments center on the court's purported "Error, Mistake, Oversight, Omission, Inadvertence, And Other Considerations Justifying Relief."[14] Accordingly, the court analyzes the motion under Rule 60(b)(1) and (b)(6).[15]

Pursuant to Federal Rule of Civil Procedure 60(b)(1), a court may relieve a party from a final judgment and order for "mistake, inadvertence, surprise, or excusable neglect."[16] Motions for relief "premised upon mistake are intended to provide relief to a party . . . whe[n] the judge has made a substantive mistake of law or fact in the final judgment or order."[17] Under Rule 60(b)(6), the court may offer relief for "any other reason that justifies relief."[18] This rule is a "grand reservoir of equitable power to do justice in a particular case."[19] "Although [it] should be liberally construed when substantial justice will thus be served, relief under Rule 60(b)(6) is extraordinary and reserved for exceptional circumstances."[20] With the standard in mind, the court addresses Petitioners' claims that the lack of oral argument, a surreply, and an evidentiary hearing violated Petitioners' due process, and that the court erred in its factual and legal analysis.

---

(2022). Because there was no trial in this case and Petitioners do not assert a clerical mistake, the court addresses Rule 59(e) and Rule 60(b) only.

[12] *See* Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 60(c)(1).

[13] *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1200 (10th Cir. 2011); *see Warren v. Am. Bankers Ins. of FL*, 507 F.3d 1239, 1244 (10th Cir. 2007) ("[A] 'motion to reconsider' filed prior to or within [28] days of entry of judgment may on occasion be construed as one arising under Rule 60." (citing *Jennings v. Rivers*, 394 F.3d 850, 855 (10th Cir. 2005))).

[14] Mot. for Relief 2 (emphasis removed).

[15] The court declines to adopt a rule that "[a]ny request to vacate a judgment within 28 days of entry must be brought under Rule 59(e)." Opp'n 2. In *Skagerberg v. Oklahoma*, cited by Respondents, the movant sought relief under Rule 60 only. 797 F.2d 881, 883 (10th Cir. 1986). And in *Banister v. Davis*, the court discussed Rule 60 versus Rule 59 motions in the context of an appeal to a habeas petition. 140 S. Ct. 1698, 1710 n.9 (2020).

[16] Fed. R. Civ. P. 60(b)(1).

[17] *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 722–23 (10th Cir. 2008).

[18] Fed. R. Civ. P. 60(b)(6).

[19] *Kile v. United States*, 915 F.3d 682, 687 (10th Cir. 2019), *as corrected* (Feb. 15, 2019) (citation omitted).

[20] *Johnson v. Spencer*, 950 F.3d 680, 701 (10th Cir. 2020) (cleaned up).

R000247

### A.    Oral Argument

Petitioners contend that the court erred when it found oral argument unnecessary. They argue that such argument was needed because they could not have "mind-read in advance all potential arguments or precedents the Government might assert on reply" and even if they had anticipated the arguments, they lacked the filing length to respond in briefing.[21] These arguments are unavailing. Under the local rules, oral argument is permissive.[22] "Refusing to conduct an unnecessary hearing is not an abuse of discretion."[23] Here, the court determined that oral argument would not materially benefit its decision.[24] Nothing Petitioners raise in their motion persuade the court that oral argument would have been of assistance. This basis for relief is rejected.

### B.    Surreply

Next, Petitioners argue that the court erred by treating Petitioners' notice of supplementary authority as a surreply and striking it. They contend that the court "invented a non-existent requirement" that a party can never submit cases in a notice of supplemental authority that have been published after the party's briefing.[25] By striking the notice, Petitioners argue that the court denied them due process.[26]

---

[21] Mot. for Relief 6 n.6.

[22] DUCivR 7-1(g) ("The court *may* set any motion for oral argument." (emphasis added)); *see Allender v. Raytheon Aircraft Co.*, No. 03-1396, 2005 WL 351693, at *2 (D. Kan. Feb. 7, 2005).

[23] *Pinson v. Berkebile*, 601 F. App'x 611, 614 (10th Cir. 2015) (unpublished) (citing *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 858–59 (10th Cir. 2005)).

[24] *See* Order Denying Pets. 2.

[25] Mot. for Relief 5; ECF No. 24, at 2.

[26] Mot. for Relief 5 n.4.

4

"The determination of whether to permit a party to file a sur-reply or notice of supplemental authority 'is committed to the sound discretion of the [district] court.'"[27] Petitioners have not shown that the court erred in treating their submission as a motion for a surreply. Because they never moved for leave to file a surreply,[28] it was proper to disregard their request. Even treating the filing as a notice of supplemental authority, Petitioners fail to explain why the cases came to their attention only after briefing and why the cases were pertinent and significant authority.[29] The bottom line is that denying a party leave to belatedly cite additional authority does not infringe due process. It is not an "extraordinary circumstance[]" that makes vacatur "necessary to accomplish justice."[30]

## C.    Evidentiary Hearing

Petitioners contend that the court must allow an evidentiary hearing where they can cross-examine Agent Bauer. They allege that the "failure to do so result[s] in a denial of due process [and] unfair preclusion of the ability to explore the existing evidence . . . ."[31] To obtain an evidentiary hearing, Petitioners must assert "specific facts or circumstances plausibly raising an inference of bad faith."[32] Agent Bauer's declaration stated his authority, the investigation's purpose, and his reasons for issuing the summonses.[33] The court found that Respondents had

---

[27] *One Vodka, LLC v. Benchmark Beverage Co.*, No. 21-11456, 2022 WL 860444, at *2 (E.D. Mich. Mar. 22, 2022) (citation omitted); *see* DUCivR 7-1(a)(8).
[28] Petitioners could not have moved for leave to file a surreply in an opposition brief. *See* DUCivR 7-1(a)(3).
[29] Mot. Denying Pets. 5–6.
[30] *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996).
[31] Mot. for Relief 4.
[32] *United States v. Clarke*, 573 U.S. 248, 254 (2014).
[33] *See* ECF No. 13-1.

R000249

made a prima facie showing of good faith.[34] Petitioners fail to identify specific facts or

circumstances to overcome their heavy burden.[35] Mere accusations are not enough.[36]

Petitioners also argue that the court's reliance on Agent Bauer's declaration violates due

process because the declaration is "purported second-hand hearsay" based on "misleading

notes."[37] Petitioners offer no authority for the proposition that it is erroneous for a court to rely

on an IRS agent's signed declaration. Indeed, "[t]he IRS generally meets th[eir] burden [in these

cases] with an affidavit of the agent who issued the summons."[38]

### D.    Factual and Legal Analysis

Petitioners last contend that the court erred in its factual and legal analysis. They argue

that the court improperly relied on district court cases in finding that the IRS had a valid reason

to investigate Mr. Bishop.[39] But Petitioners have not shown that the court erred. Based on Tenth

Circuit precedent, the court reasoned that "[t]he IRS does not have to establish any probable

cause to obtain enforcement of a summons."[40] Thus, the court found that Respondents met their

---

[34] *See Speidell v. United States Through Internal Revenue Serv.*, 978 F.3d 731, 738 (10th Cir. 2020), *cert. denied sub nom. Speidell v. United States*, 141 S. Ct. 2800 (2021), *reh'g denied*, 142 S. Ct. 921 (2021) (citation omitted); *Rice v. United States*, 9 F.3d 117 (10th Cir. 1993) (unpublished) ("Through the statements of [the] Revenue Agent . . . , the government clearly established its prima facie case for enforcement of the IRS summons." (citing *United States v. Powell*, 379 U.S. 48, 57–58 (1964))).

[35] *Standing Akimbo, LLC v. United States through Internal Revenue Serv.*, 955 F.3d 1146, 1155 (10th Cir. 2020); *see Clarke*, 573 U.S. at 254 ("Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge.").

[36] For example, Petitioners claim that Agent Bauer was working for a "secret IRS unit known as the 'Lead Development Center' [that] . . . ***dragnetted the internet searching for individuals and entities who expressed public viewpoints*** about tax law disfavored by the IRS and the Biden administration" to "target Petitioners for investigation and a harassing shower of summons . . . ***SOLELY on account of the Petitioners' First Amendment expression about MIS***." Mot. for Relief 6–7.

[37] *Id.* at 9.

[38] *Speidell*, 978 F.3d at 738; *see Clarke*, 573 U.S. at 250.

[39] *See* Mot. for Relief 7–8. Petitioners contend that the IRS's investigation was predicated on its desire to chill their First Amendment speech.

[40] *Rice*, 9 F.3d 117 (citing *Powell*, 379 U.S. at 57).

burden to show that their investigation was relevant and legitimate.[41] It is Petitioners' burden to overcome the government's prima facie showing. Petitioners cannot do so with unsupported arguments such as a claim that monetized installment sales are legal tax vehicles.[42] In sum, they have not demonstrated any substantive mistake or exceptional circumstances that would warrant relief under Rule 60(b).

## II. Petitioners Do Not Meet their Burden for a Stay Pending Appeal.

Petitioners move the court to stay execution of the summonses against Summit Crest and Wells Fargo until the Tenth Circuit can address their appeal.[43] They first contend that the court has violated Rule 62(a)'s automatic stay requirements when it ordered enforcement within thirty days of judgment.[44] Petitioners misapprehend Rule 62(a). "[E]xecution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, *unless the court orders otherwise.*"[45] Here, the court has ordered otherwise.[46] Even so, "the IRS [i]s not required to comply with Rule 62(a) because [executing summonses] [i]s injunctive in nature and therefore within the exceptions to the . . . automatic stay period of Rule 62(a)."[47]

For this reason, the court considers Petitioners' motion under the general standard for staying a civil judgment. The court weighs "(1) whether the . . . applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably

---

[41] *See* Order Denying Pets. 11–12.

[42] *See Clarke*, 573 U.S. at 254.

[43] While they have not yet done so, Petitioners assert that they plan to appeal. Mot. for Relief 3.

[44] *Id.* at 3 n.1 ("[E]xecution on the summons without first waiting for Petitioners' pending appeal to the Tenth Circuit would deprive Petitioners of meaningful mandatory right of appeal[.]").

[45] Fed. R. Civ. P. 62(a) (emphasis supplied).

[46] ECF No. 30, at 19.

[47] *Rice v. United States*, 21 F.3d 1122 (10th Cir. 1994) (unpublished table decision) (citing *N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988)); *see United States v. Trenk*, No. 06-1004, 2009 WL 1298420, at *5 (D.N.J. May 8, 2009) ("[T]he government's summons enforcement proceeding is in the nature of an injunction." (citation omitted)); *United States v. Carlin*, No. 06-1906, 2006 WL 3208675, at *1 (E.D. Pa. Nov. 2, 2006).

R000251

injured absent a stay; (3) whether . . . the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[48]

First, Petitioners have not demonstrated that they are likely to succeed on the merits. The instant motion merely repackages their arguments that the investigation is unwarranted or has an unconstitutional purpose.[49] The court has already addressed Petitioners' arguments at length and explained how they are insufficient to overcome the IRS's prima facie showing of good faith.[50]

Next, Petitioners fail to show how they would suffer an irreparable injury should the court deny their motion for a stay. They argue that it would be prejudicial if the IRS executes the summonses and sees some of their private financial documents.[51] But prejudice is not inevitably irreparable injury,[52] especially in the context of IRS summonses.[53] "[T]he mere requirement to produce documents while an appeal is pending does not constitute sufficient harm to warrant a stay."[54] Plus, even if an appeals court reverses enforcement, a court could still grant relief.[55]

But harm might result to the government should the court grant a stay. Specifically, the IRS would be limited in its ability to investigate Mr. Bishop for purportedly promoting abusive

---

[48] *Taylor v. Crowther*, No. 2:07-cv-194, 2020 WL 1677078, at *1 (D. Utah Apr. 6, 2020) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

[49] *See* Mot. for Relief 6–10.

[50] *See* Order Denying Pets. 9–17.

[51] Mot. for Relief 3.

[52] *See Gould v. Wyse*, No. 1:19-cv-00382, 2023 WL 171781, at *1 (D.N.M. Jan. 12, 2023) ("[T]he standard under the *Hilton* factors is not mere prejudice: it is irreparable injury.")

[53] *See United States v. Roe*, No. 10-cv-01049, 2010 WL 3777606, at *2 (D. Colo. Sept. 20, 2010) ("Several courts have held that the production of documents in response to an IRS summons is not sufficient irreparable injury to qualify for a stay of enforcement." (citation omitted)).

[54] *United States v. Bright*, No. 07-00311, 2008 WL 351215, at *3 (D. Haw. Feb. 7, 2008).

[55] *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992) (reasoning that the court could provide partial relief by ordering the government to "destroy or return any and all copies it may have in its possession").

8

R000252

tax schemes. "[T]here is . . . a public interest in the 'timely assessment of tax liabilities and enforcement of the tax laws.'"[56]

Last, the court cannot say that allowing the IRS's lawful investigation to continue would harm the public interest.[57] Petitioners' arguments to the contrary are irrelevant[58] or unpersuasive.[59] In short, their bald accusations do not outweigh the "the public['s] . . . interest in having the IRS perform its job."[60] For these reasons, the factors weigh against a stay.

## ORDER

Accordingly, the court DENIES Petitioners' Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal.[61]


Signed February 22, 2023.


BY THE COURT


_____
David Barlow
United States District Judge


---

[56] *Trenk*, 2009 WL 1298420, at *6 (citation omitted); *see United States v. Jud. Watch, Inc.*, 241 F. Supp. 2d 15, 18 (D.D.C. 2003) ("[T]he public has a strong interest in the prompt completion of tax audits and investigations.").
[57] *See Speidell*, 978 F.3d at 738 ("We have held that the IRS's burden in connection with these factors is 'slight,' because statutes like 26 U.S.C. § 7602(a) 'must be read broadly to ensure that the enforcement powers of the IRS are not unduly restricted.'" (quoting *United States v. Balanced Fin. Mgmt.*, 769 F.2d 1440, 1443 (10th Cir. 1985))).
[58] For example, Petitioners argue that the "***IRS has allowed MIS for various other (well-resourced) taxpayers*** without dire public consequences." Reply 6.
[59] For instance, Petitioners argue that summons enforcement would violate their free speech rights and lead to the "impermissible implementation of a Chinese-style system of social credits, where the Government as a Ministry of Truth trolls . . . the public arena to target . . . individuals . . . to deter disfavored expression." Reply 6–7.
[60] *Jud. Watch*, 241 F. Supp. 2d at 18; *see High Desert Relief, Inc. v. United States*, No. 16-cv-1255, 2017 WL 2266871, at *3 (D.N.M. Apr. 30, 2017) ("[D]elaying the IRS's investigation . . . delays the public interest in seeing all taxpayers pay their fair share of taxes.").
[61] ECF No. 32.

9

R000253

Daniel E. Witte (UT 8576)
Pearson Butler & Carson PLLC
1802 W. South Jordan Pkwy, Suite 200
South Jordan, Utah 84095
Telephone: (801) 495-4104
Email: dan@pearsonbutler.com
*Attorney for Petitioners*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC, | **NOTICE OF APPEAL** |
| Petitioners, | **AND NOTICE OF PENDING APPELLATE MOTION TO STAY EXECUTION ON DISTRICT COURT JUDGMENT PENDING APPELLATE DECISION BY THE UNITED STATES TENTH CIRCUIT COURT OF APPEALS** |
| v. | |
| UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity, | Civil Nos. 2:22-cv-00340-DBB-DBP 2:22-cv-00341-DBB-DBP 2:22-cv-00344-DBB-DBP 2:22-cv-00345-DBB-DBP 2:22-cv-00347-DBB-DBP 2:22-cv-00348-DBB-DBP 2:22-cv-00351-DBB-DBP 2:22-cv-00352-DBB-DBP |
| Respondents. | |
| | **District Court Judge David B. Barlow** |

Notice is hereby given that David Michael Bishop and Slim Ventures, LLC (collectively,

"Petitioners"), petitioners in the eight above-referenced cases (Civil Nos. 2:22-cv-00340-DBB-

DBP, 2:22-cv-00341-DBB-DBP, 2:22-cv-00344-DBB-DBP, 2:22-cv-00345-DBB-DBP, 2:22-cv-

00347-DBB-DBP, 2:22-cv-00348-DBB-DBP, 2:22-cv-00351-DBB-DBP, 2:22-cv-00352-DBB-

DBP, collectively the "Eight Cases") which all dealt with eight Internal Revenue summonses on

R000254

eight different entities and did so with petitions and related motions filings all eventually handled

by the same District Court Judge David B. Barlow, hereby jointly appeal to the United States Court

of Appeals for the Tenth Circuit as to each and all orders, decisions, rulings, omissions, and

judgments found on the dockets in reference to each of the Eight Cases (and especially including,

without limitation or exclusion, appeal of the entirety of the orders, decisions, rulings, omissions,

and judgments of the United States District Court for the District of Utah as appended hereto and

found in reference to each of Eight Cases as set forth at Case No. 2:22-cv-00340, Docket Number 33,

entered on 02/22/23 as *Memorandum Decision And Order Denying [28] Motion For Relief From Order*

*And Judgment, And/Or To Stay Judgment, And/Or To Stay Execution On Judgment Pending Appeal*, and

Case No. 2:22-cv-00340, Docket Number 30, entered on 01/09/23 as *Memorandum Decision And Order*

*Granting Respondents' Motion To (1) Summarily Deny Petitions To Quash IRS Summonses And (2) Enforce*

*The Summonses And Denying Petitioners' Motions To Quash*, and Case No. 2:22-cv-00340, Docket

Number 31, entered on 01/09/23 as *Judgment In A Civil Case*, and all similar decisions, rulings, omissions,

judgments, and orders to the aforesaid issued by the Court in reference to all of the Eight Cases and as

placed where applicable in substantially identical form on the dockets of each of the Eight Cases).

Petitioners further give notice that they are asserting a joint appeal as of right pursuant to, inter alia,

Federal Rule of Appellate Procedure 3, and also 3(b)(1).

In addition to general notice of general and joint appeal, Petitioners hereby further give notice that

in addition to appeal, they are filing an appellate motion for immediate stay of execution of the District

Court's judgment in relation to enforcement of summons until such time as the United States Tenth Circuit

2

R000255

Court Of Appeals may issue it appellate decision, pursuant to, inter alia, Federal Rule Of Appellate

Procedure 8.

DATED February 22, 2023.

/s/ Daniel E. Witte
Daniel E. Witte
*Attorney for Petitioners*

## Certificate of Service

I certify that on February 22, 2023, I served the foregoing via the Court's CM/ECF system, which will serve all parties who have appeared, including without limitation:

DAVID A. HUUBERT
Deputy Assistant Attorney General

MATTHEW UTHALDE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
(202) 353-0013
Mathew.P.Uhalde@usdoj.gov

*Daniel E. Witte*
Daniel E. Witte
Attorney for Petitioners

3

R000257

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.299   Page 5 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 290
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.236   Page 1 of 29

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity, <br><br> Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING RESPONDENTS' MOTION TO (1) SUMMARILY DENY PETITIONS TO QUASH IRS SUMMONSES AND (2) ENFORCE THE SUMMONSES AND DENYING PETITIONERS' MOTIONS TO QUASH** <br><br> Case No. 2:22-cv-00340-DBB-DBP <br> Case No. 2:22-cv-00341-DBB-DBP <br> Case No. 2:22-cv-00344-DBB-DBP <br> Case No. 2:22-cv-00345-DBB-DBP <br> Case No. 2:22-cv-00347-DBB-DBP <br> Case No. 2:22-cv-00348-DBB-DBP <br> Case No. 2:22-cv-00351-DBB-DBP <br> Case No. 2:22-cv-00352-DBB-DBP <br><br> District Judge David Barlow |

There are two matters before the court. Petitioners David Michael Bishop ("Mr. Bishop")

and Slim Ventures, LLC ("Slim Ventures") (collectively "Petitioners") have filed eight Petitions

to Quash IRS Third Party Summons regarding four different financial institutions.[1] Also before

the court is Respondents United States, Internal Revenue Service ("IRS"), and Agent Timothy

Bauer's ("Agent Bauer") (collectively "Respondents") Motion to (1) Consolidate and Summarily

---

[1] Pet. to Quash Summons ("Pet. to Quash"), ECF No. 2, filed May 20, 2022, *Bishop v. United States*, No. 2:22-cv-00340 (D. Utah 2022). In seven related cases, Petitioners filed nearly identical motions to quash IRS summonses in the District of Utah: *Slim Ventures v. United States*, No. 2:22-cv-00341; *Bishop v. United States*, No. 2:22-cv-00344; *Slim Ventures v. United States*, No. 2:22-cv-00345; *Bishop v. United States*, No. 2:22-cv-00347; *Slim Ventures v. United States*, No. 2:22-cv-00348; *Slim Ventures v. United States*, No. 2:22-cv-00351; and *Bishop v. United States*, No. 2:22-cv-00352. As a result, the court references the petition to quash filed by Mr. Bishop regarding Zions Bancorporation NA in this Memorandum Decision & Order.

Case 2:22-cv-00340-DBB  Document 38  Filed 02/22/23  PageID.300  Page 6 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 291
Case 2:22-cv-00340-DBB  Document 30  Filed 01/09/23  PageID.231  Page 2 of 19

Deny Petitions to Quash IRS Summonses and (2) Enforce the Summonses.[2] Having considered the briefing and relevant law, the court finds that oral argument is unnecessary.[3] For the following reasons, the court grants Respondents' motion and denies the eight petitions.

## BACKGROUND

Mr. Bishop is the managing director of Slim Ventures,[4] which describes itself as a "dealer in capital assets" that promotes Monetized Installment Sale ("MIS") transactions.[5] A typical installment sale transaction occurs when a seller conveys property to a buyer and transfers the associated title before receiving payment.[6] For example, if title transfer takes place in December but the buyer pays the seller in January, the tax code allows the seller to defer capital gains tax until the next calendar year.[7]

A MIS transaction is different. This type of transaction occurs when a party simultaneously sells an appreciated asset[8] and receives payment while deferring capital gains tax for an extended period of time.[9] As advertised by Slim Ventures, "[a]n owner of highly appreciated assets can sell them and defer 100% of the capital gains tax for up to 30 years while receiving up to 95% of the value in cash."[10] Slim Ventures describes the process as follows: (1)

---

[2] Mot. to (1) Consolidate & Summarily Deny Pets. to Quash IRS Summonses & (2) Enforce Summonses ("Mot. to Deny & Enforce"), ECF No. 13, filed Aug. 26, 2022. On December 22, 2022, the court transferred sua sponte the four related cases to the undersigned. ECF No. 27. Accordingly, Respondents' request for consolidation is moot and the court terminates the portion of Respondents' motion seeking consolidation.

[3] *See* DUCivR 7-1(g).

[4] Decl. of David Michael Bishop ("Bishop Decl.") ¶ 4, ECF No. 2-3, filed May 20, 2022; Decl. of Revenue Agent Tim Bauer ("Bauer Decl.") ¶ 5, ECF No. 13-1, filed Aug. 26, 2022.

[5] Exec. Summ. Monetized Installment Sale Transactions ("Exec. Summ.") 1, 4, Ex. 1, ECF No. 13-1, filed Aug. 26, 2022.

[6] 26 U.S.C. § 453(b)(1).

[7] *Id.* § 453(c).

[8] Slim Ventures describes "appreciated assets" as including "real estate, mineral rights, water rights, privately held stock, partnership interests, etc." Exec. Summ. 1.

[9] *See id.*

[10] *Id.*

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.301   Page 7 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 292
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.232   Page 3 of 29

Slim Ventures offers to buy the seller's assets in exchange for an installment note; (2) the seller

is offered a "limited-recourse 'monetization loan' from a third-party lender introduced by Slim

Ventures"; (3) Slim Ventures resells the asset to the buyer, and the closing on the MIS

transaction and the resale closing happens simultaneously; (4) assuming that the seller accepted

the loan, the seller would receive the proceeds immediately after closing on the asset's sale.[11]

Slim Ventures explains that the strategy allows investors to "re-invest at 95% on a tax deferred

basis instead of at 75% by paying the tax" so that investors can "pay with future (inflation

eroded) dollars."[12]

The IRS considers MIS transactions as an example of an "abusive tax scheme[]."[13]

Around 2021, the IRS identified Slim Ventures and its manager Mr. Bishop as promoters of MIS

transactions.[14] Consequently, the IRS began an investigation into Mr. Bishop for possible

violations of 26 U.S.C. § 6700 for promoting illegal tax schemes and violations of a permanent

injunction.[15] As part of the investigation, the IRS sent Mr. Bishop information and document

requests.[16] The IRS avers that he cooperated to some extent, but claims that he did not produce

"accounting records, bank statements, [or a] client list."[17] After an interview and further

investigation, Agent Bauer found four financial institutions purportedly connected to Slim

---

[11] *Id.*
[12] *Id.* at 6.
[13] *See* Bauer Decl. ¶ 4.
[14] *Id.* ¶ 2.
[15] *Id.* ¶ 6; Final J. of Permanent Inj., ECF No. 6, filed Dec. 5, 2003, *United States v. Bishop*, No. 2:03-cv-01017 (D. Utah, filed Nov 20, 2003). The injunction ordered Mr. Bishop to stop engaging in any activity that would subject him to penalty under § 6700.
[16] Bauer Decl. ¶ 8.
[17] *Id.* ¶ 9; Bishop Decl. ¶ 15.

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.302   Page 8 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 293
Case 2:22-cv-00340-DBB   Document 30   Filed 09/09/23   PageID.253   Page 4 of 29

Ventures and Mr. Bishop: Key Bank, Summit Crest Financial, LLC ("Summit Crest"), Wells

Fargo Bank, N.A. ("Wells Fargo"), and Zions Bancorporation NA ("Zions Bank").

On May 7, 2022, the IRS issued eight summons to the four financial institutions under

the authority of 26 U.S.C. § 7602(a).[18] Each summons directed the specified bank to produce

records relevant to Mr. Bishop's or Slim Venture's income.[19] The IRS notified Petitioners of the

summonses by certified mail.[20] Key Bank and Zions Bank responded on May 6 and May 31,

respectively.[21] Summit Crest and Wells Fargo have not responded.[22] And the IRS has not

referred the cases for grand jury investigation or criminal prosecution.[23]

On May 20 and May 23, 2022, Petitioners filed timely petitions to quash the IRS third-

party summonses.[24] All eight petitions are virtually identical.[25] On August 26, 2022,

Respondents filed a motion to consolidate and summarily deny the petitions, and a motion to

enforce the summonses against Summit Crest and Wells Fargo.[26] Petitioners filed a response on

September 28, 2022.[27] Respondents replied on October 24, 2022.[28]

---

[18] *E.g.*, Summons, ECF No. 2-6, filed May 20, 2022. The summons in the seven other cases are identical except for the bank information and the name of the IRS' target (Mr. Bishop or Slim Ventures).

[19] Bauer Decl. ¶ 20.

[20] *Id.* ¶ 19.

[21] *Id.* ¶¶ 23, 24.

[22] *Id.* ¶ 25. While Petitioners claim that Summit Crest has indicated that it has "no information responsive to the two IRS summons served upon it[,]" Pets. Resp. to IRS Mot. ("Resp.") 3 n.2, ECF No. 16, filed Sept. 28, 2022, Respondents assert that the IRS has yet not "receive[d] that same representation in a formal response[,]" Reply to Opp'n ("Reply") 2 n.11, ECF No. 19, filed Oct. 24, 2022.

[23] Bauer Decl. ¶ 26.

[24] *E.g.*, Mot. to Quash. A petitioner has twenty days to move to quash an IRS summons. 26 U.S.C. § 7609(b)(2)(A).

[25] The only differences are the parties' information and the banks' locations. *See, e.g.*, Mot. to Quash ¶¶ 1, 4.

[26] Mot. to Deny & Enforce.

[27] *See* Resp.

[28] *See* Reply.

R000261

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.303   Page 9 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 294
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.234   Page 5 of 19

On December 13, 2022, the court gave notice that it would transfer the related cases to the undersigned and gave the parties one week to object.[29] No party objected. As such, the court transferred the related cases on December 21, 2022.[30]

Petitioners filed a Notice of Additional Cases on December 14, 2022 ("Notice").[31] Respondents then filed a Motion to Strike Petitioners' Surreply on December 16, 2022.[32] Petitioners filed an opposition on December 20, 2022,[33] and Respondents replied on December 27, 2022.[34] Pursuant to local rules, a party may file a notice of supplemental authority when "pertinent and significant authority comes to the attention of a party before the court has entered a decision on a motion."[35] Asking the court to take notice of ten cases, Petitioners claim that Respondents "filed a reply with new caselaw and arguments."[36] But Petitioners "ignore[] the fact that [Respondents' arguments] rebut[] matters [Petitioners] raised in [their] opposition memorandum."[37] Further, Petitioners could have cited the cases in their opposition brief since all ten cases were published before the close of briefing.[38] Given this fact, Petitioners fail to explain why the cases only came to their attention after Respondents' reply brief. Additionally, the Notice provides only generic case summaries; it does not explain adequately why the cases are "pertinent and significant authority." Thus, the court treats the Notice as a surreply. Because

---

[29] ECF No. 23.
[30] ECF No. 27.
[31] ECF No. 24.
[32] ECF No. 25.
[33] ECF No. 26.
[34] ECF No. 28.
[35] DUCivR 7-1(c).
[36] ECF No. 24.
[37] *Simmler v. Reyes*, No. 2:19-cv-01009, 2021 WL 535501, at *1 (D. Utah Feb. 12, 2021), *appeal dismissed*, No. 21-4062, 2021 WL 8323748 (10th Cir. June 2, 2021).
[38] The cases were published between 1970 and 2021. *See* ECF No. 24.

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.304   Page 10 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 295
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.235   Page 6 of 19

Petitioners have not sought leave to file a surreply,[39] the court grants Respondents' motion to strike.[40]

## STANDARD

The IRS has "broad latitude to issue summonses '[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . , or collecting any such liability.'"[41] "Indeed, the very language of § 7602 reflects . . . a congressional policy choice *in favor of disclosure* of all information relevant to a legitimate IRS inquiry."[42] "[T]he IRS's burden . . . is 'slight,' because statutes like 26 U.S.C. § 7602(a) 'must be read broadly to ensure that the enforcement powers of the IRS are not unduly restricted.'"[43]

## DISCUSSION

Petitioners seek to quash IRS summonses sent to Key Bank, Summit Crest, Wells Fargo, and Zions Bank. The court first addresses the summonses against Key Bank and Zions Bank.

### I.   The Petitions to Quash IRS Summonses as to Key Bank and Zions Bank Are Moot.

Respondents contend that there is no live controversy as to Key Bank and Zions Bank for two reasons. First, the banks informed the IRS that they had no information responsive to the

---

[39] *See* DUCivR 7-1(a)(8).

[40] ECF No. 25.

[41] *Standing Akimbo, LLC v. United States Through Internal Revenue Serv.*, 955 F.3d 1146, 1154 (10th Cir. 2020), *cert. denied sub nom. Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236 (2021), *reh'g denied,* 142 S. Ct. 919 (2021) (quoting *United States v. Clarke*, 573 U.S. 248, 250 (2014)).

[42] *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984).

[43] *Speidell v. United States Through Internal Revenue Serv.*, 978 F.3d 731, 738 (10th Cir. 2020), *cert. denied sub nom. Speidell v. United States*, 141 S. Ct. 2800 (2021), *reh'g denied,* 142 S. Ct. 921 (2021) (quoting *Standing Akimbo*, 955 F.3d at 1155).

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.305   Page 11 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 296
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.236   Page 7 of 19

summonses.[44] And second, the IRS confirms that "the[se] summonses will never be enforced or result in any records production."[45]

In response, Petitioners argue that there is a live controversy because the IRS purportedly "indicated to Petitioners' counsel that the IRS reserves the right to reissue new summons toward Key Bank and Zions Bank to target the same two Petitioners in connection with the IRS' present investigation and future investigation(s)."[46] On that basis, Petitioners argue that the "voluntary cessation" and "capable of repetition, yet evading review" mootness exceptions apply.[47]

Petitioners' arguments are unpersuasive. Both banks have responded to the IRS summonses and stated that they have no relevant information. The IRS accepted their responses and declared its intention not to seek enforcement of the summonses. In essence, Petitioners ask the court to preemptively enjoin the IRS from issuing future summonses.[48] The court declines to do so. The banks have responded to the summonses, indicated that they have no relevant information, and the IRS states that it will not enforce the summonses. Even if the IRS were to leave open the possibility of future summonses, there is no live controversy as to Key Bank or Zions Bank at this time.[49]

---

[44] Bauer Decl. ¶¶ 23–24.

[45] Mot. to Deny & Enforce 12.

[46] Resp. 5–6.

[47] *Id.* at 6.

[48] *See id.* ("[T]he IRS has not, and will not, **_make any commitment, representation, or stipulation to this Court that the IRS will not assert further summons against the same two banks in reference to the same two Petitioners, notwithstanding an express request from the Petitioners to do so._**").

[49] *Cf. Wilson v. United States*, No. 841247, 1984 WL 15653, at *1 (10th Cir. Aug. 22, 1984) (unpublished) (citing *United States v. Trails End Motel, Inc.*, 657 F. 2d 1169 (10th Cir. 1981)) ("[C]ompliance with the summonses . . . renders all arguments concerning enforcement moot."); *see also Wadsworth v. United States*, No. 1:97 CV 2241, 1998 WL 180913, at *1 n.1 (N.D. Ohio Jan. 22, 1998) ("These claims are moot because [the three banks] have each responded to the Internal Revenue Service that they do not have documents responsive to the summonses." (citation omitted)).

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.306   Page 12 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 297
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.237   Page 8 of 13

The court rejects Petitioners' exception-to-mootness arguments. For the "voluntary cessation" exception, the IRS has not "voluntary[ily] ce[ased] a challenged practice"[50] or stopped an "allegedly wrongful behavior."[51] It has properly executed the summonses by service on Key Bank and Zions Bank pursuant to 26 U.S.C. § 7609(a) and in support of a lawful investigation. The banks then responded to the summonses and the IRS has no intention of enforcing the summonses. Speculation as to future IRS summonses is inappropriate.

Next, the court finds that the "capable of repetition, yet evading review" exception is inapt. "A dispute qualifies for th[is] exception only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'"[52] Petitioners satisfy neither prong. "[A] challenge to the issuance of a summons is not 'too short' to be fully litigated prior to its having any effect on [Petitioners]."[53] Should the IRS reissue a summons, Petitioners may again bring a motion to quash "and the need to comply with the summons could be postponed until the completion of court review, no matter how long it took."[54] In addition, given the IRS' statements, there is only a speculative chance that these specific banks would be subjected to future summonses involving these cases.[55]

---

[50] *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

[51] *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2607 (2022) (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)).

[52] *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (citation omitted).

[53] *Schaeffler v. United States*, No. 13 CIV. 4864, 2016 WL 3369538, at *3 (S.D.N.Y. June 17, 2016), *aff'd*, 696 F. App'x 542 (2d Cir. 2017) (unpublished).

[54] *Id.*; *see United States v. Arthur Anderson & Co.*, 623 F.2d 720, 725 (1st Cir. 1980) (holding that "in the absence of some compelling circumstances that militate in favor of our deciding an otherwise moot case, the 'capable of repetition yet evading review' exception is not available to a litigant aggrieved by a summons or subpoena who could have avoided mootness by refusing to comply").

[55] *See McCormack v. Hiedeman*, 900 F. Supp. 2d 1128, 1138 (D. Idaho 2013), *aff'd sub nom. McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015) ("The mootness doctrine therefore requires a federal court to refrain from

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.307   Page 13 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 298
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.238   Page 9 of 19

For these reasons, the court dismisses as moot the petitions to quash IRS summonses for Key Bank and Zions Bank.[56] The court now turns to the remaining four petitions.

**II.    Respondents Have Made a Prima Facie Case that the IRS Properly Issued the Summonses as to Summit Crest and Wells Fargo.**

To raise a prima facie case that it has properly issued third-party summonses, the IRS must demonstrate that they have not referred the case for criminal prosecution and that they have issued the summonses in good faith.[57] The court analyzes good faith using the *Powell* factors, which require that the IRS establish (1) that the "investigation will be conducted pursuant to a legitimate purpose," (2) "that the inquiry may be relevant to the purpose," (3) "that the information sought is not already within the [IRS]'s possession," (4) "and that the administrative steps required by the [IRS] Code have been followed."[58] If the government meets its burden, "generally . . . with an affidavit of the agent who issued the summons[,]" "a 'heavy' burden falls on the taxpayer 'to factually refute the *Powell* showing or factually support an affirmative defense.'"[59] "Because the burden of showing an abuse of the court's process is on the taxpayer, he or she must make a substantial preliminary showing before even limited discovery . . . ."[60]

---

deciding a case if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future" (citing *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000))).

[56] ECF No. 2, No. 2:22-cv-00340; ECF No. 2, No. 2:22-cv-00341; ECF No. 2, No. 2:22-cv-00347; ECF No. 2, No. 2:22-cv-00348.

[57] *Speidell*, 978 F.3d at 738.

[58] *United States v. Powell*, 379 U.S. 48, 57–58 (1964).

[59] *Speidell*, 978 F.3d at 738 (quoting *Standing Akimbo*, 955 F.3d at 1155).

[60] *Id.* (cleaned up).

Case 2:22-cv-00340-DBB  Document 38  Filed 02/22/23  PageID.308  Page 14 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 299
Case 2:22-cv-00340-DBB  Document 30  Filed 01/09/23  PageID.239  Page 10 of 49

### A.  Criminal Prosecution

Agent Bauer avers that the IRS has not recommended to the Department of Justice a grand jury investigation or criminal prosecution.[61] Petitioners agree that there has been no referral.[62] The IRS has therefore satisfied the first prong.

### B.  *Powell* Factors

The second prong involves the *Powell* factors. Petitioners do not contest the fact that the IRS lacks pertinent records from Summit Crest and Wells Fargo based on the banks' inability to locate any relevant documents and Mr. Bishop's refusal to provide any such documents.[63] The third *Powell* factor thus weighs in favor of Respondents. As to the remaining three factors, Petitioners contend that the summonses serve no legitimate purpose, that they are irrelevant, and that the government has failed to observe proper procedural steps.

Under the legitimacy factor, Petitioners claim that the IRS' investigation is disproportionate and an unnecessary burden since they owe nothing or a minimal amount to the IRS.[64] They also argue that the IRS' failure to assert specific evidence of wrongdoing and its pattern of summonses has created the "effect of impermissibly frightening and chilling Petitioner's livelihood and network."[65] For relevancy, Petitioners claim that the IRS has not met its burden to show a nexus between Petitioners and the banks.[66] Petitioners further assert that the IRS summonses are overbroad, and since they have submitted hundreds of pages of documents

---

[61] Bauer Decl. ¶ 26.
[62] Pet. to Quash ¶ 13.
[63] Bauer Decl. ¶ 20.
[64] Pet. to Quash ¶ 7.A, 10; Bishop Decl. ¶ 10.
[65] Pet. to Quash ¶ 7.B, 11.C; Bishop Decl. ¶¶ 12, 17.
[66] Pet. to Quash ¶ 8; Bishop Decl. ¶ 13.

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.309   Page 15 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 300
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.246   Page 11 of 19

to the government,[67] the IRS has failed to show why the existing documentation is insufficient.[68]
Last, Petitioners assert that the IRS failed to follow appropriate procedural steps. Citing the tax
code, they state that the IRS has failed to give them "sufficient information and notice" to allow
them to "respond with the relevant information . . . to maintain their privacy and avoid the
potential embarrassment of IRS contact with third parties."[69] And they argue that the IRS failed
to explain its "legitimate, adequate, specific justification of purpose" for the summonses.[70]

Respondents argue that they have met their burden to show legitimacy, relevance, and
adherence to proper procedures. First, they contend that the investigation into whether Mr.
Bishop is liable for statutory penalties and whether he has violated the court's permanent
injunction is a legitimate purpose.[71] Next, they argue that the summonses would help determine
Mr. Bishop's potential liability for statutory penalties because the investigation has revealed a
nexus between Petitioners and the banks.[72] As to process, Respondents explain that they have
met all required steps: serving the banks by certified mail, giving Petitioners timely notice, and
ensuring that Mr. Bishop had not been referred for a criminal investigation.[73]

The court finds that Respondents have met their burden to show relevancy and
legitimacy. Determining whether an individual has promoted false tax schemes can be a
legitimate purpose.[74] Agent Bauer sought information to "shed light on the implementation and

---

[67] Pet. to Quash ¶ 11.E; Bishop Decl. ¶ 15.
[68] Pet. to Quash ¶ 9, 11.D; Bishop Decl. ¶ 14.
[69] Pet. to Quash ¶ 12.
[70] *Id.*
[71] Mot. to Deny & Enforce 13.
[72] *Id.* at 14–15.
[73] *Id.* at 15.
[74] *See, e.g., S. Crow Collateral Corp. v. United States*, No. 1:17-mc-09828, 2018 WL 2454630, at *4 (D. Idaho Jan.
19, 2018), *R. & R. adopted,* No. 1:17-mc-09828, 2018 WL 2454628 (D. Idaho Apr. 10, 2018), *aff'd*, 782 F. App'x
597 (9th Cir. 2019) (unpublished).

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.310   Page 16 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 301
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.241   Page 12 of 19

details of [Mr.] Bishop's MIS transactions," whether he would be liable for penalties under § 6700, the amount he was liable for, and whether he had violated the permanent injunction.[75]

Agent Bauer also sought information from the financial institutions because Mr. Bishop or Slim Ventures "held ownership interests, signatory authority, or right to make withdraw from, or for which they were" a fiduciary.[76] The IRS investigation indicated that Summit Crest and Wells Fargo were connected with Mr. Bishop and Slim Ventures through lending and other banking services.[77] Indeed, Agent Bauer discovered that Mr. Bishop uses Summit Crest as Slim Venture's third-party lender and that Wells Fargo paid Slim Ventures $11,227 in interest during 2020.[78] Mr. Bishop also informed Agent Bauer that he had been averaging three to four MIS sales per month since 2018.[79] Taken together, these facts show that the summonses met the threshold of "*potential* relevance to an ongoing investigation."[80]

Finally, Respondents have shown that they followed proper procedures when they issued the summonses. The IRS complied with 26 U.S.C. § 7601 *et seq.* by serving Summit Crest and Wells Fargo with certified mail that was received on May 7, 2022,[81] sending Petitioners timely notice of the served summons,[82] and verifying that Mr. Bishop had not been referred for a grand jury investigation or criminal prosecution.[83]

---

[75] Bauer Decl. ¶ 21.
[76] *Id.* ¶ 16.
[77] *Id.* ¶ 13–14.
[78] *Id.* "Such a large amount of ordinary bank interest indicates that Slim Ventures likely held a substantial sum of money with Wells Fargo in 2020." *Id.*
[79] *Id.* ¶ 12.
[80] *Standing Akimbo*, 955 F.3d at 1160; *see also Arthur Young & Co.*, 465 U.S. at 814.
[81] Bauer Decl. ¶ 17.
[82] *Id.* ¶ 19.
[83] *Id.* ¶ 26.

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.311   Page 17 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 302
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.242   Page 13 of 19

Petitioners contend that the IRS failed to give them the opportunity to provide the

necessary documents before sending the third-party summons.[84] Yet simply citing cases for

general statements of law is not enough to show that notice was insufficient for purposes of the

*Powell* factors. To the extent that Petitioners argue that the IRS' actions were insufficient notice

under § 7602(c),[85] the court need not address this question here. Because the IRS adhered to the

prescribed procedures under § 7609(a), the IRS has made a prima facie showing.

In sum, the IRS has not referred the case for criminal investigation or prosecution, the

summonses serve a legitimate purpose, they are relevant, and the IRS has observed proper

process.[86] The court therefore finds that Respondents have made a prima facie showing of good

faith.

## III.   Petitioners Have Not Met Their Burden to Refute the Government's Prima Facie Showing of Good Faith.

"To defeat the government's prima facie case, 'it is clear that a taxpayer must factually

oppose the Government's allegations by affidavit. Legal conclusions or mere memoranda of law

will not suffice.'"[87] Petitioners attempt to do so by focusing on the first two *Powell* factors:

legitimacy and relevance.

### A.   Legitimacy

Petitioners argue that the IRS began its investigation to chill their expressive view that

MIS transactions are legal. In support, they assert that customers and business partners are

---

[84] Pet. to Quash ¶ 12 (citing *J.B. v. United States*, 916 F.3d 1161, 1172–73 (9th Cir. 2019) (addressing whether notice to the taxpayer was reasonable advance notice under 26 U.S.C. § 7602(c)(1))).
[85] *See id.*
[86] *See United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985).
[87] *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1183 (10th Cir. 2019) (quoting *Balanced Fin. Mgmt.*, 769 F.2d at 1444).

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.312   Page 18 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 303
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.243   Page 14 of 19

frightened away by the IRS investigation, which creates "considerable and unfair negative economic, business, and legal consequences."[88] But evidence of an alleged adverse effect from an investigation is not evidence of improper intent. "That [loss of customers] might be the effect, rather than the purpose, of the investigation is of no consequence."[89] The claim that unnamed persons have been scared off is both conclusory and not material.

Relatedly, Petitioners claim that the absence of relevant documents from Key Bank and Zions Bank indicate that the IRS summonses as a whole are "demonstrably meritless."[90] Yet the investigation into Petitioners began only in 2021,[91] and the IRS has not yet received documents from Summit Crest or Wells Fargo. The IRS "can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized."[92]

Next, Petitioners argue that because MIS transactions are permissible, the IRS' investigation violates the First Amendment by attempting to chill their expressive speech.[93] They contend that the IRS has failed to connect the dots "between any purportedly forbidden scheme(s) and any specific language in any statute or case precedent."[94] Thus, "if the IRS cannot demonstrate that the various variants of MIS are actually illegal, . . . the IRS cannot invoke such a theory as a valid basis . . . for the IRS summons, and . . . the summons [are] invalid."[95]

Petitioners' argument fails because they do not offer support for the proposition that the IRS must prove the illegality of MIS transactions before beginning its investigation. Indeed,

---

[88] Bishop Decl. ¶¶ 12, 15, 17.
[89] *La Mura v. United States*, 765 F.2d 974, 981 (11th Cir. 1985).
[90] Resp. 4.
[91] Bauer Decl. ¶ 5.
[92] *Arthur Young & Co.*, 465 U.S. at 814.
[93] *See* Resp. 9–14; Bishop Decl. ¶¶ 9, 12, 17.
[94] Resp. 12.
[95] *Id.* at 15.

Case 2:22-cv-00340-DBB Document 38 Filed 02/22/23 PageID.313 Page 19 of 35
Appellate Case: 23-4021 Document: 010110851879 Date Filed: 04/28/2023 Page: 304
Case 2:22-cv-00340-DBB Document 30 Filed 01/09/23 PageID.244 Page 15 of 19

courts have rejected the notion that the IRS must show probable cause to open investigations.[96] The IRS need not prove that promoting MIS transactions incurs § 6700 penalties before issuing summonses. Indeed, the IRS must only show "that it has a realistic expectation rather than an idle hope that something might be discovered."[97] Additionally, "[t]he fact that Petitioners proffer a factual and legal defense does not transmute an investigation, ipso facto, into an illegitimate exercise based on the IRS' declining to adopt the defense without further investigation."[98] In short, Petitioners' arguments amount to preemptive defenses as to their ultimate liability and do not rebut the government's showing of good faith.

Further, Petitioners rely on an expansive First Amendment argument to assert an improper purpose for the summonses. They claim that the IRS has deployed "governmental enforcement, threat of enforcement, auditing, and harassment of the Petitioners and their business network in an effort to curtail, suppress, and retaliate against discussion of First Amendment topics about disputed matters of public concern . . . that the Government disfavors."[99] Specifically, Petitioners contend that the IRS' investigation into MIS transactions—despite not proving the transactions' illegality—chills their expressive rights.

---

[96] *See United States v. Kaiser*, 308 F. Supp. 2d 946, 955 (E.D. Mo. 2004), *aff'd*, 397 F.3d 641 (8th Cir. 2005) ("*Powell* explicitly rejected the notion that the Internal Revenue Service was required to demonstrate the existence of probable cause for its investigations which used the broad summons power given to the IRS by section 7602 of the Internal Revenue Code."); *S. Crow Collateral*, 2018 WL 24554630, at *5 (prima facie showing of good cause because the information sought "may shed light" on "the implementation and details of the installment sale transactions" as to whether the taxpayer may be subject to penalties).

[97] *La Mura*, 765 F.2d at 981 (cleaned up).

[98] *S Crow Collateral*, 2018 WL 24554630, at *5.

[99] Resp. 16; *see* Bishop Decl. ¶¶ 12, 15, 17. Petitioners also accuse the Biden Administration of a pattern of using investigation and threat of investigation to suppress disfavored ideas and theories. *See* Resp. 16–17 nn.28–29.

R000272

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.314   Page 20 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 305
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.245   Page 16 of 49

Petitioners' "assertion[s] are pure conjecture."[100] They merely reprise the argument that the IRS has not proven that MIS transactions are unlawful and so the investigation chills their speech. But this is a premature and unsupported claim. Thus, Petitioners fail to show an illegitimate purpose for the summonses.

### B. Relevancy

Petitioners also argue that the IRS has not met its burden to show relevancy because it has not proven a nexus between Petitioners' actions and the summonses.[101] They maintain that the summonses are irrelevant, "overbroad fishing expeditions[,]"[102] and that the IRS cannot engage in "*carte blanche* discovery" to uncover some evidence of wrongdoing.[103] Citing the tax code, Petitioners contend that the IRS has failed to "*assert*[] that there is a reasonable indication that there is a likelihood of unreported income on the part of the Petitioners."[104] They liken the IRS' investigation to a general warrant "without any practical guardrails or limitations."[105]

The court has previously explained that Respondents have met their burden to show that the summonses to Summit Crest and Wells Fargo are relevant and proportional. In opposition, Petitioners state merely that they have submitted hundreds of pages of documents to the IRS.[106] Otherwise, they offer boilerplate statements of law and conclusory claims. At the summons

---

[100] *United States v. Greenberger*, No. 1:15-CV-03532, 2016 WL 3912065, at *11 (N.D. Ga. Jan. 11, 2016), *R. & R. adopted,* No. 1:15-CV-3532, 2016 WL 3912060 (N.D. Ga. June 21, 2016). In *Greenberger*, the taxpayer asserted that the IRS investigation was improper because it had the effect of chilling him from exercising free speech. *Id.* The court soundly rejected the taxpayer's claims because the taxpayer offered "no basis for concluding that the IRS [wa]s conducting the investigation for the purpose of chilling any rights." *Id.* Here, Petitioners likewise fail to show that the IRS pursued its investigation to chill their expressive rights.

[101] Resp. 19–20 (citing *United States v. Goldman*, 637 F.2d 664, 667–68 (9th Cir. 1980)); Bishop Decl. ¶ 13.

[102] *Id.* at 19.

[103] *Id.* at 20–21 (quoting *United States v. Coopers & Lybrand*, 550 F.2d 615, 619 (10th Cir. 1977)).

[104] *Id.* at 19 n.31.

[105] *Id.*; *see* Bishop Decl. ¶ 11.

[106] Bishop Decl. ¶ 15.

R000273

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.315   Page 21 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 306
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.246   Page 17 of 35

stage, the burden is squarely on the taxpayer to rebut the government's prima facie showing of good faith with "plausible inference[s] of improper motive."[107] "Bare assertion[s] or conjecture," as Petitioners offer here, are not enough.[108] For that reason, they have not overcome the government's low burden to show that material retrieved from Summit Crest and Wells Fargo "might throw light on the correctness of" Petitioners' tax liability.[109]

### IV.   Petitioners' Requests for an Evidentiary Hearing and *in camera* Review Are Denied.

The court addresses two other matters: Petitioners' request for an evidentiary hearing and *in camera* review. First, Petitioners request an evidentiary hearing to question Agent Bauer because they have purportedly "raised an inference of bad faith."[110] However, Petitioners fail to "point to specific facts or circumstances plausibly raising an inference of bad faith."[111] Thus, they are not entitled to an evidentiary hearing. Second, Petitioners ask that the court conduct an *in camera* review of documents submitted by the financial institutions before their release to the IRS. They argue that such a review is needed to ensure that the documents are narrowly tailored to what is reasonable and proportionate, and not unduly broad, burdensome, or vague.[112] Though "[a] district court has broad discretion in deciding whether or not to grant an *in camera* review,"[113] "an *in camera* review should not be resorted to as a matter of course, simply on the

---

[107] *Clarke*, 573 U.S. at 254.
[108] *Id.*
[109] *United States v. Sw. Bank & Tr. Co.*, 693 F.2d 994, 996 (10th Cir. 1982) (citation omitted).
[110] Resp. 18; Pet. to Quash 11.
[111] *Clarke*, 573 U.S. at 254.
[112] Pet. to Quash 12; Resp. 21.
[113] *Rifle Remedies, LLC v. Internal Revenue Serv.*, No. 18-cv-00949, 2021 WL 981317, at *12 (D. Colo. Mar. 16, 2021) (citing *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987)).

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.316   Page 22 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 307
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.247   Page 18 of 19

theory that it can't hurt."[114] Finding no basis for an *in camera* review, the court denies the request.[115]

### V. The Court Grants Respondents' Motion to Enforce the Summonses for Summit Crest and Wells Fargo.

Respondents seek a court order enforcing the summonses against Summit Crest and Wells Fargo in light of the financial institutions' failure to respond.[116] "In [a proceeding to quash], the [IRS] may seek to compel compliance with the summons."[117] Given that the banks have not yet responded to the IRS, the court orders the enforcement of the summonses against Summit Crest and Wells Fargo.

### ORDER

Accordingly, the court GRANTS Respondents' Motion to (1) Summarily Deny Petitions to Quash IRS Summonses and (2) Enforce the Summonses,[118] and DENIES the Petitions to Quash IRS Summonses:

1.   As to Key Bank and Zions Bank, the court GRANTS Respondents' Motion to Deny Petitions to Quash IRS Summonses and DENIES as moot the associated Petitions to Quash IRS Summonses.[119]

---

[114] *Hull v. I.R.S., U.S. Dep't of Treasury*, 656 F.3d 1174, 1178 (10th Cir. 2011) (cleaned up).
[115] *See MVT Servs., LLC v. Great W. Cas. Co.*, No. 2:18-cv-01128, 2021 WL 1227729, at *5 (D.N.M. Apr. 1, 2021) ("[T]he Court cannot issue a hypothetical or advisory opinion.").
[116] Bauer Decl. ¶ 25.
[117] 26 U.S.C. § 7609(b)(2)(A).
[118] ECF No. 13.
[119] ECF No. 2, No. 2:22-cv-00340; ECF No. 2, No. 2:22-cv-00341; ECF No. 2, No. 2:22-cv-00347; ECF No. 2, No. 2:22-cv-00348.

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.317   Page 23 of 35
Appellate Case: 23-4021   Document: 010110851879   Date Filed: 04/28/2023   Page: 308
Case 2:22-cv-00340-DBB   Document 30   Filed 01/09/23   PageID.248   Page 19 of 19

2.      As to Summit Crest and Wells Fargo, the court GRANTS Respondents' Motion to

Deny Petitions to Quash IRS Summonses and DENIES the associated Petitions to Quash

IRS Summonses.[120]

3.      The court GRANTS Respondents' Motion to Enforce the Summonses against

Summit Crest and Wells Fargo. The two financial institutions are ORDERED to respond

to the summons within 30 days of this Memorandum Decision and Order.


Signed January 9, 2023.


                                        BY THE COURT


                                        David Barlow
                                        United States District Judge

---

[120] ECF No. 2, No. 2:22-cv-00344; ECF No. 2, No. 2:22-cv-00345; ECF No. 2, No. 2:22-cv-351; ECF No. 2, No. 2:22-cv-352.

R000277

Case 2:22-cv-00340-DBB   Document 38   Filed 02/22/23   PageID.319   Page 25 of 35
Appellate Case: 23-4031   Document: 010110851879   Date Filed: 04/28/2023   Page: 310
Case 2:22-cv-00340-DBB   Document 31   Filed 01/09/23   PageID.249   Page 1 of 1

# The United States District Court

## District of Utah

DAVID MICHAEL BISHOP,

      Plaintiff,

**JUDGMENT IN A CIVIL CASE**

v.

UNITED STATES, INTERNAL REVENUE
SERVICE, and TIMOTHY BAUER, Internal
Revenue Agent (ID #0324589), in his
Official Capacity,

Case No. 2:22-cv-00340-DBB-DBP

District Judge David Barlow

      Defendants.

IT IS ORDERED AND ADJUDGED

that judgment is entered in favor of Defendants and against Plaintiff.

January 9, 2023

_Date_

BY THE COURT:

David Barlow
United States District Judge

R000279

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES; INTERNAL REVENUE SERVICE; and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity, <br><br> Respondents. | **MEMORANDUM DECISION AND ORDER DENYING [32] MOTION FOR RELIEF FROM ORDER AND JUDGMENT, AND/OR TO STAY EXECUTION ON JUDGMENT PENDING APPEAL** <br><br> Case No. 2:22-cv-00340-DBB-DBP <br> Case No. 2:22-cv-00341-DBB-DBP <br> Case No. 2:22-cv-00344-DBB-DBP <br> Case No. 2:22-cv-00345-DBB-DBP <br> Case No. 2:22-cv-00347-DBB-DBP <br> Case No. 2:22-cv-00348-DBB-DBP <br> Case No. 2:22-cv-00351-DBB-DBP <br> Case No. 2:22-cv-00352-DBB-DBP <br><br> District Judge David Barlow |

The matter before the court is Petitioners David Michael Bishop ("Mr. Bishop") and Slim

Ventures, LLC's ("Slim Ventures") (collectively "Petitioners") Motion for Relief from Order

and Judgment, and/or to Stay Execution on Judgment Pending Appeal.[1] Petitioners move for

relief from judgment in favor of Respondents United States, the Internal Revenue Service (the

"IRS"), and Internal Revenue Agent Timothy Bauer (ID #0324589) ("Agent Bauer")

(collectively "Respondents"). Petitioners also move for a stay pending appeal. Having reviewed

the briefing and relevant law, the court finds that oral argument would not materially assist the

court.[2] For the reasons below, the court denies Petitioners' motion.

---

[1] Mot. for Relief from Order & J. and/or to Stay Execution on J. Pending Appeal ("Mot. for Relief"), ECF No. 32, filed Jan. 16, 2023.

[2] *See* DUCivR 7-1(g).

1

## BACKGROUND

On May 7, 2022, the IRS issued eight summonses to four financial institutions.[3] In May

2022, Petitioners filed corresponding petitions to quash.[4] On August 26, 2022, Respondents

moved to deny the eight petitions and enforce the summonses against Summit Crest Financial,

LLC ("Summit Crest") and Wells Fargo Bank NA ("Wells Fargo").[5] On January 9, 2023, the

court granted the motion.[6] The court ordered the two financial institutions to respond within

thirty days.[7] Petitioners filed the instant motion on January 16, 2023.[8] Respondents filed an

opposition on February 2, 2023.[9] Petitioners replied six days later.[10]

## DISCUSSION

Petitioners move the court to provide relief from judgment. Alternatively, they move to

stay enforcement of the summonses pending appeal. The court addresses each request in order.

## I.    Relief from Final Judgment Is Not Warranted.

Petitioners ask the court to vacate and amend its order pursuant to Rule 59(e) and Rule

60(b) of the Federal Rules of Civil Procedure.[11] They filed their motion seven days after

---

[3] *See, e.g.*, Summons, ECF No. 2-6, *Bishop v. United States*, 2:22-cv-00340 (D. Utah May 20, 2022).

[4] Pet. to Quash Summons, ECF No. 2, filed May 20, 2022. In seven related cases, Petitioners filed nearly identical motions to quash IRS summonses: *Slim Ventures v. United States*, No. 2:22-cv-00341; *Bishop v. United States*, No. 2:22-cv-00344; *Slim Ventures v. United States*, No. 2:22-cv-00345; *Bishop v. United States*, No. 2:22-cv-00347; *Slim Ventures v. United States*, No. 2:22-cv-00348; *Slim Ventures v. United States*, No. 2:22-cv-00351; and *Bishop v. United States*, No. 2:22-cv-00352.

[5] ECF No. 13.

[6] Order Granting Resp'ts Mot. to Summarily Deny Pets. to Quash IRS Summonses & Denying Pets. Mots. to Quash ("Order Denying Pets.") 18–19, ECF No. 30, filed Jan. 9, 2023.

[7] *Id.* at 19.

[8] *See* Mot. for Relief.

[9] Opp'n to Pets. Mot. to Vacate J. or Stay J. Pending Appeal ("Opp'n"), ECF No. 35, filed Feb. 2, 2023.

[10] Reply to Govt's Opp'n ("Reply"), ECF No. 36, filed Feb. 8, 2023.

[11] Petitioners' motion references Rule 46 and Rule 60(a) of the Federal Rules of Civil Procedure. "Rule 46 generally requires objections during trial proceedings to preserve questions for appeal." *Blaurock v. Kansas*, No. 12-3066, 2014 WL 6472870, at *1 (D. Kan. Nov. 18, 2014). And "Rule 60(a) covers a subset of 'mistake[s]'—*e.g.,* 'clerical' ones—whereas Rule 60(b)(1) covers 'mistake[s]' *simpliciter*[.]" *Kemp v. United States*, 142 S. Ct. 1856, 1863

2

R000281

judgment. The motion is timely under either rule.[12] "[H]ow we construe [which rule applies] depends upon the reasons expressed by the movant."[13] Petitioners' arguments center on the court's purported "Error, Mistake, Oversight, Omission, Inadvertence, And Other Considerations Justifying Relief."[14] Accordingly, the court analyzes the motion under Rule 60(b)(1) and (b)(6).[15]

Pursuant to Federal Rule of Civil Procedure 60(b)(1), a court may relieve a party from a final judgment and order for "mistake, inadvertence, surprise, or excusable neglect."[16] Motions for relief "premised upon mistake are intended to provide relief to a party . . . whe[n] the judge has made a substantive mistake of law or fact in the final judgment or order."[17] Under Rule 60(b)(6), the court may offer relief for "any other reason that justifies relief."[18] This rule is a "grand reservoir of equitable power to do justice in a particular case."[19] "Although [it] should be liberally construed when substantial justice will thus be served, relief under Rule 60(b)(6) is extraordinary and reserved for exceptional circumstances."[20] With the standard in mind, the court addresses Petitioners' claims that the lack of oral argument, a surreply, and an evidentiary hearing violated Petitioners' due process, and that the court erred in its factual and legal analysis.

---

(2022). Because there was no trial in this case and Petitioners do not assert a clerical mistake, the court addresses Rule 59(e) and Rule 60(b) only.

[12] *See* Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 60(c)(1).

[13] *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1200 (10th Cir. 2011); *see Warren v. Am. Bankers Ins. of FL*, 507 F.3d 1239, 1244 (10th Cir. 2007) ("[A] 'motion to reconsider' filed prior to or within [28] days of entry of judgment may on occasion be construed as one arising under Rule 60." (citing *Jennings v. Rivers*, 394 F.3d 850, 855 (10th Cir. 2005))).

[14] Mot. for Relief 2 (emphasis removed).

[15] The court declines to adopt a rule that "[a]ny request to vacate a judgment within 28 days of entry must be brought under Rule 59(e)." Opp'n 2. In *Skagerberg v. Oklahoma*, cited by Respondents, the movant sought relief under Rule 60 only. 797 F.2d 881, 883 (10th Cir. 1986). And in *Banister v. Davis*, the court discussed Rule 60 versus Rule 59 motions in the context of an appeal to a habeas petition. 140 S. Ct. 1698, 1710 n.9 (2020).

[16] Fed. R. Civ. P. 60(b)(1).

[17] *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 722–23 (10th Cir. 2008).

[18] Fed. R. Civ. P. 60(b)(6).

[19] *Kile v. United States*, 915 F.3d 682, 687 (10th Cir. 2019), *as corrected* (Feb. 15, 2019) (citation omitted).

[20] *Johnson v. Spencer*, 950 F.3d 680, 701 (10th Cir. 2020) (cleaned up).

3

R000282

## A.   Oral Argument

Petitioners contend that the court erred when it found oral argument unnecessary. They argue that such argument was needed because they could not have "mind-read in advance all potential arguments or precedents the Government might assert on reply" and even if they had anticipated the arguments, they lacked the filing length to respond in briefing.[21] These arguments are unavailing. Under the local rules, oral argument is permissive.[22] "Refusing to conduct an unnecessary hearing is not an abuse of discretion."[23] Here, the court determined that oral argument would not materially benefit its decision.[24] Nothing Petitioners raise in their motion persuade the court that oral argument would have been of assistance. This basis for relief is rejected.

## B.   Surreply

Next, Petitioners argue that the court erred by treating Petitioners' notice of supplementary authority as a surreply and striking it. They contend that the court "invented a non-existent requirement" that a party can never submit cases in a notice of supplemental authority that have been published after the party's briefing.[25] By striking the notice, Petitioners argue that the court denied them due process.[26]

---

[21] Mot. for Relief 6 n.6.

[22] DUCivR 7-1(g) ("The court *may* set any motion for oral argument." (emphasis added)); *see Allender v. Raytheon Aircraft Co.*, No. 03-1396, 2005 WL 351693, at *2 (D. Kan. Feb. 7, 2005).

[23] *Pinson v. Berkebile*, 601 F. App'x 611, 614 (10th Cir. 2015) (unpublished) (citing *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 858–59 (10th Cir. 2005)).

[24] *See* Order Denying Pets. 2.

[25] Mot. for Relief 5; ECF No. 24, at 2.

[26] Mot. for Relief 5 n.4.

4

"The determination of whether to permit a party to file a sur-reply or notice of

supplemental authority 'is committed to the sound discretion of the [district] court.'"[27]

Petitioners have not shown that the court erred in treating their submission as a motion for a

surreply. Because they never moved for leave to file a surreply,[28] it was proper to disregard their

request. Even treating the filing as a notice of supplemental authority, Petitioners fail to explain

why the cases came to their attention only after briefing and why the cases were pertinent and

significant authority.[29] The bottom line is that denying a party leave to belatedly cite additional

authority does not infringe due process. It is not an "extraordinary circumstance[]" that makes

vacatur "necessary to accomplish justice."[30]

## C. Evidentiary Hearing

Petitioners contend that the court must allow an evidentiary hearing where they can

cross-examine Agent Bauer. They allege that the "failure to do so result[s] in a denial of due

process [and] unfair preclusion of the ability to explore the existing evidence . . . ."[31] To obtain

an evidentiary hearing, Petitioners must assert "specific facts or circumstances plausibly raising

an inference of bad faith."[32] Agent Bauer's declaration stated his authority, the investigation's

purpose, and his reasons for issuing the summonses.[33] The court found that Respondents had

---

[27] *One Vodka, LLC v. Benchmark Beverage Co.*, No. 21-11456, 2022 WL 860444, at *2 (E.D. Mich. Mar. 22, 2022) (citation omitted); *see* DUCivR 7-1(a)(8).

[28] Petitioners could not have moved for leave to file a surreply in an opposition brief. *See* DUCivR 7-1(a)(3).

[29] Mot. Denying Pets. 5–6.

[30] *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996).

[31] Mot. for Relief 4.

[32] *United States v. Clarke*, 573 U.S. 248, 254 (2014).

[33] *See* ECF No. 13-1.

R000284

made a prima facie showing of good faith.[34] Petitioners fail to identify specific facts or circumstances to overcome their heavy burden.[35] Mere accusations are not enough.[36]

Petitioners also argue that the court's reliance on Agent Bauer's declaration violates due process because the declaration is "purported second-hand hearsay" based on "misleading notes."[37] Petitioners offer no authority for the proposition that it is erroneous for a court to rely on an IRS agent's signed declaration. Indeed, "[t]he IRS generally meets th[eir] burden [in these cases] with an affidavit of the agent who issued the summons."[38]

## D.    Factual and Legal Analysis

Petitioners last contend that the court erred in its factual and legal analysis. They argue that the court improperly relied on district court cases in finding that the IRS had a valid reason to investigate Mr. Bishop.[39] But Petitioners have not shown that the court erred. Based on Tenth Circuit precedent, the court reasoned that "[t]he IRS does not have to establish any probable cause to obtain enforcement of a summons."[40] Thus, the court found that Respondents met their

---

[34] *See Speidell v. United States Through Internal Revenue Serv.*, 978 F.3d 731, 738 (10th Cir. 2020), *cert. denied sub nom. Speidell v. United States*, 141 S. Ct. 2800 (2021), *reh'g denied*, 142 S. Ct. 921 (2021) (citation omitted); *Rice v. United States*, 9 F.3d 117 (10th Cir. 1993) (unpublished) ("Through the statements of [the] Revenue Agent . . . , the government clearly established its prima facie case for enforcement of the IRS summons." (citing *United States v. Powell*, 379 U.S. 48, 57–58 (1964))).

[35] *Standing Akimbo, LLC v. United States through Internal Revenue Serv.*, 955 F.3d 1146, 1155 (10th Cir. 2020); *see Clarke*, 573 U.S. at 254 ("Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge.").

[36] For example, Petitioners claim that Agent Bauer was working for a "secret IRS unit known as the 'Lead Development Center' [that] . . . *dragnetted the internet searching for individuals and entities who expressed public viewpoints* about tax law disfavored by the IRS and the Biden administration" to "target Petitioners for investigation and a harassing shower of summons . . . *SOLELY on account of the Petitioners' First Amendment expression about MIS*." Mot. for Relief 6–7.

[37] *Id.* at 9.

[38] *Speidell*, 978 F.3d at 738; *see Clarke*, 573 U.S. at 250.

[39] *See* Mot. for Relief 7–8. Petitioners contend that the IRS's investigation was predicated on its desire to chill their First Amendment speech.

[40] *Rice*, 9 F.3d 117 (citing *Powell*, 379 U.S. at 57).

6

R000285

burden to show that their investigation was relevant and legitimate.[41] It is Petitioners' burden to overcome the government's prima facie showing. Petitioners cannot do so with unsupported arguments such as a claim that monetized installment sales are legal tax vehicles.[42] In sum, they have not demonstrated any substantive mistake or exceptional circumstances that would warrant relief under Rule 60(b).

## II.   Petitioners Do Not Meet their Burden for a Stay Pending Appeal.

Petitioners move the court to stay execution of the summonses against Summit Crest and Wells Fargo until the Tenth Circuit can address their appeal.[43] They first contend that the court has violated Rule 62(a)'s automatic stay requirements when it ordered enforcement within thirty days of judgment.[44] Petitioners misapprehend Rule 62(a). "[E]xecution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, *unless the court orders otherwise*."[45] Here, the court has ordered otherwise.[46] Even so, "the IRS [i]s not required to comply with Rule 62(a) because [executing summonses] [i]s injunctive in nature and therefore within the exceptions to the . . . automatic stay period of Rule 62(a)."[47]

For this reason, the court considers Petitioners' motion under the general standard for staying a civil judgment. The court weighs "(1) whether the . . . applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably

---

[41] *See* Order Denying Pets. 11–12.

[42] *See Clarke*, 573 U.S. at 254.

[43] While they have not yet done so, Petitioners assert that they plan to appeal. Mot. for Relief 3.

[44] *Id.* at 3 n.1 ("[E]xecution on the summons without first waiting for Petitioners' pending appeal to the Tenth Circuit would deprive Petitioners of meaningful mandatory right of appeal[.]").

[45] Fed. R. Civ. P. 62(a) (emphasis supplied).

[46] ECF No. 30, at 19.

[47] *Rice v. United States*, 21 F.3d 1122 (10th Cir. 1994) (unpublished table decision) (citing *N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988)); *see United States v. Trenk*, No. 06-1004, 2009 WL 1298420, at *5 (D.N.J. May 8, 2009) ("[T]he government's summons enforcement proceeding is in the nature of an injunction." (citation omitted)); *United States v. Carlin*, No. 06-1906, 2006 WL 3208675, at *1 (E.D. Pa. Nov. 2, 2006).

7

R000286

injured absent a stay; (3) whether . . . the stay will substantially injure the other parties interested

in the proceeding; and (4) where the public interest lies."[48]

First, Petitioners have not demonstrated that they are likely to succeed on the merits. The

instant motion merely repackages their arguments that the investigation is unwarranted or has an

unconstitutional purpose.[49] The court has already addressed Petitioners' arguments at length and

explained how they are insufficient to overcome the IRS's prima facie showing of good faith.[50]

Next, Petitioners fail to show how they would suffer an irreparable injury should the

court deny their motion for a stay. They argue that it would be prejudicial if the IRS executes the

summonses and sees some of their private financial documents.[51] But prejudice is not inevitably

irreparable injury,[52] especially in the context of IRS summonses.[53] "[T]he mere requirement to

produce documents while an appeal is pending does not constitute sufficient harm to warrant a

stay."[54] Plus, even if an appeals court reverses enforcement, a court could still grant relief.[55]

But harm might result to the government should the court grant a stay. Specifically, the

IRS would be limited in its ability to investigate Mr. Bishop for purportedly promoting abusive

---

[48] *Taylor v. Crowther*, No. 2:07-cv-194, 2020 WL 1677078, at *1 (D. Utah Apr. 6, 2020) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

[49] *See* Mot. for Relief 6–10.

[50] *See* Order Denying Pets. 9–17.

[51] Mot. for Relief 3.

[52] *See Gould v. Wyse*, No. 1:19-cv-00382, 2023 WL 171781, at *1 (D.N.M. Jan. 12, 2023) ("[T]he standard under the *Hilton* factors is not mere prejudice: it is irreparable injury.")

[53] *See United States v. Roe*, No. 10-cv-01049, 2010 WL 3777606, at *2 (D. Colo. Sept. 20, 2010) ("Several courts have held that the production of documents in response to an IRS summons is not sufficient irreparable injury to qualify for a stay of enforcement." (citation omitted)).

[54] *United States v. Bright*, No. 07-00311, 2008 WL 351215, at *3 (D. Haw. Feb. 7, 2008).

[55] *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992) (reasoning that the court could provide partial relief by ordering the government to "destroy or return any and all copies it may have in its possession").

R000287

tax schemes. "[T]here is . . . a public interest in the 'timely assessment of tax liabilities and enforcement of the tax laws.'"[56]

Last, the court cannot say that allowing the IRS's lawful investigation to continue would harm the public interest.[57] Petitioners' arguments to the contrary are irrelevant[58] or unpersuasive.[59] In short, their bald accusations do not outweigh the "the public['s] . . . interest in having the IRS perform its job."[60] For these reasons, the factors weigh against a stay.

## ORDER

Accordingly, the court DENIES Petitioners' Motion for Relief from Order and Judgment, and/or to Stay Execution on Judgment Pending Appeal.[61]

Signed February 22, 2023.

BY THE COURT

David Barlow
United States District Judge

---

[56] *Trenk*, 2009 WL 1298420, at *6 (citation omitted); *see United States v. Jud. Watch, Inc.*, 241 F. Supp. 2d 15, 18 (D.D.C. 2003) ("[T]he public has a strong interest in the prompt completion of tax audits and investigations.").
[57] *See Speidell*, 978 F.3d at 738 ("We have held that the IRS's burden in connection with these factors is 'slight,' because statutes like 26 U.S.C. § 7602(a) 'must be read broadly to ensure that the enforcement powers of the IRS are not unduly restricted.'" (quoting *United States v. Balanced Fin. Mgmt.*, 769 F.2d 1440, 1443 (10th Cir. 1985))).
[58] For example, Petitioners argue that the "***IRS has allowed MIS for various other (well-resourced) taxpayers*** without dire public consequences." Reply 6.
[59] For instance, Petitioners argue that summons enforcement would violate their free speech rights and lead to the "impermissible implementation of a Chinese-style system of social credits, where the Government as a Ministry of Truth trolls . . . the public arena to target . . . individuals . . . to deter disfavored expression." Reply 6–7.
[60] *Jud. Watch*, 241 F. Supp. 2d at 18; *see High Desert Relief, Inc. v. United States*, No. 16-cv-1255, 2017 WL 2266871, at *3 (D.N.M. Apr. 30, 2017) ("[D]elaying the IRS's investigation . . . delays the public interest in seeing all taxpayers pay their fair share of taxes.").
[61] ECF No. 32.

9

R000288

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

| | |
|---|---|
| DAVID MICHAEL BISHOP; SLIM VENTURES, LLC, | |
| Petitioners - Appellants, | |
| v. | Nos. 23-4020, 23-4021, 23-4022, 23-4023, 23-4024, 23-4025, 23-4026, 23-4027 |
| UNITED STATES OF AMERICA; INTERNAL REVENUE SERVICE; TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his official capacity, | (D.C. No. 2:22-CV-00340-DBB) (D.C. No. 2:22-CV-00344-DBB) (D.C. No. 2:22-CV-00351-DBB) (D.C. No. 2:22-CV-00341-DBB) (D.C. No. 2:22-CV-00348-DBB) (D.C. No. 2:22-CV-00347-DBB) |
| Respondents - Appellees. | (D.C. No. 2:22-CV-00345-DBB) (D.C. No. 2:22-CV-00352-DBB) (D. Utah) |

_____

## ORDER

_____

Before **BACHARACH** and **McHUGH**, Circuit Judges.

_____

This matter is before the court on the _Amended and Superseding Motion for Extended Word Count Limit and Voluntary Dismissal of Three Cases on Appeal._

Appellants David Bishop and Slim Ventures, LLC move for voluntary dismissal of appeal nos. 23-4023, 23-4024, and 23-4025. The motion for voluntary dismissal of these three appeals is not opposed by federal Appellees.

R000289

Appellants' motion for voluntary dismissal is granted and appeal nos. 23-4023, 23-4024, and 23-4025 are dismissed with prejudice. *See* Fed. R. App. P. 42(b); 10th Cir. R. 27.5(A)(9).

Appellants also move to exceed the word count for their consolidated opening brief from 13,000 words to 21,000 words. The motion states that Appellees agree to an extension of word count of 1,000 words but oppose any extension greater than that.

Upon consideration, Appellants' motion to exceed the word count is granted in part for an additional 4,000 words. Appellants may file a consolidated opening brief of no more than 17,000 words. Appellants consolidated opening brief and appendix remain due April 12, 2023.

A copy of this order shall stand as and for the mandate of the court for appeal nos. 23-4023, 23-4024, and 23-4025.

Entered for the Court
CHRISTOPHER M. WOLPERT, Clerk

*Sunil N Rao*

By: Sunil N. Rao
    Counsel to the Clerk

R000290

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

March 15, 2023

Lauren E Hume
U.S. Department of Justice
Tax Division, Appellate Section
Ben Franklin Station
P.O. Box 502
Washington, DC 20044

Gary P. Serdar
United States District Court for the District of Utah
351 South West Temple
Salt Lake City, UT 84101

Matthew Uhalde
U.S. Dept of Justice
555 4th Street NW
Washington, DC 20001-0000

Daniel E. Witte
Pearson Butler
1802 South Jordan Parkway, Suite 200
South Jordan, UT 84095

RE:   23-4023, 23-4024, 23-4025, Slim Ventures v. United States, et al
      Dist/Ag docket: 2:22-CV-00341-DBB

Dear Counsel and Clerk:

Please be advised that the court issued an order today dismissing this case.

In addition, pursuant to Federal Rule of Appellate Procedure 41, the Tenth Circuit's
mandate issued today, and the court's judgment takes effect. With the issuance of this
letter, jurisdiction is transferred back to the lower court/agency.

R000291

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

CMW/mlb

R000292